UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
GOLDEN FOOTHILL INSURANCE SERVICES, LLC,   Docket No..: 1:24-cv-08515
LIFE FACTOR II, LLC, LIFE SHARES II, LLC, EL
DORADO HILLS INSURANCE SOLUTIONS, INC.,
LONE WOLF INSURANCE SERVICES, INC., ELDO
INVESTMENTS, LLC, THE GENESIS LS FUND, LLC,
KTL HOLDINGS, INC., and TATANISHA LEER,

                        Plaintiffs,

- against -

SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH)
LUBIN, BMF ADVANCE LLC, GAVRIEL
YITZCHAKOV a/k/a GABE ISAACOV, HI
BAR CAPITAL, LLC, YOEL GETTER a/k/a
JOEL GETA, and YISROEL HERBST,

                        Defendants.
----------------------------------------------------------------------X

**DEFENDANTS BMF ADVANCE LLC AND GAVRIEL YITZCHAKOV'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

Murray Legal, PLLC
Christopher R. Murray, Esq.
Attorneys for Defendants
BMF ADVANCE LLC and GAVRIEL YITZCHAKOV
170 Old Country Rd., Suite 608
Mineola, New York 11501
Tel: (516) 260-7367
E-mail: cmurray@murraylegalpllc.com

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ 1

PRELIMINARY STATEMENT .................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

   I.    PLAINTIFFS' CLAIMS HAVE ALREADY BEEN REJECTED AS A MATTER OF LAW IN A PRIOR ACTION AND, AS SUCH, ARE BARRED BY COLLATERAL ESTOPPEL. ................................................................................................................... 3

   II.   THE COURT SHOULD DISMISS THIS ACTION IN ACCORDANCE WITH THE COLORADO RIVER ABSTENTION DOCTRINE. .............................................................. 5

   III.   THE COURT SHOULD DISMISS PLAINTIFFS' RICO CLAIMS BECAUSE DOCUMENTARY EVIDENCE IS FATAL TO PLAINTIFFS' USURY THEORIES. ............ 7

   IV.   THE COURT SHOULD DISMISS THIS ACTION MR. YITZCHAKOV BECAUSE PLAINTIFFS FAILED TO DEMONSTRATE DUE DILLIGENCE BEFORE RESORTING TO NAIL AND MAIL SERVICE. ....................................................................................... 11

CONCLUSION ............................................................................................................................. 14

## **PRELIMINARY STATEMENT**

Defendants BMF Advance LLC and Gavriel Yitzchakov ("Mr. Yitzchakov") submit this memorandum of law in support of their motion to dismiss this action against them pursuant to Fed. R. Civ. P. 12(b)(2), (5), and (6).

Plaintiffs' RICO claims are barred by collateral estoppel as Plaintiffs litigated their underlying usury theory for "collection of unlawful debt" and *lost* in state court as a matter of law over two years ago.  *Spin Cap., LLC v. Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Misc. LEXIS 747, *9-10 (Sup. Ct. N.Y. Cnty. February 28, 2023).  Having already lost their RICO claims in state court, they cannot try to re-litigate the same theories in federal court.  However, even if the Plaintiffs could re-litigate the same theories, they would lose for the same reasons they lost.  The BMF Agreements are not loans subject to usury laws and documentary evidence attached to the Amended Complaint is fatal to Plaintiffs' RICO and RICO conspiracy claims.

Furthermore, the action should be dismissed based upon the Colorado River abstention doctrine.

The action must be dismissed against Mr. Yitzchakov for insufficient service of process because Plaintiff failed to satisfy the "due diligence" requirements for service of process before resorting to nail and mail.  The process server does not claim to have attempted to serve Mr. Yitzchakov at his office, only attempted service during a less than three-hour window in the evenings, never called him to arrange service, never spoke with anyone to determine if Mr. Yitzchakov was on vacation during the short holiday period during which Plaintiff claims every attempt was made, and never performed even a one day stakeout to determine if the address was Mr. Yitzchakov's dwelling place or usual place of abode.

For the reasons set forth herein, the Court should dismiss this action in its entirety.

**ARGUMENT**

I. **PLAINTIFFS' CLAIMS HAVE ALREADY BEEN REJECTED AS A MATTER OF LAW IN A PRIOR ACTION AND, AS SUCH, ARE BARRED BY COLLATERAL ESTOPPEL.**

The Court must dismiss Plaintiffs' RICO and RICO conspiracy claims because they already litigated these claims in a prior action and the usurious loan theory underpinning their RICO claims failed as a matter of law.

As explained by the Second Circuit, "[t]he fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies." *Constantine v. Teachers College*, 448 Fed. Appx. 92, 93 (2d Cir. 2011). "In order for collateral estoppel to apply, two elements must be established: (1) that 'the identical issue was necessarily decided in the prior action and is decisive in the present action;' and (2) that the precluded party 'must have had a full and fair opportunity to contest the prior determination.'" *Montoya v. JL Astoria Sound, Inc.*, 92 A.D.3d 736, 738 (2d Dept. 2012) *quoting D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 664 (N.Y. 1990). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issues." *Constantine,* 448 Fed. Appx. at 93-94 *quoting Evans v. Ottimo*, 469 F.3d 278, 281-82 (2d Cir. 2006).

There can be no serious dispute that the issues decided in Plaintiff's prior action are essentially identical to those raised between the two actions. In the prior state court action, Plaintiffs attempted to allege claims for RICO (**Ex. B,** p.48) and RICO conspiracy (**Ex. B,** p.60). Plaintiffs argued that BMF, Spin and Hi-Bar, and their various principals, were participants in a

3

RICO enterprise/conspiracy. **Ex. B**, pp.50-51. Plaintiffs' allegations largely depended upon assertions that Plaintiffs' alleged contacts with BMF from March 2, 12, and 25, 2021 were usurious loans, rather than receivables purchase agreements. **Ex. B**, pp.41-42. Plaintiffs made the same allegations about agreements with Hi-Bar from March 10 and 25, 2021. **Ex. B**, pp.42-43. Plaintiffs then asserted this should undermine their loan agreement with Spin Capital. **Ex. B**, pp.43-48. On that basis, Plaintiffs asserted the existence of a RICO enterprise and conspiracy arising from collection of unlawful, criminally usurious debt. **Ex. B**, p.27, ¶1.

These are essentially the same allegations made by Plaintiffs in this case. Once again, Plaintiffs allege claims for RICO (**Ex. A**, p.31) and RICO Conspiracy (**Ex. A**, p.55). Although they assert the involvement of a great many more people in this case, Plaintiffs again argue that BMF, Spin and Hi-Bar, and their various principals, were participants in a RICO enterprise/conspiracy. (**Ex. A**, p.11-14). As before, Plaintiffs' allegations depend upon assertions that Plaintiffs' alleged contacts with BMF from March 2, 12, and 25, 2021 and Hi-Bar from March 10 and 25, 2021, were usurious loans, rather than receivables purchase agreements. **Ex. B**, pp.16-27. Plaintiffs once again assert this should undermine their loan agreement with Spin Capital. **Ex. B**, pp.28-31. On that basis, Plaintiffs asserted the existence of a RICO enterprise and conspiracy arising from collection of unlawful, criminally usurious debt. **Ex. B**, p.36, ¶¶209-210.

The Court analyzed these legal and factual allegations, issues, and arguments two full years ago in *Spin Cap., LLC v. Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Misc. LEXIS 747, *9-10 (Sup. Ct. N.Y. Cnty. February 28, 2023) and ultimately dismissed these same RICO and RICO conspiracy allegations. The Court analyzed the BMF and Hi-Bar contracts and held that "[t]he BMF and Hi Bar revenue purchase agreements meet all three criteria" for holding that the "Purchase Agreements are not loans." *Id.* at *9. Having already held that the BMF agreements

are not loans subject to usury laws and that such finding was fatal to Plaintiff's RICO and RICO conspiracy claims, Plaintiffs cannot simply file a new lawsuit and demand a "do-over."

There is a complete identity of the issues between the two actions and no reasonable person could dispute that the state court already dismissed these claims. Furthermore, Plaintiff cannot dispute that it had a full and fair opportunity to litigate these issues in state court as it had a chance to plead and then replead its counterclaims, and then lost after robust motion practice. The state court recited extensive papers submitted by the parties at the start of its order. *Id.* at *1. Plaintiffs have never disputed that they had a full and fair opportunity to litigate these claims in state court, they simply do not like the outcome. This is a classic case in which collateral estoppel should bar Plaintiffs from re-litigating the same claims.

For the foregoing reasons, the Court should dismiss this action in its entirety.

## II. THE COURT SHOULD DISMISS THIS ACTION IN ACCORDANCE WITH THE COLORADO RIVER ABSTENTION DOCTRINE.

The Court should dismiss this action pursuant to the *Colorado River* abstention doctrine because there is already a pending action in state court that subsumes all of the legal issues in this case, is years ahead of this case, and will resolve every issue raised in this action.

It is well settled that, pursuant to the *Colorado River* abstention doctrine, a District Court may abstain from hearing a case to conserve valuable federal judicial resources in exceptional circumstances, where the resolution of existing concurrent state-court litigation could result in comprehensive disposition of litigation. *Woodford v. Cmty. Action Agency of Greene County*, 239 F.3d 517, 522 (2d Cir. 2001). The Court looks to: (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid

piecemeal litigation; (4) the order in which the actions were filed; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. *Id.*

Here, there is no dispute about the prior action involving the same things. **Ex. A**; **Ex. B**. There can be no good faith argument that litigating a block away in the Commercial Division of the Supreme Court, New York County is more or less convenient. Dismissing the federal litigation avoids piecemeal litigation of the exact same transactions, acts, and occurrences being litigated as this case attempts to separate two dismissed counterclaims from the state court action and make a separate litigation out of them. *Spin Cap., LLC v. Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Misc. LEXIS 747, *9-10 (Sup. Ct. N.Y. Cnty. February 28, 2023). There is no dispute that the prior action has been pending and litigated for robustly for years before this action was filed. **Ex. A**; **Ex. B**; *Spin Cap., LLC v. Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Misc. LEXIS 747, *9-10 (Sup. Ct. N.Y. Cnty. February 28, 2023). The primary issue in this case, as in the state court action, are interpretations of New York state law regarding the inapplicability of New York's usury laws to New York contracts. *Spin Cap., LLC v. Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Misc. LEXIS 747, *9-10 (Sup. Ct. N.Y. Cnty. February 28, 2023). The RICO claims' "collection of unlawful debt" theory is entirely dependent upon state law and, as such, state law provides the law of decision. There can be no serious dispute that New York state's legal procedures adequately protect Plaintiffs' rights as Plaintiffs had a full and fair opportunity to litigate in state court and simply lost on the merits.

For the foregoing reasons, the Court should dismiss this action in its entirety.

### III. THE COURT SHOULD DISMISS PLAINTIFFS' RICO CLAIMS BECAUSE DOCUMENTARY EVIDENCE IS FATAL TO PLAINTIFFS' USURY THEORIES.

The Court should dismiss Plaintiffs' claims for failure to plead facts sufficient to state a claim and because there was no substantive RICO violation.

Plaintiffs have not attempted to allege a pattern of racketeering activity and, instead, depend entirely upon their allegations that the agreements were usurious loans subject to usury laws and, constituted the "collection of unlawful debt." Plaintiffs' claims necessarily fail in this case because, under settled New York law, the BMF agreements are not loans subject to usury laws.

It is axiomatic that a contract cannot be usurious if, as here, it is not a loan. *See, e.g., Womack v. Capital Stack, LLC*, 2019 WL 4142740, at *4 (S.D.N.Y. Aug. 30, 2019) ("The essential element of usury is the existence of a loan or forbearance of money."); *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2019 WL 1473090, at *5 (E.D.N.Y. Apr. 3, 2019) ("without a loan there can be no usury"; rejecting usury defense to enforcement of merchant cash advance agreement); *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017) (same); *Seidel v. 18 E. 17th St. Owners*, 79 N.Y.2d 735, 744 (1992) (citation omitted) ("Usury laws apply only to loans or forbearances, not investments. If the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be.'"); *Donatelli v. Siskind*, 170 A.D.2d 433, 434 (2d Dept. 1991) (same).

An agreement cannot be a loan unless it provides (1) a right of interest on principal, *see, e.g., Womack*, 2019 WL 4142740, at *4 ("the lender must have purposefully loaned money at a usurious interest reserved in some form by the contract"); *Donatelli*, 170 A.D.2d at 434; *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 2012 WL 1087341, at *6 (Sup. Ct. Suffolk Cty.

7

Mar. 29, 2012) and (2) an absolute right to repayment, *see, e.g., Colonial*, 252 F. Supp. 3d at 282-83 (distinguishing merchant cash advance agreements from loans because only loans have absolute and unconditional payment obligations); *Rubenstein v. Small*, 273 A.D. 102, 104 (1st Dept. 1947).

Any contractual provision rendering payment contingent upon factors outside the buyer's control are fatal to a usurious loan claim. **"Unless a principal sum advance is repayable absolutely, the transaction is not a loan."** *LG Funding, LLC*, 181 A.D.3d at 666 (emphasis added). Indeed, "[t]he distinguishing hallmark of a loan is the lender's absolute right to repayment of the principal." *IBIS Capital Grp., LLC*, 2017 NY Slip Op 30477(U) at *9. Thus, any provision that provides that "payment or enforcement rests upon a contingency" will establish that "the agreement is valid even though it provides for a return in excess of the legal rate of interest." *Id.*

The Appellate Courts of New York routinely uphold purchase and sale of future accounts receivable transactions, substantially similar to the ones in this case in the face of usury arguments substantially similar to those advanced by Plaintiff. *Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*, 2017 N.Y. Misc. LEXIS 5355 (Sup. Ct. N.Y. Cty. 2017) *aff'd* 69 N.Y.S.3d 798 (1st Dept. 2018); *Kennard Law P.C. v. High Speed Capital, LLC*, 2020 N.Y. Misc. LEXIS 10407 (Sup. Ct. Erie Cty. Dec. 10, 2020) *aff'd* 154 N.Y.S.3d 522 (4th Dept. 2021); *Strategic Funding Source v. Steenbok, Inc.*, Case No.: 2021-00877 (1st Dept. June 22, 2021) (unreported but available on the New York Court's docket); *Principis Capital, LLC, v. I Do, Inc.*, 2022 N.Y. Slip. Op. 00203 (2d Dept. 2022). Indeed, state and federal trial courts in New York have spent more than a decade rejecting the same usury arguments advanced by Plaintiffs herein for the exact same reasons relied upon by Defendants.[1] Moreover, this has already been analyzed and Plaintiffs' exact theory was

---

[1] *See, e.g., Progressive Water Treatment Inc. v. Yellowstone Capital LLC*, 2021 N.Y. Misc. LEXIS 5 (Sup. Ct. Erie Cty. Jan. 4, 2021); *Colonial Funding Network, Inc. v. Davincitek Corp.*, 2021 NY Slip Op 30026(U) (Sup. Ct. N.Y. Cnty. 2021); *McA Master Fund v. Universal Scrap Motors*, 2021 NYLJ LEXIS 43 (Sup. Ct. Nassau Cty. 2021); *Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair Inc.*, 69 Misc. 3d 457 (Sup. Ct. N.Y. Cnty. Aug. 17, 2020);

8

already rejected by a Court of competent jurisdiction on the same contract. *Spin Cap., LLC v. Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Misc. LEXIS 747, *9-10 (Sup. Ct. N.Y. Cnty. February 28, 2023).

The Agreements all satisfy the burden for dismissal of Plaintiff's usury challenge as a matter of law. First, the Agreements contains a mandatory reconciliation provision by which the daily payments can be reconciled with a specified percentage. ECF Doc. 11-8, p.3, Section 1.4.

---

*Womack v. Capital Stack, LLC*, 2019 U.S. Dist. LEXIS 148644 (S.D.N.Y. Aug. 30, 2019); *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2019 U.S. Dist. LEXIS 57527 (E.D.N.Y. Apr. 3, 2019); *Wilkinson Floor Covering, Inc. v Cap Call*, LLC, 2018 NY Slip Op 50709(U) (Sup. Ct. N.Y. Cty. 2018); *Principis Capital LLC, v. 3148521 Canada Inc.*, 2018 N.Y. Misc. LEXIS 1616 (Sup. Ct. N.Y. Cty. 2018); *NY Capital Asset Corp. v F & B Fuel Oil Co., Inc.*, 58 Misc. 3d 1229(A) (Sup. Ct. Westchester Cty. 2018); *Platinum Rapid Funding Group Ltd. v Uncle Jimmy's*, 2018 NY Slip Op 30396(U) (Sup. Ct. Nassau Cty. 2018); *LG Funding, LLC v City N. Grill Corp.*, 2018 NY Slip Op 30372(U) (Sup. Ct. Nassau Cty. 2018); *LG Funding, LLC v Balsamo*, 2017 NY Slip Op 32686(U) (Sup. Ct. Nassau Cty. 2017); *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274 (S.D.N.Y. 2017); *LG Funding, LLC v Grace Plastics, Inc.*, 2017 NY Slip Op 32750(U) (Sup. Ct. Nassau Cty. 2017); *LG Funding, LLC v Snowstar, Inc.*, 2017 NY Slip Op 32741(U) (Sup. Ct. Nassau Cty. 2017); *LG Funding, LLC v Christenbury Eye Ctr., P.A.*, 2017 NY Slip Op 32609(U) (Sup. Ct. Nassau Cty. 2017); *Lg Funding Llc v. Island Flavor Llc*, 2017 NYLJ LEXIS 3426 (Sup. Ct. Nassau Cty. 2017); *LG Funding, LLC v Branson Getaways, Inc.*, 2017 NY Slip Op 32387(U) (Sup. Ct. Nassau Cty. 2017); *Rapid Capital Fin., LLC v Natures Mkt. Corp.*, 57 Misc. 3d 979 (Sup. Ct. Westchester Cty. 2017); *EBF Partners, LLC v Yaz & Yash LLC*, 2017 NY Slip Op 31600(U) (Sup. Ct. Westchester Cty. 2017); *Merchant Cash & Capital, LLC v Avtar Trucking, Inc.*, 2017 NY Slip Op 31123(U) (Sup. Ct. Nassau Cty. 2017); *K9 Bytes, Inc. v Arch Capital Funding, LLC*, 56 Misc. 3d 807, (Sup. Ct. Westchester Cty. 2017); *Merch. Cash & Capital v. Wett Plumbing*, 2017 NYLJ LEXIS 1275 (Sup. Ct. Nassau Cty. 2017); *IBIS Capital Group, LLC v Four Paws Orlando LLC*, 2017 NY Slip Op 30477(U) (Sup. Ct. Nassau Cty. 2017); *Merchant Cash & Capital, LLC v Sogomonyan*, 2017 NY Slip Op 31111(U) (Sup. Ct. Nassau Cty. 2017); *Chartock v National Bank of California*, 2017 NY Slip Op 30357(U) (Sup. Ct. Queens Cty. 2017); *Merchant Cash & Capital, LLC v Frederick & Cole, LLC*, 2016 NY Slip Op 32730(U) (Sup. Ct. Nassau Cty. 2017); *Merchant Cash And Capital, LLC, v. Hobby Horse Welding, Inc.*, 2016 N.Y. Misc. LEXIS 4894 (Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital, LLC v Fire Suppression Servs., Inc.*, 2016 NY Slip Op 32590(U) (Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital, LLC v South Jersey Speed LLC*, 2016 NY Slip Op 32591(U) (Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital, LLC v Liberation Land Co., LLC*, 2016 NY Slip Op 32589(U) (Sup. Ct. Nassau Cty. 2016); *Retail Capital, LLC v Spice Intentions Inc.*, 2016 NY Slip Op 32614(U) (Sup. Ct. Queens Cty. 2016); *Merch. Cash & Capital, LLC v. Ethnicity Inc.*, 2016 NY Slip Op 32593(U) (Sup. Ct. Nassau Cty. 2016); *Tate v National Bank of California*, 2016 NY Slip Op 32396(U) (Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital v Royal Tate, LLC*, 2016 NY Slip Op 32394(U) (Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital, LLC v Transfer Intl. Inc*, 2016 NY Slip Op 32395[U] (Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital, LLC v. Cramer E. Constr.*, 2016 N.Y. Misc. LEXIS 4647 (Sup. Ct. Nassau Cty. 2016); *Platinum Rapid Funding Group Ltd. v VIP Limousine Servs., Inc.*, 2016 N.Y. Misc. LEXIS 3068, 2016 NY Slip Op 31591[U] (Sup. Ct. Nassau Cty. 2016); *Retail Capital, LLC v Leahy*, 2016 NY Slip Op 32135(U) (Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital, LLC v Randa's Bakery, Inc.*, 2016 NY Slip Op 31732(U) (Sup. Ct. Nassau Cty. 2016); *Merchant Cash & Capital, LLC v Yehowa Med. Servs., Inc.*, 2016 N.Y. Misc. LEXIS 3065 (Sup. Ct. Nassau Cty. 2016); *Professional Merchant Advance Capital, LLC v Your Trading Room, LLC,* 2012 NY Slip Op 33785[U] (Sup. Ct. Suffolk Cty. 2012). *Merchants Capital Access, LLC v. South Shore Motorsports, LLC*, 2011 NY Slip Op 32300(U) (Sup. Ct. Nassau Cty. 2011); *Merchants Advance, LLC, v. Tera K, LLC T/A Tribeca Frank Carabetta*, 2008 N.Y. Misc. LEXIS 10889 (Sup. Ct. N.Y. Cty. 2008).

When faced with a proper reconciliation request, the Agreement unambiguously states that "[t]he remittance **shall be modified**..." *Id.* The provision does not use the discretionary language that could open the contract up to a dispute on the facts. *c.f. LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 666 (2d Dept. 2020) (finding a question of fact where, among other issues, the agreement provided that adjustments were "at [its] sole discretion and as it deems appropriate" rather than using the mandatory language typically found in such contracts).

Second, the agreements did not contain a mandatory payment schedule or date certain by which all payments must be made. ECF Doc. 11-8, p.2. *K9 Bytes, Inc.*, 56 Misc. 3d at 817. In fact, the agreements mandated that "there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by [BMF]." *Id.*

Third, the agreements mandate that "Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself does not constitute a breach of this Agreement. [BMF] is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and [BMF] assumes these risks based on Merchant's representations, warranties and covenants in this agreement, which are designed to give [BMF] a reasonable and fair opportunity to receive the benefit of its bargain....Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount." ECF Doc. 11-8, p.2.

Furthermore, all of the agreements satisfy contain additional provisions to mandate that any payments were contingent. In *Strategic Funding Source v. Steenbok, Inc.*, Index No. 652710/2019, Case No.: 2021-00877 (1st Dept. June 22, 2021) (unreported but available on the New York Court's docket), the First Department recognized that "per the eight merchant agreements, repayment to plaintiff was contingent on future receivables existing. Accordingly, the

cash advance was not a loan and is thus not a usurious transaction. (see *Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*, 159 A.D.3d 507 [1st Dept 2018], lv denied 31 NY3d 910[2018]).". Here, the Agreements included the same contingency provision that provided that "Payments made to [BMF] in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers." ECF Doc. 11-8, p.3, Section 1.10. This is independently fatal to Plaintiffs' claims.

To state a claim under § 1962(d), a plaintiff must allege a valid underlying claim under subsections (a), (b), or (c), plus an agreement to carry out such acts. *See, e.g., First Asset Capital Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004); *Falise v. Am. Tobacco, Inc.*, 94 F. Supp. 2d 316, 353 (E.D.N.Y. 2000). Plaintiff's § 1962(d) claim should be dismissed because the underlying § 1962(c) claim fails for the reasons set forth above. For the foregoing reasons, the agreements were not usurious loans and could not constitute collection of unlawful debt as a matter of law. Thus, Plaintiffs' RICO claims must both fail.

## IV. THE COURT SHOULD DISMISS THIS ACTION MR. YITZCHAKOV BECAUSE PLAINTIFFS FAILED TO DEMONSTRATE DUE DILLIGENCE BEFORE RESORTING TO NAIL AND MAIL SERVICE.

The Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) and (5) as against Mr. Yitzchakov because Plaintiffs failed to effect service of process in the manner required by CPLR 308(4). Plaintiffs' affidavit of service does not even attest to facts that would be sufficient to comply with CPLR 308(4).

A party challenging personal jurisdiction and service of process should move to dismiss in the first responsive pleading or in a motion to dismiss. Fed R. Civ. P. 12(b). The Court must dismiss any action or claim against a specified defendant if the defendant is not properly served within 90 days after being named in the Complaint unless the plaintiffs show good cause for their

failure to serve process and request a reasonable extension of time to effect service of process. Fed R. Civ. P. 4(m). Service of the summons on an individual must be performed either in accordance with Fed. R. Civ. P. 4(e)(2) or in accordance with the laws of the state where service is made or under the state laws where the action was commenced. Fed. R. Civ. P. 4(e)(1).

Here, Plaintiffs claim that they served Yitzchakov by nail and mail service under CPLR 308(4). **Ex. C**. CPLR 308(4), the nail and mail statute, provides as follows:

> where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such affixing or mailing, whichever is effected later; service shall be complete ten days after such filing....

CPLR 308(4).

They claim to have posted the summons and amended complaint in an unspecified "conspicuous place on the property" of Mr. Yitzchakov's alleged "residence." **Ex. C**. They then claim that "[t]he documents were mailed by our office via certified mail to the defendants" at an unspecified address. **Ex. C**.

Plaintiffs do not allege facts sufficient to comply with CPLR 308(4). Strict compliance with the provisions for service of process is required to obtain jurisdiction. *Estate of Waterman v. Jones*, 46 A.D.3d 63, 65 (2d Dept. 2007).

As an initial matter, Plaintiffs' own affidavit establishes that they did not comply with the mailing requirements for service. There is no sworn statement of a first class mailing in an envelope marked personal and confidential that does not indicate that the communication is from

12

an attorney or concerns an action against the person to be served. **Ex. C**. A certified mailing is not a first class mailing and there is nothing suggesting on the face of the affidavit that any other parts of the mailing were properly effected. Nowhere in the affidavit does the process server attest to service via USPS First Class mail to Yitzchakov's last known residence or actual place of business "in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served." *c.f.* CPLR 308(4); **Ex. C**.

Second, Plaintiffs' affidavit falls woefully short of satisfying the "due diligence" requirements before resorting to nail and mail. Although due diligence is not statutorily defined, and is analyzed on a case by case basis, the case law is very informative. *Estate of Waterman v. Jones*, 46 A.D.3d at 66. The Court should consider the quality of the attempts, the likelihood that those attempts would result in good service, genuine inquiries about the defendant's whereabouts and place of employment. *Id.*

In their affidavit of service, the process server does not attest to any attempts to serve Mr. Yitzchakov anywhere other than his alleged "residence." on North Meridian Avenue in Miami Beach, Florida. **Ex. C**. He does not attest to any skip trace, any actions to confirm his address was correct, or any attempts to serve Mr. Yitzchakov at work. **Ex. C**. He does not attest to attempting to call Mr. Yitzchakov to arrange service or Mr. Yitzchakov's attorneys despite counsel having previously appeared in the state court action. **Ex. C**. He does not offer anything that would form the basis for his belief that North Meridian Avenue in Miami Beach, Florida is Mr. Yitzchakov's "dwelling place or usual place of abode." Instead, Plaintiffs' affidavit describes a strange pattern of attempts to serve process on weekdays between 3:55 p.m. and 7:45 p.m. Even more strangely, these attempts are two attempts during normal working hours, when a person

would not likely be home and then between 6:37 p.m. and 7:45 p.m., when many people go out to dinner and are, again, not home.  There are no morning attempts, no clear attempt to determine where or when Mr. Yitzchakov works or commutes, no lunch hour attempts, and no weekend attempts.  **Ex. C**.  There are not even inquiries with neighbors about when or if Mr. Yitzchakov is home.  Additionally, there is the fact that all of these attempts are between December 16, 2024, and January 8, 2025, during a common time of year for travel.

Such attempts were so lack as to be facially insufficient to satisfy the service of process requirements. *Estate of Waterman v. Jones*, 46 A.D.3d at 66.

For the foregoing reasons, the Court should dismiss this action in its entirety as against Mr. Yitzchakov.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss this action in its entirety against BMF and Mr. Yitzchakov.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue an Order dismissing this action in its entirety and awarding the Defendants such other and further relief as the Court deems just and proper.

Dated: February 28, 2025

/s/ Christopher R. Murray
Christopher R. Murray, Esq.
Murray Legal, PLLC
170 Old Country Rd., Suite 608
Mineola, New York 11501
Tel: (516) 260-7367
E-Mail: cmurray@murraylegalpllc.com
*Attorneys for Defendants*
*BMF Advance, LLC*
*and Gavriel Yitzchakov*