# EXHIBIT 9

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-----------------------------------------------------------------------

**Spin Capital, LLC,**

**Plaintiff,**

Index No. 650582/2022

**v.**

**Golden Foothill Insurance Services, LLC, a Delaware**
**limited liability company;**
**Life Factor II, LLC, a Nevada limited liability company;**
**Life Shares II, LLC, a Delaware limited liability company;**
**El Dorado Hills Insurance Solutions, Inc., a California corporation;**
**Lone Wolf Insurance Services, Inc., a Delaware corporation;**
**ELDO Investments, LLC, a Texas limited liability company;**
**The Genesis LS Fund, LLC, a Texas limited liability company;**
**KTL Holdings, Inc., a Texas corporation;**
**DRVN Holdings, LLC, a Texas limited liability company;**
**Life Shares 1019, LLC, a Delaware limited liability company;**
**Zurich American Life Insurance Co., an Illinois corporation;**
**Accordia Life and Annuity Company, an Iowa corporation;**
**John Hancock Life Insurance Company, a Michigan corporation;**
**Brighthouse Life Insurance Co., a Delaware corporation;**
**Cap Factor, LLC, a Nevada limited liability company;**
**Stefan Leer, and**
**Tatanisha Leer**

**Defendants.**
-----------------------------------------------------------------------

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF PROMISSORY NOTE, BREACH OF GUARANTIES, AND VOIDABLE TRANSFERS

Plaintiff, Spin Capital, LLC ("Spin Capital"), for its Complaint against Defendants Golden

Foothill Insurance Services, LLC, Life Factor II, LLC, Life Shares II, LLC, El Dorado Hills

Insurance Solutions, Inc., Lone Wolf Insurance Services, Inc., ELDO Investments, LLC, The

Genesis LS Fund, LLC, KTL Holdings, Inc., Stefan Leer, Tatanisha Leer, Zurich American Life

Insurance Co., Accordia Life & Annuity, Co., John Hancock Life Insurance Company (USA),

Brighthouse Life Insurance Co., DRVN Holdings LLC, Life Share 1019 LLC, and Cap Factor,

1

LLC, states as follows:

*General Statement*

1. This is an action arising from the breach of a promissory note, which evidenced a loan made by Spin Capital to three of the defendants, as well as the breach by seven defendants of their guaranties of the indebtedness that was due under the promissory note. In addition, Spin Capital is seeking a declaration regarding its collateral rights in nine life insurance policies that were owned and pledged as collateral for the indebtedness due under the promissory note, as well as remedies under the Uniform Voidable Transactions Act for wrongful transfers of those Policies that were made by the owners to other defendants shortly after Spin Capital made the loan at issue. The life insurance policies were issued by the four insurer defendants, who have been named as necessary parties to the claims regarding the policies.

*Parties*

2. Plaintiff, Spin Capital, is a limited liability company organized under the laws of the state of New Jersey, with its principal place of business in New York. Spin Capital is the obligee on the promissory note at issue in this case and the secured party under the security agreement and collateral assignments that secured the amounts due under the promissory note.

3. Golden Foothill Insurance Services, LLC, ("GFIS") is a Delaware limited liability company. GFIS is one of the three obligors on the promissory note at issue. Defendant Stefan Leer ("S. Leer") is a principal owner of GFIS.

4. Life Factor II, LLC ("Life Factor") is a Nevada limited liability company. Life Factor is one of the three obligors on the promissory note at issue, and was the owner of two of the life insurance policies that were pledged as collateral for the promissory note. S. Leer is a principal owner of Life Factor.

2

5. Life Shares II, LLC ("Life Shares") is a Delaware limited liability company. Life Shares is one of the three obligors on the promissory note at issue, and was the owner of seven of the life insurance policies that were pledged as collateral for the promissory note. S. Leer is a principal owner of Life Shares.

6. El Dorado Hills Insurance Solutions, Inc ("EDHIS") is a California corporation. EDHIS guaranteed the obligations under the promissory note. S. Leer is a principal owner of EDHIS.

7. Lone Wolf Insurance Services, Inc. ("Lone Wolf") is a Delaware corporation. Lone Wolf guaranteed the obligations under the promissory note. S. Leer is a principal owner of Lone Wolf.

8. ELDO Investments, LLC ("ELDO") is a Texas limited liability company. ELDO guaranteed the obligations under the promissory note. S. Leer s a principal owner of ELDO.

9. The Genesis LS Fund, LLC ("Genesis") is a Texas limited liability company. Genesis guaranteed the obligations under the promissory note. S. Leer is a principal owner of Genesis.

10. KTL Holdings, Inc. ("KTL") is a Texas corporation. KTL guaranteed the obligations under the promissory note. S. Leer is a principal owner of KTL.

11. DRVN Holdings, LLC ("DRVN") is a Texas limited liability company. S. Leer is a principal owner of DRVN. Following the loan made by Spin Capital, DRVN was named by Life Shares as the transferee of six of the Policies owned by Life Shares which were pledged to Spin Capital as collateral for the promissory note.

12. Life Shares 1019, LLC ("LS1019") is a Delaware limited liability company. S. Leer and defendant Cap Factor, LLC are principal owners of LS 1019. Following the loan made by Spin

3

Case 1:24-cv-08515-AS    Document 76-9    Filed 03/14/25    Page 5 of 30

Capital, LS1019 was named by Life Shares as the transferee of the two Policies owned by Life Factor which were pledged to Spin Capital as collateral for the promissory note.

13.    Stefan Leer ("S. Leer"") is an individual who resides in the state of California. Upon information and belief, S. Leer is the sole or principal owner of GFIS, Life Factor, Life Shares, EDHIS, Lone Wolf, ELDO, Genesis, KTL, DRVN and LS1019. (hereinafter collectively referred to as "Leer Entities"). Leer signed the promissory note, security agreement, and collateral assignments on behalf of each of the borrowers and the corporate guarantors, including the voidable transfers described below.  Leer also personally guaranteed the obligations under the promissory note.

14.    Tatanisha Leer ("T. Leer") is an individual who resides in the state of California. T. Leer guaranteed the obligations under the promissory note.  Upon information and belief, T. Leer is the wife of S. Leer.

15.    Zurich American Life Insurance Co. ("Zurich") is an Illinois corporation, with its headquarters in Illinois. Zurich issued six of the nine life insurance policies that constitute the collateral,

16.     John Hancock Life Insurance Company (USA) ("John Hancock"), is a Michigan corporation with its headquarters in Massachusetts.  John Hancock issued one of the nine life insurance policies that constitute the collateral.

17.    Brighthouse Life Insurance Company ("Brighthouse") is a Delaware corporation, with its headquarters in North Carolina.  Brighthouse issued one of the nine life insurance policies that constitute the collateral.

18.    Accordia Life and Annuity Company ("Accordia") is an Iowa corporation, with its headquarters in Iowa.  Accordia issued one of the nine life insurance policies that constitute the

collateral

19.   Cap Factor, LLC ("Cap Factor") is a Nevada limited liability company with its principal office in Nevada.  Cap Factor is a co-owner along with S. Leer of LS 1019, and one of Cap Factor's managers, Steven J. Little, is a manager of another entity owned in whole or in part by S. Leer, Life Shares I, LLC.  Cap Factor claims to have interests in eight of the nine life insurance policies that were pledged by Life Shares and Life Factor as collateral to Spin Capital, based upon the voidable transfers described below.

*Jurisdiction and Venue*

20.   This Court has jurisdiction over GFIS, Life Factor, Life Shares, EDHIS, Lone Wolf, ELDO, Genesis, KTL, S. Leer, and T. Leer (collectively, the "Obligated Defendants") pursuant CPLR § 301 pursuant to the provisions of the loan documents between Plaintiff and the Obligated Defendants.

21.   This Court has jurisdiction over Zurich, John Hancock, Accordia and Brighthouse (collectively, the "Insurance Company Defendants") pursuant to CPLR § 302(a)(1) because, upon information and belief, the Insurance Company Defendants transact business in New York and/or contract to supply goods or services in New York.

22.   This Court has jurisdiction over DRVN because DRVN is closely related to Leer and the Leer Entities, and therefore bound by the choice of law and forum selection provisions contained in the loan documents.

23.   This Court also has jurisdiction over LS 1019 because LS 1019 is closely related to Leer and the Leer Entities, and therefore bound by the choice of law and forum selection provisions contained in the loan documents.

24.   This Court has jurisdiction over Cap Factor pursuant to CPLR § 301 because, Cap

5

Case 1:24-cv-08515-AS    Document 76-9    Filed 03/14/25    Page 7 of 30

Factor is closely-related to Leer and the Leer Entities, and therefore bound by the choice of law and forum selection provisions contained in the loan documents. This Court also has jurisdiction over Cap Factor pursuant to CPLR § 302(a)(3)(ii) because Cap Factor participated as an insider in accepting voidable transfers from Life Shares which it expected or should reasonably have expected to have consequences to Spin Capital in New York, and Cap Factor derives substantial revenues from interstate commerce.

25. Venue is appropriate in this court. The promissory note at issue, which is attached hereto as Exhibit 1, was executed by GFIS, Life Shares, and Life Factor, and guaranteed by EDHIS, Lone Wolf, ELDO, Genesis, KTL, S. Leer and T. Leer. The promissory note states that any and all disputes "with respect to obligations, liabilities or any other matter under or arising in connection with the Note" will be governed by New York law, and heard in the state or federal courts in New York. The claims relating to Life Factor's and Life Shares' voidable transfers and the claims for declaratory relief all relate to Life Factor and Life Shares efforts to wrongfully transfer the collateral between the Leer Entities after receiving the loan from Spin Capital in an effort to delay, hinder and defraud Spin Capital, and therefore are claims arising in connection with the Note.

*Facts*

*A. The Loan, Promissory Note, Security and Guaranties*

26. On or about June 16, 2021, Spin Capital made a loan to GFIS, Life Factor, and Life Shares (collectively the "Borrowers") in the principal amount of $2.7 million. That loan was evidenced by a promissory note dated June 16, 2021 (the "Promissory Note", with any and all indebtedness evidenced by the Promissory Note being collectively referred to herein as the "Indebtedness"), a true and correct copy of which is attached as **Exhibit 1**.

6

Case 1:24-cv-08515-AS    Document 76-9    Filed 03/14/25    Page 8 of 30

27.     Pursuant to the Promissory Note, thirty-one itemized payments were to be made by the Borrowers on a weekly basis between June 18, 2021 and January 4, 2022, after which the Indebtedness would be paid in full. (Ex. 1, Secs, 1-3). Interest accumulated on the unpaid sum due under the Promissory Note at the rate of 5% per month.  (Ex. 1, Sec. 2). Upon default, the entire amount of the Indebtedness became due, a "default fee" of $25,000 was added to the amount due, and a default interest rate was applied, which was 10% per month on the unpaid balance. (Ex. 1, Sec. 5).

28.     The Promissory Note also provided that it was governed by New York law, and that any litigation "with respect to obligations, liabilities, or any other matter under or arising out of or in connection with" the Promissory Note had to be brought in the state or federal courts in New York, and the Borrowers expressly waived any objection they had or may have had to New York courts exercising jurisdiction and venue over such disputes.  (Ex. 1, Sec. 5).

29.     On June 16, 2021, the Borrowers also executed a Security Agreement (the "Security Agreement"), a true and correct copy of which is attached as **Exhibit 2**.

30.     Pursuant to the Security Agreement, as collateral for the obligations due under the Promissory Note, Borrowers granted Spin Capital a security interest in various property, including nine separately identified life insurance policies (hereinafter collectively referred to as the "Policies"), seven of which were owned by Life Shares, one of which was owned by Life Factor, and one of which was partially owned by Life Factor  (Ex. 2, p.1).  Six of the seven Policies owned by Life Shares were issued by Zurich (the "Zurich Policies"), and one by Accordia (the "Accordia Policy").  The Policy that was owned by Life Factor was issued by John Hancock (the "John Hancock Policy"), and the Policy that was partially owned by Life Factor was issued by Brighthouse (the "Brighthouse Policy").  Each of the Policies, as well as the insured under each

7

Policy, the Borrower Owner of each Policy, and the issuing insurer of each Policy, is identified in the Security Agreement (Ex. 2, p. 1).

31. Pursuant to the Security Agreement, upon any default by Borrowers in their obligations under the Promissory Note, Spin Capital "may pursue any remedy available at law (including then available under the provisions of the UCC), or in equity to collect, enforce or satisfy any obligations then owing to [Spin Capital]." (Ex. 2, p. 2).

32. On June 16, 2021, EDHIS, Lone Wolf, ELDO, Genesis and KTL (collectively, the Corporate Guarantors") executed a guaranty (the "Corporate Guaranty") of the indebtedness due under the Promissory Note. A true and correct copy of the Corporate Guaranty is attached as **Exhibit 3**. S. Leer signed the Corporate Guaranty on behalf of all the Corporate Guarantors.

33. The Corporate Guaranty states that each of the Corporate Guarantors "hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor." (Ex. 3, Sec. 1.1(a)). The Corporate Guaranty defines the "Guaranteed Obligations" as "payment and performance of all obligations of Borrower under the Loan Documents," which included both the Promissory Note and Security Agreement. (Ex. 3, Sec. 1.1(b)).

34. On June 16, 2021, S. Leer and T. Leer executed guaranties of the Promissory Note (collectively, the "Personal Guaranties"). True and correct copies of the Personal Guaranties are attached hereto as **Exhibits 4 and 5**.

35. Each of the Personal Guaranties states that the Guarantor "hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor." (Ex. 4 and 5, Sec. 1.1(a)). The Personal Guaranties define the "Guaranteed Obligations" as "payment and performance of all obligations of Borrower under the Loan Documents," which

8

included the Promissory Note and Security Agreement. (Ex. 4 and 5, Sec. 1.1(b)).

3.      On or about July 2, 2021, Life Shares and Life Factor executed Collateral Assignments for each of the Policies (the "Collateral Assignments"), true and correct copies of which are attached as **Exhibits 6-14**. Spin Factor sent each of the Collateral Assignments to the respective insurer of each Policy after they were executed by Life Shares or Life Factor.

37.      While each insurer used a slightly different form, all the Collateral Assignments provided that the owner, Life Shares or Life Factor, was assigning all its rights as owner in the Policy to Spin Capital and that the assignment would remain effective until released by Spin Capital following full payment of the underlying indebtedness which the Collateral Assignment secures.

### B. Default and Demands for Payment

38.      Subsequent to the time Spin Capital made the loan to Borrowers and Borrowers executed the Promissory Note and Security Agreement, Borrowers made the first five payments due under the terms of the Promissory Note, which totaled $510,000.  Borrowers have not made any of the remaining 26 payments that were due under the Promissory Note, leaving an outstanding principal balance of $2,382,941.67 as of July 16, 2021.

39.      Borrowers' failure to make the final 26 payments due under the Promissory Note constituted an Event of Default under the Promissory Note, Guaranties and Security Agreement.

40.      On November 4, 2021, following Borrowers' default under the Promissory Note, Spin Capital, through its counsel, sent a Notice to each of the Borrowers and Guarantors, which Notice referenced the default under the Promissory Note and stated that Spin Capital would accept a turnover of the Policies in full satisfaction of the indebtedness due under the Promissory Note. A true and correct copy of the Notice is attached as **Ex. 15.**

9

Case 1:24-cv-08515-AS Document 76-9 Filed 03/14/25 Page 11 of 30

41. No response to the Notice of November 4, 2021 was ever provided by any of the Borrowers or Guarantors.

42. On December 24, 2021, Spin Capital, through its counsel, sent S. Leer, in his capacity as managing member of both Life Shares and Life Factor, a letter requesting him to execute change of ownership forms for each Policy, changing the owner from either Life Shares or Life Factor, as the case may be, to Spin Capital in full satisfaction of the indebtedness due under the Promissory Note. A true and correct copy of that letter (without the enclosures) is attached as **Ex. 16**.

43. S. Leer nor any other representative of Life Shares and/or Life Factor ever responded to counsel's letter of December 24, 2021.

*C. Dissipation of Collateral and Fraudulent Transfers of Policies*

44. After Life Shares and Life Factor obtained the loan proceeds from Spin Capital and executed the Collateral Assignments in favor of Spin Capital, Life Shares and Life Factor deliberately dissipated the collateral that they used to procure the loan, as described below.

45. Upon information and belief, Life Shares failed to make necessary premium payments that were due on the Accordia Policy, which resulted in that Policy lapsing.

46. Between late September and early October, 2021, Life Shares transferred the six Zurich Policies, all of which are identified in Exhibit 2, to other affiliated entities which were owned in whole or in part by S. Leer. Upon information and belief, those transfers were made by Life Shares for little or no consideration. At least five of the six Zurich Policies were transferred to DRVN. Spin Capital does not know which entity Life Shares transferred the sixth Zurich Policy to, but it expects to obtain that information during discovery.

47. After Life Shares transferred the five Zurich Policies to DRVN for little or no

10

Case 1:24-cv-08515-AS    Document 76-9    Filed 03/14/25    Page 12 of 30

consideration, DRVN attempted to transfer ownership and/or collateral interests in those five Policies to Cap Factor.

48.     On or about December 6, 2021, Zurich sent a letter to Life Shares, Spin Capital and Cap Factor, stating that it had received the Collateral Assignments executed by Life Shares in favor of Spin Capital (attached hereto as Exhibits 8-13), but also stating that it had received Collateral Assignments in the same six Policies in favor of Cap Factor, which were executed by an "interim owner" of the policies, which was DRVN. Zurich stated in that letter that Life Shares remained the owner of the Policies, not DRVN, but Zurich stated it would not make any determination of which assignees' rights were entitled to priority. Zurich advised Spin Capital and Cap Factor to reach an agreement between themselves or Zurich would file an interpleader action to determine priority. A true and correct copy of that letter is attached as **Exhibit 17**.

49.     Sometime between August 1, 2021 and October 15, 2021, which was after Life Factor obtained the loan from Spin Capital, Life Factor transferred its interest in the two Policies that it used as collateral for the loan from Spin Capital (the "John Hancock Policy" and the "Brighthouse Policy") to LS 1019, which owned, in whole or in part, by S. Leer and Cap Factor. Upon information and belief, those transfers were made for little or no consideration.

50.     Cap Factor has advised Spin Capital that it believes Cap Factor's rights in each of the Zurich Policies, the John Hancock Policy, and the Brighthouse Policy has priority over any rights Spin Capital has in each of those Policies.

### FIRST CAUSE OF ACTION
### Breach of Promissory Note against Borrowers

51.     Spin Capital repeats and realleges the allegations contained in paragraphs 1-50 above as if fully restated.

11

Case 1:24-cv-08515-AS    Document 76-9    Filed 03/14/25    Page 13 of 30

52.     The failure of Borrowers GFIS, Life Shares, and Life Factor to make the payments due under the Promissory Note constitutes a breach of the terms of the Promissory Note, entitling Spin Capital to pursue this claim for damages against GFIS, Life shares and Life Factor.

53.     Under the terms of the Promissory Note, following Borrowers Default, Spin Capital properly accelerated the sums due under the Promissory Note and added a Default Fee of $25,000. (Ex. 1, Sec. 5). In accordance with the terms of the Promissory Note, following Borrowers Default, interest continues to run on the outstanding indebtedness at the rate of 10% per month. (Ex. 1, Sec. 5).

54.     Based on the foregoing, the Borrowers are obligated to Spin Capital in the amount of $2,382,941.67, plus the Default Fee of $25,000, plus interest at the rate of 10% per month from July 23, 2021 through the date of entry of judgment herein.

55.     Pursuant to the terms of the Promissory Note, Spin Capital is also entitled to recover its attorneys' fees for bringing this action in an amount of 25% of the balance due at the time of default, plus costs, and expenses. (Ex. 1, Sec. 11).

### SECOND CAUSE OF ACTION
**Breach of Corporate Guaranty against Corporate Guarantors**
**EDHIS, Lone Wolf, ELDO, Genesis and KTL**

56.     Spin Capital repeats and realleges the allegations contained in paragraphs 1-50 above as if fully restated.

57.     Under the terms of the Corporate Guaranty, Corporate Guarantors are liable, jointly and severally, as principal obligors, for all sums due under the terms of the Promissory Note. (Ex. 3, Sec. 1.1 (a)).

58.     Based on the foregoing, the Corporate Guarantors are jointly and severally obligated to Spin Capital in the amount of $2,382,941.67, the Default Fee of $25,000, plus interest

12

Case 1:24-cv-08515-AS    Document 76-9    Filed 03/14/25    Page 14 of 30

at the rate of 10% per month from July 23, 2021 through the date of entry of judgment herein. Pursuant to the terms of the Promissory Note, Spin Capital is also entitled to recover its attorneys' fees for bringing this action in an amount of 25% of the balance due at the time of default, plus costs, and expenses. (Ex. 1, Sec. 11).

## THIRD CAUSE OF ACTION
### Breach of Personal Guaranties against S. Leer and T. Leer

59. Spin Capital repeats and realleges the allegations contained in paragraphs 1-50 above as if fully restated.

60. Under the terms of the Personal Guaranties, S. Leer and T. Leer are liable, jointly and severally, as principal obligors, for all sums due under the terms of the Promissory Note. (Ex. 3, Sec. 1.1 (a)).

61. Based on the foregoing, the Personal Guarantors are jointly and severally obligated to Spin Capital in the amount of $2,382,941.67 as of July 16, 2021, plus the Default Fee of $25,000, plus interest at the rate of 10% per month from July 23, 2021 through the date of entry of judgment herein. Pursuant to the terms of the Promissory Note, Spin Capital is also entitled to recover its attorneys' fees for bringing this action in an amount of 25% of the balance due at the time of default, plus costs, and expenses. (Ex. 1, Sec. 11).

## FOURTH CAUSE OF ACTION
### Voidable Transfers of Zurich Policies Against
### Life Shares, DRVN, Cap Factor and Zurich

62. Spin Capital repeats and realleges the allegations contained in paragraphs 1-50 above as if fully restated

63. In 2019, New York enacted the Uniform Voidable Transactions Act, NY Debtor & Creditor Law, Sec. 270 *et. seq.* Pursuant to NY Debtor & Creditor Law, Section 279 (b), actions in the nature of a claim under the act are "governed by the local law of the jurisdiction in which

13

the debtor is located when the transfer is made..." That statute also states that a debtor that is an organization which has one place of business is located at its place of business, and an organization with more than one place of business is located at its chief executive office. NY Debtor & Creditor Law, Section 279 (a)(2) and (3).

64.     Life Shares place of business and its chief executive office is located in California which is where its managing member, S. Leer, resides, and where S. Leer conducts Life Shares business.

65.     In 2016, California enacted the Uniform Voidable Transactions Act, CA Civ. Code §3439, *et. seq.,* and that act contains the same governing law provision as the NY Act. CA Civ Code §3439.10. Therefore, the CA Uniform Fraudulent Transactions Act governs this Fourth Cause of Action.

66.     Pursuant to CA Civ. Code §3439.04 (a)(1), a transfer made by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor."

67.     Pursuant to CA Civ. Code §3439.04 (b), in determining whether a debtor made a transfer with "intent" to hinder, delay or defraud a creditor, several factors are considered, including whether the transfer was to an insider, whether the debtor retained control of the property after the transfer, whether the transfer was disclosed or concealed, whether before the transfer was made the debtor had been threatened with suit, whether the debtor removed or concealed assets, whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred, whether the debtor was insolvent or became insolvent shortly after the transfer was made, and whether the transfer occurred shortly after a substantial debt was incurred.

14

Case 1:24-cv-08515-AS   Document 76-9   Filed 03/14/25   Page 16 of 30

68.     Pursuant to CA Civ. Code §3439.04 (a)(2), a transfer made by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor" or if the debtor did not receive a reasonably equivalent value in exchange for the transfer, and was engaged in a business for which the remaining assets of the debtor were unreasonably small in relation to the business, or if the debtor believed or reasonably should have believed that it would incur debts beyond the debtor's ability to pay as they became due.

69.     Pursuant to CA Civ. Code §3439.05 (a), a transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer and the debtor was insolvent or became insolvent as a result of the transfer.

70.     Here, shortly after obtaining millions of dollars in loan proceeds from Spin Capital and putting the Zurich Policies up as collateral for that loan, Life Shares transferred the Policies to DRVN, which was an insider, since Life Shares and DRVN are both owned and controlled by S. Leer. Upon information and belief, those transfers were made for little or no consideration. S. Leer retained control over the Policies after the transfers to DRVN, since he controlled both Life Shares and DRVN, and the transfers of the Policies were concealed from Spin Capital. Life Shares was insolvent when it transferred the Zurich Policies to DRVN, since it was not paying its debts as they became due, as evidenced by the fact that it had already defaulted on the Promissory Note.

69.     Under the foregoing facts, Life Shares transfers of the Zurich Policies to DRVN are voidable under CA Civ. Code §3439.04 (a)(1) because the transfers were made by Life Shares "with actual intent to delay hinder or defraud" Spin Capital.

15

70. Under the foregoing facts, Life Shares transfers of the Zurich Policies to DRVN are voidable under CA Civ. Code §3439.04 (a)(2) because the transfers were made without Life Shares receiving a reasonably equivalent value and Life Shares was engaged in a business for which its remaining assets were unreasonably small to repay the loan to Spin Capital.

71. Under the foregoing facts, Life Shares transfers of the Zurich Policies to DRVN are voidable under CA Civ. Code §3439.05 (a), because Life Shares made the transfers without receiving reasonably equivalent value in exchange for the transfers and Life Shares was insolvent or became insolvent as a result of the transfer.

72. Pursuant to CA Civ. Code §3439.07(a), Spin Capital may obtain the following relief: a) avoidance of the transfers of the Zurich Policies; b) an attachment against the Zurich Policies; and c) an injunction against further disposition by Life Shares of the Zurich Policies.

73. Pursuant to CA Civ. Code §3439.08(b), a transfer made in violation of the Voidable Transactions Act is voidable against the initial transferee, which is DRVN, and any transferee of the immediate transferee who was not a good faith transferee who took for value.

74. To the extent that Cap Factor obtained any interests in the Zurich Policies based upon DRVN's attempts to transfer interests in the Zurich Policies to DRVN, that interest is also voidable. Cap Factor is an insider of Life Shares and DRVN, since it is a part-owner of LS 1019, which is an affiliate of Life Shares and DRVN. Upon information and belief, Cap Factor was not a good faith transferee because it knew about Spin Capital's interest in the Policies and Life Shares indebtedness to Spin Capital at the time the transfers were made. Upon information and belief, Cap Factor did not provide any new value to DRVN at the time of DRVN's attempts to transfer interests in the Zurich Policies to Cap Factor, as the transfers to Cap Factor were purportedly made to provide Cap Factor with additional security for a loan it made to affiliates of DRVN years

Case 1:24-cv-08515-AS   Document 76-9   Filed 03/14/25   Page 18 of 30

before.

75. Pursuant to CA Civ. Code §3439.07(a) and CA Civ. Code §3439.08(b), Spin Capital is entitled to the following relief against Life Shares, Cap Factor and DRVN:

a) avoidance of the transfers of the Zurich Policies; b) an attachment against the Zurich Policies; and c) an injunction against further disposition by Life Shares of the Zurich Policies.

76. Zurich is named in this Fourth Cause of Action not because it was involved in the voidable transactions at issue, but solely because judgment in favor of Spin Capital will bind Zurich as the issuer of the Zurich Policies to recognize Spin Capital's interest.

## FIFTH CAUSE OF ACTION
### Voidable Transfer of John Hancock Policy Against
### Life Factor, LS 1019, and John Hancock

77. Spin Capital repeats and realleges the allegations contained in paragraphs 1-50 above as if fully restated

78. In 2019, New York enacted the Uniform Voidable Transactions Act, NY Debtor & Creditor Law, Sec. 270 *et. seq.* Pursuant to NY Debtor & Creditor Law, Section 279 (b), actions in the nature of a claim under the act are "governed by the local law of the jurisdiction in which the debtor is located when the transfer is made..." That statue also states that a debtor that is an organization which has one place of business is located at its place of business, and an organization with more than one place of business is located at its chief executive office. NY Debtor & Creditor Law, Section 279 (a)(2) and (3).

79. Life Factor's place of business and its chief executive office is located in California which is where its managing member, S. Leer, resides, and where S. Leer conducts Life Factor's business.

17

80.     In 2016, California enacted the Uniform Voidable Transactions Act, CA Civ. Code §3439, *et. seq.,* and that act contains the same governing law provision as the NY Act. CA Civ Code §3439.10. Therefore, the CA Uniform Fraudulent Transactions Act governs this Fifth Cause of Action.

81.     Pursuant to CA Civ. Code §3439.04 (a)(1), a transfer made by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor."

82.     Pursuant to CA Civ. Code §3439.04 (b), in determining whether a debtor made a transfer with "intent" to hinder, delay or defraud a creditor, several factors are considered, including whether the transfer was to an insider, whether the debtor retained control of the property after the transfer, whether the transfer was disclosed or concealed, whether before the transfer was made the debtor had been threatened with suit, whether the debtor removed or concealed assets, whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred, whether the debtor was insolvent or became insolvent shortly after the transfer was made, and whether the transfer occurred shortly after a substantial debt was incurred.

83.     Pursuant to CA Civ. Code §3439.04 (a)(2), a transfer made by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor" or if the debtor did not receive a reasonably equivalent value in exchange for the transfer, and was engaged in a business for which the remaining assets of the debtor were unreasonably small in relation to the business, or if the debtor believed or reasonably should have believed that it would incur debts beyond the debtor's ability to pay as they became due.

18

Case 1:24-cv-08515-AS    Document 76-9    Filed 03/14/25    Page 20 of 30

84. Pursuant to CA Civ. Code §3439.05 (a), a transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer and the debtor was insolvent or became insolvent as a result of the transfer.

85. Here, shortly after obtaining millions of dollars in loan proceeds from Spin Capital and putting the John Hancock Policy up as collateral for that loan, Life Factor transferred the John Hancock Policy to LS 1019, which was an insider, since Life Factor and LS 1019 are both owned and controlled by S. Leer. Upon information and belief, that transfer was made for little or no consideration. S. Leer retained control over the John Hancock Policy after the transfers to LS 1019, since he controlled both Life Factor and LS 1019, and the transfer of the Policy was concealed from Spin Capital. Life Factor was insolvent when it transferred the John Hancock Policy to LS 1019, since it was not paying its debts as they became due, as evidenced by the fact that it had already defaulted on the Promissory Note.

86. Under the foregoing facts, Life Factor's transfer of the John Hancock Policy to LS 1019 is voidable under CA Civ. Code §3439.04 (a)(1) because the transfer was made by Life Factor "with actual intent to delay hinder or defraud" Spin Capital.

87. Under the foregoing facts, Life Factor's transfer of the John Hancock Policy to LS 1019 is voidable under CA Civ. Code §3439.04 (a)(2) because the transfer were made without Life Factor receiving a reasonably equivalent value and Life Factor was engaged in a business for which its remaining assets were unreasonably small to repay the loan to Spin Capital.

88. Under the foregoing facts, Life Factor's transfer of the John Hancock Policy to LS 1019 is voidable under CA Civ. Code §3439.05 (a), because Life Factor made the transfer without receiving reasonably equivalent value in exchange for the transfer and Life Factor was insolvent

19

or became insolvent as a result of the transfer.

89.    Pursuant to CA Civ. Code §3439.07(a) and CA Civ. Code §3439.08(b), Spin Capital is entitled to the following relief against Life Factor and LS 1019:

a) avoidance of the transfers of the John Hancock Policy; b) an attachment against the John Hancock Policy; and c) an injunction against further disposition by Life Factor of the John Hancock Policy.

90.    John Hancock is named in this Fifth Cause of Action not because it was involved in the voidable transaction at issue, but solely because judgment in favor of Spin Capital will bind John Hancock as the issuer of the John Hancock Policy.

## SIXTH CAUSE OF ACTION
## Voidable Transfer of Brighthouse Policy Against
## Life Factor, LS 1019, and Brighthouse

91.    Spin Capital repeats and realleges the allegations contained in paragraphs 1-50 and 78-90 above as if fully restated.

92.    Here, shortly after obtaining millions of dollars in loan proceeds from Spin Capital and putting its interest in the Brighthouse Policy up as collateral for that loan, Life Factor transferred its interest in the Brighthouse Policy to LS 1019, which was an affiliate, since Life Factor and LS 1019 are both owned and controlled by S. Leer. Upon information and belief, that transfer was made for little or no consideration. S. Leer retained control over the interest in the Brighthouse Policy after the transfer to LS 1019, since he controlled both Life Factor and LS 1019, and the transfer of the Policy was concealed from Spin Capital.  Life Factor was insolvent when it transferred its interest in the Brighthouse Policy to LS 1019, since it was not paying its debts as they became due, as evidenced by the fact that it had already defaulted on the Promissory Note.

20

Case 1:24-cv-08515-AS   Document 76-9   Filed 03/14/25   Page 22 of 30

93.     Under the foregoing facts, Life Factor's transfer of its interest in the Brighthouse Policy to LS 1019 is voidable under CA Civ. Code §3439.04 (a)(1) because the transfer was made by Life Factor "with actual intent to delay hinder or defraud" Spin Capital.

94.     Under the foregoing facts, Life Factor's transfer of its interest in the Brighthouse Policy to LS 1019 is voidable under CA Civ. Code §3439.04 (a)(2) because the transfer was made without Life Factor receiving a reasonably equivalent value and Life Factor was engaged in a business for which its remaining assets were unreasonably small to repay the loan to Spin Capital.

95.     Under the foregoing facts, Life Factor's transfer of its interest in the Brighthouse Policy to LS 1019 is voidable under CA Civ. Code §3439.05 (a), because Life Factor made the transfer without receiving reasonably equivalent value in exchange for the transfer and Life Factor was insolvent or became insolvent as a result of the transfer.

96.     Pursuant to CA Civ. Code §3439.07(a) and CA Civ. Code §3439.08(b), Spin Capital is entitled to the following relief against Life Factor and LS 1019:

a) avoidance of the transfer of the interest in the Brighthouse Policy; b) an attachment against the Brighthouse Policy; and c) an injunction against further disposition by Life Factor of its interest in the Brighthouse Policy.

97.     Brighthouse is named in this Sixth Cause of Action not because it was involved in the voidable transaction at issue, but solely because judgment in favor of Spin Capital will bind Brighthouse as the issuer of the Brighthouse Policy.

### SEVENTHTH CAUSE OF ACTION
### DECLARATORY JUDGMENT ON ZURICH POLICIES
### (Against Zurich, Life Shares, DRVN and CapFactor)

98.     Spin Capital repeats and realleges the allegations contained in paragraphs 1-50 and 63-76 above as if fully restated.

21

Case 1:24-cv-08515-AS     Document 76-9     Filed 03/14/25     Page 23 of 30

99.     Under the terms of the Security Agreement, Life Shares expressly agreed that following any Event of Default, that Spin Capital could "pursue any remedy available at law (including then available under the provisions of the UCC), or in equity to collect, enforce or satisfy any obligations then owing to [Spin Capital]." (Ex. 2, p. 2).

100.    Under NY CPLR § 3001, this Court "may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy."

101.    Here, there is a "justiciable controversy" between Spin Capital, Life Shares, and CapFactor regarding the rights each party has or does not have in the Zurich Policies.

102.    In accordance with Section NY CPLR § 3001, Spin Capital requests this Court to enter a judgment declaring the following:

a)     That Spin Capital was properly assigned rights as Collateral Assignee by Life Shares in the Zurich Policies pursuant to the terms of the Security Agreement and the Collateral Assignments that were executed by Life Shares;

b)     That Spin Capital's rights as collateral assignee under the Collateral Assignments in the Zurich Policies have priority over any rights of Life Shares, DRVN, and/or Cap Factor;

c)     That Life Shares defaulted under the terms of the Promissory Note, which allowed Spin Capital to pursue and enforce all its rights as the secured party under the Security Agreement and Collateral Assignments;

d)     That Spin Capital is entitled to a) avoidance of Life Shares transfer of any interests in the Zurich Policies to DRVN; b) avoidance of any transfer by DRVN of any interests in the Zurich Policies to Cap Factor; c) an attachment against the Zurich Policies; and c) an

22

injunction against further disposition by Life Shares of its interest in the Zurich Policies; and

e) That Spin Capital is entitled to recover from Life Shares the attorneys' fees and costs that it incurs in pursuing this action.

103. Zurich is named in this Seventh Cause of Action not because it was involved in the underlying transactions at issue, but solely because the declaration sought by Spin Capital will bind Zurich as the issuer of the Zurich Policies.

**EIGHTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT ON ACCORDIA POLICY**
**(Against Accordia and Life Shares)**

104. Spin Capital repeats and realleges the allegations contained in paragraphs 1-50 above as if fully restated.

105. Under the terms of the Security Agreement, Life Shares expressly agreed that following any Event of Default, that Spin Capital could "pursue any remedy available at law (including then available under the provisions of the UCC), or in equity to collect, enforce or satisfy any obligations then owing to [Spin Capital]." (Ex. 2, p. 2).

106. Under NY CPLR § 3001, this Court "may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy."

107. Here, there is a "justiciable controversy" between Spin Capital, Life Shares, and Accordia regarding the rights each party has or does not have in the Accordia Policy.

108. In accordance with Section NY CPLR § 3001, Spin Capital requests this Court to enter a judgment declaring the following:

a) That Spin Capital was properly assigned rights as Collateral Assignee by Life Shares in the Accordia Policy pursuant to the terms of the Security Agreement and the

23

Case 1:24-cv-08515-AS    Document 76-9    Filed 03/14/25    Page 25 of 30

Collateral Assignment that was executed by Life Shares;

b)    That Spin Capital's rights as collateral assignee under the Collateral Assignment of the Accordia Policy has priority over any rights of Life Shares in the Accordia Policy;

c)    That Life Shares defaulted under the terms of the Promissory Note, which allowed Spin Capital to pursue and enforce all its rights as the secured party under the Security Agreement and Collateral Assignment of the Accordia Policy;

d)    That Spin Capital is entitled to enforce its rights against the Accordia Policy to the full extent of Life Shares remaining interest in the Accordia Policy, which interest will be determined in discovery; and

e)    That Spin Capital is entitled to recover from Life Shares the attorneys' fees and costs that it incurs in pursuing this action.

109.    Accordia is named in this Seventh Cause of Action not because it was involved in the underlying transactions at issue, but solely because the declaration sought by Spin Capital will bind Accordia as the issuer of the Accordia Policy.

## NINTH CAUSE OF ACTION
### ACTION FOR DECLARATORY JUDGMENT ON JOHN HANCOCK POLICY
**(Against John Hancock, LS 1019, Cap Factor and Life Factor)**

110.    Spin Capital repeats and realleges the allegations contained in paragraphs 1-50 and 78-90 above as if fully restated.

111.    Under the terms of the Security Agreement, Life Factor expressly agreed that following any Event of Default, that Spin Capital could "pursue any remedy available at law (including then available under the provisions of the UCC), or in equity to collect, enforce or satisfy any obligations then owing to [Spin Capital]." (Ex. 2, p. 2).

24

112.    Under NY CPLR § 3001, this Court "may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy."

113.    Here, there is a "justiciable controversy" between Spin Capital, Life Factor, Cap Factor and LS 1019 regarding the rights each party has or does not have in the John Hancock Policy.

114.    In accordance with Section NY CPLR § 3001, Spin Capital requests this Court to enter a judgment declaring the following:

a)    That Spin Capital was properly assigned rights as Collateral Assignee by Life Factor in the John Hancock Policy pursuant to the terms of the Security Agreement and the Collateral Assignment that was executed by Life Factor;

b)    That Spin Capital's rights as collateral assignee under the Collateral Assignment of the John Hancock Policy has priority over any rights of Life Factor, LS 1019, and/or Cap Factor;

c)    That Life Factor defaulted under the terms of the Promissory Note, which allowed Spin Capital to pursue and enforce all its rights as the secured party under the Security Agreement and Collateral Assignment;

d)    That Spin Capital is entitled to a) avoidance of Life Factor's transfer of any interests in the John Hancock Policy to LS 1019; b) an attachment against the John Hancock Policy; and c) an injunction against further disposition by Life Factor of its interest in the John Hancock; and

e)    That Spin Capital is entitled to recover from Life Factor the attorneys' fees and costs that it incurs in pursuing this action.

25

Case 1:24-cv-08515-AS   Document 76-9   Filed 03/14/25   Page 27 of 30

115.   John Hancock is named in this Ninth Cause of Action not because it was involved in the underlying transaction at issue, but solely because the declaration sought by Spin Capital will bind John Hancock as the issuer of the John Hancock Policy.

## TENTH CAUSE OF ACTION
### ACTION FOR DECLARATORY JUDGMENT ON BRIGHTHOUSE POLICY
#### (Against Brighthouse, LS 1019 and Life Factor)

116.   Spin Capital repeats and realleges the allegations contained in paragraphs 1-50 and 92-97 above as if fully restated.

117.   Under the terms of the Security Agreement, Life Factor expressly agreed that following any Event of Default, that Spin Capital could "pursue any remedy available at law (including then available under the provisions of the UCC), or in equity to collect, enforce or satisfy any obligations then owing to [Spin Capital]." (Ex. 2, p. 2).

118.   Under NY CPLR § 3001, this Court "may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy."

119.   Here, there is a "justiciable controversy" between Spin Capital, Life Factor, and LS 1019 regarding the rights each party has or does not have in the Brighthouse Policy.

120.   In accordance with Section NY CPLR § 3001, Spin Capital requests this Court to enter a judgment declaring the following:

a)   That Spin Capital was properly assigned rights as Collateral Assignee by Life Factor in the Brighthouse Policy pursuant to the terms of the Security Agreement and the Collateral Assignment that was executed by Life Factor;

b)   That Spin Capital's rights as collateral assignee under the Collateral Assignment of the Brighthouse Policy has priority over any rights claimed by Life Factor, LS 1019

26

and/or Cap Factor;

c) That Life Factor defaulted under the terms of the Promissory Note, which allowed Spin Capital to pursue and enforce all its rights as the secured party under the Security Agreement and Collateral Assignment;

d) That Spin Capital is entitled to a) avoidance of Life Factor's transfer of any interests in the Brighthouse Policy to LS 1019; b) an attachment against the Brighthouse Policy; and c) an injunction against further disposition by Life Factor of its interest in the Brighthouse Policy; and

e) That Spin Capital is entitled to recover from Life Factor the attorneys' fees and costs that it incurs in pursuing this action.

121. Brighthouse is named in this Tenth Cause of Action not because it was involved in the underlying transaction at issue, but solely because the declaration sought by Spin Capital will bind Brighthouse as the issuer of the Brighthouse Policy.

WHEREFORE, Spin Capital requests that the Court enter judgment as follows:

A. On its First Cause of Action, a money judgment against GFIS, Life Shares and Life Factor, jointly and severally, in the principal amount of $2,382,941.67 as of July 16, 2021, together with the default fee of $25,000, plus interest thereon at the rate of 10% per month from July 23, 2021 through the date of entry of judgment herein, plus attorneys' fees in the amount of 25% of the principal balance;

B. On its Second Cause of Action, a money judgment against Corporate Guarantors EDHIS, Lone Wolf, ELDO, Genesis and KTL, jointly and severally, in the principal amount of $2,382,941.67 as of July 16, 2021, together with the default fee of $25,000, plus interest thereon at the rate of 10% per month from July 23, 2021 through the date of entry of judgment herein, plus attorneys' fees in the amount of 25% of the principal balance;

C. On its Third Cause of Action, a money judgment against S. Leer and T. Leer, jointly and severally, in the principal amount of $2,382,941.67 as of July 16, 2021, together the default fee of $25,000, interest thereon at the rate of 10% per month from July 23, 2021 through the date of entry of judgment herein, plus attorneys' fees in the amount of 25% of the principal balance;

27

D.      On its Fourth Cause of Action, a) avoidance of the transfer of the Zurich Policies by Life Shares to DRVN; b) avoidance of the transfer of any interest in the Zurich Policies by DRVN to Cap Factor; c) attachment against the Zurich Policies; and c) an injunction against further disposition by Life Shares of the Zurich Policies;

E.      On its Fifth Cause of Action, a) avoidance of the transfer of the John Hancock Policy by Life Factor to LS 1019; b) attachment against the John Hancock Policy; and c) an injunction against further disposition by Life Factor of the John Hancock Policy;

F.      On its Sixth Cause of Action, a) avoidance of the transfer of Life Factor's interest in the Brighthouse Policy by Life Factor to LS 1019; b) attachment against Life Factor's interest in the Brighthouse Policy; and c) an injunction against further disposition by Life Factor of its interest in the Brighthouse Policy;

G.      On its Seventh Cause of Action, a declaratory judgment declaring the rights of the parties as set forth in the cause of action, and providing for any additional and further relief as this Court deems appropriate;

H.      On its Eighth Cause of Action, a declaratory judgment declaring the rights of the parties as set forth in the cause of action, and providing for any additional and further relief as this Court deems appropriate;

I.      On its Ninth Cause of Action, a declaratory judgment declaring the rights of the parties as set forth in the cause of action, and providing for any additional and further relief as this Court deems appropriate;

J.      On its Tenth Cause of Action, a declaratory judgment declaring the rights of the parties as set forth in the cause of action, and providing for any additional and further relief as this Court deems appropriate; and

K.      For such other and further relief as the Court deems just and proper.

28

INDEX NO. 650582/2022
Case 1:24-cv-08515-AS   Document 76-9   Filed 03/14/25   Page 30 of 30RECEIVED NYSCEF: 07/14/2022

Dated: July 14, 2022

**WELLS LAW P.C.**

By:  */s/Steven W. Wells*
Steven W. Wells
WELLS LAW P.C.
229 Warner Road
Lancaster, New York 14086
Tel.:  (716) 983-4750
Email:  steve@wellspc.com

and

Mark E. Shure
Edwards Maxson Mago & Macaulay, LLP
444 W. Lake Street, 17th Floor
Chicago, IL 60654
(708) 528-6949
mshure@em3law.com
*Attorneys for Plaintiff*

29