UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOLDEN FOOTHILL INSURANCE SERVICES, LLC, LIFE FACTOR II, LLC, LIFE SHARES II, LLC, EL DORADO HILLS INSURANCE SOLUTIONS, INC., LONE WOLF INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC, THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC., and TATANISHA LEER | Civ. A. No.: 1:24-CV-08515 |
|                  Plaintiffs, | |
|    v. | |
| SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN, BMF ADVANCE LLC, GAVRIEL YITZCHAKOV a/k/a GABE ISAACOV, HI BAR CAPITAL, LLC, YOEL GETTER a/k/a JOEL GETA, and YISROEL HERBST, | |
|                  Defendants. | |

**PLAINTIFFS' COMBINED MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT**

**WHITE AND WILLIAMS LLP**
Shane R. Heskin
Alex D. Corey
810 Seventh Avenue, Suite 500
New York, New York  10019
Tel:  (212) 244-9500
heskins@whiteandwilliams.com
coreya@whiteandwilliams.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**PAGE**

SUMMARY OF ARGUMENT ............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................................6

ARGUMENT ..............................................................................................................7

    I.      Issue Preclusion Does Not Bar The Amended Complaint.......................7

    II.     Res Judicata Does Not Bar The Amended Complaint............................9

    III.    Rooker-Feldman Does Not Apply Because No State Court Judgment Exists..............................................................................................10

    IV.    The Colorado River Doctrine Does Not Apply .....................................10

    V.     The Funderz Decision Demonstrates Why the MCAs are Usurious Loans...........13

    VI.    Defendant Isaacov Was Properly Served.............................................17

CONCLUSION..........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-variant: small-caps;">ASES</span>

*161 Williams Associates v. Coffee*,
  122 Misc. 2d 37 (N.Y. Civ. Ct. 1983)...................................................................................18

*390 W. End Assoc. v. Raiff*,
  166 Misc. 2d 730 (1st Dep't 1995) ........................................................................................9

*Am. Home Assurance Co. v. Int'l Ins. Co.*,
  90 N.Y.2d 433 (N.Y. 1997) ..................................................................................................7

*Brandenberg v. Primus Assoc.*,
  204 A.D.2d 694 (2d Dep't 2003) ..........................................................................................9

*Capital Records, Inc. v. MP3tunes, LLC*,
  611 F. Supp. 2d 342 (S.D.N.Y. 2009)...................................................................................8

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)............................................................................................................10

*Davis v. Richmond Capital Group*,
  194 A.D.3d 516 (1st Dep't 2021) ..................................................................................15, 16

*Deutsche Bank Nat. Trust Co. v White*,
  110 AD3d 759 (2d Dept 2013) ............................................................................................19

*Dozier v. Ford Motor Co.*,
  702 F.2d 1189 (D.C. Cir. 1983) ............................................................................................9

*Edwards v. McMillen Capital, LLC*,
  952 F.3d 32 (2d Cir. 2020)..................................................................................................10

*Estate of Waterman v. Jones*,
  46 A.D.3d 63 (2d Dep't 2007). [ECF No. 70] .....................................................................19

*Feinstein v. Bergner*,
  48 N.Y.2d 234 (N.Y. 1979) ................................................................................................18

*Fleetwood Servs., LLC v. Ram Cap. Funding LLC*,
  20-cv-5120 (LJL), 2022 U.S. Dist. LEXIS 148032 (S.D.N.Y. Aug. 17, 2022) .......................4

*Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*,
  2023 U.S. App. LEXIS 14241 (2d Cir. June 8, 2023) ..........................................................14

*Hansen v. Miller*,
  52 F.4th 96 (2d Cir. 2022) ...................................................................................10

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
  609 F. Supp. 3d 237 (S.D.N.Y. 2022).....................................................14, 16, 17

*Hoblock v. Albany County Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005).......................................................................................4

*Hodge v. Hotel Emples. & Restaurant Emples. Union*,
  703 N.Y.S.2d 184 (1st Dep't 2000) .........................................................................1

*HSBC Bank USA, N.A. v. Cupid*,
  210 A.D.3d 874 (2d Dep't 2022) ...........................................................................19

*In re Wilson*,
  410 Fed. App'x 409 (2d Cir. 2011)........................................................................10

*Jones v. Select Portfolio Servicing, Inc.*,
  2024 U.S. Dist. LEXIS 93344 (E.D.N.Y. May 24, 2024) ......................................11

*Kasap v. Folger Nolan Fleming & Douglas, Inc.*,
  166 F.3d 1243 (D.C. Cir. 1999) ...............................................................................9

*Lateral Recovery, LLC v. Cap. Mech. Servs. LLC.*,
  632 F. Supp. 3d 402 (S.D.N.Y. 2022).....................................................................16

*Lateral Recovery, LLC v. Funderz, LLC*,
  2024 U.S. Dist. LEXIS 10134 (S.D.N.Y. Jan. 19, 2024)
  ................................................................................8, 13, 14, 15, 16, 17, 20

*Lateral Recovery LLC v. Funderz.Net, LLC*,
  2024 U.S. Dist. LEXIS 176985 (S.D.N.Y. Sept. 27, 2024).................................3, 13

*Lateral Recovery LLC v. Queen Funding LLC*,
  2022 U.S. Dist. LEXIS 129032 (S.D.N.Y. July 20, 2022) ................................14, 16

*LG Funding, LLC v. United Senior Properties of Olathe, LLC*,
  181 A.D.3d 664 (2d Dep't 2020) ............................................................................16

*Maitland v Trojan Elec. & Mach. Co.*,
  491 N.Y.S.2d 147 (N.Y. 1985) .................................................................................1

*Mason Tenders District Council Pension Fund v. Messera*,
  1996 WL 351250 (S.D.N.Y. June 26, 1996) .............................................................4

*McNamee Constr. Corp. v. City of New Rochelle*,
  60 A.D.3d 919 (2d Dep't 2009) ...............................................................................8

*Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*,
    363 F.3d 1072 (10th Cir. 2004) ................................................................10

*Mochary v. Bergstein*,
    42 F.4th 80 (2d Cir. 2022) ......................................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    74 L. Ed. 2d 765 (1983) ............................................................................5

*New Y-Capp v. Arch Cap. Funding LLC*,
    2022 U.S. Dist LEXIS 180309 (S.D.N.Y. Sept. 30, 2022) .........................14, 15, 16

*People v. Richmond*,
    80 Misc.3d 1213(A) (N.Y. Sup. Ct. 2023) .......................................2, 7, 14

*Philogene v. Duckett*,
    2018 U.S. Dist. LEXIS 139029 (S.D.N.Y. Aug. 16, 2018) .........................12

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*,
    988 F.3d 634 (2d Cir. 2021) ....................................................................1, 7

*Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006) ......................................................................11

*Stochastic Decisions, Inc. v. DiDomenico*,
    995 F.2d 1158 (2d Cir. 1993) ....................................................................5

*U.S. Bank N.A. v. Kahn Prop. Owner, LLC*,
    206 A.D.3d 855 (2d Dep't 2022) ............................................................12

*Wells Fargo Bank, N.A. v. Enitan*,
    200 A.D.3d 736 (2d Dep't 2021) ............................................................19

*Wells Fargo Bank, NA v. Chaplin*,
    65 A.D.3d 588 (2d Dep't 2009) ..............................................................19

*Whiteford v. Reed*,
    155 F.3d 671 (3d Cir. 1998) ....................................................................10

Plaintiffs Golden Foothill Insurance Services, LLC, Life Factor II, LLC, Life Shares II, LLC, El Dorado Hills Insurance Solutions, Inc., Lone Wolf Insurance Services, Inc., ELDO Investments, LLC, The Genesis Fund, LLC, KTL Holdings, Inc., and Tatanisha Leer oppose the motions to dismiss the Amended Complaint filed by Defendants Spin Capital, LLC and Avrumi Lubin and Defendants BMF Advance LLC and Gavriel Yitzchakov ("Isaacov").

## SUMMARY OF ARGUMENT

Defendants ask this Court to dismiss all claims based on issue preclusion. In making this motion, Defendants fail to cite the controlling law of this Circuit, as well as New York's highest court. Namely, Defendants fail to advise this Court of the Second Circuit's decision in *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021), which reversed the lower court on the very legal error Defendants now invite the Court to embrace. Contrary to the relief requested by Defendants, "the New York Court of Appeals has declared that issue preclusion is inapplicable to pure questions of law." *Id.*

Spin separately asks this Court to dismiss all claims based on res judicata. Once again, Spin fails to cite controlling law. *See Maitland v Trojan Elec. & Mach. Co.*, 491 N.Y.S.2d 147 (N.Y. 1985) ("Where, as here, a dismissal of a cause of action occurs prior to the close of proponent's evidence, the dismissal will not be deemed on the merits so as to preclude the commencement of a second action."); *Hodge v. Hotel Emples. & Restaurant Emples. Union*, 703 N.Y.S.2d 184, 185 (1st Dep't 2000) ("The prior dismissal was not on the merits because the lower court stated that the claims could have possessed merit, but the complaint was inartfully drafted and failed as a pleading."). The dismissal here was without prejudice to replead after taking discovery. *Compare* Heskin Ex. 15 ("on the record before it") *with* Ex. 3 ("The motion to dismiss the counterclaims was granted without prejudice and the intention was that the

Defendants would be entitled to seek appropriate proportional discovery as to the underlying debt and, if appropriate, reassert counterclaims."). Defendants ignore this dispositive language.

Defendants also grossly mischaracterize the two pleadings—as mirror images. They are not. And it is not even a close call. The Counterclaim was drafted *pre-discovery* and contained 164 paragraphs with 7 exhibits. The operative complaint is *308 paragraphs*—with *29 exhibits.* The operative complaint not only cures the defects observed in the State Action, but it proves them through Defendants' own internal documents obtained during discovery. To wit, the State Action previously found that the Counterclaim failed to plead that the MCAs were loans because it did not sufficiently allege facts establishing that: (1) Defendants knew the receivables were "subject to other obligations"; (2) the reconciliation provision was illusory; (3) the daily payments were not good faith estimates of receivables; and (4) Defendants set the daily payment based on their unilaterally desired term. Each prior deficiency has since been cured.

Exhibit 10 to the Amended Complaint—alone—cures all four. It is an internal email among Defendants proving that they were conspiring together from day one. [ECF No. 11-10] (Q: "U sure u wanna fund this? A: "Need to get getter on board with me. 100kx2"). This email shows Defendants BMF (Lubin and Isaacov) and Hi Bar (Getter) knew they were putting Plaintiffs in default from day one because they purposely had Plaintiffs pledge their receivables to two different MCA companies at the same time, BMF and Hi Bar. [ECF No. 11-8 § 2.10 (Unencumbered Receipts)]. This exhibit is fatal because the very same judge in the State Action, Judge Borrok, would later adopt this factor in support of his finding that MCAs were loans at the urging of the New York Attorney General. *See People v. Richmond*, 80 Misc.3d 1213(A), *7 (N.Y. Sup. Ct. 2023) ("The Predatory Lenders made sure that their Borrowers were in default on Day 1 of the MCAs by requiring that the Borrowers falsely represent that the collateral (i.e.

accounts receivable) was free and clear of all other loans and that they would not pledge those assets to others"). For this exact reason, Amended Complaint Exhibit 10 also proves that the reconciliation provision was illusory because it is conditioned upon the *absence* of "an Event of Default." [ECF No. 11-8, § 1.4].

Amended Complaint Exhibit 10 also cures the other two defects. This internal email among Defendants proves that the parties negotiated the MCA's payment term based on the number of days, and not based on the percentage of receivables purchased. [ECF No. 11-10] ("100k 1.499 40 days"); *see also* [ECF No. 11-15] ("send refi docs 220k 1.499 6,999 daily," "47 days???" "How many days??? DO WTVR U WANT. ILL GET IT DONE," "Molly send 220k 1.499 8,500 daily"). In addition, Amended Complaint Exhibit 1 is an internal email between Spin and BMF where Lubin instructs BMF to arbitrarily increase the daily payments from $8,000 to $20,000 per day—in the middle of Covid-19. [ECF No. 11-1]. And even worse, Lubin admits to his co-conspirators that he is "going to try and get away with a 40k" professional service fee "on the funding call." [*Id.*] To put this in perspective, in the very same email, Lubin admits that he is trying to charge a $40k fee on a "100k net" advance. [*Id.*] This is on top of increasing the daily payments from $8k to $20k per day without any substantive basis to do so. [*Id.*]

The Amended Complaint is further supported by offensive collateral estoppel. Exhibit 5 is a decision finding that a form BMF agreement previously used by Isaacov was a loan—*on summary judgment*. Thus, collateral estoppel applies *against Defendants* because the court had federal question jurisdiction, and the motivation and relationship between Funderz, BMF and Isaacov warrant its application here. *See* [ECF No. 11-5], *Lateral Recovery LLC v. Funderz.Net, LLC*, 2024 U.S. Dist. LEXIS 176985 (S.D.N.Y. Sept. 27, 2024).

*Rooker-Feldman* does not apply for one easy reason. Plaintiffs are not complaining of an *injury* produced by an *existing* state court judgment. As explained by the Second Circuit: "If federal suits cannot be barred by *Rooker-Feldman* unless they complain of injuries produced by state-court judgments, it follows that no federal suit that precedes a state-court judgment will be barred; the injury such a federal suit seeks to remedy cannot have been produced by a state-court judgment that did not exist at the federal suit's inception." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). Thus, "*Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." Here, Plaintiffs seek two distinct categories of damages. None arises from an *existing* state court judgment.

First, Plaintiffs seek injuries resulting from the five MCAs in the amount of $827,730, trebled. *See Fleetwood Servs., LLC v. Ram Cap. Funding LLC*, 20-cv-5120 (LJL), 2022 U.S. Dist. LEXIS 148032, at *17 (S.D.N.Y. Aug. 17, 2022). This Court is not being asked to second-guess the prior state court decision; it is being asked to review a wholly new pleading that was not before the State Action. Under black letter law, Plaintiffs are not required to reassert these claims in the State Action because New York does not have a compulsory counterclaim rule. *See* C.P.L.R. § 3019; *Mason Tenders District Council Pension Fund v. Messera,* 1996 WL 351250 at *10 (S.D.N.Y. June 26, 1996) ("[I]f res judicata barred a permissive counterclaim, the 'permissive' counterclaim would, as a practical matter, become compulsory.").

Second, Plaintiffs seek consequential injuries arising from those five MCAs. Specifically, Plaintiffs allege that Defendants' unlawful conduct with respect to those five MCAs caused Plaintiffs to enter into the $2.7 million subsequent Promissory Note. To the extent that Plaintiffs are *injured by that Note*, Plaintiffs are entitled to seek those damages in this Federal Action. Critically, in doing so, Plaintiffs would *not* be asking this Court to second-guess or overrule the

state court. To the contrary, Plaintiffs would be asking this Court to honor the state court judgment by awarding damages measured by the state court's *valid* judgment. Simply put, *but for the five MCAs*, Plaintiffs would not have injured by the Promissory Note.

Nor would this claim run afoul of issue preclusion because Plaintiffs' damages assume the judgment is valid.[1] In other words, if the state court finds that Plaintiffs owe Spin $15 million on the Promissory Note, then Defendants would be liable to Plaintiffs for $15 million, minus principal received. In real numbers, Spin asserts that Defendants owe $2,349,657.53 in principal, and as of September 15, 2023, Spin seeks $13,228,338.90—by charging 120% interest, and many millions of dollars in default fees, attorney's fees, and costs. *See* Heskin Ex. 24. The demand today is even more wildly in excess of $15 million. But, even if the State Action finds that Plaintiffs owe zero dollars, Plaintiffs have still sustained damages of more than $700,000 in defense costs. *See* Heskin Decl., ¶ 31; *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993) (holding attorney's fees in defending an action constitute RICO damages).

Finally, the *Colorado River* doctrine cannot apply because the State Action will not resolve the present claims and is clearly not most expeditious. The note of issue has passed, and five of the six defendants are not even parties to the State Action. Moreover, this federal venue is far more convenient given its broad subpoena powers, and the location of witnesses all across the country. The Court need not look any further than the gamesmanship of Defendant Isaacov in his attempts to evade service. Even on this Motion he resists, and at least one Defendant, Joel Getter, has already defaulted by failing to answer. *See* [ECF No. 67]. And both BMF and Hi Bar fought and delayed discovery in the State Action, necessitating this Federal Action. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 74 L. Ed. 2d 765, 787 (1983) ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-

---

[1] Plaintiffs have dismissed the branch of their Amended Complaint seeking to declare the Promissory Note void.

court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."). Both motions should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Spin's pleading in the State Action asserts claims against Plaintiffs, additional parties related to the Leers, and non-related Leer parties, including Zurich American Life Insurance Co. ("Zurich"), Accordia Life and Annuity Company ("Accordia"), John Hancock Life Insurance Company ("John Hancock"), Brighthouse Life Insurance Co. ("Brighthouse"), and Cap Factor, LLC. *See* Heskin Ex. 9. Spin asserts claims for (1) breach of a promissory note (the "Promissory Note"); (2) breach of corporate guaranties; (3) breach of personal guaranties; (4) voidable transfer as to Zurich policies; (5) voidable transfer as to a John Hancock policy; (6) voidable transfer as to a Brighthouse policy; (7) declaratory judgment on Zurich policies; (8) declaratory judgment on an Accordia policy; (9) declaratory judgment on a John Hancock policy; and (10) declaratory judgment on a Brighthouse policy (the "Spin Amended Complaint"). *Id.* ¶¶ 51-120.

On August 3, 2022, Plaintiffs filed an answer with counterclaims to the Spin Amended Complaint asserting various affirmative defenses and specific counterclaims alleging that Spin and its owner Lubin violated RICO by collecting unlawful debt based on the five MCAs that Lubin brokered on behalf of BMF and Hi Bar, and the Promissory Note. Heskin Ex. 2 ¶¶ 49-164. Defendants BMF, Hi Bar, Gabe, Getter and Herbst were *not* parties to the Counterclaims. *Id.*

These Counterclaims were dismissed pre-discovery on the pleadings without prejudice. Heskin Ex. 3 at 1 ("The motion to dismiss the [C]ounterclaims was granted without prejudice and the intention was that Defendants would be entitled to seek appropriate proportional discovery as to the underlying debt and, if appropriate, reassert counterclaims."). This "Discovery Order": (i) denied Spin's motion for a protective order precluding discovery into the

MCAs, (ii) granted the motion to compel subpoena compliance against Hi Bar, and (iii) denied without prejudice the motion to compel BMF due to technical defect in service. *Id.* Since the Discovery Order, neither Hi Bar nor BMF provided discovery in the State Action. *See* Heskin Decl., ¶¶ 6-7. Fact discovery closed on August 1, 2024 without Hi Bar, BMF, Gabe or Getter providing any discovery whatsoever. *Id.*, ¶¶ 14-16.

## <u>ARGUMENT</u>

### I.    Issue Preclusion Does Not Bar The Amended Complaint

Defendants invite this Court to hold that issue preclusion applies to pure questions of law. Defendants know that is reversible error because both Plaintiffs' counsel and BMF's counsel litigated the *Plymouth Venture* case, which resulted in a reversal on that very ground. 988 F.3d at 642 (explaining that under "federal preclusion law, issue preclusion still applies to purely legal issues unless policy considerations counsel otherwise" while recognizing that "the New York Court of Appeals has declared that issue preclusion is inapplicable to purely questions of law") (citing *Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440 (N.Y. 1997)). Here, the State Court dismissed the counterclaims pre-discovery, without prejudice, and expressly rejected Spin's contention that the prior decision had preclusive effect. Heskin Decl. Exs. 3, 15.

But even under federal collateral estoppel principles, the Amended Complaint would still survive because it cures all defects raised by the prior state court decision. For instance, the Amended Complaint included as exhibits emails between Lubin and Isaacov conspiring to set the terms of the first two BMF MCA Agreements as having fixed terms of repayment with arbitrary bank fees, i.e., disguised interest. [ECF Nos. 1, 10, 15]. These emails show Defendants conspiring to put Plaintiffs in immediate default because Plaintiffs were prohibited from entering into multiple MCA agreements and warranted clean title. Notably, Judge Borrok, in a decision made *after* dismissing the Counterclaims without prejudice, seized on this factor in finding other

form MCAs to be loans. *See People v. Richmond*, at *7. The Amended Complaint also includes email correspondence produced in the State Action where Hi Bar's debit on an MCA is described by Plaintiffs as "PAYMENTS FOR LOAN." [ECF No. 11-13]. None of these internal emails were attached to the prior Counterclaims, nor were they available pre-discovery.

The Amended Complaint also demonstrated that Defendants' estimates of the daily receivables were a sham. [ECF No. 11 ¶ 155]. This was not sufficiently pled in the Counterclaims, and rejected by Judge Borrok, "based on the record before it." Heskin Ex. 15. Plaintiffs have cured this defect by attaching internal emails proving that Defendants randomly picked the daily payment out of thin air based on their unilateral desired term. [ECF No. 11-15] ("How many days??? DO WTVR U WANT. ILL GET IT DONE"). The Counterclaims also were asserted *before* the *Funderz* decision finding certain BMF MCAs to be usurious loans. The Amended Complaint contains new allegations highlighting the similarities between the MCAs here and those at issue in *Funderz*. *See* [ECF No. 1 ¶¶ 166-73 and ECF No. 11-5]. The Amended Complaint also shows that the MCAs here have recourse in the event of bankruptcy. [ECF No. 1 ¶¶ 198-99; *see also* ECF No. 11-8 at 7]. The Amended Complaint also cures Judge Borrok's observation that there was no allegation that Plaintiffs even requested a reconciliation or that it would have been futile by attaching an example of Plaintiffs requesting reconciliation on the MCAs and Lubin refusing until Plaintiffs agreed to a larger daily payment without any discussion or calculation of actual receivables. [ECF No. 11-20].

Thus, no matter which principles apply (state or federal), collateral estoppel does not bar the Amended Complaint because substantial, substantive differences exist. *Compare, e.g., Capital Records, Inc. v. MP3tunes, LLC*, 611 F. Supp. 2d 342, 346 (S.D.N.Y. 2009) (applying federal collateral estoppel where plaintiff merely added more songs as additional claims to an

already denied theory of copyright infringement) *with McNamee Constr. Corp. v. City of New Rochelle*, 60 A.D.3d 919, 920 (2d Dep't 2009) (holding "claim is not res judicata insofar it pertains to new allegations in the amended complaint").

## II.    Res Judicata Does Not Bar The Amended Complaint

Spin argues that the Amended Complaint should be dismissed based on res judicata. The argument fails because the Counterclaims were never litigated on the merits; rather, the court held the exact opposite in expressly rejecting Spin's characterization that it now attempts to re-spin to this Court. Heskin Decl. Ex. 3 (rejecting Spin's contention that state court's prior ruling dismissed the claims on the merits). It is well settled law that res judicata cannot apply to a determination made without prejudice. *See 390 W. End Assoc. v. Raiff*, 166 Misc. 2d 730, 734 (1st Dep't 1995) ("[T]he dismissal of the initial…petition 'without prejudice' defeats any preclusion argument that landlord's commencement of (a new) nonpayment proceeding is barred by the doctrines of collateral estoppel and res judicata"); *Brandenberg v. Primus Assoc.*, 204 A.D.2d 694, 695 (2d Dep't 2003) (the "Supreme Court also property denied that branch of appellants' motion which was to dismiss the complaint . . . as barred by the doctrines of res judicata and collateral estoppel where the prior action was dismissed without prejudice and the issue of legal sufficiency of the complaint was not 'necessarily decided'").

To avoid the unavoidable, Spin once again cites inapposite federal authority. [ECF No. 73] at 7-8. And even those turn on lack of subject matter jurisdiction, not the merits. *See, e.g.*, *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1193-94 (D.C. Cir. 1983). Other cases cited, such as *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999), actually support Plaintiffs' position to the extent they discuss res judicata. *Id*. ("As appellees concede, dismissals for lack of jurisdiction are not decisions on the merits and therefore have no *res judicata* effect on subsequent attempts to bring suit").

### III.  *Rooker-Feldman* Does Not Apply Because No State Court Judgment Exists

For similar reasons, Defendants' argument that the Amended Complaint is barred under *Rooker-Feldman* fails. [ECF No. 73] at 10-11. As Defendants acknowledge, the first element is that "the federal-court plaintiffs must have lost in state court." *Id*. at 10 (citing *In re Wilson*, 410 Fed. App'x 409, 410 (2d Cir. 2011)). The *Rooker-Feldman* doctrine, correspondingly, does not apply where, as here, Plaintiffs did not actually lose on the merits. *See Edwards v. McMillen Capital, LLC*, 952 F.3d 32, 36 (2d Cir. 2020) ("Because, under Connecticut law, his complaint was not dismissed on the merits, Edward could have refiled his complaint in state court. Instead, he decided to pursue his claim in federal court. For these reasons, we hold that the *Rooker-Feldman* doctrine does not preclude him from doing so"); *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1076 (10th Cir. 2004) (holding that *Rooker-Feldman* does not bar federal complaint where state court decision "did not pass on the merits of the case"); *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1998) (same); *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022) ("The *Rooker-Feldman* doctrine prohibits federal courts from exercising jurisdiction over suits challenging final state court orders"). Here, the Discovery Order made clear that the dismissal was neither on the merits, nor final as it explicitly stated they were dismissed "without prejudice" and with leave to reassert after discovery. Heskin Decl. Ex. 3; *Id*. ¶¶ 6-7, 14-17.

### IV.  The *Colorado River* Doctrine Does Not Apply

The final procedural argument raised by Defendants is that the *Colorado River* abstention doctrine requires dismissal. [ECF No. 70] at 5-6; [ECF No. 73] at 11-14. The *Colorado River* doctrine "is the exception, not the rule," and is justified "only in exceptional circumstances." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Since that decision, the Supreme Court has further cautioned that "the balance is weighed in favor of the

exercise of jurisdiction" by the federal courts, and not in favor of abstention. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

While Defendants jump straight into the six-factor analysis, before doing so, Defendants must first establish that "the state and federal proceedings are in parallel," which is satisfied only where "the parties are 'substantially the same, litigating the same issues in both actions.'" *Jones v. Select Portfolio Servicing, Inc.*, 2024 U.S. Dist. LEXIS 93344, *13 (E.D.N.Y. May 24, 2024) (quoting *Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006)). A wide disparity exists between the parties to this Federal Action (BMF, Hi Bar, Lubin, Getter, Gabe and Herbst who are not parties to the State Action) and the State Action (Zurich, John Hancock, Brighthouse, Accordia, CapFactor and others not in this Federal Action). *Compare* Heskin Decl. Ex. 1 *with* Ex. 2. As Defendants admit, the State Action does not include any of the claims asserted here and involves issues not present here, such as avoiding transfers and declaratory judgments on insurance policies. Given the gulf between parties and claims, Defendants do not even satisfy the "in parallel" first threshold. *See Mochary v. Bergstein*, 42 F.4th 80, 86 (2d Cir. 2022) (declining abstention where "the parties and relief sought are not the same…mere 'commonality in subject matter' does not render actions in parallel'").

In applying the premature six-factor test, Defendants highlight irrelevant issues not relevant to this Federal Action and misstate facts in the State Action. For instance, Defendants argue the doctrine should be applied because "[t]he state court appointed a receiver over life insurance policies listed in the Security Agreement, the res or property that is the subject of the State Court Action." [ECF No. 73] at 12. Unlike the State Action, this Federal Action does not seek to adjudicate ownership of those policies. And Defendants concede this forum is not inconvenient. [ECF No. 73] at 12; [ECF No. 70] at 9. Thus, neither factor favors abstention.

-11-

Defendants next argue that avoidance of piecemeal litigation is the most critical factor but concede that its underlying motivation is to prevent the "Leer Parties [from] seeking to litigate the same claims in a different forum" on "the exact issue previously adjudicated in the Dismissal Order." [ECF No. 73] at 13. This underlying premise is false. The Counterclaims were dismissed without prejudice and were not reasserted in the State Action. This factor thus weighs in Plaintiffs' favor because the State Action will not resolve the issue of whether Defendants are liable for collection of unlawful debt under the five MCA Agreements. Indeed, New York law and policy recognizes a plaintiffs' express right to choose their own forum by rejecting the compulsory counterclaim rule. *See U.S. Bank N.A. v. Kahn Prop. Owner, LLC*, 206 A.D.3d 855, 857 (2d Dep't 2022) ("[B]ecause New York does not have a compulsory counterclaim rule, a defendant who fails to assert a counterclaim is not barred by the doctrine of res judicata from subsequently commencing a new action on that claim").

Defendants also try to argue the doctrine applies because "whether the MCAs and Spin's loan were unlawful debts turns on state law." [ECF No. 73] at 13. Plaintiffs here seek damages for the collection of an unlawful debt as defined by the RICO statute. *See* Heskin Ex. 1, ¶¶ 185-308. That claim is not asserted in the State Action and New York statutorily permits Plaintiffs to choose their forum. Applying abstention under this circumstance would thus override the express intent of New York's legislature in enacting C.P.L.R. § 3019. This factor thus weighs against abstention because the Amended Complaint solely consists of federal claims. *See Philogene v. Duckett*, 2018 U.S. Dist. LEXIS 139029, *9 (S.D.N.Y. Aug. 16, 2018) (declining to apply *Colorado River* doctrine involving federal claims, holding "Defendants' arguments that underlying ownership issues may be resolved in state court is irrelevant. Philogene has 'strong federal rights that must be protected by this Court'") (citations omitted).

The final factor, is "whether state court will adequately protect [the] Leer Parties' rights," which Defendants maintain "[t]here is no reason to believe the state court was not 'an adequate vehicle for the complete and prompt resolution of the issues between the parties." [ECF No. 73] at 13-14. Defendants argue this factor is met based on the mistaken argument that "[t]here can be no serious dispute that New York state's legal procedures adequately protect Plaintiffs' rights as Plaintiffs had a full and fair opportunity to litigate in state court and simply lost on the merit." [ECF No. 70] at 6. Thus, Defendants' argument in favor of abstention is based on the false premise that Plaintiffs fully litigated their RICO claims in the State Action. They did not. Nor did BMF or Hi Bar even participate in discovery. Heskin Decl. ¶¶ 14-16. At bottom, none of the factors supporting the extreme and rare remedy of abstention apply.

## V.    The *Funderz* Decision Demonstrates Why the MCAs are Usurious Loans

Defendants argue that Plaintiffs' RICO claims on the five MCA Agreements fail because they are not loans. [ECF No. 70] at 7-11; [ECF No. 73] at 14-18. Defendants are wrong.

The Amended Complaint cures prior pleading defects by attaching 29 exhibits addressing all of the State Court's prior defects. In addition, Plaintiffs attached a decision by Judge Liman finding on summary judgment that (1) several BMF MCAs substantially similar to those here were usurious loans; and (2) a BMF MCA identical to those at issue here raised a triable issue of fact. *See* [ECF No. 11-5], *Funderz.*, 2024 U.S. Dist. LEXIS 176985; Heskin Decl. Exs. 11-12. Although the BMF MCAs in *Funderz* were issued under a company owned by Gabe's brother Joseph Isaacov, and the judgment was against Funderz, not BMF, their interests were certainly aligned because the decision involved a form BMF MCA previously used by Gabe in connection with his brother's RICO Enterprise. Gabe simply changed the name of his BMF LLC.

*Funderz* ruled that a November 2018 BMF MCA substantively identical to the MCAs issued by both BMF and Hi Bar here, "facially 'appears legal or is ambiguous" as to whether it is

a loan. *Compare Funderz*, at \*85 *with* Heskin Decl. Exs. 4-8, 12. In ruling that the November 2018 BMF MCA raised an issue of fact, the *Funderz* court noted that it contained an adjustment to remittance provision that allowed merchant to request adjustments twice/month provided it was not in default and provided that the merchant supplied BMF with any documents it may request to perform the adjustment, finding that this provision may ultimately be mandatory. *Id.* at \*86-87; *see also* Heskin Decl. Ex. 12 § 1.4. Other courts within this District have found that limiting adjustment requests to only a few times per month and/or with discretion to deny adjustments if the merchant does not provide all requested documents renders them illusory and thus loans, including the Second Circuit. *See Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*, 2023 U.S. App. LEXIS 14241, \*3 (2d Cir. June 8, 2023) (finding reconciliation provision illusory); *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 249 (S.D.N.Y. 2022) (same); *Lateral Recovery LLC v. Queen Funding LLC*, 2022 U.S. Dist. LEXIS 129032, \*15 (S.D.N.Y. July 20, 2022) ("any obligation that Queen Funding may have is contingent on the merchant's providing documentation requested by Queen Funding . . . [it] consequently has the absolute ability to nullify any obligations to reconcile"); *New Y-Capp v. Arch Cap. Funding LLC*, 2022 U.S. Dist LEXIS 180309, \*13 (S.D.N.Y. Sept. 30, 2022) (same).

Another critical factor here is that each MCA contains a warranty that the merchant had not sold its receivables to any other MCA company, and additional provisions making it an event of default. *See* Heskin Decl. Exs. 4-8 §§ 2.10, 3.1(e), 3.1(i). Defendants ensured that Plaintiffs were in default by brokering different MCAs with BMF and Hi Bar within weeks. *Id.* Because Plaintiffs were in default by entering into simultaneous MCAs, the so-called reconciliation provision was illusory as it was conditioned on Plaintiffs not being in default. *Id.* § 1.4. Again, the very judge who previously dismissed the state court counterclaims, subsequently relied upon

this factor to render the MCAs loans. *See People v. Richmond*, 80 Misc.3d 1213(A), *7 ("The Predatory Lenders made sure that their Borrowers were in default on Day 1 of the MCAs by requiring that the Borrowers falsely represent that the collateral (i.e. accounts receivable) was free and clear of all other loans and that they would not pledge those assets to others").

Another factor that demonstrates the MCAs are loans is that "the selection of daily payment rates that did not appear to represent a good faith estimate of receivables." *Davis v. Richmond Capital Group*, 194 A.D.3d 516, 517 (1st Dep't 2021). The *Funderz* court, like *Davis*, found this factor weighed in favor of all MCAs (including the ultimately "ambiguous November 2018 BMF MCA Agreement identical to those here) being recharacterized as loans. The court noted that a "comparison of the six agreements makes Funderz's characterization of the daily payment as a 'good faith estimate' of 10% of FTE's receivables entirely unsustainable" because the rates varied wildly from contract to contract, including "agreements signed *on the same day*." *Id*. at *83 (emphasis in the original). As set forth in the Amended Complaint, comparing the five MCAs creates the same fact pattern that *Funderz* relied on in finding several BMF MCAs loans a matter of law. Here, like in *Funderz*, the estimated receivables varied wildly even on contracts entered into on the same day. Heskin Decl. Ex. 1 ¶ 155:

| MCA Agreement | Daily Payment | Specified Percentage | Defendants' Estimation of FTE Receivables |
|---|---|---|---|
| 3/2/21 BMF | $4,996 | 10% | $49,960/day |
| 3/10/21 Hi Bar | $8,500 | 20% | $42,500/day |
| 3/12/21 BMF | $8,500 | 10% | $85,000/day |
| 3/25/21 BMF | $25,000 | 10% | $250,000/day |
| 3/25/21 Hi Bar | $20,000 | 20% | $100,000/day |

Another way the *Funderz* decision demonstrates the sufficiency of Plaintiffs' pleadings is its acknowledgement that bankruptcy recourse can exist through the personal guaranty. *Funderz* at *81 ("In the October Agreements FTE bears the entire risk of bankruptcy . . . Funderz can also

-15-

recover from the guarantors in the event of bankruptcy."). Numerous other decisions reaffirm this type of bankruptcy recourse renders MCAs loans. *See Y-Capp*, at *13 ("provisions 'worked to ensure while bankruptcy may no longer have been an express default under the revised standard form of MCA Agreement, the guarantor continued to be absolutely liable for repayment in the event of a bankruptcy filing"); *LG Funding, LLC v. United Senior Properties of Olathe, LLC*, 181 A.D.3d 664, 666 (2d Dep't 2020) (same); *Lateral Recovery, LLC v. Cap. Mech. Servs. LLC.*, 632 F. Supp. 3d 402, 456 (S.D.N.Y. 2022) (same).

In holding that the November 2018 BMF MCA in *Funderz* raised an issue of fact, the court noted that this MCA had removed "a condition that allows Funderz to recover from the guarantors" in a bankruptcy. *Id*. at *87-88 (emphasis added). But here each of the five MCAs, unquestionably permits Defendants to recover from the guarantor in bankruptcy. *See* Heskin Decl. Exs. 4-8 at 6. Thus, a critical factor in construing MCAs as loans, recourse in bankruptcy, is in fact present in each of the MCAs here. *Y-Capp*, at *13; *LG Funding*, at 666; *CMS*, at 456.

*Funderz* also reaffirmed several other factors. For instance, *Funderz* found two BMF MCAs to be loans where, *inter alia*, a default would be declared after just two missed payments. *Id*. at *78. By contrast, the MCAs here are *less forgiving* in that they make missing a single fixed daily payment a default. Heskin Decl. Exs. 4-8 §3.1(d). Other courts beside *Funderz* have found less onerous default provisions as rending MCAs loans. *CMS*, at 458; *Davis*, 517 (finding MCAs like a loan where there were "provisions making rejection of an automated debit on two or three occasions without prior notice an event of default"); *Queen*, *18 (same).

*Funderz* also found BMF MCAs to be loans as a matter of law where (1) "no specific receivables were identified in the agreement" but rather all receivables were purportedly sold; and (2) "the agreement made clear that FTE 'is responsible for ensuring that the specified

percentage to be debited by BMF remains in the account[.]" *Id.* at *81-82; *see also Haymount*, at 249 (same). Each MCA here, like in *Funderz*, failed to identify any specific receivables being purchased and instead purported to purchase "all of Merchant's future accounts, contract rights, and other entitlements arising from or relating to the payment of monies form the Merchant's customers." Heskin Decl. Exs. 4-8 at 1. Notably, the State Court simply made a pure error of law by holding otherwise. *Compare id. with* Ex. 15 (erroneously holding "the purchase agreements did not each sell 100% of the accounts receivable."). As a matter of well settled principles of contract interpretation, the word "all" must mean "all." Likewise, each MCA made Plaintiffs responsible for collecting the receivables BMF or Hi Bar purportedly purchased. [ECF No. 11-8 at 1] ("[BMF] will debit the Remittance each business day form only one depositing bank account…into which Merchant and Merchant's customers shall remit the Receipts from each Transaction until such time as [BMF] receives payment in full"); *see also Lateral Recovery, LLC v. Funderz, LLC*, 2024 U.S. Dist. LEXIS 10134 (S.D.N.Y. Jan. 19, 2024).

## VI. Defendant Isaacov Was Properly Served

As a final and unique argument, Defendant Isaacov argues that dismissal is required as to him "because Plaintiffs failed to effect service of process in the manner required by CPLR 308(4)." [Doc. No. 73] at 11-14. Notably, nothing in his motion contests the fact that (1) BMF received the pleadings; or (2) that the attempted address for Isaacov's service is not actually his residence. [Doc. No. 73] at 11-14. This admission is significant because, as alleged in the Amended Complaint, Isaacov operates BMF, Heskin Ex. 1, ¶¶ 5, 253-57, and not only did Plaintiffs affix the pleadings to his undisputed residence, Heskin Decl. Ex. 16, 23, service was also affected on his business, BMF, further ensuring he received service of the pleadings.

Disregarding the fact that Defendant Isaacov was notified of this lawsuit through service on his company BMF, the affidavit of service on his residence fully complies with CPLR §

308(4). As set forth by the New York Court of Appeals, "nail and mail" pursuant to CPLR §

308(4) may be achieved where "the summons be delivered or affixed to the defendant's actual

place of business, dwelling place or usual abode and the additional requirement that the

summons be mailed to the defendant's last known residence." *Feinstein v. Bergner*, 48 N.Y.2d

234, 240 (N.Y. 1979).  As shown in the affidavit of service, a copy of the pleadings was "posted"

on Isaacov's "residence" in a "conspicuous space." Heskin Decl. Ex. 16.  And this is confirmed

by a photograph reflecting the pleadings being affixed on the gate to his residence. *Id*. Ex. 23.

This satisfies "conspicuous service" under CPLR §308(4). *See 161 Williams Associates v.

Coffee*, 122 Misc. 2d 37, 39-40 (N.Y. Civ. Ct. 1983) ("General principles concerning service

lead to the conclusion that in a "conspicuous place" service the place of posting must be on the

premises in a location, preferably the entrance door, which, in the reasonable opinion of the

process server, is sufficiently obvious to the occupant so to be expected to be seen").

The affidavit of service on Gabe also satisfies CPLR § 308(4) because the process server

also mailed the pleadings "via certified mail" to his residence. Heskin Decl. Ex. 16. Defendants

misconstrue CPLR § 308(4) to argue this is insufficient and that mail service had to be by "first

class mailing." [ECF No. 70] at 12. But CPLR § 308(4) makes it plain that "first class mailing"

only pertains to mailing to the persons "actual place of business."  *Id*. CPLR §308(4) provides:

> where service under paragraphs one and two cannot be made with due diligence,
> by affixing the summons to the door of either the actual place of business,
> dwelling place, or usual abode . . . and by either mailing the summons to such
> person at his or her last known residence **or by mailing the summons by first
> class mail to the person to be served at his or her actual place of business in
> an envelope bearing the legend 'personal and confidential.'**

CPLR § 308(4) (emphasis added).  Read in full context, it is clear that the requirements for (a)

first class mail; and (b) in an envelope bearing the legend "personal and confidential" *only* is

required for mail service on the defendant's place of business *not* their home, which simply

-18-

requires "mailing," which the affidavit confirms occurred. Heskin Decl. Ex. 16. Defendant cites the full CPLR § 308(4) statute but attacks the affidavit of service as deficient on the false premise that the mailing was done to Isaacov's business, which would require first class mail and the labeling, but is not required for mailing a residence. *HSBC Bank USA, N.A. v. Cupid*, 210 A.D.3d 874, 876 (2d Dep't 2022) ("Here, the Supreme Court properly determined that the affidavit of service demonstrated, prima facie, that the defendant was properly served with the summons and complaint pursuant to CPLR § 308(4) by affixing a copy of the summons and complaint to the door of her dwelling place, and by mailing a copy of the summons and complaint to her last known residence"). "Ordinarily, a process server's affidavit of service establishes a prima facie case as to the methods of service and, therefore, gives rise to a presumption of proper service." *Wells Fargo v. Chaplin*, 65 A.D.3d 588, 589 (2d Dep't 2009).

Defendant Isaacov also contends that Plaintiffs did not exercise proper due diligence before resorting to mail and nail yet fail to cite to any authorities to demonstrate due diligence was not met other than a citation to *Estate of Waterman v. Jones*, 46 A.D.3d 63 (2d Dep't 2007). [ECF No. 70] at 13-14. *Waterman* is materially distinguishable because it involved two service attempts on back-to-back days. *Id*. at 64. By comparison, the process server made five (5) separate attempts to effectuate personal service on Gabe at various times through almost a one-month window.  Heskin Decl. Ex. 16. This is patently sufficient to constitute the requisite due diligence under New York law.  *Wells Fargo Bank, N.A. v. Enitan*, 200 A.D.3d 736, 738 (2d Dep't 2021) ("The due diligence requirement may be met with 'a few visits on different occasions and at different times to the defendant's residence or place of business when defendant could reasonably be expected to be found at such locations at those times"); *Deutsche Bank Nat. Trust Co. v White*, 110 AD3d 759, 760 (2d Dept 2013) (similar). Thus, there is no basis to claim

service on Defendant Isaacov was improper and indeed, while he tries to suggest the process server should have asked Defendants' counsel to arrange service, ECF No. 70] at 13-14, Plaintiffs' counsel did ask BMF's counsel to accept service and he refused. Heskin Decl. Exs. 17-18. Simply put, service on Defendant Isaacov was done to the letter as required by CPLR § 308(4) and there is no dispute that he has notice of this lawsuit such that any defect, real or imagined, could not be cured.

<u>**CONCLUSION**</u>

Defendants made a whopping $827,730 in less than three months—on just five MCAs. The irrefutable exhibits attached to the Amended Complaint prove that Defendants conspired together to trap Plaintiffs in an unsustainable cycle of debt, in the middle of Covid-19, until they could roll the debt into a legal Promissory Note that exceeded New York's usury cap of $2.5 million. But for these five unlawful MCA loans, Plaintiffs would not have entered into the $2.7 million Promissory Note. Defendants are therefore liable for any damages sustained under the Promissory Note, as well as the $827,730 siphoned from Plaintiffs in a matter of months.

In seeking to avoid this liability, Defendants fail to cite controlling law, and grossly misstate the facts and procedural record in the State Action. As demonstrated above, none of Defendants' procedural arguments has merit, nor do their substantive legal arguments on the MCA agreements. To the extent that collateral estoppel applies, it cuts against Defendants, not for them. Defendant Isaacov's interests were not only aligned with *Funderz*, but he was previously a defendant in that action based on his own alleged use of form BMF MCAs. He cannot now shield his continued RICO liability by merely repapering BMF under a new LLC.

Both motions to dismiss the Amended Complaint should be denied in their entirety.

Dated: March 14, 2025

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

By:_____

Shane R. Heskin
Alex D. Corey
810 Seventh Avenue, Suite 500
New York, New York 10019
heskins@whiteandwilliams.com
coreya@whiteandwilliams.com
*Attorneys for Plaintiffs*

-21-