UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOLDEN FOOTHILL INSURANCE SERVICES, LLC, LIFE FACTOR II, LLC, LIFE SHARES II, LLC, EL DORADO HILLS INSURANCE SOLUTIONS, INC., LONE WOLF INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC, THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC., and TATANISHA LEER<br><br>Plaintiffs,<br><br>v.<br><br>SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN, BMF ADVANCE LLC, GAVRIEL YITZCHAKOV a/k/a GABE ISAACOV, HI BAR CAPITAL, LLC, YOEL GETTER a/k/a JOEL GETA, and YISROEL HERBST, | Case No. 1:24-CV-08515 |

**DEFENDANTS YISROEL HERBST AND HI-BAR CAPITAL'S JOINDER IN SPIN CAPITAL, LLC AVRUMI (a/k/a JOSH LUBIN'S) MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

THE ROTH LAW FIRM, PLLC

By: */s/ Brian Levenson*
Brian Levenson, Esq.
275 Madison Avenue, Floor 22
New York, New York 10017
Tel: 212-542-8882
Email: brian@rrothlaw.com
*Attorneys for Defendants Hi Bar Capital, LLC and Yisroel Herbst*

1

Defendants Yisroel Herbst and Hi-Bar Capital, LLC ("Hi-Bar Defendants"), by and through their undersigned counsel, hereby join in the Motion to Dismiss ("Motion to Dismiss") filed by defendants Spin Capital, LLC and Avrumi a/k/a Josh Lubin (collectively, the "Spin Capital Defendants") on February 28, 2025 (Dkt. No. 72-73). The Hi-Bar Defendants expressly join in, adopt, and incorporate by reference herein all of the arguments and authorities set forth in Section III (pages Spin Capital Defendants' Memorandum of Law in Support of Their Motion to Dismiss (pages 14-18) as applied to the agreements annexed to the Amended Complaint at Exhibit 12 and 22 (Dkt. Nos. 11-12; 11-22) (the "Hi Bar Agreements"), and respectfully request that the Court dismiss the Amended Complaint with prejudice.

At its core, Plaintiff is alleging that Hi Bar and Herbst, its owner, engaged in a pattern of racketeering to collect an unlawful debt. However, because the Agreements are not loans, usury laws do not apply. Under New York law, an MCA agreement, such as the Hi Bar Agreements in this case, are not considered loans because they are a purchase of receivables. *Principis Capital, LLC v. I Do, Inc.*, 201 A.D.3d 752, 754-55 (2d Dept. 2022). In reviewing whether an MCA agreement is a true purchase of receivables, New York courts apply a three-factor test:

> The court must examine whether the plaintiff is absolutely entitled to repayment under all circumstances. Unless a principal sum advanced is repayable absolutely, the transaction is not a loan. Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy.

*Principis Capital*, 201 A.D.3d at 754. Where all three factors are present, an agreement is an MCA agreement not subject to usury laws. *Principis Capital*, 201 A.D.3d at 754 (granting summary judgment to funder). The Southern District of New York, in a RICO action, has endorsed the *Principis* test when determining whether an MCA agreement is a loan transaction or purchase of receivables. *US Info. Group LLC v. EBF Holdings, LLC,* 2023 WL 6198803, at *11 (S.D.N.Y.

Sept. 22, 2023) (dismissing RICO action where agreement complied with three factors). Applying the *Principis* three-factor test, New York courts have rejected challenges to the type of agreement used in the Hi Bar contract. *See e.g. Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*, 219 A.D.3d 1126, 1128 (N.Y. App. Div. 2023); *Hi Bar Capital, LLC v. Excell Auto Group, Inc.*, 2023 N.Y. Slip Op. 31593(U), 3, 2023 WL 3431299, at *2 (N.Y.Sup.)(Trial Court Order in prior action between Hi Bar and the instant Debtor finding that the Hi Bar Agreement is "not void as a matter of criminal or civil usury, because the repayment terms, rather than being absolute, are contingent.").

Here, the Hi-Bar contracts provide that the parties intended the purchases of receivables as opposed to a loan:

> **Sale of Receipts.** Merchant and [Hi-Bar Capital] agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from HBC to Merchant. Merchant agrees the Purchase Price is in exchange for the Receipts pursuant to this Agreement and that it equals the fair market value of such Receipts… Payments made to HBC in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers.

[Section 1.10; Dkt. No. 11-12; 11-22]. On the first page of the contract, the parties also stipulated, "Merchant is selling a portion of a future revenue stream to HBC at a discount, *and is not borrowing money from HBC,* therefore there *is no interest rate or payment schedule and no time period during which the Purchase Amount must be collected by HBC.*" . [Dkt. No. 11-12; 11-22] (emphasis supplied); *see Colonial Funding Network, Inc. v. Davincitek Corp.*, 2021 WL 39591 (N.Y. Co. Sup. Ct. 2021) (finding MCA was not loan, in part where the parties expressly agreed "that they are entering into a purchase and sale of future receivables."). Plaintiff's claims ignore this clear and unambiguous language. In addition, the factors set forth in *Principis* are all easily satisfied.

      a.      **The Hi Bar Contract Contains Mandatory Reconciliation and Adjustment Provisions**

An MCA agreement is not a loan even if it contains a fixed remittance as an estimate of a specified percentage of receivables where "the Agreement provided no liability in the event that the seller's business failed because it could not generate sufficient revenue to continue operating." *IBIS Capital Group, LLC v. Four Paws Orlando LLC,* 2017 WL 1065071 (Sup.Ct. Nassau Co. March 10, 2017). Moreover, if the fixed payment amount is subject to a mandatory adjustment through a reconciliation provision, which allows the merchant to request a reduction of the remittance amounts to reflect diminutions of its receivables, that contractual mechanism further demonstrates that the transaction is not a loan. *Quicksilver Capital LLC v. Obioha*, 2020 WL 2332754, (N.Y. Co. Sup. Ct. May 11, 2020) ("[t]he agreement contains a reconciliation provision … provid[ing] that plaintiff is to collect future receivables based on amounts collected by defendant during a particular calendar month. If defendant is not in default, she may once each calendar month request that plaintiff reconcile the [monthly amount to be paid by defendant] to more closely reflect defendant's actual future receipts times the purchased percentage.").

The Hi Bar Agreements contain a mandatory reconciliation (*i.e.*, to true up total payments with receivables generated for the prior period) and adjustment (*i.e.,* to make the regular remittance more closely reflect the receivables) provisions:

> 1.3 Reconciliation. As long as an Event of Default, or breach of this agreement, has not occurred, Merchant may request a **retroactive reconciliation** of the total Remittance Amount. All requests hereunder must be in writing to reconciliations@hibarcapital.com. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding if applicable, from the date of this Agreement through and including the date the request is made. … Such reconciliation, if applicable, **shall be performed** by HBC within two (2) Business Days following its receipt of Merchant's request for reconciliation by either

4

crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by HBC shall equal the Specific Percentage of the Future Receipts that Merchant collected during the requested month. …

1.4 <u>Adjustments to the Remittance</u>. As long an Event of Default, or breach of this agreement, has not occurred, Merchant may give notice **to HBC to request a decrease in the Remittance, should they experience a decrease in its Future Receipts**. All requests hereunder must be in writing to reconciliations@hibarcapital.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding from the date of this Agreement through and including the date the request is made. … The Remittance **shall be modified** to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks. …

[Dkt. No. 11-12; 11-22, § § 1.3 and 1.4]. (emphases supplied). "A reconciliation and an adjustment provision help ensure that, on a retrospective basis, the merchant has not paid an amount that is disproportionate to the receivables that the funder has actually acquired, and going forward, where the merchant has experienced a steady decrease in its Daily Receipts, the merchant has the right to request a modification of the amount of the fixed daily payment." *Lateral Recovery, LLC v. Capital Merch. Services, LLC,* 632 F. Supp. 3d 402, 458 (S.D.N.Y. 2022*)* (determining form agreements that contain these provisions are "are agreements for the purchase of receivables when viewed in their totality").

The above referenced provisions are not an illusory reconciliation provisions, rather mandatory ones, since they use the term "shall." *Streamlined Consultants, Inc. v. EBF Holdings LLC,* 2022 WL 4368114, at *1 *(S.D.N.Y. Sept. 20, 2022)* ("*Streamlined I*") ("the Funding Agreement includes a reconciliation provision, which—contrary to Plaintiffs' baseless argument in opposition—provides that reconciliation is mandatory if requested by Streamlined Consultants[,]" since it provided … Within four business days … [funder] *shall* reconcile …");

*US Info. Group LLC v. EBF Holdings, LLC,* 2023 WL 6198803, at *10 (S.D.N.Y. Sept. 22, 2023) ("shall" in reconciliation provision makes it mandatory). As such, Hi-Bar satisfies this factor.

### b.   The Hi-Bar Contract Has No Fixed Duration

"Ordinarily, a loan consists of a face value, repayable (with interest) over a finite period DEFINED in the transaction documents." *Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair Inc.*, 69 Misc. 3d 457, 463 (N.Y. Sup. Ct. 2020)(emphasis in original). "If a transaction instead has a non-finite term, that suggests that the transaction is instead a purchase of future receivables." *Id.; see also Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *5 (S.D.N.Y. Sept. 20, 2022). Here, the Hi Bar Agreements have indefinite terms since it expressly provides that it is "in full force an effect until the entire Purchased Amount and any other amounts due are received by HBC as per the terms of this Agreement." [Dkt. No. 11-12; 11-22; § 1.2]. It also explicitly provides on the first page for "no interest rate or payment schedule and no time period during which the Purchase Amount must be collected by HBC." [Dkt. No. 11-12; 11-22]. Moreover, the contract is subject to extension over an indefinite duration because it is subject to regular adjustments under the reconciliation provision. *Principis Capital*, 201 A.D.3d at 754 ("Concomitantly, as the amount of the monthly payments could change, the term of the agreement was not finite."). Thus, the duration is "contingent upon [the merchant's] actually generating sales and those sales actually resulting in the collection of revenue." *IBIS Capital Group, LLC v. Four Paws Orlando LLC,* 2017 WL 1065071, *2 (Sup.Ct. Nassau Co. March 10, 2017). "The existence of this uncertainty in the length of the Agreement is an express recognition by the parties of the wholly contingent nature of this Agreement." *Id.* at * 3. As such, Hi-Bar satisfies this factor.

### c. **Bankruptcy Is Not an Event of Default**

An MCA is not a loan where, like here, there is "no contractual provision existed establishing that a declaration of bankruptcy would constitute an event of default." *Principis Capital, LLC v. I Do, Inc*., 201 A.D.3d 752, 754, (2022); *see also Streamlined Consultants, Inc. v. EBF Holdings LLC,* 2022 WL 4368114, at *5 (S.D.N.Y. Sept. 20, 2022). Not only is bankruptcy not listed as an "Event of Default" under ¶ 3.1 of the Hi Bar Agreements, but it specifically provides on their front pages, "Merchant going bankrupt or going of business…in and of itself, does not constitute a breach of this Agreement." [Dkt. No. 11-12; 11-22] *See e.g. Mazzoni Ctr. v. LCF Group, Inc*., 2024 WL 4821475, at *8 (E.D. Pa. Nov. 18, 2024)(Finding provision that stating that bankruptcy was not event of default satisfied *Principis* factor). As such, Hi-Bar satisfies this final factor

For the foregoing reasons, the Hi-Bar Defendants respectfully request that the Amended Complaint be dismissed with prejudice.

March 17, 2025

Respectfully submitted,

THE ROTH LAW FIRM, PLLC

By: *Brian Levenson*
Brian Levenson
295 Madison Ave., Fl. 22
New York, NY 10017
Brian@rrothlaw.com
T: (212) 542-8882