UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
GOLDEN FOOTHILL INSURANCE SERVICES, LLC,     Docket No..: 24-cv-08515
LIFE FACTOR II, LLC, LIFE SHARES II, LLC, EL
DORADO HILLS INSURANCE SOLUTIONS, INC.,
LONE WOLF INSURANCE SERVICES, INC., ELDO
INVESTMENTS, LLC, THE GENESIS LS FUND, LLC,
KTL HOLDINGS, INC., and TATANISHA LEER,

                              Plaintiffs,

- against -

SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH)
LUBIN, BMF ADVANCE LLC, GAVRIEL
YITZCHAKOV a/k/a GABE ISAACOV, HI
BAR CAPITAL, LLC, YOEL GETTER a/k/a
JOEL GETA, and YISROEL HERBST,

                              Defendants.
----------------------------------------------------------------------X

---

**DEFENDANTS BMF ADVANCE LLC AND GAVRIEL YITZCHAKOV'S REPLY IN
FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

---

Murray Legal, PLLC
Christopher R. Murray, Esq.
Attorneys for Defendants
BMF ADVANCE LLC and GAVRIEL YITZCHAKOV
170 Old Country Rd., Suite 608
Mineola, New York 11501
Tel: (516) 260-7367
E-mail: cmurray@murraylegalpllc.com

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................ 1

PRELIMINARY STATEMENT ......................................................................................... 2

ARGUMENT ...................................................................................................................... 2

    I.     COLLATERAL ESTOPPEL IS FATAL TO PLAINTIFFS' CLAIMS. ........................... 2

    II.    COLORADO RIVER ABSTENTION DOCTRINE APPLIES ......................................... 7

    III.       PLAINTIFFS' ASSERTION THAT SERVICE ON YITZCHAKOV WAS "GOOD ENOUGH" DOES NOT PROVIDE THIS COURT JURIDICTION OVER HIM. ................... 9

    IV.      PLAINTIFFS MISUNDERSTAND SETTLED NEW YORK LAW. ......................... 10

**PRELIMINARY STATEMENT**

Plaintiffs fail to address the reality that *the same contracts*, *the same transactions*, and *the same claims* at issue in this action, have already been litigated by Plaintiffs in state court—and they lost. *Spin Cap., LLC v. Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Misc. LEXIS 747, *9-10 (Sup. Ct. N.Y. Cnty. 2023) (the "Order"). The state court ruled: that BMF contracts memorialize sales-based financing transactions not loans; therefore the transactions axiomatically could not be usurious; and Plaintiffs' RICO claims based on collecting "unlawful debt" must be dismissed. Plaintiffs are now urging this Court to rule exactly opposite on those same issues

The Defendants seek dismissal based on collateral estoppel and *Colorado River* Abstention doctrine. Plaintiffs' response pointing to the dismissal being without prejudice does not preclude collateral estoppel because it ignores the basis for the ruling—state court held the BMF contracts and transactions at issue here were not usurious loans. That finding endures and is still relevant in the still pending state case because Plaintiffs asserted usury and RICO as affirmative defenses. Plaintiffs' reliance on *Lateral Recovery LLC v. Funderz Net*[1] to assert offensive collateral estoppel against BMF is inapposite because the contracts at issue in *Funderz* are different from the BMF contracts here, and offensive collateral estoppel is not applicable here; the issues are different.

Plaintiffs' cannot elide proper service of Yitzchakov by asserting that service was "good enough." Plaintiffs' deficient service is not a sufficient basis to hail Yitzchakov into this Court.

**ARGUMENT**
**I.    COLLATERAL ESTOPPEL IS FATAL TO PLAINTIFFS' CLAIMS.**

The state court ruled that the contracts between Plaintiffs and BMF (the "BMF Agreements," ECF 76-4, 5, and 6) are not disguised loans and could not be usurious as a matter of

---

[1] 2024 U.S. Dist. LEXIS 176985 (S.D.N.Y. Sep. 27, 2024).

law.  Order, pp.7-8.  After analyzing the BMF Agreements, Judge Borrok held that they were revenue purchase agreements and not loans because they satisfied the three requisite criteria:

> (i) they all contained mandatory reconciliation provisions to ensure that payments were made based on the *specific percentage* of the accounts receivable that were sold in the Purchase Agreements, (ii) the Purchase Agreements did not have a finite term because the reconciliation provisions ensured that the amounts due were contingent on the sales and as such the term of the agreement would fluctuate based on the amount earned and (iii) the Purchase Agreements all contained provisions expressly stating that a declaration of bankruptcy did not constitute an event of default.

*Id.* at p.7 (emphasis in original).

Collateral estoppel prevents Plaintiffs from re-arguing that the BMF Agreements were disguised loans because the Defendants have carried their burden to establish that "the identical issue was necessarily decided in the prior action and is decisive in the present action."  *Montoya v. JL Astoria Sound, Inc.*, 92 A.D.3d 736, 738 (2d Dept. 2012). The state court's findings were fatal to the RICO claims premised upon collection of unlawful debt.  Order, pp.5, and 9.  The finding that the BMF Agreements were not usurious loans is fatal to Plaintiffs' identical RICO claims here.

To prevail on their RICO claims here, as in the state court action, Plaintiffs must allege that: "(1) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (2) the debt was incurred in connection with the business of lending money … at a [usurious] rate, and (3) the usurious rate was at least twice the enforceable rate."  *Dai Hyuk Kwon v. Santander Consumer USA*, 742 F.App'x 537, 539 (2d Cir. 2018) (citations and quotations omitted) (alterations in original).  The finding that the BMF Agreements are not usurious loans is fatal to Plaintiffs' RICO claims in this Action.

Plaintiffs point to a later ruling which characterized the motion to dismiss the RICO claims as without prejudice, and allowed the Defendants to seek proportional discovery as to the

3

underlying debt and, if appropriate, reassert counterclaims.  ECF 76-3, p.3 (hereinafter "State Discovery Order").  Plaintiffs' reliance on the State Discovery Order is unavailing.  Regardless of whether the dismissal itself is preclusive, collateral estoppel applies to Judge Borrok's *factual findings* and his conclusion that the BMF Agreements were sales of receivables and not loans.  The dismissal should nevertheless be preclusive because Plaintiffs failed to use the opportunity to replead and attempt to cure their original pleading,  Additionally, Judge Borrok stated in the State Discovery Order that his decision to allow reassertion of counterclaims was made based on the decision in *Haymount Urgent Care PC v. GoFund Advance, LLC*, 2023 U.S. Dist. LEXIS 151141 (S.D.N.Y. 2023) which was based on choice of law issues and *not* on whether there were fact issues pertaining to the characterization of the MCA agreements. Judge Borrok's invitation for Plaintiffs to replead their claims does not pertain to his findings on the BMF Agreements.

Simply because the Order was "without prejudice" does not upend the undisturbed factual findings made in the case.  *See Miller Mfg. Co. v. Zeiler*, 72 A.D.2d 338, 341 (1st Dept. 1980).  In *Miller* the court explained that with respect to a prior ruling dismissed without prejudice, "[f]actual determinations previously made are to be given preclusive or estoppel effect." *Id.  See also Viridis Lab'ys, LLC v. Kluytman*, 2022 U.S. Dist. LEXIS 195313, *11 (W.D.MI 2022) (collateral estoppel precludes relitigation of issues, not claims, so even when claims in a prior lawsuit were dismissed without prejudice, a defendant may invoke collateral estoppel to prevent a plaintiff from relitigating a dispute of facts in a later lawsuit).

Plaintiffs may not relitigate prior findings about the BMF Agreements.  The state court found the BMF Agreements "all contained mandatory reconciliation provisions to ensure that payments were made based on the *specific percentage* of the accounts receivable."  Order, p.7. Plaintiffs are collaterally estopped from asserting here the BMF Agreements did not have

reconciliation provisions.  *See* ECF 11, ¶¶102, 132, 146.  The state court found the BMF Agreements "did not have a finite term because the reconciliation provisions ensured the amounts due were contingent on the sales and as such the term of the agreement would fluctuate based on the amount earned."  Order, p.7.  Plaintiffs are collaterally estopped from asserting here the BMF Agreements did not have finite terms.  *See* ECF 11, ¶¶95, 128, 142.  The state court found the BMF Agreements all contained provisions expressly stating that a declaration of bankruptcy did not constitute an event of default.  Order, p.7.  Plaintiffs  are collaterally estopped from asserting here that BMF bankruptcy was a default of the Agreement.[2]

To defeat collateral estoppel, Plaintiffs must show the absence of a full and fair opportunity to contest the prior determination.  *Constantine v. Teachers College*, 448 Fed. Appx. 92, 93-94 (2d Cir. 2011).  Plaintiffs had that opportunity in state court, and they lost.  Since state court held the BMF Agreements are not loans subject to usury laws, Plaintiffs cannot simply refile here for a "do-over."  The ruling that BMF Agreements were not loans was fatal to Plaintiffs' state court RICO and RICO conspiracy claims—and, as set forth in Defendants' moving papers, is fatal here. ECF 70, pp.8-12.

Plaintiffs' reliance on *Lateral Recovery LLC v. Funderz.net, LLC*, 2024 U.S. Dist. LEXIS 176985 (S.D.N.Y. Sep. 27, 2024) (hereinafter *Funderz*), to assert offensive collateral estoppel is easily rebutted.  ECF 77, pp.13-17.  Offensive collateral estoppel should not be applied because "the judgment was against Funderz, not BMF."  ECF 77, p.13; *See Faulkner v. Nat'l Geographic*

---

[2] Plaintiffs' assertion that BMF had recourse in bankruptcy through the guaranty is incorrect.  It misconstrues the guaranty language. ECF 11, ¶¶99, 131, 145.  The guaranties state: "Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default…."  ECF 76-4, p.8; 76-5, p.8; 76-6, p.8.  Judge Borrok's finding that bankruptcy is not an event of default means bankruptcy, by itself, would not trigger liability under the Guaranty.   Plaintiffs cite the guaranty section: "In the event that [BMF] must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person had become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount."  ECF 11, ¶¶99, 131, 145.  Contrary to Plaintiffs' assertion, that citation, on its face, does not make guarantors liable for the remaining, unpaid balance.  *Id.*

*Enters.*, 409 F.3d 26, 37 (2d Cir. 2005) (explaining offensive collateral estoppel allows plaintiff to "preclude a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff.") (citation omitted).   Plaintiffs ignore this distinction by asserting that BMF's interests were aligned with Funderz because the decision involved "a form BMF MCA." *Id.*  But even if, *arguendo*, BMF's interests *in that case* were  aligned with Funderz, BMF's interests *in this case* are not aligned with Funderz interests *in that case* because *the two agreements at issue are different.*  Offensive collateral estoppel requires that "the issues in both proceedings must be identical." *Id.*

In *Funderz*, the court based its ruling, in part, on an addendum to the contract which is not attached to the BMF Agreements here.  *Compare* ECF 76-11, p.11 *with generally* ECF 76-4, 5, 6. The *Funderz* court relied on this amendment to discount the reconciliation provision in the BMF agreement at issue.  2024 LEXIS 176985, at *75.  The *Funderz* court was unable to declare the other BMF agreements that it considered without the amendment to be loans.  *Id.* at *86-93.  The *Funderz* court never ruled that the BMF Agreements at issue in this action are usurious loans. Plaintiffs' other references to *Funderz* are merely an additional attempt to reargue issues that the state court already decided.  The characterization of the BMF Agreements at issue in this case was already litigated and Plaintiffs lost.

Only Judge Borrok has definitively opined on the BMF Agreements at issue here and determined that they were not usurious loans.  Plaintiffs are collaterally estopped from arguing that BMF Agreements are usurious loans. As the state court concluded, this is fatal to Plaintiffs' RICO claims—the identical RICO claims that Plaintiffs have asserted here.

Plaintiff's citation to *Plymouth Venture Partners, II, L.P., v. GTR Source, LLC*, 988 F.3d 634 (2d Cir. 2021) is similarly unavailing. In *Plymouth* the district court held that plaintiff was

collaterally estopped from asserting a claim against defendant CMS in one action after plaintiff's similar claim was dismissed against GTR Source in another action, not an attempt to re-litigate the same claim involving the same transaction–the court held that the legal theory failed against GTR Source, so the same legal theory arising from similar allegations must fail against CMS. It was not based upon the findings of fact and contract analysis from the same transaction.

## II.    COLORADO RIVER ABSTENTION DOCTRINE APPLIES

Plaintiffs' arguments against application of the *Colorado River* abstention fail for the same reason that their collateral estoppel arguments fail—legal and factual issues have already been, or will be determined in the pending state court action.

Plaintiffs argue that the two cases are not parallel because the identity of the parties is different and the RICO claims will not be decided in that forum. Plaintiffs, of course, are baldly ignoring that the RICO claims have *already been* decided by Judge Borrok—against Plaintiffs. Because those claims are no longer pending in the state court case, does not mean that the cases are not in parallel. The cases are parallel because the same agreements must be examined, and the same usury and RICO issues must be decided.

A federal court may consider abstention "when *substantially* the same parties are contemporaneously litigating *substantially* the same issues in another forum." *Machat v. Sklar*, 1997 U.S. Dist. LEXIS 14803, *22 (S.D.N.Y. Sep. 25, 1997) (quoting *Calvert Fire Ins. Co. v. Am. Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979). "The claims and remedies need not be identical to support abstention." *Id.* (citing *Sheerbonnet, Ltd. v. Am. Express Bank Ltd.*, 17 F.3d 46, 49-50 (2d Cir. 1994); *Telesco v. Telesco Fuel and Masons'*, 765 F.2d 356, 362 (2d Cir. 1985) (proceedings are parallel where essentially the same claims and same relief are sought in

both actions)).  "What matters is that the claims concern the same events … and involve sufficient overlap of subject matter."  *Id.*

In *Weiser v. Koch*, the District Court found cases were parallel for *Colorado River* abstention even though not all parties and issues were identical.  623 F.Supp. 1369, 1386 (N.Y.S.D. 1986).  In *Weiser*, plaintiffs federal and state claims against New York City for being thrown out of a homeless shelter.  A state case was also pending where plaintiffs sought to compel New York City to provide plaintiffs with housing.  The *Weiser* court found the cases parallel for *Colorado River* abstention because they presented the same threshold issue—whether there was a protected property interest under state law in remaining in a homeless shelter.  The *Weiser* court held the "parallel requirement is satisfied when the main issue in the case is the subject of pending litigation."  *Id.* (citation omitted).  The *Weiser* court found abstention warranted because the overriding concern in the analysis is "sound judicial administration and avoidance of duplicative litigation, whether of cases or issues…."  *Id.*

Here this case is parallel to the state case because, with respect to Plaintiffs' claims against BMF, the threshold issue is whether the BMF Agreements are usurious loans. As set forth in Defendants' moving papers, avoidance of piecemeal litigation is the most critical factor of the analysis.  ECF 73, p.13.  Plaintiffs counter by arguing that "[t]he State Action will not resolve the issue of whether Defendants are liable for collection of unlawful debt under the five MCA Agreements."  ECF 77, p.17.  But Judge Borrok *did* already resolve that issue—against Plaintiffs. Plaintiffs disingenuously assert that the without prejudice dismissal removes the issue from the state court case.  But Plaintiffs have additionally raised usury and RICO as affirmative defenses. *See* ECF 71, Exh. B, pp.319-320.  Even though Plaintiffs did not refile RICO claims in state court,

8

Judge Borrok's findings with respect to the characterization of the BMF Agreements is still relevant for the affirmative defenses Plaintiffs raised there.

Plaintiffs' attempt to argue that the federal RICO claims asserted here are not dependent on state law is wrong. ECF 77, p.17. Plaintiffs admit that in this Action they "seek damages for collection of an unlawful debt as defined by the RICO statute." *Id.* But RICO statute defines "unlawful debt" by reference to *state law*. *See Durante Bros.*, 755 F.2d 239, 248 (2d Cir. 1985) Similarly, Plaintiffs assert that state court did not adequately protect their rights merely because the state court ruled against them. The state court offered full discovery and opportunity to replead their dismissed RICO claims. That Plaintiffs did not avail themselves of this process, is not the fault of the process.

### III. PLAINTIFFS' ASSERTION THAT SERVICE ON YITZCHAKOV WAS "GOOD ENOUGH" DOES NOT PROVIDE THIS COURT JURIDICTION OVER HIM.

Plaintiffs' failure to effect service on Yitzchakov pursuant to CPLR 308(4) requires his dismissal. Strict compliance with the provisions for service of process is required to obtain jurisdiction. *Estate of Waterman v. Jones*, 46 A.D.3d 63, 65 (2d Dept. 2007). Service on co-defendant BMF was irrelevant to whether Yitzchakov was properly served.

Plaintiffs Opposition does not counter Plaintiffs' failure to conduct the required due diligence before resorting to "mail and nail" service and that their papers are facially insufficient. Plaintiffs contend that four prior attempts by the process server to effectuate personal service on Yitzchakov is "patently sufficient." However, "the due diligence requirement refers to the quality of the efforts made to effect personal service, and certainly not to their quantity or frequency." *Id.* (quoting *Barnes v. City of New York*, 70 A.D.2d 580 (2d Dept. 1979), *aff'd* 51 N.Y.2d 906 (1980)). In *Barnes*, the process server's four attempts to serve defendants at their home was insufficient when the attempts occurred only during normal working hours, and not "at a time when one might

9

have expected such individuals to be home, prior to leaving for work or after working hours, or at their place of business." *Id.*

Plaintiffs' affidavit describes only service attempts during normal working hours or the time people often dine out. The process server made no morning, lunch, or weekend attempts, and no attempt to determine where or when Yitzchakov works or commutes. ECF 70, p.15, and Ex. C. Additionally, attempts were all made during December/January when people often travel. *Id.* Plaintiffs failed to show basic due diligence, *e.g.* skip trace, or attempts to serve at work. Like *Barnes*, the attempts here "do not establish that the process server exercised such due diligence as the statute requires to permit the use of substituted service." 70 A.D.2d at 580. Plaintiffs' attempts are facially insufficient.

## IV.    PLAINTIFFS MISUNDERSTAND SETTLED NEW YORK LAW.

Plaintiffs proclaim that "courts within this District have found that limiting adjustment requests to only a few times per month and/or with discretion to deny adjustments if the merchant does not provide all requested documents renders them illusory and thus loans, including the Second Circuit." ECF 77, p.14. This is not the law.

In *Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*, 2023 U.S. App. LEXIS 14241, *4 (2d Cir. 2023), the Second Circuit found a reconciliation provision illusory because "any adjustment to the daily amount was subject to Richmond's 'sole discretion.'" That contract failed at least two of the three factors without discussion of time periods or whether reconciliations required providing requested documents[3]. In *Fleetwood*, the Second Circuit rejected *sub silencio* a newly created test from a handful of district court judges that did not follow the three factor test. The three citations following *Fleetwood* in the Opposition pre-date the Second Circuit's *Fleetwood*

---

[3] Reconciliation has to be contingent upon providing documents or other objective data showing the actual receivables. What else would one *reconcile* with?

decision and are essentially non-precedential post *Fleetwood*. The *Funderz* decision likewise does not support their contention. In *Funderz*, the court explained that reconciliations were "expressly discretionary and Funderz was explicitly entitled to reject any reconciliation requests" because they were "a courtesy" that Funderz was "under no obligation to provide." 2024 U.S. Dist. LEXIS 10134 at *27-28.

A reconciliation may be illusory only when the contract provides no contractually enforceable rights to reconcile; it does not depend on *when* reconciliations take place. *Oakshire Props., LLC v. Argus Capital Funding, LLC*, 229 A.D.3d 1199, 1201 (4th Dept. 2024). If every form of reconciliation was at the buyer's "sole discretion and as it deems appropriate," then the seller would have no ability to sue for breach if reconciliation was denied where one would have benefitted the seller. *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 666 (2d Dept. 2020). Contrastingly, claims that a buyer improperly denied a contractually required reconciliation implicate breach of contract, not usury. *OriginClear Inc. v. GTR Source, LLC*, 2021 U.S. Dist. LEXIS 239013, *16 (W.D.N.Y. Dec. 14, 2021); *FCI Enters. Inc. v. Richmond Capital Group, LLC*, 2019 NY Slip Op 30711(U) (Sup. Ct. Kings. 2019); *Pearl Delta Funding, LLC v Illinois Collection Serv., Inc.*, 2023 U.S. Dist. LEXIS 206803, *5 (E.D.N.Y. Nov. 17, 2023).

A limitation on the number of reconciliations per month or when reconciliations take place does not excise a seller's right to reconcile unless reconciliation becomes impossible in every conceivable scenario. This follows because for a colorable usury allegation, the question is "whether the [alleged buyer] **'is absolutely entitled to repayment under all circumstances**,'" not whether payment is due under some, most, or almost all circumstances. *LG Funding, LLC*, 181 A.D.3d at 665 (emphasis added). Limiting the amount or frequency of reconciliation requests cannot impact "all circumstances," only some. Written requests, document production, and time

11

limitations for reconciliation is functionally necessary to reconcile. *See Cambridge Funding Source LLC v. Painted Paws LLC,* 2023 N.Y. Misc. LEXIS 2147 (Sup. Ct. Monroe Cnty. 2023).

The reconciliation language was mandatory for BMF; BMF's failure to provide a requested reconciliation when due, could have been a breach of contract. The Agreement repeatedly uses "shall" for BMF's reconciliation obligations, rather than "sole discretion."   ECF 76-5, §1.4. Moreover, the Agreement mandated BMF explicitly accept its risk of loss stating that "Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. BAL is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and BAL assumes these risks based on Merchant's representations, warranties and covenants in this Agreement....Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount." ECF 76-5, p.3.  If Plaintiffs had no receivables or their business failed, BMF would have had no argument that Plaintiffs owed anything.

The state court's ruling is definitive and requires the same outcome here--dismissal.

Dated: March 20, 2025

/s/ Christopher R. Murray
Christopher R. Murray, Esq.
Murray Legal, PLLC
170 Old Country Rd., Suite 608
Mineola, New York 11501
Tel: (516) 260-7367
E-Mail: cmurray@murraylegalpllc.com
*Attorneys for Defendants*
*BMF Advance, LLC*
*and Gavriel Yitzchakov*

12

## CERTIFICATE OF WORD COUNT

CHRISTOPHER R. MURRAY, an attorney duly licensed to practice law in the State of New York, declares and affirms under penalty of perjury the foregoing brief, excluding tables and signature blocks was 3,499 words as counted by Microsoft Office 365.

Dated: March 20, 2025

/s/ Christopher R. Murray
Christopher R. Murray, Esq.

## CERTIFICATE OF SERVICE

CHRISTOPHER R. MURRAY, an attorney duly licensed to practice law in the Courts of the State of New York, declares and affirms under penalty of perjury that on March 20, 2025, I served the Defendant's Reply Memorandum of Law, and all supporting documents via ECF on counsel for all parties.

Dated: March 20, 2025

/s/ Christopher R. Murray
Christopher R. Murray, Esq.
Murray Legal, PLLC
170 Old Country Rd., Suite 608
Mineola, New York 11501
Tel: (516) 260-7367
E-Mail: cmurray@murraylegalpllc.com
*Attorneys for Defendants*
*BMF Advance, LLC*
*and Gavriel Yitzchakov*

13