Jeffrey Chubak
John Brewer
Amini LLC
130 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com
jbrewer@aminillc.com
Attorneys for Defendants Spin Capital, LLC
and Avrumi (a/k/a Josh) Lubin

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOLDEN FOOTHILL INSURANCE SERVICES, LLC, LIFE FACTOR II, LLC, LIFE SHARES II, LLC, EL DORADO HILLS INSURANCE SOLUTIONS, INC., LONE WOLF INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC, THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC. and TATANISHA LEER,<br>　　　　　　　　　　　Plaintiffs,<br>v.<br>SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN, BMF ADVANCE LLC, GAVRIEL YITZCHAKOV a/k/a GABE ISAACOV, HI BAR CAPITAL, LLC, YOEL GETTER a/k/a JOEL GETA and YISROEL HERBST,<br>　　　　　　　　　　　Defendants. | Case 1:24-cv-08515-AS |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS AMENDED COMPLAINT AS AGAINST DEFENDANTS
<u>SPIN CAPITAL, LLC AND AVRUMI (a/k/a JOSH) LUBIN</u>**

## **TABLE OF CONTENTS**

                                                                                                                      **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ....................................................................................................................... 1

I.      NOW THAT THE LEER PARTIES HAVE CHANGED THEIR THEORY OF THE CASE, THE AMENDED COMPLAINT DOES NOT ALLEGE ANY COLLECTION OF UNLAWFUL DEBT BY SPIN OR LUBIN ................................................................. 1

II.     THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD STANDING ... 2

III.    THE AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO PRECLUSION AND ABSTENTION DOCTRINES ........................................................ 3

        A.     Collateral Estoppel ............................................................................................... 3

        B.     Res Judicata ......................................................................................................... 6

        C.     Rooker-Feldman Abstention ............................................................................... 7

        D.     Colorado-River Abstention ................................................................................. 8

CONCLUSION .................................................................................................................... 9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Home Assurance Co. v. Int'l Ins. Co.*,
  90 N.Y.2d 433 (1997) .................................................................................................. 3, 5

*Bankers Trust Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988) ............................................................................................ 2

*B.R. De Witt, Inc. v. Hall*,
  19 N.Y.2d 141 (1967) ....................................................................................................... 6

*Connecticut Nat'l Bank v. Fluor Corp.*,
  808 F.2d 957 (2d Cir. 1987) .............................................................................................. 7

*D'Addario v. D'Addario*,
  901 F.3d 80 (2d Cir. 2018) ................................................................................................ 2

*Environmental Defense v. EPA*,
  369 F.3d 193 (2d Cir. 2004) .............................................................................................. 5

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994) ................................................................................................ 2

*Goldentree Asset Mgm't, L.P. v. Longaberger Co.*,
  448 F. Supp. 2d 589 (S.D.N.Y. 2006) ............................................................................... 8

*Hoblock v. Albany Co. Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005) ................................................................................................ 9

*Jiggets v. NYC Human Resources Admin.*,
  1997 WL 260065 (S.D.N.Y. May 19, 1997) .................................................................... 7

*Lateral Recovery LLC v. Funderz.net, LLC*,
  2024 WL 4350369 (S.D.N.Y. Sept. 27, 2024) ............................................................... 4, 6

*LG Funding, LLC v. United Senior Props. of Olathe, LLC*,
  181 A.D.3d 664 (2d Dep't 2020) ...................................................................................... 4

*McKithen v. Brown*,
  481 F.3d 89 (2d Cir. 2007) ................................................................................................ 3

*Montefiore Hosp. and Medical Center*,
  59 N.Y.2d 737 (1983) ....................................................................................................... 6

*Paramount Pictures Corp. v. Allianz Risk Transfer AG*,
  31 N.Y.3d 64 (2018) .................................................................................................... 5

*Philogene v. Duckett*,
  2018 WL 3946447 (S.D.N.Y. Aug. 16, 2018) ........................................................... 9

*Phoenix Light SF Limited v. Bank of New York Mellon*,
  66 F.4th 365 (2d Cir. 2023) ........................................................................................ 5

*Plymouth Ventures, II, L.P. v. GTR Source, LLC*,
  988 F.3d 634 (2d Cir. 2021) ....................................................................................... 5

*Principis Cap., LLC v. I Do, Inc.*,
  201 A.D.3d 752 (2d Dep't 2022) ................................................................................ 4

*Simon v. Capital Merchant Servs., LLC*,
  2020 WL 615091 (S.D.N.Y. Feb. 10, 2020) ............................................................... 5

*Stochastic Decisions, Inc. v. DiDomenico*,
  995 F.2d 1158 (2d Cir. 1993) ..................................................................................... 3

*Taussig v. Clipper Group, L.P.*,
  13 A.D.3d 166 (1st Dep't 2004) ................................................................................. 3

*TSC Indus. v. Northway, Inc.*,
  426 U.S. 438 (1976) ................................................................................................... 3

*Ulico Cas. Co. v. Cox Mechanical Contracting, Inc.*,
  2007 WL 2265563 (S.D.N.Y. Aug. 2, 2007) .............................................................. 8

*Woodford v. Community Action Agency of Greene County, Inc.*,
  239 F.3d 517 (2d Cir. 2001) ....................................................................................... 8

**Statutes and Rules**

18 U.S.C. § 1961 ............................................................................................................... 1

18 U.S.C. § 1964 ............................................................................................................... 2

CPLR 3019 ........................................................................................................................ 9

CPLR 3211 ........................................................................................................................ 4

**Statutes and Rules**

Siegel, N.Y. Prac. § 446, "Necessity for Disposition on 'Merits'" ................................... 6

Defendants Spin Capital, LLC ("Spin") and Avrumi (a/k/a Josh) Lubin ("Lubin") submit this reply memorandum of law in further support of their motion to dismiss.[1]

**ARGUMENT**

**I.    NOW THAT THE LEER PARTIES HAVE CHANGED THEIR THEORY OF THE CASE, THE AMENDED COMPLAINT DOES NOT ALLEGE ANY COLLECTION OF UNLAWFUL DEBT BY SPIN OR LUBIN**

After the motions to dismiss were filed, the Leer Parties unilaterally abandoned (ECF #78) the branch of the Amended Complaint seeking a declaratory judgment that the Spin loan is usurious, thereby conceding it is not an "unlawful debt" under 18 U.S.C. § 1961(6). Accordingly, Spin's pursuit of the State Court Action in which it seeks to enforce and collect that loan from the Leer Parties cannot constitute "collection of an unlawful debt" and cannot form the basis for a 11 U.S.C. § 1962 violation. The Leer Parties may claim that the concededly lawful Spin loan was used to refinance the allegedly unlawful MCAs, but they cite no authority for the proposition that refinancing constitutes "collection".

The Leer Parties' new theory is that a future judgment in Spin's favor in the State Court Action for $15 million or more will be a "*valid* judgment" (NYSCEF #77, "Opposition Br." at 5) (emphasis in original) but that all of the current defendants, including Spin and its principal Lubin, would then somehow owe the full amount of that judgment to the Leer Parties as RICO damages (before trebling), thereby making Spin's anticipated victory in the State Court Action completely illusory. They cite no authority whatsoever recognizing anything like this fantastical new liability theory against Spin and Lubin.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in Spin's and Lubin's moving brief. (ECF #73, "Moving Br.")

## II. THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD STANDING

Spin and Lubin moved to dismiss for lack of RICO standing under 18 U.S.C. § 1964(c). (Moving Br. Argument Point III.A.2.) The Leer Parties have essentially ignored this argument. They do not dispute that standing requires actual "out-of-pocket" financial loss (Moving Br. at 15) or the arithmetic showing (Moving Br. at 16-17) that thus far the Leer Parties have received more money than they have paid pursuant to the transactions they attack as "unlawful debt." They have thus conceded both points.

Without acknowledging the standing issue, they do claim that they will suffer RICO damages in the future if and when Spin prevails in the State Court Action (and, presumably, is able to actually collect its judgment in whole or in part). But potential future loss is not the out-of-pocket loss RICO requires and thus would not give rise to standing even if their "refinancing" theory made sense against some defendants other than Spin and Lubin. *D'Addario v. D'Addario*, 901 F.3d 80, 93 (2d Cir. 2018) (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994)) ("no civil RICO cause of action … accrues 'until the amount of damages becomes clear and definite'"); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988) (damages contingent on litigation outcome is "speculative" and "unprovable", and therefore "any claim for relief based on the [associated] injury must therefore be dismissed").

The Leer Parties' separately assert that "even if the State Action finds that Plaintiffs owe zero dollars, Plaintiffs have still sustained damages of more than $700,000 in defense costs." (Opposition Br. at 5.)

This does not salvage standing. Any hypothetical ruling in the State Court Action that Spin is owed no money by the Leer Parties (under the loan they no longer contend is "unlawful debt") is speculation about the future. But insofar as the Leer Parties suffered any potential RICO injury at all, it was when the allegedly usurious MCAs were repaid from the proceeds of the Spin loan,

2

i.e. before the State Court Action was even filed. *See McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007) ("a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings"). Legal fees "may constitute RICO damages *when they are proximately caused by a RICO violation*." *Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1167 (2d Cir. 1993) (ruling that, on the record presented, a small portion of the fees sought had been proximately caused by a RICO violation but the bulk had not been). In any event, now that the Leer Parties have conceded that the Spin loan was not "unlawful debt" and the State Court Action to enforce it thus not "enforcement of unlawful debt," they cannot explain why they irrationally spent resources mounting an apparently hopeless defense.

### III. THE AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO PRECLUSION AND ABSTENTION DOCTRINES

#### A. Collateral Estoppel

The Leer Parties argue their RICO claims are not barred by collateral estoppel because whether the MCAs are unlawful debt is a pure legal issue. (Opposition Br. at 7, citing *Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440 (1997).)

That is wrong. While "interpretation of an unambiguous contract is a question of law" (*Taussig v. Clipper Group, L.P.*, 13 A.D.3d 166, 167 (1st Dep't 2004)), the subject issue, whether the MCAs are unlawful debt, is a "mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). The best authority they can muster for their current argument that the MCAs are disguised loans rather than purchase and sale agreements itself shows that some MCAs may be disguised loans (which could be unlawful if they violate the usury laws), others may not be, and

3

some cannot be determined to be loans or not on their face but require consideration of additional evidence and jury factfinding at trial.[2] Indeed, the numerous documents beyond the text of the MCAs themselves that the Leer Parties seem to want this Court to consider confirms that their claim that the MCAs are disguised usurious loans is simply a matter of reading and interpreting the four corners of unambiguous documents.

Here, the State Court Action resolved that mixed question of fact and law adversely to the Leer Parties, applying the relevant legal standard, articulated in *Principis Cap., LLC v. I Do, Inc.*, 201 A.D.3d 752 (2d Dep't 2022) and *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664 (2d Dep't 2020), to the MCAs attached to the Counterclaim (NYSCEF #139).[3] Perhaps the state court might have ruled differently had the Leer Parties made a different record in that action like they now seek to make here, but they were invited to make such a fuller record in the State Court Action after discovery and declined that invitation.

---

[2] In *Lateral Recovery LLC v. Funderz.net, LLC*, 2024 WL 4350369 (S.D.N.Y. Sept. 27, 2024), Judge Liman found certain MCAs ("October Agreements") not alleged to be substantially similar to those herein "were unambiguously loans". *Id*. at *30. But subsequent MCAs ("November Agreements"), which "paid off the amounts due and owing under the October agreements" and which the Leer Parties argue are "substantially similar to those here" (Opposition Br. at 13) "are less straightforward. Taken in isolation and on its face, each November agreement is plausibly a genuine purchase of receivables. However, Plaintiffs introduce significant extrinsic evidence supporting an inference that the apparent purchase is merely a guise for continued usurious lending. This raises a material issue of fact as to whether the November Agreements were a cover for usury, precluding summary judgment." *Funderz.net*, 2024 WL 4350369, at *30 & n.35. The need to resort to extrinsic evidence to conclude that the November Agreements may have been a guise for usurious lending makes clear the underlying issue is at a minimum a mixed question, not a pure legal one that can be determined on the face of the agreement.

[3] And the same MCAs (NYSCEF #189, #190, #191, #192, #193) attached to the motion papers together with the disbursement authorization (NYSCEF #194) directing Spin to disburse loan proceeds to payoff amounts due BMF and Hi Bar. (Dismissal Order at 1, noting these documents were considered, pursuant to CPLR 3211(a)(1).)

4

The notion that the subject issue is anything other than a mixed question of law and fact is also belied by Leer Parties' argument (Opposition Br. at 2-3, Argument Point III) that preclusion doctrines should be inapplicable because of the 144 paragraphs and 22 exhibits added to the Amended Complaint in this Court as compared to the Counterclaim.

Accordingly, "New York's pure-legal-question exception to issue preclusion has no application here." *Phoenix Light SF Limited v. Bank of New York Mellon*, 66 F.4th 365, 372 (2d Cir. 2023) (citing *Am. Home Assurance*, 90 N.Y.2d at 440 n.1, "noting that 'mixed question[s] of law and fact' are subject to issue preclusion").

The Leer Parties' contention that Spin and Lubin are "invit[ing] the Court to embrace" "the very legal error" on which the district court in *Simon v. Capital Merchant Servs., LLC*, 2020 WL 615091 (S.D.N.Y. Feb. 10, 2020), *rev'd in part*, *Plymouth Ventures, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) was reversed is simply wrong. There, the district court, applying federal preclusion principles even though it sat in diversity, *declined* to apply collateral estoppel to a state court judgment on the ground that the policies "that drive the application of collateral estoppel 'may be outweighed by other substantive policies'" (2020 WL 615091, at *9, citing *Environmental Defense v. EPA*, 369 F.3d 193, 203 (2d Cir. 2004)). The Second Circuit reversed, on the ground that district courts sitting in diversity must apply the preclusion principles "that would be applied by state courts in the state in which the federal diversity court sits", and this policy exception is unavailable under state law. 988 F.3d at 642. *Plymouth* is inapposite because the federal law policy exception relied upon by that district court is not being invoked here. *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 69-70 (2018) ("Where

federal and state preclusion law dictate the same result, the applicable law is irrelevant; whether analyzed under federal law or under state law … the outcome is the same").[4]

### B.   Res Judicata

The Leer Parties oppose application of res judicata (Opposition Br. at 9) on the ground that it "cannot apply to a determination made without prejudice."

However, "if a given ground is the common sense equivalent of a general merits disposition, it will be given res judicata effect if relitigation is attempted." Siegel, N.Y. Prac. § 446, "Necessity for Disposition on 'Merits'". *See also Strange v. Montefiore Hosp. and Medical Center*, 59 N.Y.2d 737, 738 (1983) (to be considered "on the merits", "it suffices that it appears from the judgment that the dismissal was on the merits").

That the subsequent order (NYSCEF #470, 2024 WL 53771) held dismissal was "without prejudice" does not prevent this Court from taking this common sense approach. That "the intention was that the Defendants would be entitled to seek appropriate proportional discovery as to the underlying debt and, if appropriate, reassert counterclaims" (id.) does not defeat application of res judicata given that the Leer Parties were given ample opportunity to take discovery during the eighteen-month period between the Dismissal Order and the Note of Issue and chose not to

---

[4] The Leer Parties also argue (Opposition Br. at 3) that *offensive* collateral estoppel principles require that this Court find the subject MCAs herein were loans, citing *Funderz.net*. But Spin and Lubin (unlike certain other defendants named in this action) are not claimed to have been parties to that lawsuit or otherwise bound by its result, so no such estoppel would be applicable to them. *B.R. De Witt, Inc. v. Hall*, 19 N.Y.2d 141, 147-48 (1967). In any event, the contention that Judge Liman in that case found (on summary judgment) "that a form BMF agreement previously used by Isaacov was a loan" is very misleading. Judge Liman found that the October Agreements were loans (2024 WL 4350369, at *30), but that form of agreement is inapposite as the Leer Parties contend (Opposition Br. at 13) that the November Agreements are similar to the MCAs herein. But Judge Liman *declined* to grant "summary judgment on the issue of whether the November Agreements were cover for usurious loans" (2024 WL 4350369, at *33) because of what he considered unresolved fact issues. A bench trial has been scheduled (S.D.N.Y. Case 1:22-cv-02170 ECF #176) for April 14, 2025.

reassert their counterclaims in the State Court Action. That (Opposition Br. at 4, 12) the New York state courts do not have a compulsory counterclaim rule and that the Leer Parties, if writing on a clean slate, could have thus initially chosen a federal forum for their RICO claims is neither here nor there. Although they may regret it in hindsight, they voluntarily chose the State Court Action as the forum for their RICO claims and then deliberately failed to take advantage of the opportunity to amend after discovery to add more factual detail to try to salvage those claims after the initial dismissal. Nor did they perfect their appeal of the Dismissal Order. (Moving Br. at 2.) They cite no authority allowing them to start afresh in federal court after an adverse decision in the state-court forum they chose, given this fact pattern and procedural history. Indeed, it is well-established that a without prejudice dismissal with leave to amend will become a final, with prejudice dismissal on the merits if the plaintiff elects not to take advantage of the opportunity to amend. *See*, *e.g.*, *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 960 (2d Cir. 1987) ("disclaimer of intent to amend effectively cures the nonfinal character of the judgment from which the appeal has been taken"); *Jiggets v. NYC Human Resources Admin.*, 1997 WL 260065 (S.D.N.Y. May 19, 1997) (with prejudice dismissal warranted where "plaintiffs' motion is a transparent attempt to circumvent my order denying them leave to file an amended complaint", which FRCP 15 motion was made "two months after the final deadline" following "several extensions of the time within which to file an amended complaint").

### C. Rooker-Feldman Abstention

The Leer Parties do not dispute that the *Rooker-Feldman* substantive requirements are met but argue that the procedural requirements (first and fourth elements) are not.

As to the first element ("the federal-court plaintiff must have lost in state court"), the Leer Parties argue they did not lose because dismissal was without prejudice. (Opposition Br. at 10.) This erroneous argument is addressed in Argument Point II.B above.

As to the fourth ("state court judgment must have been rendered before the district court proceedings commenced"), they argue that this action is "proceeding in parallel with ongoing state-court litigation" (Opposition Br. at 4, quoting *Hoblock v. Albany Co. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005)) because the State Court Action has not been fully adjudicated. However, the Leer Parties contradict themselves by claiming otherwise (Opposition Br. at 11) in their discussion of *Colorado-River* abstention which argues that this action and the State Court Action are not proceeding "in parallel" because the parties are different and the claims are different. The Leer Parties cannot have it both ways, and in any event the standard is not whether the two actions are "in parallel" but rather whether the Dismissal Order was rendered prior to the commencement of this action which is of course the case.

### D. Colorado-River Abstention

Should this Court determine, that the two actions are proceeding in parallel, the Leer Parties would admit it is appropriate to apply the multi-factor test. Turning to that test, even if the first two factors weigh in favor of the Leer Parties that would not matter. *Goldentree Asset Mgm't, L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589 (S.D.N.Y. 2006) (abstaining even though both factors weighed in favor of federal court exercise of jurisdiction).

The Leer Parties concede that the third factor ("order in which jurisdiction was obtained") weighs in favor of abstention.

With regard to the fourth factor ("avoidance of piecemeal litigation"), Spin and Leer had explained (Moving Br. at 12-13) it is intended to avoid "risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel" such as "where different claims arising out of the same set of events are being litigated in concurrent lawsuits … or where additional parties are included in one litigation but absent from the current action." *Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 524 (2d Cir. 2001); *Ulico Cas.*

*Co. v. Cox Mechanical Contracting, Inc.*, 2007 WL 2265563, at *6 (S.D.N.Y. Aug. 2, 2007). The Leer Parties do not address this, except to state (Opposition Br. at 12) piecemeal litigation is necessary because they can no longer assert RICO claims in the State Court Action and CPLR 3019 permits piecemeal litigation in that it does not have a compulsory counterclaim rule. But the only reason they cannot assert their allegedly improved RICO claims in the State Court Action is their own failure to attempt to do so before the Note of Issue was filed—i.e. after they had had the benefit of the discovery they now purport to rely on to bolster their previously-dismissed claims. They cannot earn a greater right to avoid the state-court forum they originally chose for RICO claims by ignoring procedural deadlines. This factor weighs in favor of Spin and Lubin.

With regard to the fifth factor ("whether federal or state law supplies the rule of decision"), this is a RICO action premised on "unlawful debt", an issue which turns on state law. Spin and Lubin cited decisions (Moving Br. at 13) holding this factor weighed in favor of abstention where state law foreclosure claims were refashioned as RICO claims. The Leer Parties have no response and instead cite only *Philogene v. Duckett*, 2018 WL 3946447, at *9 (S.D.N.Y. Aug. 16, 2018), (Opposition Br. at 12) which has no application as it concerned copyright claims which did not implicate state law. This factor also weighs in favor of abstention.

With regard to the sixth factor ("whether state court will adequately protect the rights of the party seeking to invoke federal jurisdiction"), the parties are in agreement that this factor turns on whether the Leer Parties had a fully and fair opportunity to litigate this matter on the merits, as against Spin and Lubin.

## **CONCLUSION**

For the foregoing reasons as well as those previously briefed and those briefed by the other defendants to the extent applicable to Spin and Lubin, this action should be dismissed. Dismissal

9

should be with prejudice, given the grounds for dismissal and noncompliance with Individual Rule 8.G.

Dated: New York, NY　　　　　　　　　　　Amini LLC
　　　　 March 21, 2025

　　　　　　　　　　　　　　　　　　　　/s/ Jeffrey Chubak
　　　　　　　　　　　　　　　　　　　　Jeffrey Chubak
　　　　　　　　　　　　　　　　　　　　John W. Brewer
　　　　　　　　　　　　　　　　　　　　130 West 35th Street
　　　　　　　　　　　　　　　　　　　　12th Floor
　　　　　　　　　　　　　　　　　　　　New York, NY 10001
　　　　　　　　　　　　　　　　　　　　(212) 490-4700
　　　　　　　　　　　　　　　　　　　　jchubak@aminillc.com
　　　　　　　　　　　　　　　　　　　　jbrewer@aminillc.com
　　　　　　　　　　　　　　　　　　　　Attorneys for Defendants Spin Capital, LLC
　　　　　　　　　　　　　　　　　　　　and Avrumi (a/k/a Josh) Lubin