UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOLDEN FOOTHILL INSURANCE SERVICES, LLC, LIFE FACTOR II, LLC, LIFE SHARES II, LLC, EL DORADO HILLS INSURANCE SOLUTIONS, INC., LONE WOLF INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC, THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC., and TATANISHA LEER <br><br> Plaintiffs, <br><br> v. <br><br> SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN, BMF ADVANCE LLC, GAVRIEL YITZCHAKOV a/k/a GABE ISAACOV, HI BAR CAPITAL, LLC, YOEL GETTER a/k/a JOEL GETA, and YISROEL HERBST, <br><br> Defendants. | Civ. A. No.: 1:24-CV-08515 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS YISROEL AND HI-BAR CAPITAL'S JOINDER MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**WHITE AND WILLIAMS LLP**
Shane R. Heskin
Alex D. Corey
810 Seventh Avenue, Suite 500
New York, New York  10019
Tel:  (212) 244-9500
heskins@whiteandwilliams.com
coreya@whiteandwilliams.com
*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................................4

ARGUMENT ...............................................................................................................5

    I.      STANDARD OF REVIEW ...................................................................................5

    II.     PLAINTIFFS ADEQUATELY ALLEGED THE HI BAR MCA AGREEMENTS ARE USURIOUS LOANS ...............................................................................................5

    III.    THE STANDING AND PROCEDURAL ARGUMENTS THE HI BAR DEFENDANTS JOIN ARE MERITLESS ..................................................................11

        a.  Leer Defendants Suffered and Pled Damages, Thereby Establishing Standing ..........12

        b.  Collateral Estoppel, Res Judicata, and Rooker-Feldman Arguments Are Meritless Because The Counterclaims Dismissal Was A Question Of Law Without Prejudice ..................................................................................................14

        c.  The Colorado River Doctrine Is Also Inapplicable.......................................................20

CONCLUSION.............................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*390 W. End Assoc. v. Raiff*,
   166 Misc. 2d 740 (1st Dep't 1995) ..........................................................................15

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
   37 N.Y.3d 320 (N.Y. 2021) ......................................................................................6

*Akf, Inc. v. Haven Transp. Bus. Sols., Inc.*,
   2024 U.S. Dist. LEXIS 103271 (N.D.N.Y. June 11, 2024).................................7, 8

*Am. Home Assurance Co. v. Int'l Ins. Co.*,
   90 N.Y.2d 433 (N.Y. 1997) .....................................................................................15

*B & T Supplies, Inc. v. GemJ Chehebar Grat. LLC*,
   2025 U.S. Dist. LEXIS 4835 (S.D.N.Y. Mar. 17, 2025) ........................................13

*Basis Yield Alpha Fund Master v. Morgan Stanely*,
   136 A.D.3d 136 (1st Dep't 2015) ............................................................................16

*Bostwick v. Credit Agricole Corporate*,
   149 A.D.3d 655 (1st Dep't 2017) ............................................................................16

*Cloudfund, LLC v. Mobile Rehad, Inc.*,
   2024 N.Y. Misc. LEXIS 4817 (N.Y. Sup. Ct. May 1, 2024).....................................7

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)................................................................................................20

*Davis v. Richmond Capital Group*,
   194 A.D.3d 516 (1st Dep't 2021) ..................................................................6, 9, 11

*Dreisinger v. Teglasi*,
   130 A.D.3d 524 (1st Dep't 2015) ............................................................................16

*Edwards v. McMillen Capital, LLC*,
   952 F.3d 32 (2d Cir. 2020)........................................................................15, 17, 19

*Fleetwood Servs., LLC v. Ram Cap. Funding LLC*,
   20-cv-5120 (LJL), 2022 U.S. Dist. LEXIS 148032 (S.D.N.Y. Aug. 17, 2022) ......13

*Fleetwood Servs., LLC v. Ram Capital Funding LLC*,
   2021 U.S. Dist. LEXIS 94381 (S.D.N.Y. May 18, 2021) (J., Liman)........................5

*Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*,
   2023 U.S. App. LEXIS 14241 (2d Cir. June 8, 2023) ..............................................6

34740372v.1

*Gallagher v. Long Is. Plastic Surgical Group, P.C.*,
   113 A.D.3d 652 (2d Dep't 2014) ........................................16

*Hi Bar Capital LLC v. Parkway Dental Servs, LLC*,
   2022 N.Y. Misc. LEXIS 5814 (Sup. Ct. Aug. 25, 2022) .................1, 10, 11

*Hoblock v. Albany County Bd. of Elections*,
   422 F.3d 77 (2d Cir. 2005)..........................................20

*In re State Presence, Inc.*,
   2016 Bankr. LEXIS 2377 (Bankr.S.D.N.Y. June 24, 2016)................18

*Jones v. Select Portfolio Servicing, Inc.*,
   2024 U.S. Dist. LEXIS 93344 (E.D.N.Y. May 24, 2024) ................21

*Landau, P.C. v. LaRossa, Mitchell & Ross*,
   11 N.Y.3d 8 (N.Y. 2008) ............................................19

*Lateral Recovery, LLC v. Cap. Mech. Servs. LLC.*,
   632 F. Supp. 3d 402 (S.D.N.Y. 2022)..............................6, 7, 11

*Lateral Recovery LLC v. Funderz.Net, LLC*,
   2024 U.S. Dist. LEXIS 10134 (S.D.N.Y. Jan. 19, 2024)................5, 6

*Lateral Recovery LLC v. Funderz.Net, LLC*,
   2024 U.S. Dist. LEXIS 176985 (S.D.N.Y. Sept. 27, 2024)..........7, 8, 10, 11

*Lateral Recovery LLC v. Queen Funding LLC*,
   2022 U.S. Dist. LEXIS 129032 (S.D.N.Y. July 20, 2022) .........6, 7, 8, 11

*LG Funding, LLC v. United Senior Properties of Olathe, LLC*,
   181 A.D.3d 664 (2d Dep't 2020) ...................................6, 7

*Matter of Mental Hygiene Legal Serv. v. Delaney*,
   38 N.Y.3d 1076 (N.Y. 2022) .........................................16

*Miller Mfg. v. Zeiler*,
   72 A.D.2d 338 (1st Dep't 1980) .....................................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)...................................................21

*People v. Richmond*,
   80 Misc.3d 1213(A) (N.Y. Sup. Ct. 2023)..............................9

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*,
   988 F.3d 634 (2d Cir. 2021).........................................15

-iii-

*Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006)........................................................................................21

*SEC v. Thompson*,
    238 F. Supp. 3d 575 (S.D.N.Y. 2017)......................................................................18

*Simmons v. Reich*,
    2021 U.S. App. LEXIS 32372 (2d Cir. Oct. 29, 2021)............................................13

*Sitgraves v. Fed. Home Loan Mortg. Corp.*,
    265 F. Supp. 3d 411 (S.D.N.Y. 2017)................................................................24, 25

*Stochastic Decisions, Inc. v. DiDomenico*,
    995 F.2d 1158 (2d Cir. 1993)...................................................................................13

*Strange v. Montefiore Hosp. and Medical Center*,
    59 N.Y.2d 737 (1983) ..............................................................................................19

*U.S. Bank N.A. v. Kahn Prop. Owner, LLC*,
    206 A.D.3d 855 (2d Dep't 2022) .............................................................................17

*Yunus v. Lewis-Robinson*,
    2019 U.S. Dist. LEXIS 5654 (S.D.N.Y. Jan. 11, 2019)..........................................20

**STATUTES**

18 U.S.C. 1961(6) .............................................................................................................12

RICO ...................................................................................................................... *passim*

**OTHER AUTHORITIES**

CPLR 3211(a)(7) ..............................................................................................................16

FRCP Rule 8 .......................................................................................................................5

34740372v.1

Plaintiffs Golden Foothill Insurance Services, LLC, Life Factor II, LLC, Life Shares II, LLC, El Dorado Hills Insurance Solutions, Inc., Lone Wolf Insurance Services, Inc., ELDO Investments, LLC, The Genesis Fund, LLC, KTL Holdings, Inc. (collectively the "Leer Companies"), and Tatanisha Leer ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Yisroel Herbst ("Herbst") and Hi-Bar Capital LLC's ("Hi Bar," collectively, "Hi Bar Defendants") joinder to Defendants' Spin Capital, LLC ("Spin") and Avrumi Lubin ("Lubin") motion to dismiss the first Amended Complaint (the "Motion").

## PRELIMINARY STATEMENT

The Hi Bar Defendants adopt the same defective procedural arguments raised by Spin and Lubin in their Motion, including collateral estoppel and res judicata. The argument is both legally wrong and factually self-defeating because at least one New York court has previously ruled that Hi Bar's MCA Agreements, *compare* Heskin Decl. Ex. 7 [*with* ECF Nos. 11-12 and 11-22], were in reality loans. *Hi Bar Capital LLC v. Parkway Dental Servs, LLC*, 2022 N.Y. Misc. LEXIS 5814, *14-15 (Sup. Ct. Aug. 25, 2022). Given that this *Hi Bar* decision was issued months before the State Court dismissed the Counterclaims, [ECF No. 76-16], collateral estoppel would work offensively against Hi-Bar, not defensively against the claims in this Action.

Notwithstanding the *Hi Bar* decision adopting the "more persuasive" learned teachings of this District, the Hi Bar Defendants still argue their MCA Agreements are not usurious loans, but add nothing new to support this proposition, which Plaintiffs already refuted conclusively in their own opposition to Spin and Lubin's motion to dismiss the Amended Complaint. *See* [ECF No. 77]. As set forth therein, Plaintiffs' Amended Complaint cures any purported defects with their Counterclaims in the State Action with more particularized allegations and documentary evidence demonstrating that the two Hi Bar MCA Agreements are substantively loans with interest rates ranging from 331% to more than 600%. [ECF. No. 11] ¶ 9. Significantly, the Amended Complaint

was able assert these more robust allegations as to the Hi Bar Defendants' intent to treat their MCA Agreements as absolutely repayable loans without Hi Bar having provided any discovery in the State Action, despite being compelled to by the Court to do so.

Among other facts not previously alleged, the Amended Complaint contains additional exhibits, recent judicial decisions, and other information that was unavailable when the Counterclaims were drafted to further support that the Hi Bar MCA Agreements are loans. For instance, Exhibit 13 to the Amended Complaint is an email to Lubin from Stefan Leer showing a ACH debit made by Hi Bar on one if its MCA Agreements with the Leer Companies that reads "ACH PAYMENTS FOR LOAN." [ECF No. 11-13]. The Amended Complaint also includes as Exhibit 19 a text message exchange between Lubin, the purported broker for the Hi Bar MCA Agreements, and Stefan Leer discussing the economics of one of the MCA Agreements with repayment amounts untethered to the receivables. [ECF No. 11-19].

The Hi Bar Defendants mistakenly argue that by virtue of their purported "Mandatory Reconciliation and Adjustment Provisions . . . if the fixed payment amount is subject to a mandatory adjustment through a reconciliation provision, which allows the merchant to request a reduction of the remittance amounts to reflect diminutions of its receivables, that contractual mechanism further demonstrates that the transaction is not a loan." [ECF No. 81]. First, the Amended Complaint demonstrates, by attaching the two Hi Bar MCA Agreements as exhibits, [ECF Nos. 11-12 and 11-22], that these purported "mandatory" provisions were anything but mandatory as they contained numerous qualifications designed to prevent Plaintiffs from obtaining a reconciliation or adjustment to the daily remittance, including prohibiting any reconciliation or adjustment if the merchant was in default. *Id*. §§ 1.3, 1.4. The Amended Complaint explains how the Leer Companies were in default as soon as they entered the first Hi Bar MCA Agreement

34740372v.1

because it made having other active MCA Agreements an automatic default, which the Leer Companies were immediately placed in because they, as Hi Bar knew, had already entered into a BMF MCA Agreement shortly before the first Hi Bar MCA Agreement. [DE 11] ¶¶ 97-118. Second, as demonstrated by Exhibit 20 to the Amended Complaint, when the Leer Companies made a reconciliation request, Lubin denied it within moments without any check on the Leer Companies' receivables, and the parties ultimately just negotiated a new rate notwithstanding Stefan Leer explaining that the Leer Companies were "cash poor." [ECF No. 11-20].

The Hi Bar Defendants also argue their MCAs are not loans because bankruptcy is not an event of default, [ECF No. 81] at 7, but that is not the test for whether a transaction is a loan. The test is whether the lender has *recourse* in the even the merchant declares bankruptcy. As set forth in the Amended Complaint, both Hi Bar MCA Agreements provided recourse for bankruptcy in the personal guaranties signed by Stefan and Tatanisha Leer, which provided that: "In the event that [Hi Bar] must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount." [DE 11] ¶¶ 115, 158. As described below, multiple courts within this District have construed this exact language in an MCA Agreements' personal guaranty as providing recourse in the event of bankruptcy and rendering the MCA Agreement a loan.

The Hi Bar Defendants argue that their MCAs have no fixed duration. [ECF No. 81] at 6. But courts applying New York law regularly find an implied finite term in MCA agreements by dividing the repayment amount by the fixed daily or weekly payment. Both Hi Bar MCA Agreements had fixed terms of 39 days and 44 day, respectively. [ECF No. 11] ¶¶ 111, 162. In addition, while the Hi Bar Defendants refused to comply with an order compelling them to produce

documents in the State Action, [ECF No. 76] ¶¶ 6-7, documents produced by Spin confirm that Lubin negotiated the BMF MCAs to have fixed terms, as reflected in exhibits annexed to the Amended Complaint.  *See* [ECF Nos. 11-10, 11-15].

Finally, to the extent the Hi Bar Defendants seek to incorporate the procedural arguments, such as the Colorado River Doctrine or the *Rooker-Feldman* Doctrine as asserted by Spin, Lubin or any other Defendant, those arguments, as explained in Plaintiffs' opposition to the other Defendants' motion to dismiss, have no merit because the State Action was explicitly decided "without prejudice" *and* with the State Court's explicit contemplation that the claims could be re-alleged with the benefit of discovery.  Under New York statute, Plaintiffs are not compelled to reassert their instant claims in the State Action, which has materially different parties and claims at issue.  [ECF No. 76-3].  In sum, there is no basis to grant the Hi Bar Defendants' Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the Factual and Procedural Background set forth in their opposition to Defendants' Spin, Lubin, BMF Advance LLC ("BMF") and Gabe Isaacov ("Gabe") motions to dismiss the Amended Complaint,  [ECF No. 77] at 6-7, the judge in the State Action made clear that he dismissed the counterclaims "without prejudice."  Heskin Decl. Ex. 10 at 6:10-14 and 8:16-20 ("And if you remember on the counterclaims, I had dismissed the counterclaims without prejudice, with a view that discovery would be permitted so that discovery would yield the basis upon which the counterclaims could be reasserted.  That they would have the ability to reassert appropriate counterclaims") and 9:18-21 ("But there was never an intention by this Court to limit discovery.  Had I wanted to do that, I would have dismissed the claims with prejudice").  BMF conceded at this hearing that the Counterclaims were dismissed without prejudice.  *Id*. 9:22-23. During the hearing, the Judge Borrok encouraged Plaintiffs to obtain all relevant discovery before moving to reassert the counterclaims.  *Id*. at 23:15-24:13.

## ARGUMENT

### I.    STANDARD OF REVIEW

Allegations for RICO violations premised on collection of unlawful debt are held to the general pleading standards of FRCP Rule 8.  *Lateral Recovery LLC v. Funderz.Net, LLC*, 2024 U.S. Dist. LEXIS 10134, *24 (S.D.N.Y. Jan. 19, 2024) ("*Funderz I*") ("Plaintiffs bring a RICO claim based on both the collection of unlawful debt and a pattern of wire fraud racketeering.  Rule 8 applies to the former.") (citing *Fleetwood Servs., LLC v. Ram Capital Funding LLC*, 2021 U.S. Dist. LEXIS 94381, *3 (S.D.N.Y. May 18, 2021) (J., Liman)).  FRCP Rule 8 merely requires "a short plain statement of the claim showing that the pleader is entitled to relief."  *Id*. Rule 8(a)(2). As set forth below, Plaintiffs have more than satisfied this standard.

### II.    PLAINTIFFS ADEQUATELY ALLEGED THE HI BAR MCA AGREEMENTS ARE USURIOUS LOANS

The Hi Bar Defendants begin their Motion claiming the Hi Bar MCAs are not loans because of a purported disclaimer therein which reads "this Agreement . . . is not intended to be, nor shall it be construed as a loan[.]" [ECF No. 81] at 3.  This provision is immaterial to the question of whether the Hi Bar MCA Agreements are loans because under well-settled New York law, "[w]hen determining whether a transaction is a loan, substance—not form—controls." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 335 (N.Y. 2021).

Under recent Second Circuit authority, to determine whether MCAs are really loans, courts consider at least three, non-exhaustive factors: "(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy." *Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*, 2023 U.S. App. LEXIS 14241, *3 (2d Cir. June 8, 2023). Other factors New York law considers include: (4) whether lenders made sure the borrowers were in default immediately (5) whether the

agreements identify particular revenue or accounts that were supposedly purchased; (6) whether the merchant is responsible for collecting the future receipts; (7) whether default is declared after just a few missed payments; and (8) whether the daily payment rates appear to be good faith estimates of merchant's receivables. *Richmond*, 80 Misc. 3d 1213(A) (N.Y. Sup. Ct. 2023); *Funderz I*, *25-35; *LG Funding, LLC v. United Senior Properties of Olathe, LLC*, 181 A.D.3d 664, 666 (2d Dep't 2020); *Davis v. Richmond Capital Group*, 194 A.D.3d 516, 517 (1st Dep't 2021); *Haymount I*, 609 F. Supp. 3d 237 (S.D.N.Y. 2022); *Lateral Recovery LLC v. Queen Funding LLC*, 2022 U.S. Dist. LEXIS 129032, *12-13 (S.D.N.Y. July 20, 2022); *Lateral Recovery, LLC v. Cap. Mech. Servs. LLC.*, 632 F. Supp. 3d 402 (S.D.N.Y. 2022) ("*CMS*").

**First**, the Amended Complaint and attached Hi Bar MCA Agreements allege and demonstrate that Hi Bar had recourse in the event of the Leer Companies declaring bankruptcy because the guaranties therein provided: "In the event that [Hi Bar] must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount." [DE 11] ¶¶ 115, 158; *see also* [ECF Nos. 11-12 and 11-22] at 8. Numerous courts hold that this provision satisfies the recourse for bankruptcy factor and renders an MCA agreement a loan. *Lateral Recovery LLC v. Funderz.Net, LLC*, 2024 U.S. Dist. LEXIS 176985, *81  (S.D.N.Y. Sept. 27, 2024) ("*Funderz II*") ("In the October Agreements FTE bears the entire risk of bankruptcy . . . Funderz can also recover from the guarantors in the event of bankruptcy"); *Y-Capp*, at *13 ("provisions 'worked to ensure while bankruptcy may no longer have been an express default under the revised standard form of MCA Agreement, the guarantor continued to be absolutely liable for repayment in the event of a bankruptcy filing"); *LG Funding*, at 666 (2d Dep't 2020) (same);*CMS*, at  456 (S.D.N.Y. 2022)

(same).  Contrary to Defendants' contentions, this bankruptcy recourse in the MCA Agreements is not triggered by an event of default, as that language comes from an entirely different section of the guaranties while this recourse for bankruptcy clause stands alone without qualification.  ECF Nos. 11-12 and 11-22] at 8.

**Second**, the two Hi Bar MCA Agreements had an implied finite term calculable by simply dividing the repayment amount by the fixed daily payment therein, for terms of of 39 days and 44 day, respectively.  [ECF No. 11] ¶¶ 111, 162.  Numerous courts have found MCA agreements have an implied term through this exact allegation.  *Queen*, at *16 ("a de facto term plausibly exists. The period of payment can be easily calculated by dividing the amount FTE owes by the among of daily payments"); *Haymount I*, at 248 n. 5 (similar); *Cloudfund, LLC v. Mobile Rehad, Inc.*, 2024 N.Y. Misc. LEXIS 4817, *12 (N.Y. Sup. Ct. May 1, 2024) (same); *Akf, Inc. v. Haven Transp. Bus. Sols., Inc.*, 2024 U.S. Dist. LEXIS 103271, *17 (N.D.N.Y. June 11, 2024) (same).  Moreover, the Amended Complaint contains documents showing Lubin negotiating the MCA Agreements as having a fixed term.  *See* [ECF Nos. 11-10, 11-15].  Thus, the Amended Complaint improves upon the allegations in the Counterclaims that the MCAs are loans through the benefit of discovery.

**Third**, the Hi Bar MCAs' purported "mandatory" reconciliation and adjustment provisions were shams.  As alleged in the Amended Complaint, the Hi Bar MCA Agreements' adjustment and reconciliation provisions were shams because it was conditioned on (a) the Leer Companies not being in default; and (b) the Leer Companies providing any documents Hi Bar may request in its discretion. [ECF No. 11] ¶¶ 118, 160.  Further, Hi Bar was not obligated to perform the reconciliation for five days, yet missing just two payments was a default negating any obligation to reconcile. The Amended Complaint also alleged, with supporting documentation, that in practice, when Plaintiffs requested a reconciliation to Lubin, Lubin initially denied it

instantaneously only to coerce the Leer Companies into agreeing to continue making daily deposits without any discussion of their revenue or receivables. [ECF No. 11-20]. Numerous courts have found that conditioning reconciliations or remittance adjustments on the merchant providing any documents the MCA company may request renders the provisions illusory and the MCA a loan. *Queen*, at *14-15 ("the Merchant Agreements by their terms do not require a reconciliation. . . . In each case, any obligation that Queen Funding may have is contingent on the merchant's providing documentation requested by Queen Funding 'in its sole judgment' and in its 'sole and absolute discretion,' respectively. Queen Funding consequently has the absolute ability to nullify any obligation to reconcile"); *Funderz II*, at *75 (similar); *Y-Capp*, at *11-12 ("Defendants constructed a number of obstacles to call on the reconciliation . . . should the merchant fail to submit certain documentation related to reconciliation to the funder on just a single month, that the merchant forfeits the right to *ever* request reconciliation"); *Akf,* at *17 ("the Agreement is almost certainly a loan. First, the Agreement's reconciliation provision . . . is contingent on Haven Transportation submitting the paperwork required by FundKite.").

In addition, Defendants, including Hi Bar and Herbst, set up Plaintiffs to be in immediate default as soon as they entered the first Hi Bar MCA Agreement because that was *after* entering the first BMF MCA Agreement and both MCA Agreements, and the three thereafter, made it a default for the Leer Companies to have more than one MCA with another MCA company. *See* [DE 11] ¶¶ 97-152. Judge Borrok, the same judge that dismissed the Counterclaims in the State Action, would subsequently seize on this feature in similar MCA agreements in ruling them to be loans as a matter of law. *See People v. Richmond*, 80 Misc.3d 1213(A), *7 (N.Y. Sup. Ct. 2023) ("The Predatory Lenders made sure that their Borrowers were in default on Day 1 of the MCAs by requiring that the Borrowers falsely represent that the collateral (i.e. accounts receivable) was

-8-

free and clear of all other loans and that they would not pledge those assets to others"). Thus, the Amended Complaint further cures any defects in the Counterclaim that resulted in the Counterclaims' RICO claims being dismissed without prejudice.

**Fourth**, as set forth in the Amended Complaint per the below chart, comparing the five MCA Agreements, all entered into within less than one month, shows that the daily remittances were not a good faith estimate of the Leer Companies receivables:

| MCA Agreement | Daily Payment | Specified Percentage | Defendants' Estimation of FTE Receivables |
|---|---|---|---|
| 3/2/21 BMF | $4,996 | 10% | $49,960/day |
| 3/10/21 Hi Bar | $8,500 | 20% | $42,500/day |
| 3/12/21 BMF | $8,500 | 10% | $85,000/day |
| 3/25/21 BMF | $25,000 | 10% | $250,000/day |
| 3/25/21 Hi Bar | $20,000 | 20% | $100,000/day |

[ECF No. 11] ¶ 115. Under New York law, an MCA agreement will be construed as a loan where the selection of daily payment rates that did not appear to represent a good faith estimate of receivables." *Davis v. Richmond Capital Group*, 194 A.D.3d 516, 517 (1st Dep't 2021). Per above, Defendants came to wildly different estimations of the Leer Companies' receivables on MCA Agreements entered into on the same day. Per the *Funderz II* decision attached to the Amended Complaint – which was decided well after the State Action dismissed the Counterclaims – the Southern District granted summary judgment finding BMF MCA Agreements to be loans when they too had different estimates for a merchant's receivables on two MCAs entered into on the same day. [DE 11-5] at 28 ("Even if it were possible to claim a sudden increase in revenue or a mistake in the earlier valuation, 'estimates' of $14,999 and $39,999 were made in the agreements signed *on the same day* . . . This is consistent with a loan to be repaid over a fixed period, not a purchase of receivables"). Thus, this is another factor rendering the Hi Bar MCA Agreements loans that was not pled as part of the Counterclaims which were dismissed without prejudice.

**Fifth**, the *Funderz II* decision found that BMF MCA Agreements and others were loans as a matter of law where "no specific receivables were identified" in the MCA Agreements and "the agreement made clear that [the merchant] 'is responsible for ensuring that the specified percentage to be debited by BMF remains in the account and will be held responsible for any fees incurred by BMF resulting from a rejected ACH attempt." [ECF No. 11-5] at 27-28. The *Parkway* decision, analyzing the same form as the instant Hi Bar MCA Agreements, concluded they were loans based on this same reasoning. *Id.* at *11-13 (finding Hi Bar MCA agreement was like a loan where the merchant, "not the account debtors, assumes responsibility for ensuring that the specified percentage to be debited . . . remains in the Account" and where the scope of the purchase was not limited to specific receivables). As both alleged in the Amended Complaint, and is clear from the face of the Hi Bar MCA Agreements, *see* [ECF Nos. 11-12 and 11-22] at 1, the Hi Bar MCA Agreements, the same as that analyzed in *Parkway*, do not identify specific receivables and made the Leer Companies responsible for collecting the receivables Hi Bar purportedly purchased. [ECF No. 11] ¶¶ 116-17, 163-64. Thus, the Amended Complaint cures any pleading deficiencies in the Counterclaims by prominently raising these two factors that courts applying New York law have ruled render an MCA agreement like a loan. *See also*, *Haymount*, at 249 (adopting same factors).

**Sixth**, as alleged in the Amended Complaint, and made clear from the annexed Hi Bar MCA Agreements, the Leer Companies would be in default if they missed just two daily payments. [ECF No. 11] ¶ 114, 157; [ECF Nos. 11-12 and 11-22]. *Funderz II* found this same provision in the BMF MCA Agreements to render them loans as a matter of law on summary judgment. [ECF No. 11-5] at 26. Other courts applying New York law have similarly found provisions making two to three missed payments as rendering the MCA agreement like a loan. *Davis*, 517 (finding MCAs like a loan where there were "provisions making rejection of an automated debit on two or three

occasions without prior notice an event of default"); *Queen*, *18 (same); *CMS*, at 458 (same). What is more, the Hi Bar MCA Agreements attached to the Amended Complaint further provide that it is an event of default if "the Merchant fails to give HBC 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored."  [ECF No. 11-12 and 11-20] § 3.1(d).  The *Parkway* court relied on this exact same provision in a Hi Bar MCA agreement in construing it to be like a loan.  *Id*. at *13.

Significantly, the State Court clarified in the hearing on the Discovery Order that it did not have the full Hi Bar agreements before when it dismissed the Counterclaims.  Heskin Ex. 10 at 11:16-20 ("I didn't have occasion to look at the Hi-Bar Agreement . . . that Merchant Cash Advance Agreements, were not front in center in that way in front of the Court").  With the Amended Complaint, Plaintiffs have put the Hi Bar Agreements before this court, [ECF No. 11-12 and 11-22], and the Amended Complaint alleges how the Hi Bar MCA Agreements hit for all of the above factors.  [ECF No. 11] ¶¶ 87-173.  Consequently, the Amended Complaint more than adequately alleges that the Hi Bar MCA Agreements are usurious loans with interest rates of more than 300%, making them unlawful debt under RICO.  18 U.S.C. 1961(6).

## III.    THE STANDING AND PROCEDURAL ARGUMENTS THE HI BAR DEFENDANTS JOIN ARE MERITLESS

While the Hi Bar Motion only explicitly tries to refute that the Hi Bar MCA Agreements are loans, it also joins all arguments raised by Spin and Lubin in their motion to dismiss the Amended Complaint.  [ECF No. 81].  Spin and Lubin argued that (i) Plaintiffs lack standing to assert RICO claims due to purported lack of damages, and that Plaintiffs claims are barred under either (ii) res judicata; (iii) collateral estoppel; and (iv) the Rooker-Feldman Doctrine, and (v) the Colorado River Doctrine.  [ECF No. 73].  Plaintiffs incorporate by reference their arguments

already made in opposition to Spin's and Lubin's motion on these points, *see* [ECF No. 77] at 7-13 and expand upon them below.

        *a.*       **Leer Defendants Suffered and Pled Damages, Thereby Establishing Standing**

In moving to dismiss the Amended Complaint, Spin and Lubin argued that Plaintiffs do not have standing because, once accounting for the Promissory Note, Plaintiffs ultimately obtained more funds than repaid on the five MCA Agreements plus the Promissory Note. [ECF No. 73] at 15-17. As an initial matter, Plaintiffs are only seeking to recover for the collection of the MCA Agreements as unlawful debt, not the Promissory Note, which Plaintiffs made clear by filing a notice of voluntary dismissal as to any portion of the Amended Complaint that could be construed as seeking to adjudicate the Promissory Note unlawful debt. [ECF No. 78].[1] Because only the five MCA Agreements are at issue, the measure of damages for Plaintiffs' RICO claims are the delta between the total amount funded and the total amount repaid, which is subsequently trebled, not including attorney's fees. *Fleetwood Servs., LLC v. Ram Cap. Funding LLC*, 20-cv-5120 (LJL), 2022 U.S. Dist. LEXIS 148032, at *17 (S.D.N.Y. Aug. 17, 2022).

Under RICO, each MCA Agreement is evaluated independently as its own claim, further demonstrating that damages are measured pursuant to the economics of the MCA Agreement without consideration of extraneous transactions. *See B & T Supplies, Inc. v. GemJ Chehebar Grat. LLC*, 2025 U.S. Dist. LEXIS 4835 (S.D.N.Y. Mar. 17, 2025) ("Each time Plaintiffs entered into an allegedly unlawful MCA Agreement, a new RICO claim against Defendants accrued.

---

[1] This is not to be construed, as Spin and Lubin suggest, as an admission by Plaintiffs that the Promissory Note is enforceable. Plaintiffs asserted an affirmative defense of unconscionability against enforcement of the Promissory Note. [ECF No. 76-2] at 25-26. This affirmative defense was not dismissed. [ECF No. 76-15]. As reflected in the Amended Complaint's exhibits, Plaintiffs only received $1,307,403 in actual cash under the Promissory Note. [ECF No. 11-28]. For this outlay of cash, Spin is seeking more than $13,228,338.90 million in damages, including multiple default components, both as a flat rate, and as 120% interest. [ECF No. 76-25] at 4.

Plaintiffs 'sustained their alleged injuries when they assumed these loan obligations' with unlawful terms") (citing *Simmons v. Reich*, 2021 U.S. App. LEXIS 32372, *2 (2d Cir. Oct. 29, 2021)).  The Amended Complaint seeks recover of the difference between what Plaintiffs received and paid on the five MCA Agreements, which Plaintiffs calculated as $827,703, and then seeks this figure trebled plus their reasonable attorney's fees.  [DE 11] ¶¶ 292, 296; *see also Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993) (holding attorney's fees in defending an action constitute RICO damages).  Plaintiffs set forth in opposing Spin's and Lubin's motion to dismiss that they have incurred $700,000 in attorneys fees defending the State Action.  [ECF No. 31].  Spin and Lubin provide no legal support for the proposition that the Promissory Note's distribution somehow alters Plaintiffs' RICO damages.  *See generally* [ECF No. 73] at 15-17.

Spin's and Lubin's damages argument also ignores the fact that while the MCA Agreements bound all of the Leer Companies, *see* [ECF Nos. 11-8, 11-12, 11-15, 11-17, and 11-22], the pay runs produced by Spin in the State Action show that only Golden Foothill received the funds from the MCA Agreements.  [ECF No. 11-11, 11-16, 11-21].  As such, all other Leer Companies were net losers under any framework as they received no deposit of funds but had to incur attorneys' fees of $700,000 in the State Action. Plaintiffs incurred these significant attorneys' fees in the State Action because of Defendants' actions, such as (i) the Hi Bar Defendants failure to respond to subpoenas even after being compelled by the State Court, [ECF No. 3] at 5, (ii) BMF's refusal to comply with third-party discovery in the State Action, [ECF Nos. 76-13, 76-14], and, most recently, (iii) Plaintiffs needing to file an emergency temporary restraining order against Lubin for his refusal to cease hostile communications with opposing counsel, former Spin counsel, opposing parties, court officers, and judges despite directives to stop by his own attorneys.  Heskin Decl. Ex. 5.  Significantly, the State Action granted Plaintiffs' TRO directing all parties to cease

communications other than through counsel. *Id.* Ex. 8. Lubin quickly violated this TRO by sending emails to all counsel in the State Action and the NY Courts threatening vague criminal charges against all attorneys and their clients after his State Action counsel moved to withdraw. *Id.* Ex. 9.

### b. *Collateral Estoppel, Res Judicata, and Rooker-Feldman Arguments Are Meritless Because The Counterclaims Dismissal Was A Question Of Law Without Prejudice*

By joining Spin's and Lubin's motion to dismiss the Amended Complaint, Hi Bar is belatedly adopting their arguments to dismiss the Amended Complaint under the doctrines of collateral estoppel, res judicata, and Rooker-Feldman. [ECF No. 73] at 6-11. As Plaintiffs clarified for this Court in opposing this motion, the decision to dismiss the Counterclaims was made "without prejudice and the intention was that the Defendants would be entitled to seek appropriate and proportional discovery as to the underlying debt and, if appropriate, reassert counterclaims." [ECF No. 76-3] at 1. The fact that the Counterclaims were dismissed without prejudice and with explicit contemplation they could be reasserted after discovery negates the collateral estoppel, res judicata and *Rooker-Feldman* arguments because (1) under New York law, collateral estoppel is "inapplicable to purely questions of law"; (2) res judicata cannot apply to a decision made without prejudice, and (3) Plaintiffs cannot be said to have lost in the State Action given Judge Borrok's clarification that Plaintiffs were free to reassert the Counterclaims after discovery. *See Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) ("the New York Court of Appeals has declared that issue preclusion is inapplicable to purely questions of law") (citing *Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440 (N.Y. 1997)); *390 W. End Assoc. v. Raiff*, 166 Misc. 2d 740, 734 (1st Dep't 1995) ("[T]he dismissal of the initial petition 'without prejudice' defeats any preclusion argument that landlord's commencement of (a new) nonpayment proceeding is barred by the doctrines of collateral estoppel and res judicata"); *Edwards v. McMillen Capital, LLC*, 952 F.3d 32, 36 (2d Cir. 2020) ("Because

under Connecticut law, his complaint was not dismissed on the merits, Edward could have refiled

his complaint in state court.  Instead, he decided to pursue his claims in federal court.  For these

reasons, we hold that the *Rooker-Feldman* doctrine does not preclude him from doing so").

The non-Hi Bar Defendants ignore this well-settled law and instead try to argue that the

dismissal of Counterclaims involved questions of fact and law that renders the dismissal still

subject to res judicata, collateral estoppel and the *Rooker-Feldman* doctrine.  The cases cited by

Defendants are immediately inapplicable as they involved inapposite procedural postures that have

no bearing on the dismissal of the Counterclaims, which was done on the pleadings and without

prejudice.  *Cf. TSC Indus. Northway, Inc.*, 426 U.S. 438 (1976) (involving a finding on summary

judgment that whether an omitted fact from a contract was material, not the contract itself, was "a

mixed question of law and fact"); *Miller Mfg. v. Zeiler*, 72 A.D.2d 338, 341 (1st Dep't 1980)

(involving the preclusive effect of a prior trial).  By comparison, there is no basis to claim the

decision to dismiss the Counterclaims involved a mixture of facts *in addition* to law where it was

made plain in the decision itself and in subsequent orders that it was done without the benefit of

fact discovery.  [ECF No. 76-3 and 76-15].

Rather, it is clear that the decision to dismiss the Counterclaims was based on Plaintiffs'

inadequate pleadings.  [ECF No. 76-16] at 8 ("[I]t does not appear that there is any basis for the

allegation that the reconciliation process was a sham and that the defendants would not have

received an appropriate credit, because on the record before the Court, it does not appear that the

Counterclaim Plaintiffs even allege that they requested reconciliation or adjustment of payments

and that it was done improperly.").  New York law is clear that the adequacy of a pleading is purely

a question of law, not fact.  *Bostwick v. Credit Agricole Corporate*, 149 A.D.3d 655, 658 (1st Dep't

2017) ("Whether the amended complaint pleads a necessary element of a claim is a pure issue of

-15-

law"); *Basis Yield Alpha Fund Master v. Morgan Stanely*, 136 A.D.3d 136, 141 n. 4 (1st Dep't 2015) (same); *Matter of Mental Hygiene Legal Serv. v. Delaney*, 38 N.Y.3d 1076, 1090 (N.Y. 2022) ("[W]hen determining that dismissal was warranted as a matter of law, the Court necessarily resolved a pure legal question to conclude that 'the pleadings fails to state a cause of action'") (citing CPLR 3211(a)(7)).  To the extent Defendants maintain the dismissal was based on the State Court's interpretation of the MCA Agreements, this is also a purely legal question under well-settled New York law and therefore is not subject to collateral estoppel.  *Dreisinger v. Teglasi*, 130 A.D.3d 524, 527 (1st Dep't 2015) ("[W]here the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law"); *Gallagher v. Long Is. Plastic Surgical Group, P.C.*, 113 A.D.3d 652, (2d Dep't 2014) ("Where a question of intention is determinable by written agreements, the question is one of law").

In continuing to cling to the debunked collateral estoppel argument, Defendants further argue that the Amended Complaint is precluded because "[p]erhaps the stte court might have ruled differently had the Leer parties made a different record in that action like they now seek to make here, but they were invited to make such a fuller record in the State Court Action after discovery and declined that invitation." [ECF No. 85] at 8.  As set forth above, the Second Circuit has already held that a plaintiff is free to reassert counterclaims in either the pre-existing state action or in a new federal action. *Edwards v. McMillen Capital, LLC*, 952 F.3d 32, 36 (2d Cir. 2020) ("Because under Connecticut law, his complaint was not dismissed on the merits, Edward could have refiled his complaint in state court.  Instead, he decided to pursue his claims in federal court.  For these reasons, we hold that the *Rooker-Feldman* doctrine does not preclude him from doing so").  This is "because New York does not have a compulsory counterclaim rule, a defendant who fails to assert a counterclaim is not barred by the doctrine of res judicata from subsequently commencing

a new action on that claim." *U.S. Bank N.A. v. Kahn Prop. Owner, LLC*, 206 A.D.3d 855, 857 (2d Dep't 2022). It would be contrary to New York law and policy to require the Plaintiffs to re-assert the instant claims in the State Action when New York law affords Plaintiffs the right to choose. Moreover, it is particularly inappropriate for the Hi Bar Defendants to adopt this argument since they intentionally stymied discovery in the State Action despite being compelled to provide discovery. [ECF No. 76] ¶¶ 5-7.

As for res judicata, as detailed above in Section II, the Amended Complaint contains numerous new allegations and new exhibits, from discovery in the State Action, that were not pled in the Counterclaims. In particular, the State Action found the RICO claims inadequately pled because "it does not appear that there is any basis for the allegation that the reconciliation process was a sham and that the defendants would not have received an appropriate credit, because on the record before the Court, it does not appear that the Counterclaim Plaintiffs even allege that they requested reconciliation or adjustment of payments and that it was done improperly." [ECF No. 76-16] at 8. Amended Complaint Exhibit 20 completely cures this pleading defect as it is a copy of Plaintiffs requesting reconciliation to Lubin and Lubin denying it initially before requiring Plaintiffs to adhere to an arbitrary new remittance amount without analysis of the Leer Companies' receivables and while Plaintiffs explained the Leer Companies had no cash. [ECF No. 20-11]. Notably, this is the exact time of discovery document the State Action contemplated as potentially giving rise to the Counterclaims being reassessed. Heskin Ex. 10 at 16:20-17:2 ("I did the analysis as to whether or not the requirements were there as to the reconciliation and stuff like that, but, regardless, my contemplation was that discovery would go forward continually, which included the Hi-Bar Agreements, such that they could look into issues like whether or not therew were fixed payments, whether or not there was reconciliation"). As such, res judicata does not apply because

-17-

the Amended Complaint cures any defaults with the Counterclaims through adding new and material allegations to support the RICO claims in this Action. *SEC v. Thompson*, 238 F. Supp. 3d 575, 593 (S.D.N.Y. 2017) ("[T]he allegations in this lawsuit are based on different facts and evidence than the allegation sin the Florida Action. As a result, res judicata does not bar this enforcement action"); *In re State Presence, Inc.*, 2016 Bankr. LEXIS 2377, *20 (Bankr.S.D.N.Y. June 24, 2016) ("The newly discovered evidence resulted in fraud allegations that are different from those that were alleged prior to entry of the judgment. The standard to reopen a judgment based upon a pleading deficiency on the grounds of newly discovered evidence has been met. The motion to dismiss on grounds of res judicata is therefore denied").

Spin and Lubin nevertheless persist that res judicata bars the Amended Complaint by citing *Strange v. Montefiore Hosp. and Medical Center*, 59 N.Y.2d 737, 738 (1983) for the proposition that "to be considered 'on the merits,' 'it suffice that it appears from the judgment that the dismissal was on the merits.'" [ECF No. 85] at 6. However, there is nothing in the decision to dismiss the Counterclaims to suggest it was on the merits. *See generally* [ECF No. 76-16]. The State Court's Discovery Order confirmed that the dismissal was *not* on the merits by not only stating it was "without prejudice", but also expressly inviting Plaintiffs to reassert their counterclaims. [ECF No. 76-3]. The New York Court of Appeals has ruled that "a dismissal 'without prejudice' lacks the necessary elements of res judicata – **by its terms such a judgment is not a final determination on the merits**." *Landau, P.C. v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 13 (N.Y. 2008) (emphasis added). No Defendant has any basis to argue that the Counterclaim dismissal was "on the merits." The record is to the contrary. [ECF No. 76-3].

Because the decision to dismiss was made without prejudice, and i.e., not on the merits, and explicitly contemplated re-assertion after discovery, there is also no basis to claim that

34740372v.1

Plaintiffs were "losers" in the State Action such that *Rooker-Feldman* would apply. A dismissal without prejudice is *per se* not on the merits. *Landau*, at 13. The Second Circuit has held that in the context of a state dismissal not on the merits, *Rooker-Feldman* does not apply. *Edwards v. McMillen Capital, LLC*, 952 F.3d 32, 36 (2d Cir. 2020) ("Because under Connecticut law, his complaint was not dismissed on the merits, Edward could have refiled his complaint in state court. Instead, he decided to pursue his claims in federal court. For these reasons, we hold that the *Rooker-Feldman* doctrine does not preclude him from doing so"). Also, New York law recognizes that an element of *Rooker Feldman* is that "plaintiff must complain of injuries caused by a state court judgment." *Yunus v. Lewis-Robinson*, 2019 U.S. Dist. LEXIS 5654, *16-17 (S.D.N.Y. Jan. 11, 2019) (citations omitted). The Amended Complaint clearly seeks injuries form the usurious MCAs, not the State Action's dismissal of the Counterclaims. *See generally* [ECF No. 11].

Defendants nevertheless argue that *Rooker-Feldman* still bars the Amended Complaint, in their mind, because Plaintiffs argue that this action is "proceeding in parallel with ongoing state court litigation." [ECF No. 85] at 8. Defendants then conflate this out-of-context quote with an admission that the *Colorado River* doctrine must apply to bar the Amended Complaint if the State Action and this Action are indeed in "parallel." *Id*. In making this argument, Defendants misconstrue Plaintiffs' arguments and the case, *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005), where this quote came from. Read in full context, *Holbrook* held that as the fourth element for *Rooker-Feldman* to apply, "the state-court judgment must have been 'rendered before the district court proceedings commenced' – i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." *Id*. at 85. Read in full context, it is clear that *Hoblock*'s use of the phrase "in parallel" refers to the timing of the state and federal action, not, as described below, what the *Colorado River* doctrine considers

-19-

"in parallel." Even if this fourth *Rooker-Feldman* element is satisfied, Plaintiffs have already shown that neither the first nor second elements apply such that the Doctrine is not applicable. *Id.* (*Rooker-Feldman* doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments").

### c.    The Colorado River Doctrine Is Also Inapplicable

Because no Defendant has articulated the full *Colorado River* doctrine, it bears repeating that the doctrine "is the exception, not the rule," and is justified "only in exceptional circumstances." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Since that decision, the Supreme Court has further cautioned that "the balance is weighed in favor of the exercise of jurisdiction" by the federal courts, and not in favor of abstention. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

Per above, Defendants try to equate actions running concurrently in time as "in parallel" for the purpose of the *Colorado River* doctrine, but that is not the test. For *Colorado River* doctrine purposes, "in parallel" is satisfy where "the parties are 'substantially the same, litigating the same issues in both actions.'" *Jones v. Select Portfolio Servicing, Inc.*, 2024 U.S. Dist. LEXIS 93344, *13 (E.D.N.Y. May 24, 2024) (quoting *Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006)).

Starting with the parties, BMF, Hi Bar, Herbst, Getter, and Gabe are *not* defendants to the Spin Action. [ECF No. 76-1]. The Spin Action also involves six defendants not a party to this action, including (1) Stefan Leer; (2) Zurich American Life Insurance Co. ("Zurich"); (3) Accordia Life and Annuity Company ("Accordia"); (4) John Hancock Life Insurance Company ("John Hancock"); (5) Brighthouse Life Insurance Co. ("Brighthouse"); and (6) Cap Factor, LLC ("Cap Factor"). Heskin Decl. Ex. 4. The Spin Action also involves numerous third parties including a receiver – who is tasked with managing insurance policies that have no bearing on this Action –

and no less than ten (10) intervenors not a party to this Action. *Id.* Spin is also seeking to hold additional defendants in the State Action liable for the claims therein, including Life Shares 1019, LLC ("LS 1019") and DRVN Holdings, LLC ("DRVN"), who were named in Spin's amended complaint in the Spin Action [ECF No. 76-9] but not served with a summons. *Id.* Neither LS 1019 nor DRVN are parties to this action. [ECF No. 11]. Thus, there are 18 different parties between the State Action and this Action, not including the receiver who is only involved in the State Action. Given that the *Colorado River* doctrine is an exception, not the norm, and requires substantially the same parties between the two actions, it is dead on arrival given the lack of similarity of the parties.

The *Colorado River* doctrine fares no better when comparing the claims in this Action, two causes of action for RICO against a majority of Defendants who are not party to the State Action, [ECF No. 11], and the claims in Spin's amended complaint, which has ten causes of action. [ECF No. 76-9]. None of Spin's ten causes of action pertain to RICO, nor do they even involve the MCAs. *See generally id.* Rather, Spin is seeking claims for (1) breach of the Promissory Note; (2) breach of corporate guaranties executed with the Promissory Note; (3) breach of personal guaranties executed with the Promissory Note; (4) voidable transfers of Zurich policies; (5) voidable transfer of a John Hancock policy; (6) voidable transfer of a Brighthouse policy; (7) declaratory judgment on Zurich policies; (8) declaratory judgment on a Accordia policy; (9) declaratory judgment on a John Hancock policy; and (10) declaratory judgment on a Brighthouse policy. [ECF No. 76-9] ¶¶ 51-120. Plaintiffs have dismissed any component of the Amended Complaint that could be construed as challenging the Promissory Note, [ECF No. 78]. The remaining seven causes of action Spin asserts in the State Action have nothing to do with the RICO claims in this action or the MCAs, but purely involve questions of parties' rights to various

-21-

insurance policies that have nothing to do with this Action and will require entirely different legal standards and proof than the instant RICO claims. [ECF No. 76-9] ¶¶ 62-120. Notably, each of these seven causes of action are against parties, such as LS 1019, DRVN, Cap Factor and the various insurance company defendants, that are not parties to this action. *Id*. Thus, there is virtually complete dissimilarity between the claims still active in the State Action and this Action such that the extreme relief of *Colorado River* doctrine abstention is not warranted.

In continuing to argue that the *Colorado River* doctrine should bar this Action, Defendants continually stress the importance of avoiding piecemeal litigation as the most critical factor of the analysis. An honest assessment of the State Action, however, would show that had Plaintiffs tried to reassert their Counterclaims therein (which they are not compelled to do under New York law), it would only further disrupt the adjudication of the State Action and prolonged the State Action for all parties involved even though, per above, the vast majority of the parties in the State Action have no interest in Plaintiffs' RICO claims.

For instance, due in large part to Spin's efforts to preclude discovery on the MCA Agreements in the State Action through a protective order and BMF and Hi Bars refusal to comply with third party discovery in the State Action, *see* [ECF No. 76-3] and [ECF 76] ¶¶ 5-7, Plaintiffs either never received discovery from all relevant parties as to the MCA Agreements or received discovery very late in the case of Spin. Because of Spin's motion for a protective order, Plaintiffs in the State Action had to wait until July 25, 2024, Heskin Decl. ¶ 13, which was a week before the State Action's deadline for discovery closed on August 1, 2024. [ECF No. 76-10]. BMF, after initially agreeing to meet and confer over third party discovery, [ECF No. 76-14], took the later position that it would produce nothing in the State Action. [ECF No. 76-15]. The State Court action granted a motion to compel Hi Bar to produce documents and sit for a deposition, [ECF No.

76-3], but the Hi Bar Defendants still refused.  [ECF No. 76] ¶¶ 5-7. Given that the instant Defendants successfully obfuscated the very discovery the State Action completed would allow the Leer parties to re-assert their Counterclaims, Plaintiffs, as they are free to do under New York's non-compulsory counterclaim rule, opted to assert those claims in this Federal Action purely against the instant Defendants that have a stake in the MCA Agreements.

Had Plaintiffs done what Defendants now urge and tried to re-assert their Counterclaims in the State Action after taking Spin's deposition on July 25, 2024, they would have had to apply to either extend or re-open discovery from the August 1, 2024 deadline.  This would have only served to delay final adjudication of the claims in the State Action that have nothing to do with this Action to the detriment of all eighteen parties and intervenors to the State Action that were spared that delay by Plaintiffs bringing a new federal action that will open discovery only to the parties that actually have relevant information concerning the MCAs.  Indeed, because the State Action has been so protracted, one of the insurance carriers, Brighthouse, already attempted to rid itself of the State Action by filing an interpleader action to disburse the Brighthouse policy.  Heskin Decl. Ex. 1.  Brighthouse subsequently moved to hold all parties named in the interpleader action, including the instant Plaintiffs, liable for its attorneys' fees in bringing that action.  *Id*. Ex. 2.  LS 1019, a non-party to the State Action that is affiliated with the Leer Companies that Spin is trying to bind to the State Action notwithstanding its failure to serve a summons thereon, had to incur its own fees in opposing Brighthouse's motion for attorneys' fees.  *Id*. Ex. 3.  Had Plaintiffs done what Defendants urge and tried to re-open or extend discovery in the State Action, they would only be compounding Brighthouse's claimed damages for attorney's fees and invariably also increase the attorneys' fees on all other seventeen parties and intervenors that are not a party to this Action.

Had Plaintiffs re-asserted their Counterclaim in the State Action, the same harm sought to be avoided by piecemeal litigation – waste of judicial recourses and parties' recourses – would have been compounded by extending a three-year plus lawsuit even longer before discovery closed to allow time for a reassertion of the Counterclaims and interpleading the non-Spin Defendants here into the State Action. *Sitgraves v. Fed. Home Loan Mortg. Corp.*, 265 F. Supp. 3d 411, 414 (S.D.N.Y. 2017) (noting that the avoidance of "piecemeal litigation" is to avoid a "waste of judicial resources"). *Sitgraves* also notes that the purpose behind avoiding "piecemeal litigation" is to avoid "maintaining virtually identical suits in two forums." *Id*. The State Action and this Action are in no way "virtually identical" given the 18 different parties and intervenors and over half-a-dozen unique claims in the State Action alleged against parties that are not in this Action.

The disparity in the parties and claims between the State Action and this Action renders the exceptional *Colorado River* doctrine in applicable because the two actions are not "in parallel." Even if they were in parallel, the critical factor of avoidance of piecemeal litigation is not advanced by dismissing this Amended Complaint because that would only serve to require Plaintiffs to disrupt the post-discovery posture of the State Action and delay that State Action even further to the detriment of both the State Court's resources and the resources of the various different parties to the State Action. Considering that at least one party to the State Action is already seeking to hold all other parties responsible for its attorneys' fees in the State Action, Brighthouse, it would be destructive for Plaintiffs to have exposed all parties to additional liability in the State Action by further extending discovery and raising attorneys' fees costs for Brighthouse and everyone else to the State Action that has no interest in the instant RICO claims against these Defendants involving collection of unlawful debt that is no longer at issue in the post-discovery State Action. In no way should the extreme relief of the *Colorado River* doctrine be applied under these circumstances.

-24-

## CONCLUSION

For the aforementioned reasons, the Hi Bar Defendants' Motion should be denied in its entirety.

Dated: March 31, 2025

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

By:_____

Shane R. Heskin
Alex D. Corey
810 Seventh Avenue, Suite 500
New York, New York 10019
heskins@whiteandwilliams.com
coreya@whiteandwilliams.com
*Attorneys for Plaintiffs*

-25-