# EXHIBIT 2
# Part 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

BRIGHTHOUSE LIFE INSURANCE COMPANY,

        Plaintiff,

      v.

SPIN CAPITAL, LLC;
GOLDEN FOOTHILL INSURANCE SERVICES, LLC;
LIFE FACTOR II, LLC;
LIFE SHARES II, LLC;
EL DORADO HILLS INSURANCE SOLUTIONS, INC.;
LONE WOLF INSURANCE SERVICES, INC.;
ELDO INVESTMENTS, LLC;
THE GENESIS LS FUND, LLC;
KTL HOLDINGS, INC.;
DRVN HOLDINGS, LLC;
LIFE SHARES 1019, LLC;
STEFAN LEER;
TATANISHA LEER;
CAP FACTOR, LLC;
MICHAEL TRUSNER;
DAVA TRUSNER; and
FRED STEVENS, AS
COURT-APPOINTED TEMPORARY RECEIVER,

        Defendants.
-----------------------------------------------------------X

Case No.:
1:23-cv-08570-DEH

**ORAL ARGUMENT
REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
DISCHARGE, DISMISSAL AND OTHER RELIEF IN INTERPLEADER,
<u>INCLUDING ATTORNEYS' FEES</u>**

**d'ARCAMBAL OUSLEY & CUYLER
BURK LLP**

Michelle J. d'Arcambal
Tiffany C. Millioen

40 Fulton Street, Suite 1501
New York, NY 10038
(212) 971-3175
*Attorneys for Plaintiff*
*Brighthouse Insurance Company of America*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

PRELIMINARY STATEMENT.............................................................................................1

FACTUAL BACKGROUND ...................................................................................................3

    A.  The Policy ..................................................................................................................3
    B.  The Florida Action .................................................................................................3
    C.  The New York State Action...................................................................................4
    D.  The Death Benefit ..................................................................................................5
    E.  The Adverse Claims................................................................................................5
    F.  The LS1019 California Action..............................................................................6
    G.  Leer Parties' and LS1019's Refusal to Cooperate with the New York Receiver ........6
    H.  The SEC Receiver's Motion to Compel Turn Over and for Contempt.......................8
    I.  The Interpleader Action ......................................................................................10

SALIENT PROCEDURAL HISTORY ...............................................................................10

LEGAL ARGUMENT ...........................................................................................................11

I.   This Court Should Dismiss and Discharge Brighthouse and Permanently Enjoin the Claimants From Commencing Any Future Actions Against Brighthouse for Payment of the Remining Death Benefit ...............................................................................................11

II.  Brighthouse is Entitled to its Attorneys' Fees and Costs ..................................................13

    A.  Legal Standard for Awarding Fees to a Disinterested Stakeholder ...........................13
    B.  Equity Weighs in Favor of Awarding Brighthouse All Attorneys' Fees and Costs...15
        1.  The Claimants' Dispute Involves Complex Issues That are Not the "Ordinary Cost of Doing Business" ..................................................................................15
        2.  Certain Claimants Have Improperly Protracted the Proceedings.........................16
        3.  Brighthouse Has Acted in Good Faith and With Diligence .................................18
        4.  Brighthouse Has Performed Unique Services.....................................................19
        5.  The Services Did Not Benefit Brighthouse.........................................................20
    C.  Brighthouse Should be Reimbursed for Attorneys' Fees and Costs Incurred in the Florida Action and the LS1019 California Action ....................................................20
        1.  The Florida Action is Directly Related to the Policy and Death Benefit.............20
        2.  The LS1019 California Action is Directly Related to the Policy and Death Benefit ...............................................................................................................21
        3.  Awarding an Innocent Stakeholder Fees Incurred in Connection With Litigations Other Than the Interpleader Action is Not Without Precedent............................23
    D.  The Court May Impose Sanctions Upon the Claimants............................................24

CONCLUSION .......................................................................................................................25

ii

Case 1:23-cv-08570-BEH Document 87 Filed 03/15/24 Page 25 of 30

## TABLE OF AUTHORITIES

### Cases

*A/S Krediit Pank v. Chase Manhattan Bank,*
303 F.2d 648 (2d Cir. 1962) ................................................................................................. 17

*Bank of Am. N.A. v. Morgan Stanley & Co. Inc.,*
No. 10-CV-6322 (RJH), 2011 WL 2581765 (S.D.N.Y. June 24, 2011) ................................ 13

*Barton v. Barbour,*
104 U.S. 126, 1881 WL 19839 (1881) ............................................................................. 20, 21

*BNP Paribas v. Wayzata Opportunities Fund II, L.P.,*
09 CIV. 5351 (DLC), 2010 WL 1875716 (S.D.N.Y. May 11, 2010) .................................... 12

*Clarkson Co. v. Shaheen,*
533 F. Supp. 905, 1982 WL 1151101 (S.D.N.Y. 1982) .................................................. 14, 24

*Companion Life Ins. Co. v. Schaffer,*
442 F. Supp. 826, 1977 WL 555522 (S.D.N.Y. 1977) ....................................................... 16

*Ex parte Robinson,*
86 U.S. 505, 1873 WL 16067 (1873) ................................................................................ 25

*Fischbein, Badillo & Wagner v. Tova Realty Co.,*
193 A.D.2d 442, 597 N.Y.S. 2d 676 (1st Dep't 1993) ...................................................... 15

*Indem. Ins. Co. of N. Am. v. Robinson,*
No. 90 CIV. 3765 (KC), 1991 WL 173115 (S.D.N.Y. Aug. 28, 1991) ............................... 18

*John Hancock Mut. Life Ins. Co. v. Doran,*
138 F. Supp. 47 (S.D.N.Y 1956) ...................................................................................... 19

*Klebanoff v. Mut. Life Ins. Co. of N.Y.,*
246 F. Supp. 935 (D. Conn. 1965) ................................................................................... 15

*Mendez v. Tchrs. Ins. & Annuity Ass'n & Coll. Ret. Equities Fund,*
982 F.2d 783, 1992 WL 383108 (2d Cir. 1992) ................................................................ 12

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Clemente,*
No. 98 CIV. 1756 LMM, 2001 WL 536929 (S.D.N.Y. May 21, 2001) ............................... 15

*MetLife Investors USA Ins. Co. v. Zeidman,*
734 F. Supp. 2d 304 (E.D.N.Y. 2010) .............................................................................. 12

*Metro. Life Ins. Co. v. Mitchell,*
   966 F. Supp. 2d 97, 2013 WL 1968495 (E.D.N.Y. 2013) ............................................... 12

*Metropolitan Life Insurance Co. v. Jackson,*
   896 F. Supp. 318 (S.D.N.Y. 1995) .................................................................................. 14

*MWH Int'l, Inc. v. Inversora Murten, S.A.,*
   2013 WL 3717492 (S.D.N.Y. July 16, 2013), *report and recommendation adopted,* 2013 WL
   12616635 (S.D.N.Y. Aug. 7, 2013) .................................................................................. 18

*Priority Recs., Inc. v. Bridgeport Music, Inc.,*
   907 F. Supp. 725, 1995 WL 714424 (S.D.N.Y. 1995).................................................... 14

*Procup v. Strickland,*
   792 F.2d 1069 (11th Cir. 1986)........................................................................................ 25

*Renasant Bank, Inc. v. AVE, Inc.,*
   No. CV 19-0733-CG-MU, 2021 WL 1324532 (S.D. Ala. Jan. 14, 2021) ....................... 23

*Septembertide Pub., B.V. v. Stein and Day, Inc.,*
   884 F.2d 675 (2d Cir. 1989)................................................................................... 13-14, 17

*Smith Barney, Harris Upham & Co. v. Connolly,*
   887 F. Supp. 337, 1994 WL 683154 (D. Mass. 1994) .................................................... 19

*Sparta Fla. Music Grp., Ltd. v. Chrysalis Recs., Inc.,*
   566 F. Supp. 321 (S.D.N.Y. 1983).................................................................................... 15

*Sun Life Ins. & Annuity Co. of New York v. Braslow,*
   38 A.D.3d 529, 831 N.Y.S.2d 497 (2d Dep't 2007) ........................................................ 15

*Travelers Ins. Co. v. Est. of Garcia,*
   No. 00-CV-2130 (ILG), 2003 WL 1193535 (E.D.N.Y. Feb. 4, 2003) ....................... 15, 16

*U.S. Life Ins. Co. in City of New York v. Blum,*
   No. 09 CIV 9416 LTS JCF, 2011 WL 70385 (S.D.N.Y. Jan. 3, 2011) ........................... 15

*Young v. U.S. ex rel. Vuitton et Fils S.A.,*
   481 U.S. 787 1987 WL 1608276 (1987).......................................................................... 25

## Statutes

28 U.S.C. § 2361 ..........................................................................................................*passim*
28 U.S.C. § 1335 ..........................................................................................................*passim*

## Other Authorities

Case 1:23-cv-08570-DEH    Document 87    Filed 03/15/24    Page 25 of 30

7 Wright, Miller & Kane, Federal Practice and Procedure § 1719 (3d ed.)..................................14, 16

**Rules**

CPLR 1006.................................................................................................................................15
Federal Rule of Civil Procedure 22............................................................................................14
Federal Rule of Civil Procedure 41 .............................................................................................1

Plaintiff, Brighthouse Life Insurance Company ("Brighthouse"), by and through its undersigned attorneys, hereby submits this Motion for Discharge, Dismissal and Other Relief in Interpleader, Including Attorneys' Fees, as provided for by the Court's Memo Order dated February 12, 2024. (ECF Doc. 76.) Brighthouse respectfully moves the Court pursuant to 28 U.S.C. §§ 1335 and 2361 for an Order: (i) discharging Brighthouse from all liability under the life insurance policy at issue; (ii) permanently enjoining Defendants[1] Spin Capital, LLC ("Spin Capital"), the Leer Parties,[2] Life Shares 1019, LLC ("LS1019"), Cap Factor, LLC[3] ("Cap Factor") and Fred Stevens, as Court-Appointed Temporary Receiver (the "New York Receiver"), and the Proposed Intervenors[4] (the Proposed Intervenors and the Defendants together, the "Claimants") from commencing any other actions or proceedings seeking payment of the remaining life insurance death benefits or otherwise in connection with the life insurance policy at issue; (iii) dismissing Brighthouse from this action with prejudice; (iv) awarding Brighthouse its attorneys' fees and costs; and (v) imposing sanctions upon the Claimants.

## PRELIMINARY STATEMENT

---

[1] Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), on October 26, 2023 Defendants Michael Trusner and Dava Trusner (the "Trusners") were voluntarily dismissed as parties in this action. (ECF Doc. 27.)

[2] The "Leer Parties" include Defendants Stefan Leer, Tatanisha Leer, and various entities of which Stefan Leer is a principal: Golden Foothill Insurance Services, LLC; Life Factor II LLC; Life Shares II, LLC; El Dorado Hills Insurance Solutions, Inc.; Lone Wolf Insurance Services, Inc.; ELDO Investments, LLC; The Genesis LS Fund, LLC; KTL Holdings, Inc.; and DRVN Holdings, LLC.

[3] Cap Factor has not answered or appeared in this action and default has been entered against it. (Docket Entry Text, March 14, 2024.) Brighthouse's motion for default judgment against Cap Factor as to the interpleader relief requested in the Complaint will be forthcoming and filed as a separate motion.

[4] The Proposed Intervenors consist of members of the LS1019 investor group, including Stephen Marik Brockman, Aaron Davison, Neilesh Desai, Jennifer Pursley, Michael Schwartz, Sheila Schwartz, The Charissa & Toney Trust, The Charissa Toney Living Trust, Matthew Troy and American River Ag, Inc. The Proposed Intervenors filed eleven Notices of Appearance on January 22, 2024 representing that they intend to move to intervene in this action. (ECF Docs. 60-70.) To date, no application for intervention has been filed.

1

In this protracted dispute concerning the Claimants' rights and interests in the life insurance policy at issue and the remaining death benefit, Brighthouse is a disinterested stakeholder that has been caught in the crossfire of an ongoing feud among the Claimants. For the past nine months, Brighthouse has been repeatedly confronted with a series of Hobson's choices and various demands by the Claimants. Had Brighthouse complied with any of the demands, Brighthouse would have been exposed to liability to the other Claimants.

Brighthouse has incurred substantial legal expenses due to the uncooperative attitude of most[5] of the Claimants and their conflicting demands. At all times, Brighthouse has acted in good faith, despite the antagonistic attitude of most of the Claimants toward one another, and fully protected the corpus of the death benefit. Brighthouse was ready, willing and able to pay the death benefit for nearly eight months and made extensive efforts to do so. The Claimants, aware of the 8% interest rate that has been accruing on the proceeds, may well have been deliberately encouraging delay, to the detriment of Brighthouse. Critically, all the legal expenses incurred were directly related to the Claimants' rights and interests in the policy and death benefit. As such, reimbursement of Brighthouse's legal fees and costs, currently totaling $211,851.14,[6] is fair and equitable, in accordance with the law in this Circuit, and will not deplete the disputed funds, as it is not even 55% of the interest amount.

In support of this motion, Brighthouse also submits the following declarations and the exhibits annexed thereto:

- Declaration of Michelle J. d'Arcambal, Esq. ("d'Arcambal Decl.")
- Declaration of Tiffany C. Millioen, Esq. ("Millioen Decl.")

---

[5] The New York Receiver has been the only consistently cooperative Claimant. He is excluded from any reference to inappropriate or wrongful conduct of the Claimants.
[6] Brighthouse respectfully reserves the right to supplement with additional fees incurred in connection with this motion, responses to same, and otherwise in connection with Brighthouse's entitlement to interpleader relief.

2

- Declaration of Emilia A. Quesada, Esq. ("Quesada Decl.")
- Declaration of Ronald K. Alberts, Esq. ("Alberts Decl.")

## FACTUAL BACKGROUND[7]

### A. The Policy

The Travelers Insurance Company, now known as Brighthouse, issued flexible premium adjustable life insurance policy number 7447253 (the "Policy") with a policy date of November 7, 2004, which provided coverage on the life of John P. Utsick (the "Insured"). (Cmplt. ¶ 21, Ex. A.)[8] At the time the Policy was issued, the owner of the Policy and sole primary beneficiary to the Policy proceeds was the John P. Utsick Irrevocable Trust Dated 2/4/04. (*Id.* ¶ 22.)

### B. The Florida Action

On or about April 17, 2006, the Securities and Exchange Commission ("SEC") commenced an action in the U.S. District Court for the Southern District of Florida[9] (the "Florida Action") against the Insured and certain entities associated with the Insured (collectively, the "Receivership Entities"). (Cmplt. ¶ 23, Ex. B.) In or around April 2006, Michael I. Goldberg (the "SEC Receiver") was appointed Receiver over the assets, liabilities and business interests of the Receivership Entities. (*Id.* ¶ 24, Ex. C.) In or around December 2006, ownership of the Policy was transferred to the SEC Receiver, and shortly thereafter the SEC Receiver was designated sole primary beneficiary to the Policy proceeds. (*Id.* ¶¶ 26, 27.)

In or around May 2021, the SEC Receiver transferred and assigned the Receivership Entities' ownership interest in the Policy to Life Factor II, LLC (one of the Leer Parties) ("Life Factor"), and

---

[7] The lengthy, cross-country history of this dispute is set forth in detail in Brighthouse's Complaint in Interpleader (the "Complaint") and the exhibits thereto. (ECF Doc. 1 to 1-27.) Brighthouse respectfully asks that the Court incorporate by reference the Complaint, exhibits and all prior pleadings as if set forth fully herein.

[8] Citations to "Cmplt. ¶ __" refer to Brighthouse's Complaint in Interpleader. (ECF Doc. 1.)

[9] *Securities and Exchange Commission v. John P. Utsick, et al.*, Case No. 1:06-cv-20975-PCH.

3

in exchange, the SEC Receiver retained certain irrevocable death benefits under the Policy. (*Id.* ¶ 30.) In or around May 2021, Life Factor was designated irrevocable primary beneficiary to 53.33% of the Policy proceeds and the SEC Receiver was designated irrevocable primary beneficiary to 46.67% of the Policy proceeds. (*Id.* ¶ 33, Ex. G.)

In or around March 2022, Life Factor, with the purported consent of the SEC Receiver and as authorized by a March 25, 2022 court order, assigned the Policy to LS1019. (*Id.* ¶ 43, Ex. N.) LS1019 was again designated irrevocable primary beneficiary to 53.33% of the Policy proceeds and the SEC Receiver was re-designated irrevocable primary beneficiary to 46.67% of the Policy proceeds. (*Id.* ¶ 44, Ex. O.)

### C. The New York State Action and Appointment of the New York Receiver

On or about February 4, 2022, Spin Capital commenced an action in New York Supreme Court, County of New York against, in relevant part, the Leer Parties (excluding DRVN Holding, LLC), Cap Factor and Brighthouse[10] (the "New York State Action"), seeking, *inter alia*, monetary damages and a declaratory judgment declaring the rights of the parties in connection with the Policy. (Cmplt. ¶ 39, Ex. K.) On or about July 14, 2022, Spin Capital filed an Amended Complaint adding DRVN Holding, LLC and LS1019 as defendants. (*Id.* Ex. K.)

By Order of the New York Supreme Court dated January 6, 2023 (the "New York Receiver Order"), the New York Supreme Court appointed the New York Receiver and, in relevant part, ordered:

- The New York Receiver is authorized to "collect and receive all income, earnings, profits, refunds, distributions, and proceeds derived from [the Policy];"
- "[A]ll parties obligated to remit any income, earnings, profits, refunds, distributions, and proceeds to Leer Defendants on account of [the Policy] shall make such remittance to the Receiver;" and

---

[10] *Spin Capital, LLC v. Golden Foothill Insurance Services, LLC, et al.*, Index Number 650582/2022.

- "Leer Defendants are hereby enjoined and restrained from collecting any such income, earnings, profits, refunds, distributions, and proceeds … of [the Policy]."

(*Id.* ¶ 45, Ex. P.)

### D. The Death Benefit

The Insured died on June 8, 2023. (Cmplt. ¶ 47, Ex. Q.) As a result of the death of Insured, Policy death benefits in the amount of $15,000,000 (the "Death Benefit") became due to a beneficiary or beneficiaries, and Brighthouse concedes liability to that effect. (*Id.* ¶ 48.) At the time of the Insured's death, LS1019 was primary beneficiary of record to 53.33% of the Policy proceeds and the SEC Receiver was primary beneficiary of record to 46.67% of the Policy proceeds. (*Id.* ¶ 44.)

### E. The Adverse Claims

By Claim Form dated June 28, 2023, Stefan Leer, on behalf of LS1019, asserted a claim for the entire Death Benefit. (Cmplt. ¶ 49, Ex. R.) Pursuant to the New York Receiver Order, Stefan Leer and LS1019 are enjoined and restrained from collecting any proceeds of the Policy. (*Id.* ¶ 50, Ex. P.)

By Claim Form dated July 14, 2023, the SEC Receiver asserted a claim for the Death Benefit. (*Id.* ¶ 51, Ex. S.) In subsequent communications with Brighthouse, the SEC Receiver, through counsel, reasserted a claim for the Death Benefit but in the amount of only $6,000,000 pursuant to the terms of a May 3, 2021 court order. (*Id.* ¶ 52.)

In or around August 2023, LS1019 adopted the curious position that the New York Receiver Order is void because the New York Supreme Court lacked subject matter jurisdiction when it issued it (despite the fact that LS1019 had already appeared, filed an Amended Answer and engaged in motion practice). (*Id.* ¶ 54, Ex. U.) By letter dated August 31, 2023, LS1019, through counsel, demanded that Brighthouse immediately distribute $9,000,000 of the Death Benefit to LS1019 and $6,000,000 of the Death Benefit to the SEC Receiver on the grounds that LS1019 has never been subject to the jurisdiction of the court in the New York State Action. (*Id.* ¶ 55, Ex. V.)

5

### F.  The LS1019 California Action

On or about August 31, 2023 (with full knowledge that Brighthouse was preparing to file an interpleader complaint), LS1019 commenced an action in California Superior Court, County of Orange against Brighthouse[11] (the "LS1019 California Action") concerning, in relevant part, Brighthouse's alleged failure to pay LS1019 $9,000,000 of the Death Benefit. (Cmplt. ¶ 56, Ex. W.)

### G.  Leer Parties' and LS1019's Refusal to Cooperate with the New York Receiver

On or about September 1, 2023, in connection with the New York State Action, the New York Receiver filed a motion for an Order to Show Cause concerning, *inter alia*, the Leer Parties' refusal to cooperate with the New York Receiver in collecting $9,000,000 from Brighthouse (the "Turnover Motion").[12] (Cmplt. ¶ 58, Ex. X.) The New York Receiver testified, in relevant part, that:

> Issues with payment of the Brighthouse Policy proceeds were further complicated by competing interests in that policy asserted by third parties in a pending case in California Superior Court captioned *Michael Trusner, et al. v. LifeFactor II, LLC, et al.* … Accordingly, Brighthouse needs to ensure that upon remittance of the Brighthouse Policy proceeds, which it is ready, willing, and able to do immediately, that it will not be subject to any further claims or litigation.
>
> **… [T]he parties had agreed in concept to the terms of a release … (the "Brighthouse Release"). For good reason, Brighthouse wanted the parties to this case and the [California Trusner action] to sign off on the Brighthouse Release before remitting the proceeds … I received a positive response from [Spin Capital]. Counsel to the Leer Defendants responded simply that "[o]ur client needs to review still. I'm not sure they will agree to this." …**
>
> **At a settlement conference on August 25, 2023, counsel to the Leer Defendants confirmed that the Leer Defendants would not agree to the Brighthouse Release**

---

[11] *Life Shares 1019, LLC v. Brighthouse Life Insurance Company*, Case No. 30-2023-01347187-CU-BC-CJC.

[12] The Turnover Motion also concerned the New York Receiver's discovery, on August 30, 2023, that unbeknownst to him, LS1019, by and through its principal Stefan Leer, had submitted a competing claim for the proceeds of John Hancock Life Insurance Company (USA) ("John Hancock") policy number 59592683, and that on August 16, 2023, John Hancock inadvertently honored LS1019's claim rather than the New York Receiver's and wired $1,985,367.42 to LS1019. (*See* Turnover Motion ¶ 7.) To date, LS1019 has still not turned over the John Hancock funds, in direct violation of a subsequent order by the court in the New York State Action.

**and that Brighthouse should go ahead with commencing an interpleader action in federal district court.**

(emphasis added) (*Id.*) On or about September 5, 2023, the New York Receiver filed a Supplemental Affidavit in support of the Turnover Motion and testified, in relevant part, that Brighthouse had just informed him of the LS1019 California Action:

> No parties to this case other than Brighthouse are named as defendants or other parties in the [LS1019 California Action] … [it] omits any mention whatsoever of the existence of the instant case, this Court, the Receiver Order, the Receiver, Brighthouse's position on these issues which is well known, or the existence of competing liens and claims against the [Policy] proceeds. To the contrary, a cursory review of the [LS1019 California Action] Complaint would lead an uninformed reader to believe that this is just a simple case of an insurer refusing to pay policy proceeds to a policyholder for no good reason.

(*Id.* ¶ 59, Ex. Y.)

By letter to Brighthouse dated September 11, 2023, LS1019, in relevant part, reasserted its demand that Brighthouse pay the Death Benefit in full to the SEC Receiver and LS1019 because the court in the New York State Action lacks jurisdiction over LS1019, and thus LS1019 is not subject to the New York Receiver Order. (*Id.* ¶ 60, Ex. Z.) LS1019 also erroneously represented that John Hancock (a party to the New York State Action), "[a]ware that the New York Court lacked jurisdiction of Life Shares 1019, LLC . . . already paid the entirety of the John Hancock policy death benefit to Life Shares 1019, LLC." (*Id.*)

By letter to LS1019 dated September 21, 2023, John Hancock, in relevant part, asserted that Stefen Leer, on behalf of LS1019, submitted a claim for policy proceeds in violation of the New York Receiver Order, and on or about August 16, 2023, John Hancock *mistakenly* wired $1,985,367.42 to the account set forth in LS1019's claim form. (*Id.* ¶ 61, Ex. AA.) John Hancock stated that LS1019's representations to Brighthouse that John Hancock, "[a]ware that the New York Court lacked jurisdiction of Life Shares 1019, LLC . . . already paid the entirety of the John Hancock policy death

7

benefit to Life Shares 1019, LLC" are inaccurate. (*Id.*) John Hancock further demanded that LS1019 immediately return $1,985,367.42 to John Hancock or transfer $1,985,367.42 to the New York Receiver. (*Id.*)

By Decision and Order dated January 4, 2024, the court in the New York State Action, in relevant part, granted the Turnover Motion and explained that:

> In violation of the Receiver Order, Defendant Stefan Leer willfully and contumaciously applied on behalf of Life Shares 1019, LLC for a distribution under the John Hancock Policy and directed that distribution of $1,985,267.42 in insurance proceeds be routed to a Life Shares 1019, LLC account … and has refused to turn or direct that these monies be turned over to the Receiver. He is thus in civil contempt. He may purge this civil contempt of court by turning the Hancock Distribution over to the Receiver by 5 pm on January 5, 2024. If he fails to cause the proceeds to be deposited with the Receiver by such time … the Court may hold Mr. Leer in criminal contempt.

(d'Arcambal Decl. ¶ 29, Ex. 23 at 3.) Due to Stefan Leer's subsequent failure to comply with the January 4, 2024 Decision and Order, the New York Receiver filed a contempt motion on January 12, 2024 and testified, in relevant part, that "[a]s of 5:00 p.m. on Friday, January 12, 2024, I have not received any of the $1,985,367.42 Hancock Distribution that this Court ordered be turned over to me by 5:00 p.m. on Friday, January 5, 2024." (d'Arcambal Decl. ¶ 30, Ex. 24 at ¶ 7.) To date, the John Hancock funds have not been turned over to the New York Receiver and oral argument on the contempt motion is set for April 8, 2024. (d'Arcambal Decl. ¶ 30.)

## H.  The SEC Receiver's Motion to Compel Turn Over and for Contempt

On or about September 8, 2023, the SEC Receiver filed a Motion to Compel Turn Over and to Hold Brighthouse in Contempt. (d'Arcambal Decl. ¶ 12, Ex. 8.) The SEC Receiver's motion stemmed directly from Brighthouse's inability to disburse $6,000,000 of the Death Benefit to the SEC Receiver because certain Defendants refused (a) to confirm to Brighthouse whether they were asserting adverse claims to the $6,000,000 sought by the SEC Receiver and (b) to agree to release

8

Brighthouse from liability in connection with payment to the SEC Receiver. (*See* d'Arcambal Decl. ¶ 12, Ex. 8.) The court in the Florida Action set a status conference for September 15, 2023. (d'Arcambal Decl. ¶ 13.)

On September 11, 2023, in advance of the conference, Brighthouse asked the Defendants to sign consent letters confirming that they had no objection to Brighthouse's distribution of funds to the SEC Receiver and they would release and discharge Brighthouse from liability in connection with those funds. (d'Arcambal Decl. ¶ 13.) Everyone except the Leer Parties and LS1019 signed the consent letters. (d'Arcambal Decl. ¶¶ 13, 14, Exs. 9, 10.)

On the morning of September 15, 2023, before the status conference, LS1019, through counsel, informed Brighthouse that it would consent to the distribution to the SEC Receiver. (d'Arcambal Decl. ¶ 16.) However, counsel expressly stated that he was "writ[ing] on behalf of Life Shares 1019 *only*" (emphasis added); in other words, the Leer Parties continued to withhold consent. (d'Arcambal Decl. ¶ 16, Ex. 12.) The SEC Receiver, the New York Receiver, Brighthouse (through counsel) and LS1019 (through counsel) attended the status conference before the Honorable Paul C. Huck. (d'Arcambal Decl. ¶ 17.) Judge Huck, in relevant part, directed LS1019 and the Leer Parties to sign releases so Brighthouse could pay the SEC Receiver. (d'Arcambal Decl. ¶ 17, Ex. 13 at 11:20-23.) Judge Huck subsequently issued a September 28, 2023 order denying the SEC Receiver's motion as moot, noting "that based on the circumstances implicated by the [SEC Receiver's] Motion, including the various claimants involved in other litigation relating to the insurance proceeds, it is unlikely that the Court would have held Brighthouse in contempt of Court." (d'Arcambal Decl. ¶ 19, Ex. 14.)

Pursuant to a Release executed by the Defendants on or about September 22, 2023, all Defendants finally disclaimed their interests in the $6,000,000 of the Death Benefit to which the SEC

Receiver asserted a claim. Brighthouse disbursed $6,000,000, plus applicable interest, to the SEC Receiver on or about October 3, 2023 thereby leaving $9,000,000 of the Death Benefit remaining due (the "Remaining Death Benefit"). (Cmplt. ¶ 62.)

### I.  The Interpleader Action

Due to the adverse claims and multiple litigations concerning their respective rights and interests in the Policy and the Death Benefit, Brighthouse commenced this interpleader action against the Defendants on September 28, 2023. (ECF Doc. 1.) As a mere stakeholder, Brighthouse had no interest (except to recover its attorneys' fees and costs) in the Remaining Death Benefit and has, at all times, been ready, willing and able to pay the Remaining Death Benefit. (Cmplt. ¶ 68.) However, under the circumstances, Brighthouse is unable to make that determination without exposing itself to multiple liability on account of the adverse claims of the Defendants. (*Id.* ¶ 66.) Accordingly, on or about February 29, 2024, Brighthouse deposited $9,388,602.74, representing the Remaining Death Benefit plus interest, with the Clerk of Court so that the Court may determine to whom the Remaining Death Benefit should be paid. (Docket Text Entry, Mar. 14. 2024.)

### SALIENT PROCEDURAL HISTORY

Brighthouse commenced this Action with the filing of the Complaint on September 28, 2023. (ECF Doc. 1.) Brighthouse filed a Motion for Interpleader Deposit pursuant to 28 U.S.C. § 1335 on October 4, 2023 (ECF Doc. 9), which the Court denied without prejudice to renew once all Defendants were served and had the opportunity to appear. (ECF Doc. 10.) All Defendants were subsequently served. (ECF Docs. 11-13, 15-26.) On October 27, 2023, Brighthouse filed a Motion for Interpleader Deposit and Related Relief pursuant to 28 U.S.C. §§ 1335 and 2361 (ECF Doc. 28), which was unopposed.

10

Spin Capital and the New York Receiver filed their Answers on January 10, 2024 (ECF Docs. 51, 53), and the Leer Parties and LS1019 filed their Answers on January 24, 2024. (ECF Docs. 71, 72.) Due to Cap Factor's failure to file an Answer or otherwise appear, a Clerk's Certificate of Default was entered on March 14, 2024. (ECF Doc. 85.)

A status conference with the Court was held on January 12, 2024. (*See* ECF Doc. 56.) After the conference and in accordance with the Court's Order (*id.*), Brighthouse conferred in good faith with the Claimants in an attempt to resolve the matter. However, the Parties could not reach agreement on the issue of Brighthouse's attorneys' fees and costs, and on February 9, 2023 the Court set a briefing schedule concerning the fees and costs to which Brighthouse is entitled. (ECF Doc. 75.)

In an attempt to reach a resolution concerning distribution of the Remaining Death Benefit, Brighthouse prepared and circulated to the Claimants a draft stipulation and joint motion. (ECF Doc. 79.) The draft contained standard language concerning the release and discharge of Brighthouse and restraining the Claimants from asserting further claims against Brighthouse in connection with the Policy or Remaining Death Benefit. (d'Arcambal Decl. ¶ 23, Ex. 18.) The Proposed Intervenors rejected all provisions in the draft relating to release, discharge and restraint, and the Leer Parties subsequently stated that they would not give releases. (d'Arcambal Decl. ¶ 24, Ex. 19.) Accordingly, Brighthouse asked the Court to rule on its pending deposit motion, which was granted on February 22, 2024. (ECF Doc. 80.)

## LEGAL ARGUMENT

### I. This Court Should Dismiss and Discharge Brighthouse and Permanently Enjoin the Claimants From Commencing Any Future Actions Against Brighthouse for Payment of the Remining Death Benefit

Brighthouse seeks an Order from the Court discharging Brighthouse from all liability in connection with the Policy and Remaining Death Benefit, permanently enjoining the Claimants from

11