# EXHIBIT 3
# Part 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

BRIGHTHOUSE LIFE INSURANCE COMPANY,

        Plaintiff,

    v.

SPIN CAPITAL, LLC;
GOLDEN FOOTHILL INSURANCE SERVICES, LLC;
LIFE FACTOR II, LLC;
LIFE SHARES II, LLC;
EL DORADO HILLS INSURANCE SOLUTIONS, INC.;
LONE WOLF INSURANCE SERVICES, INC.;
ELDO INVESTMENTS, LLC;
THE GENESIS LS FUND, LLC;
KTL HOLDINGS, INC.;
DRVN HOLDINGS, LLC;
LIFE SHARES 1019, LLC;
STEFAN LEER;
TATANISHA LEER;
CAP FACTOR, LLC;
MICHAEL TRUSNER;
DAVA TRUSNER; and
FRED STEVENS, AS
COURT-APPOINTED TEMPORARY RECEIVER,

        Defendants.
------------------------------------------X

Case No.:
1:23-cv-08570-DEH

**ORAL ARGUMENT
REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFF'S MOTION FOR
DISCHARGE, DISMISSAL AND OTHER RELIEF IN INTERPLEADER,
INCLUDING ATTORNEYS' FEES**

                      **ALMEIDA LAW GROUP,**

                      David S. Almeida
                      **49 W. Webster Ave Chicago, IL 60614**
                      (312)-576-3024
                      *Attorneys for Defendant*
                      *Life Shares 1019, LLC*

**DYER LAW FIRM**

Dustin J. Dyer
**5250 Claremont Ave. Ste. 119**
**Stockton, CA 95207**
(209)-472-3668
*Attorneys for Defendant*
*Life Shares 1019, LLC*

**TABLE OF CONTENTS**

ORAL ARGUMENT REQUESTED.............................................................................................1

MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFF'S MOTION FOR DISCHARGE, DISMISSAL AND OTHER RELIEF IN INTERPLEADER, INCLUDING ATTORNEYS' FEES....1

    ALMEIDA LAW GROUP,......................................................................................................1

    DYER LAW FIRM ................................................................................................................2

TABLE OF AUTHORITIES.....................................................................................................5

FACTUAL BACKGROUND[7]...................................................................................................7

    A.    The Policy.............................................................................................................7

    B.    The Florida Action...............................................................................................7

    C.    The New York State Action and Appointment of the New York Receiver....................9

    D.    The Death Benefit..............................................................................................10

    E.    LS 1019's Death Benefit Claim ........................................................................10

    F.    LS 1019's California Action ..............................................................................11

    G.    The New York Receiver's Motion.......................................................................11

    H.    The SEC Receiver's Motion to Compel and Motion for Contempt ...........................12

    I.    The Interpleader Action.....................................................................................13

    J.    Dismissal of the California Action......................................................................14

SALIENT PROCEDURAL HISTORY.......................................................................................14

LEGAL ARGUMENT ..........................................................................................................15

    I.    LS 1019 Does Not Oppose Brighthouse's Request to Dismiss and Discharge Brighthouse and Permanently Enjoin the Claimants From Commencing Any Future Actions Against Brighthouse for Payment of the Remaining Death Benefit.........................................15

    II.    Brighthouse is Entitled to its Attorneys' Fees and Costs...............................................15

    A.    Legal Standard for Awarding Fees......................................................................15

    B.    Equity Weighs in Favor of Not Awarding Brighthouse Any Attorneys' Fees and Costs

18

1.    The Claimants' Dispute Involves Straightforward Issues That are Part of the Ordinary Cost of Doing Business..................................................................................................18

2.    Claimants Have Not Improperly Protracted the Proceedings.......................................20

3.    Brighthouse Has Failed to Act in Good Faith and Provided Nothing More Than Routine Services..........................................................................................................21

C.    The Fees and Costs Sought By Brighthouse Are Unconscionable ..............................22

1.    The Florida Action ......................................................................................................22

2.    The California Litigation...............................................................................................25

3.    Fees In the Interpleader Action Are Not Appropriate..................................................25

D.    Sanction Against Defendants Are Inappropriate And Instead Sanctions Should be awarded against Brighthouse. ........................................................................................28

CONCLUSION ...........................................................................................................................29

ALMEIDA LAW GROUP,..........................................................................................................29

DYER LAW FIRM ......................................................................................................................29

## TABLE OF AUTHORITIES

### CASES

*Abenoza v. 178-184 E. Second St. Condo*, 2010 N.Y. Misc. LEXIS 7203, *4 (Sup. Ct. Apr. 5, 2010) .................................11

*Bayridge Prince, LLC v. City of New York*, 56 Misc. 3d 684, 685 (Sup. Ct. 2017) ..............................................11

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) .....................................................................17, 27

*Case v. Unified School District* No. 233, 157 F.3d 1243, 1250 (10th Cir.1998).........................................17, 26

*Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985).....................................................................15

*Cuccia v. H.M Weiner Assoc.*, 234 A.D.2d 26, 26 (1st Dep't 1996) .......................................................10

*Dealy-Doe-Eyes Maddux v. Schur,* 139 A.D.3d 1281, 1281 (3d Dep't 2016).............................................11

*Del. Life Ins. Co. v. Moore*, No. 18cv944-L, 2019 U.S. Dist. LEXIS 27968, at *15-16, 18-19 (S.D. Cal. Feb. 21, 2019)...........................................................................................................17, 24

*Edward D. Jones & Co., L.P. v. Am. Nat'l Ins. Co.,* No. 1:19-cv-00018-JMC, 2020 U.S. Dist. LEXIS 237512, at *11 (D.S.C. Dec. 17, 2020) .................................................................................18, 28

*Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (5th Cir. 1962)..................................................................16, 24

*Genworth Life and Annuity Ins. Co. v. Hubbell*, No. 19 CV 6547, 2020 U.S. Dist. LEXIS 154862, at *6-7 (N.D. Ill. Aug. 26, 2020) ..................................................................................................19

*Hall v. Cole*, 412 U.S. 1, 4-5 (1973)...........................................................................................15

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ...................................................................17, 26

*Hunter v. Fed. Life Ins. Co.,* 111 F.2d 551, 557 (8th Cir. 1940) at 557 .................................................16

*In re Mandalay Shores Co-op. Housing Ass'n, Inc.*, 21 F.3d at 383 ......................................................18

*Judson Realty, LLC v. Judson CRE LLC*, 2022 N.Y. Misc. LEXIS 10928, *6 (Sup. Ct. 2022) ........................11

*Metro. Life Ins. Co. v. Estate of Seagrove*, No. 1:18- CV-0920, 2019 U.S. Dist. LEXIS 32001, at *11 (N.D.N.Y. Feb. 28, 2019)...........................................................................................................19

*Midland Nat'l Life Ins. Co.v. Ingersoll*, No. 13-C-1081, 2014 U.S. Dist. LEXIS 175041, at *12-13 (E.D. Wis. Dec. 18, 2014) ..................................................................................................16, 24

*O'Brien v. Contreras*, 126 A.D.3d 958, 958 (2d Dep't 2015)..............................................................11

*Orvis v. Anderson, Clayton & Co.*, 266 A.D. 351, 353 (1st Dep't 1943).................................................11

*Persuad v. Teaneck Nursing Ctr., Inc.,* 290 A.D.2d 350, 351 (1st Dep't 2002)..........................................11

*Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ....................................................................18, 27

*Renasant Bank, Inc. v. AVE, Inc.*, No. CV 19-0733-CG-MU, 2021 WL 1324532 (S.D. Ala. Jan. 14,...............25

*Riversource Life Ins. Co. v. Martell*, 3:20-CV-00749 (KAD), 2020 U.S. Dist. LEXIS 267159, at *12 (D. Conn. Dec. 23, 2020) ....................................................................................................19

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)......................................17, 18, 26, 28

*Rosenblum v. 170 West Village Assoc.*, 175 A.D.2d 702, 703 (1st Dep't 1991) ..................................................11

*Sun Life Assurance Co. of Canada v. Sampson*, 556 F.3d 6, 8 (1st Cir. 2009) ........................................16

*Sun Life Assurance Co. v. Bew*, 530 F. Supp. 2d 773, 776 (E.D. Va. 2022) ................................................16, 24

*Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965) .......................................................18

*Van Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014)...................................................16, 24

*Wells Fargo Bank, N.A. v. Ramirez,* 19-CV-04561 (FB)(PK), 2019 U.S. Dist. LEXIS 245895, *5 (E.D.N.Y. Dec. 13, 2019..........................................................................................................17, 27

*Worldview Ent. Holdings Inc. v. Woodrow*, 159948/2014, 2022 N.Y. Misc. LEXIS 11052, at *10-11 (Sup. Ct. N.Y. Cnty. July 1, 2022), affirmed in relevant part, 203 A.D.3d 629 (1st Dep't 2022)...................................10

*Zegelstein v. Faust*, 2015 N.Y. Misc. LEXIS 1475, *3 (Sup. Ct. Apr. 27, 2015)..........................................11

### CODES

Rule 22 of the Federal Rules of Civil Procedure...............................................................................16

Defendant, Life Shares, 1019, LLC ("LS 1019"), by and through its undersigned attorneys, hereby submits its memorandum of points and authorities in opposition to Plaintiff Brighthouse Life Insurance Company's ("Brighthouse") Motion for Discharge, Dismissal and Other Relief in Interpleader, Including Attorneys' Fees. LS 1019 does not oppose Brighthouse's motion regarding its efforts to dismiss Brighthouse from this action with prejudice; however, LS 1019 does oppose Brighthouse's pursuit of bad faith, unconscionable attorneys' fees, costs and sanctions.

## PRELIMINARY STATEMENT

The present litigation arises from a genuine dispute regarding rights and interests to a life insurance policy, including the remaining death benefit. This is the exact reason for the creation of interpleader litigation. The right to the death benefit of the John P. Utsick life insurance policy has been part a part litigation since at least 2022. When Mr. Utsick died on June 8, 2023, there was a genuine dispute on how the funds should be distributed/deposited.

On or about January 4, 2024, the State Court of New York issued an order requiring Defendant Stefan Leer to deposit funds of LS 1019 with the New York receiver despite the State Court of New York not having jurisdiction over LS 1019 due to a lack of summons and service. Once this order was issued (which LS 1019 contends was done in error), it provided clarity to the parties as to where the Brighthouse Death Benefit should be deposited. During a January 12, 2024, status conference in this Court, all Defendants agreed to discontinue the accumulation of interest on the Death Benefit until a final agreement was made regarding the deposit of the Death Benefit.

At this point, Brighthouse became unreasonable and acted in bad faith. Immediately upon the pausing of interest, Brighthouse began to pursue inflated and unconscionable attorneys' fees and costs originating in multiple legal forums. Despite minimal motion practice, other than pro hac vices and requests for extensions to answer, in mid-January of 2024, Brighthouse sought over $155,000.000 in fees and costs to resolve the matter. When Defendants protested the outrageous fees, Defendants

6

doubled down and charged even more outrageous fees -- including several thousand dollars to pursue their fees. Despite little work being performed in the last two months other than the present motion, Brighthouse seeks an additional $56,000.00 in fees.

In addition to an improper and unsupported pursuit of fees and costs, Brighthouse seeks recovery of all interest that they are contractually obliged to pay. Brighthouse seeks recovery of their interest by way of sanctions. There is no justification for these requested sanctions. Additionally, the vast majority of Brighthouse's complaints regarding Defendants' delays are in 2024 -- when there was no interest accumulating. Clearly, it is Brighthouse -- not Defendants -- who are seeking a windfall from their participation in the present litigation. As such, Brighthouse's pursuit of attorneys' fees, costs and sanctions must be denied.

In support of this motion, Brighthouse also submits the following declarations and the exhibits annexed thereto:

- Declaration of Stefan Leer. ("Leer Dec.")
- Declaration of Dustin J. Dyer, Esq. ("Dyer Decl.")

## FACTUAL BACKGROUND[7]

### A. The Policy

Brighthouse, formerly The Travelers Insurance Company, issued a flexible premium adjustable life insurance policy (the "Policy") with a policy date of November 7, 2004, providing coverage on the life of John P. Utsick (hereinafter "Utsick"). (Interpleader Complaint. ¶ 21, Ex. A.) When the policy was issued, the sole primary beneficiary to the Policy proceeds was the John P. Utsick Irrevocable Trust Dated 2/4/04. (Interpleader Complaint ¶ 22.)

### B. The Florida Action

On or about April 17, 2006, the Securities and Exchange Commission ("SEC") commenced an action in the U.S. District Court for the Southern District of Florida (the "Florida Action") against

7

Utsick and certain entities associated with Utsick, such as Worldwide Entertainment, Inc., The Entertainment Fund, Inc., American Enterprises, Inc. and Entertainment Funds, Inc. (collectively, the "Receivership Entities") (Interpleader Complaint Ex. B). Shortly thereafter, on April 20, 2016, Michael I. Goldberg (the "SEC Receiver") was appointed over the assets, liabilities and business interests of the Receivership Entities. (Interpleader Complaint Ex. C). In or around December 2006, ownership of the Policy was transferred to the SEC Receiver, and shortly thereafter the SEC Receiver was designated as the sole primary beneficiary to the Policy proceeds.

In or around May 2021, the SEC Receiver transferred and assigned the Receivership Entities' ownership interest in the Policy to Life Factor II, LLC ("Life Factor"), and in exchange, the SEC Receiver retained certain irrevocable death benefits under the Policy. (Interpleader Complaint Ex. D & E Declaration of Stefan Leer ¶ 4.) Life Factor became responsible for maintaining the Policy and making all premium payments. In or around May 2021, Life Factor was designated irrevocable primary beneficiary to 53.33% of the Policy proceeds and the SEC Receiver was designated irrevocable primary beneficiary to 46.67% of the Policy proceeds. (Interpleader Complaint, Ex. G). Pursuant to the agreement between SEC Receiver and Life Factor, Life Factor would gain an additional $500,000.00 interest in the policy for each year Utsick remained alive. (Interpleader Complaint, Ex. D & E).

For example, if Utsick died within the first year of the order approving the agreement, Life Factor would receive $8,000,000.00 and the SEC Receiver would receive $7,000,000.00. If Utsick died within the second year of the order approving the agreement, Life Factor would receive $8,500,000.00 and the SEC Receiver would receive $6,500,000.00. If Utsick died within the third year of the order approving the agreement, Life Factor would receive $9,000,000.00 and the SEC Receiver would receive $6,000,000.00.

In or around March 2022, Life Factor, assigned the Policy to LS 1019. (Interpleader Complaint

8

Ex. N; Declaration of Stefan Leer ¶5). LS 1019 was designated irrevocable primary beneficiary to 53.33% of the Policy proceeds and the SEC Receiver was re-designated irrevocable primary beneficiary to 46.67% of the Policy proceeds. (Interpleader Complaint Ex. O.) As with Life Factor, LS 1019 would gain an additional $500,000.00 interest in the policy for each year that Utsick remained alive.

**C.  The New York State Action and Appointment of the New York Receiver**

On or about February 4, 2022, Spin Capital commenced an action in New York Supreme Court, County of New York against, Golden Foothill Insurance Services, LLC; Life Factor; Life Shares II, LLC; El Dorado Hills Insurance Solutions, Inc.; Lone Wolf Insurance Services, Inc.; ELDO Investments, LLC; The Genesis LS Fund, LLC,; KTL Holdings, Inc.; Zurich American Life Insurance Co.; Accordia Life and Annuity Company; John Hancock Life Insurance Company; Brighthouse Life Insurance Co.; Cap Factor, LLC; Stefan Leer, and  Tatanisha Leer (the "New York State Action"), seeking, *inter alia*, monetary damages and a declaratory judgment declaring the rights of the parties in connection with the Policy. (Declaration of Stefan Leer Ex. 1).

It is important to note that LS 1019 was not identified as a defendant in the initial complaint in the New York State Action. A summons was issued for the named Defendants and each named Defendant was served.

On or about July 14, 2022, Spin Capital filed an Amended Complaint adding DRVN Holding, LLC and LS 1019 as defendants. (Interpleader Complaint Ex. K). No summons was issued for either DRVN Holding, LLC or LS 1019. (Declaration of Dustin J. Dyer ¶ 4). No service of process was done for either DRVN Holding, LLC or LS 1019. (Declaration of Dustin J. Dyer ¶ 4).

On January 6, 2023, the New York Supreme Court appointed Fred Stevens as the temporary receiver. ("New York Receiver").

### D. The Death Benefit

Mr. Utsick passed away on June 8, 2023. (Interpleader Complaint, Ex. Q.) As a result of the death of the Insured, the Policy death benefits in the amount of $15,000,000 (the "Death Benefit(s)") became due to the identified beneficiaries: LS 1019 and the SEC Receiver. Brighthouse does not contest their liability to make immediate payment (Interpleader Complaint ¶ 48.) At the time of the Insured's death, LS 1019 was the primary beneficiary of record to 53.33% of the Policy proceeds ($8,000,000.00) and the SEC Receiver was primary beneficiary of record to 46.67% of the Policy proceeds ($7,000,000.00, Interpleader Complaint Ex. O.) However, given the fact that Utsick lived more than two (2) years afterwards, pursuant to the agreement between the parties as identified, LS 1019 was entitled to $9,000,000.00 of the Policy proceeds and the SEC Receiver was entitled to $6,000,000.00. (Interpleader Complaint, Ex. D & E).

### E. LS 1019's Death Benefit Claim

On or about June 28, 2023, Stefan Leer, on behalf of LS1019, asserted a claim for the Death Benefit. (Interpleader Complaint Ex. R.) Leer, who is not an attorney, had the understanding that he was to assert the claim for all beneficiaries, and that Brighthouse would divide the Death Benefit to the beneficiaries pursuant to their identified percentage interest. At the time the claim was asserted, LS 1019 and The SEC Receiver were working to acknowledge the change in beneficiary interest given the parties agreement as identified. (Declaration of Dustin J. Dyer Ex. 1).

Given that no summons was issued for LS 1019, and that no service of process was completed, LS 1019 identified that it was not subject to the New York State Action's receivership. LS 1019's position was supported by significant legal authority:

> It is well-settled New York law that a "court lacks subject matter jurisdiction where the party failed to file the summons and complaint." *Worldview Ent. Holdings Inc. v. Woodrow,* 159948/2014, 2022 N.Y. Misc. LEXIS 11052, at \*10-11 (Sup. Ct. N.Y. Cnty. July 1, 2022), affirmed in relevant part, 203 A.D.3d 629 (1st Dep't 2022); see also, *Cuccia v. H.M Weiner Assoc.,* 234 A.D.2d 26, 26 (1st Dep't 1996) ("The failure to serve a

10

summons with the complaint in this matter is a jurisdictional defect requiring dismissal of the action"); *Rosenblum v. 170 West Village Assoc.*, 175 A.D.2d 702, 703 (1st Dep't 1991) ("Either the service [of the summons] was valid from the outset or it was not, and if, as here, it was not, there can only be one consequence, the dismissal of the action"); *Persuad v. Teaneck Nursing Ctr., Inc.*, 290 A.D.2d 350, 351 (1st Dep't 2002) (finding that failure to serve summons on defendant deprived the court of jurisdiction); *Orvis v. Anderson, Clayton & Co.*, 266 A.D. 351, 353 (1st Dep't 1943) ("Failure to serve the summons in accordance with the statute and the rules within the period prescribed by law resulted in the divesting of jurisdiction"); *O'Brien v. Contreras*, 126 A.D.3d 958, 958 (2d Dep't 2015) ("plaintiff . . . never filed or served a summons or complaint. In light of this failure to file, the jurisdiction of the court was never invoked and the purported action was a nullity"); *Dealy-Doe-Eyes Maddux v. Schur*, 139 A.D.3d 1281, 1281 (3d Dep't 2016) ("Here, although plaintiff purchased an index number and filed a complaint, she never filed a summons or summons with notice. Given plaintiff's failure, the purported action was a nullity, and Supreme Court properly dismissed it for want of subject matter jurisdiction"); *Bayridge Prince, LLC v. City of New York*, 56 Misc. 3d 684, 685 (Sup. Ct. 2017) ("the failure to file the initial papers necessary to institute an action constitutes a nonwaivable, jurisdictional defect, render the action a nullity. . . Accordingly, this court lacks subject matter jurisdiction to adjudicate this matter or grant plaintiff's requested relief"); *Zegelstein v. Faust*, 2015 N.Y. Misc. LEXIS 1475, *3 (Sup. Ct. Apr. 27, 2015) ("The failure to serve a summons with the complaint in this matter is a matter is a jurisdictional defect requiring the dismissal of the action. Accordingly, we find that the defendants have demonstrated conclusively that this Court does not have personal jurisdiction over the defendants due to the failure to serve a summons with the complaint"); *Abenoza v. 178-184 E. Second St. Condo*, 2010 N.Y. Misc. LEXIS 7203, *4 (Sup. Ct. Apr. 5, 2010) ("While a court may overlook minor defects in the form of legal papers, the failure to serve a summons with the complaint is a jurisdictional defect requiring dismissal of the action. Here, the affidavits of service . . . indicate that each of the defendants was served only with a complaint. Accordingly, the action must be dismissed as jurisdictionally defective"); *Judson Realty, LLC v. Judson CRE* LLC, 2022 N.Y. Misc. LEXIS 10928, *6 (Sup. Ct. 2022) (similar).

Notwithstanding, no Death Benefit payment was made by Brighthouse.

### F.  LS 1019's California Action

On or about August 31, 2023, given the New York State Action's lack of jurisdiction over LS 1019, and Brighthouse's refusal to pay the Death Benefit, LS 1019 commenced an action in California Superior Court of Orange County against Brighthouse (the "California Action"). (Declaration of Dustin J. Dyer Ex. 2). This action was filed by LS 1019's California and Corporate counsel, Dustin J. Dyer.

### G.  The New York Receiver's Motion

On or about September 1, 2023, in connection with the New York State Action, the New York

11

Receiver filed a motion for an Order to Show Cause. (Interpleader Complaint Ex. X.) On or about October 2, 2023, the Leer Defendants filed an opposition to the Receiver's motion for an Order to Show Cause. (Declaration of Dustin J. Dyer Ex. 3). In the opposition, the Leer Defendants, among other arguments, identified that due to Plaintiff's failures in the New York State Action, the New York Court lacked jurisdiction over LS 1019. The Leer Defendants provided the New York State Court with the above stated legal authority supporting the lack of jurisdiction.

By Decision and Order dated January 4, 2024, the Court in the New York State Action, granted the New York Receiver's motion. The New York Court essentially ignored the separation of Stefan Leer as an individual and Stefan Leer as an agent of LS 1019, ordering Stefan Leer to cause LS 1019 to comply with the Receivership Order despite no jurisdiction over LS 1019.

Absent from the Court's order is any authority supporting the ruling. As part of the New York Court's Order, Defendant Stefan Leer was ordered to provide the New York Receiver with $1,985,367.42 of the John Hancock Policy relating to Utsick. Leer and the New York Receiver are actively working together to resolve this issue and provide complete payment of the $1,985,367.42 to the New York Receiver. (Dyer Declaration ¶ 11).

**H. The SEC Receiver's Motion to Compel and Motion for Contempt**

On or about September 8, 2023, the SEC Receiver filed a Motion to Compel Turn Over and to Hold Brighthouse in Contempt. (Declaration of Dustin J. Dyer Ex. 5). Amazingly, Brighthouse claims that their refusal to pay the SEC Receiver was not their fault despite all parties, other than Brighthouse, agreeing to the payment to the SEC Receiver.

The court in the Florida Action set a status conference for September 15, 2023. (Declaration of Dustin J. Dyer Ex. 6). During the status conference, Attorney Dyer, on behalf of all Leer entities, including LS 1019 stated the following:

"Florida Court: Is the insurance company satisfied that there's no issue with regard to those

12

three entities or potential claims to this $6 million?

Brighthouse Counsel: With those three entities and individuals, yes. The holdup are the Leer Entities and ---

Florida Court: Time Out. Time Out.... Okay. So that leaves the Leer group. So we've got Mr. Dyer. Mr. Dyer, you have not filed a response or anything. So what is the Leer position with regard, not to the $9 million but the $6 million?

MR. DYER: We have no opposition to the $6 million going to Mr. Goldberg as the receiver. I sent that in multiple emails and clarified today that each one of the, what we call, Leer Entities consents to the $6 million being distributed to Mr. Goldberg.

Florida Court: This may seem kind of a silly question, but why are we here?

Brighthouse Counsel: If I may, Judge. Mr. Dyer represents one of the entities in a California action they brought against Brighthouse. Unfortunately, as far as we understand and know, the real attorneys, if I say, for lack of sounding, you know, terrible, but -- I don't want to diss Mr. Dyer in any way, shape, or form. But the real players here are White & Williamson [sic] and a host of attorneys that have not presented themselves today before the Court. And, in fact, this morning we received an email from Mr. Heskin, which is Shane Heskin, one of their lead attorneys at White & Williamson -- White & Williams, that clearly said that the only entity that agrees is -- and I'll ask Michelle for help because I just came on board five days ago.

Brighhouse Counsel #2: Cap Factor -- The most recent entity that –

Brighthouse Counsel: LifeShare's 1019, correct. So they only agree as to LifeShare's 1019, which leaves nine other entities, including two individuals, which are Mr. and Mrs. Leer, that are not in consent with regard to the $6 million being distributed to the SEC receiver.

Florida Court: Well, are the others taking an adverse position or are they just not responding?

MR. DYER: If I can provide some –

Florida Court: Yes.

MR. DYER: -- clarification here. I represent each of the entities and the Leer individuals for all purposes outside of the New York action. And I'm providing the consent for each one of those." (Declaration of Dustin J. Dyer Ex. 6-Pg. 5:18-7:20)

Despite Brighthouse's active involvement in the Florida Action only being a single calendar week (September 8, 2023 - date of commencement of the litigation to September 15, 2023 - date all parties agreed to distribution); and there being no issue regarding distribution of Death Benefit funds to the SEC receiver, Brighthouse now claims to have incurred over $70,000.00 in relation to this issue. (*See* Quesada Decl. ¶ 11; Millioen Decl. ¶ 10.)

## I. The Interpleader Action

On September 28, 2023, Brighthouse commenced this interpleader action against Defendants. (ECF Doc. 1.) The commencing of interpleaders is a common practice among insurance companies. Brighthouse has participated a litany of interpleader actions within the last year alone – and in

13

numerous states. A quick google search easily identifies interpleader filings by Brighthouse including:

1) Brighthouse v Mosack (US District Court Southern District Court of NY) Case No. 21 Civ. 605;

2) Brighthouse v. Florez (US District Court Northern District Court of CA) Case No. 3:24-cv-01556;

3) Brighthouse v. Chun (US District Court Central District Court of CA) Case No. 2:24-cv-01945).

### J. Dismissal of the California Action

Once LS 1019's counsel became aware of the current action, the parties in the California Action agreed that dismissal of the California Action was prudent. On November 1, 2023, Attorney Dyer sent an email to Brighthouse's California counsel stating "Ronald, This confirms our conversation just now on the Life Shares 1019 LLC v. Brighthouse Life Insurance Co. et al litigation. (US Central District of California Case No. 8:23-cv-01846-KES) We have agreed that Plaintiff will be dismissing the entire action without prejudice and all parties will bear their own costs and fees." (Declaration of Dustin Dyer Ex. 7). LS 1019 filed the dismissal the next day, November 2, 2023. (Declaration of Dustin Dyer Ex. 8).

### SALIENT PROCEDURAL HISTORY

Brighthouse filed the Complaint in the present action on September 28, 2023. (ECF Doc. 1.) Spin Capital and the New York Receiver filed their Answers on January 10, 2024 (ECF Docs. 51, 53), and the Leer Parties and LS1019 filed their Answers on January 24, 2024. (ECF Docs. 71, 72).

A status conference with the Court was held on January 12, 2024. (*See* ECF Doc. 56.) During the conference, the parties agreed to pause the interest currently accruing on the $9,000,000.00 held by Brighthouse, and that the parties would meet and confer in good faith towards a resolution of the Interpleader Action. With an interest rate of 8%, the $9,000,000.00 held by Brighthouse was incurring $1,972.60 in interest every day. Through this agreement, Brighthouse was able to hold on to the $9,000,000.00 for forty-eight (48) days without incurring additional interest. This agreement saved Brighthouse $94,684.80.

14

After the conference, Brighthouse failed to meet and confer in good faith regarding the Interpleader action. Instead, Brighthouse, without any legal authority supporting their position, insisted that they be paid the entirety of their fees in the Interpleader Action, the Florida Action and the California Action -- totaling $155,062.00. (See Declaration of Dustin J. Dyer Ex. 9). Defendants could not justify, in good faith, paying fees that are wholly unrelated to the present action, inflated and purely uncollectable. Despite little work being done in the present litigation (other than Brighthouse drafting the present fees motion) Brighthouse claims to have incurred an additional $56,789.14 in fees and costs within the last sixty (60) days.

As punishment for not agreeing with the exorbitant fee request, Brighthouse, in addition to unreasonably increasing fees, now seeks an additional $337,315.07 in sanctions. Brighthouse provides only boilerplate authority to justify their bad faith request.

## LEGAL ARGUMENT

I.    **LS 1019 Does Not Oppose Brighthouse's Request to Dismiss and Discharge Brighthouse and Permanently Enjoin the Claimants From Commencing Any Future Actions Against Brighthouse for Payment of the Remaining Death Benefit**

Brighthouse seeks an Order from the Court discharging Brighthouse from all liability in connection with the Policy and Remaining Death Benefit, permanently enjoining the Claimants from commencing any other actions or proceedings seeking payment of the Remaining Death Benefit or otherwise in connection with the Policy and dismissing Brighthouse from this action with prejudice. Given that Brighthouse deposited $9,338,602.74 with the Court (ECF Docket Text, Mar. 14, 2024), LS 1019 does not oppose Brighthouse's request to dismiss and discharge.

II.    **Brighthouse is Entitled to its Attorneys' Fees and Costs**
        **A.  Legal Standard for Awarding Fees**

"Under the American Rule, absent statutory authorization or an established contrary exception, each party bears its own attorney's fees." *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985); *see also Hall v. Cole*, 412 U.S. 1, 4-5 (1973) ("Although the traditional American rule ordinarily disfavors

15

the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require.").

Despite no express authorization to award attorney fees in either the Federal Interpleader Act or Rule 22 of the Federal Rules of Civil Procedure, there is an established contrary exception based on the equitable nature of the interpleader remedy. While attorney fees are not granted as a matter of course in federal interpleader actions, "[i]t is settled that a federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action whenever it is **fair and equitable to do so**." *Sun Life Assurance Co. of Canada v. Sampson*, 556 F.3d 6, 8 (1st Cir. 2009) (emphasis added).

If an interpleader fee award is deemed appropriate, the resulting amount should be modest and not significantly deplete the total fund at issue. (*Hunter v. Fed. Life Ins. Co.,* 111 F.2d 551, 557 (8th Cir. 1940) at 557). The scope of compensable expenses is very limited. "By its very nature [an interpleader fee award] is of a relatively small amount simply to compensate for initiating the proceedings." (*Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (5th Cir. 1962)). **Recoverable interpleader fee awards are confined to "attorney fees billed to prepare the complaint, obtain service of process on the claimants to the fund, and secure the plaintiff's discharge from liability and dismissal from the lawsuit."** (*Van Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014)) (emphasis added) (citation omitted). Charges for professional services outside of this narrow scope of tasks are typically not included in an interpleader fee award, **including: "preparing to defend a potential collateral claim or counterclaim,"** (*Sun Life Assurance Co. v. Bew*, 530 F. Supp. 2d 773, 776 (E.D. Va. 2022)(emphasis added)); conducting discovery-related tasks, (*Midland Nat'l Life Ins. Co.v. Ingersoll*, No. 13-C-1081, 2014 U.S. Dist. LEXIS 175041, at *12-13 (E.D. Wis. Dec. 18, 2014)); conducting background research to determine the necessity of an *interpleader, (Del. Life Ins. Co. v. Moore*, No. 18cv944-L, 2019 U.S. Dist. LEXIS 27968, at *15-16, 18-19 (S.D. Cal. Feb. 21,

16