# EXHIBIT 3
# Part 2 of 2

2019)); and **work related to recovery of attorney fees,** (*id. and Wells Fargo Bank, N.A. v. Ramirez,* 19-CV-04561 (FB)(PK), 2019 U.S. Dist. LEXIS 245895, *5 (E.D.N.Y. Dec. 13, 2019).

Detailed supporting information is usually required to justify an attorneys' fee award. Courts compare the requested fee amount to the "lodestar" amount, which equals the reasonable hourly rate multiplied by the hours reasonably expended. (*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). District courts use the following factors to evaluate the reasonableness of both rates and hours worked: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. (*Id.* at 243-44)

Fee applicants "bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended," (*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), which requires them to "prov[e] [the] hours [claimed] by submitting meticulous, contemporaneous time records that reveal... all hours for which compensation is requested and how those hours were allotted to specific tasks," (*Case v. Unified School District* No. 233, 157 F.3d 1243, 1250 (10th Cir.1998) (citation omitted). Fee applicants must also establish that the rates requested are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skills, experience and reputation." (*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "In addition to the attorney's own affidavits, the fee applicant must provide satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." (*Plyler v. Evatt*, 902

17

Case 1:23-cv-08570-DEH   Document 94   Filed 03/29/24   Page 18 of 29

F.2d 273, 277 (4th Cir. 1990)). "Examples of the type of specific evidence that... is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." (*Edward D. Jones & Co., L.P. v. Am. Nat'l Ins. Co.,* No. 1:19-cv-00018-JMC, 2020 U.S. Dist. LEXIS 237512, at *11 (D.S.C. Dec. 17, 2020) (citations omitted)). A district court "abuse[s] its discretion by awarding the hourly rates requested [by the fee applicant] in the absence of 'satisfactory specific evidence of the prevailing market rates.'" (*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

### B. Equity Weighs in Favor of Not Awarding Brighthouse Any Attorneys' Fees and Costs

Brighthouse should not be awarded any of its requested attorneys' fees and costs, due to a litany of reasons -- including the fees arising from the ordinary costs of doing business, their pursuit of clearly unrecoverable fees and costs, their bad faith tactics in the present litigation, the inflation of fees and the assertion of unreasonable legal positions done solely for the purpose of increasing total fees.

### 1. The Claimants' Dispute Involves Straightforward Issues That are Part of the Ordinary Cost of Doing Business

In Interpleader actions, attorneys' fees are not granted as a matter of right, especially when the party seeking fees is an insurance company. "We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds by bringing an action for interpleader." (*See Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965)). The Eleventh Circuit later held that "attorneys' fees are not warranted... when a stakeholder's interpleader claim arises out of the normal course of business." (*In re Mandalay Shores Co-op. Housing Ass'n, Inc.*, 21 F.3d at 383). The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds-disputes that arise with some modicum of regularity. In a sense, the insurance company will use

18

interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award. (*Id.*; *see also Genworth Life and Annuity Ins. Co. v. Hubbell*, No. 19 CV 6547, 2020 U.S. Dist. LEXIS 154862, at *6-7 (N.D. Ill. Aug. 26, 2020) ("Weighing possible future expenses against [the] probability of occurrence [of competing claims] is precisely what an insurance company does when it sets premiums. This ability to mitigate costs ahead of time importantly distinguishes insurance companies from other types of stakeholders who might bring an interpleader action."). "Only where there are unique circumstances, such as particularly complex or novel proceedings, might a court award attorneys' fees to an insurance company in an interpleader action," (*Riversource Life Ins. Co. v. Martell*, 3:20-CV-00749 (KAD), 2020 U.S. Dist. LEXIS 267159, at *12 (D. Conn. Dec. 23, 2020)), and "[t]he fact that Plaintiff may have had to spend additional time in this case compared to others does not give rise to an automatic inference that such additional time is an expense outside the ordinary cost of doing business. (*Metro. Life Ins. Co. v. Estate of Seagrove*, No. 1:18- CV-0920, 2019 U.S. Dist. LEXIS 32001, at *11 (N.D.N.Y. Feb. 28, 2019)).

Brighthouse has completely failed to justify that the present litigation is outside of the normal course of business. The present interpleader action, like all interpleader actions, deals with multiple parties who have competing claims to the Death Benefits. Brighthouse attempts to create complexity in the present litigation by referring to other litigations they did not participate in. For example, in Brighthouse's moving papers, it refers to SEC litigation which is "a nearly twenty-year long litigation on behalf of thousands of defrauded investors"; however, Brighthouse fails to identify that it didn't participate in 99.9% of that litigation. Brighthouse's active involvement in the Florida Action was

19

only a calendar week (September 8, 2023- date of the SEC Receiver's Motion to September 15, 2023- date all parties agreed to distribution). Additionally, the only issue involving Brighthouse was regarding distribution of Death Benefit funds to the SEC receiver -- which the parties unanimously agreed to without issue.

No novel or complex issues have arisen in the present litigation. The only two motions that have been filed in the present litigation, other than motions related to pro hac vice or extensions of time to answer, are Brighthouse's unopposed motion to deposit funds and the present motion. Given the straightforward nature of the present litigation there is no support that Brighthouse's participation in the present litigation is anything other than the ordinary cost of doing business -- which is already accounted for in their business structure and premium payment calculations. Given the straightforward nature of the present litigation, there is absolutely no justification for over $211,000.00 in fees and costs. As such, the present motion must be denied in its entirety.

## 2. Claimants Have Not Improperly Protracted the Proceedings

Brighthouse has failed to establish any delay by any defendant in the present litigation.

First, Brighthouse appears to claim the defendants' actions were improper simply because the filing of the present litigation was necessary. "Brighthouse attempted to avoid the action entirely by proposing that the Defendants consent to Brighthouse's disbursement of the Remaining Death Benefit to the New York Receiver and the release and discharge of Brighthouse, but the Defendants refused to unanimously agree." (Brighthouse P&As Pg. 17). There is no justification for this position. As stated above, filing interpleader actions is part of the ordinary cost of doing business for insurance companies.

The only non-general claim of delay that Brighthouse was able to point to in their motion is that in February of 2024, the parties refused to sign a release for the benefit of Brighthouse only. Brighthouse falsely claims that "the Leer Parties and LS 1019 refused to agree to release Brighthouse,

20

with no explanation whatsoever." At the time Brighthouse was seeking a release, Brighthouse was additionally seeking exorbitant fees in three separate litigations. This is identified in more detail below.

Clearly, there was justification in attempting to resolve the issues regarding liability and fees at the same time. It is worth noting that interest stopped accruing, through agreement of the parties on January 12, 2024, therefore, it was a benefit for Brighthouse to not resolve the dispute and to deposit the funds because, by doing this, Brighthouse was able to retain $9,000,000 and use it for the benefit of their business without the need to pay any interest.

In direct contradiction to Brighthouse's claim of delay, no party actively opposed Brighthouse's pursuit to deposit the Death Benefit funds. Each Defendants main opposition to Brighthouse was their pursuit of uncollectable and exorbitant attorneys' fees and costs, as well as Brighthouse's insistence on tying their fees to a resolution in the Interpleader action.

### 3. Brighthouse Has Failed to Act in Good Faith and Provided Nothing More Than Routine Services

Contrary to the contentions in Brighthouse moving papers, it was LS 1019, through their attorney, Dustin Dyer, who informed others of Utsick's death, not Brighthouse. Immediately, upon hearing of Utsick's death, LS 1019 attempted to resolve any possible issues with the SEC Receiver to ensure the distribution of both the Brighthouse Death Benefit and Joh Hancock Death Benefit could be distributed without any issues. (Declaration of Dustin J. Dyer Ex. 10). Furthermore, on June 14, 2023, LS 1019 notified Brighthouse and other interested parties that the Trusner litigation in Orange County Superior Court (CA) was settled and final payment was being made. (Declaration of Dustin J. Dyer Ex. 11).

Brighthouse claims that it provided unique services that "voluntarily and in good faith offered its services to achieve a settlement and avoid the present litigation." The only beneficial services which Brighthouse has provided in 2024 is uniting the Defendants against a common enemy trying

21

to charge exorbitant fees. During the January 12, 2024, status conference in this action, each Defendant was hopeful that a resolution regarding depositing the Death Benefit could quickly be achieved and the parties could return to expending their time and effort on the New York State Litigation. Given this optimism, Defendants agreed to suspend the accumulation of interest on the Death Benefit. However, Defendants realized that was unrealistic when it became apparent that any resolution would require Defendants agreeing to pay Brighthouse's inflated attorneys' fees and costs for three separate litigations. Within a week of suspending the accumulation of interest, Brighthouse demanded payment of fees of $155,000.00 in order to have a resolution. (See Dyer Declaration Ex. 9). These actions by Brighthouse have made it impossible for the parties to resolve the interpleader and forced the Defendants to unite against Brighthouse's bad faith pursuit of unconscionable fees and costs.

### C.  The Fees and Costs Sought By Brighthouse Are Unconscionable
#### 1. The Florida Action
Given Brighthouse's refusal to distribute funds to the SEC Receiver, on or about September 8, 2023, the SEC Receiver filed a Motion to Compel Turn Over and to Hold Brighthouse in Contempt. (Declaration of Dustin J. Dyer Ex. 5).  Defendants repeatedly attempted to resolve any issues which Brighthouse may have regarding the distribution of $6,000,000.00 to the SEC Receiver but Brighthouse did not comply claiming more and more formality was necessary. LS 1019 was in conversations with the SEC Receiver on June 9, 2023, the day after Utsick's death acknowledging the SEC Receiver's right to $6,000,000.00 of the Death Benefit. (Declaration of Dustin J. Dyer Ex. 10).

On September 14, 2023, the day prior to a status conference with the Florida Court, Brighthouse drafted a 4+ page summary of Brighthouse's position (excluding the attachment of 2 exhibits) (See Dyer Declaration Ex. 12). Despite the document doing nothing more than reciting facts and Brighthouse's position, Brighthouse claims it expended 5.8 hours on the paper and now seeks

22

payment of $2,465.00. The content of the document could not have taken more than 2 hours to complete, review and file.

The court in the Florida Action set a status conference for September 15, 2023. (Declaration of Dustin J. Dyer Ex. 6). During the status conference, Attorney Dyer, on behalf of all Leer entities, including LS 1019 stated the following:

> "Florida Court: Is the insurance company satisfied that there's no issue with regard to those three entities or potential claims to this $6 million?
> Brighthouse Counsel: With those three entities and individuals, yes. The holdup are the Leer Entities and ---
> Florida Court: Time Out. Time Out…. Okay. So that leaves the Leer group. So we've got Mr. Dyer. Mr. Dyer, you have not filed a response or anything. So what is the Leer position with regard, not to the $9 million but the $6 million?
> MR. DYER: We have no opposition to the $6 million going to Mr. Goldberg as the receiver. I sent that in multiple emails and clarified today that each one of the, what we call, Leer Entities consents to the $6 million being distributed to Mr. Goldberg.
> Florida Court: This may seem kind of a silly question, but why are we here?
> Brighthouse Counsel: If I may, Judge. Mr. Dyer represents one of the entities in a California action they brought against Brighthouse. Unfortunately, as far as we understand and know, the real attorneys, if I say, for lack of sounding, you know, terrible, but -- I don't want to diss Mr. Dyer in any way, shape, or form. But the real players here are White & Williamson [sic] and a host of attorneys that have not presented themselves today before the Court. And, in fact, this morning we received an email from Mr. Heskin, which is Shane Heskin, one of their lead attorneys at White & Williamson -- White & Williams, that clearly said that the only entity that agrees is -- and I'll ask Michelle for help because I just came on board five days ago.
> Brighthouse Counsel #2: Cap Factor -- The most recent entity that –
> Brighthouse Counsel: LifeShare's 1019, correct. So they only agree as to LifeShare's 1019, which leaves nine other entities, including two individuals, which are Mr. and Mrs. Leer, that are not in consent with regard to the $6 million being distributed to the SEC receiver.
> Florida Court: Well, are the others taking an adverse position or are they just not responding?
> MR. DYER: If I can provide some –
> Florida Court: Yes.
> MR. DYER: -- clarification here. I represent each of the entities and the Leer individuals for all purposes outside of the New York action. And I'm providing the consent for each one of those." (Declaration of Dustin J. Dyer Ex. 6-Pg. 5:18-7:20)

Despite Brighthouse's active involvement in the Florida Action only being a single calendar week (September 8, 2023 - date of commencement of the litigation to September 15, 2023 - date all parties agreed to distribution); and there being no issue regarding distribution of Death Benefit funds

23

to the SEC receiver, Brighthouse now claims to have incurred over $70,000.00 in relation to this issue. (*See* Quesada Decl. ¶ 11; Millioen Decl. ¶ 10.)

After resolution of the dispute, Brighthouse's counsel has numerous entries which are completely unsupported. For example, from September 19, 2023, through September 22, 2023, Brighthouse's counsel, Ms. Quesada has 19.1 hours of entries for emails, texts and telephone communications with redacted persons. These entries are wholly improper and provided no benefit to the Florida Litigation which was already resolved in principal and simply in the process of completing the resolution.

As stated above, the scope of compensable expenses is very limited. "By its very nature [an interpleader fee award] is of a relatively small amount simply to compensate for initiating the proceedings." (*Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (5th Cir. 1962)). **Recoverable interpleader fee awards are confined to "attorney fees billed to prepare the complaint, obtain service of process on the claimants to the fund, and secure the plaintiff's discharge from liability and dismissal from the lawsuit."** (*Van Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014)) (emphasis added) (citation omitted). Charges for professional services outside of this narrow scope of tasks are typically not included in an interpleader fee award, **including: "preparing to defend a potential collateral claim or counterclaim,"** (*Sun Life Assurance Co. v. Bew*, 530 F. Supp. 2d 773, 776 (E.D. Va. 2022)(emphasis added)); conducting discovery-related tasks, (*Midland Nat'l Life Ins. Co.v. Ingersoll*, No. 13-C-1081, 2014 U.S. Dist. LEXIS 175041, at *12-13 (E.D. Wis. Dec. 18, 2014)); conducting background research to determine the necessity of an *interpleader, (Del. Life Ins. Co. v. Moore*, No. 18cv944-L, 2019 U.S. Dist. LEXIS 27968, at *15-16, 18-19 (S.D. Cal. Feb. 21, 2019)).

Unstated in Brighthouse's moving papers is that Brighthouse was brought into the Florida Litigation by the SEC Receiver, but Brighthouse now seeks recovery of these fees in a litigation which does not involve the SEC Receiver. Clearly, there is no justification for recovery of these fees. Unlike

24

the parties in *Renasant Bank, Inc. v. AVE, Inc.*, No. CV 19-0733-CG-MU, 2021 WL 1324532 (S.D. Ala. Jan. 14, 2021), Brighthouse was not brought into the Florida Litigation by a party in the Interpleader action.

### 2. The California Litigation

LS 1019 filed a complaint against Brighthouse in California state court on or about August 31, 2023 seeking payment of the Remaining Death Benefit. (Interpleader Complaint Ex. W.) Upon receiving notice of the Interpleader Action, counsel for LS 1019 immediately reached out to resolve the California Litigation.

On October 5, 2024, Brighthouse sought a joint stipulation to extend Brighthouse's time to respond to the California complaint. (See Dyer Declaration Ex. 13). Dyer wrote back the next day approving the joint stipulation for filing. (See Dyer Declaration Ex. 14). Despite this quick agreement, Defendant continues to seek fees in the motion for ex parte applications to extend response deadlines which were never filed. (See Albert Declaration).

On November 1, 2023, LS 1019's attorney and Brighthouse attorney agreed to dismiss the litigation in exchange for a waiver of attorneys' fees and costs. Attorney Dyer sent a confirming email memorializing the conversation. (See Dyer Declaration Ex. 15). On November 2, 2023, the California Action was dismissed. (See Dyer Declaration Ex. 16). Even without an agreement on waiver of fees and costs, Brighthouse's deadline to pursue and fees or costs as a prevailing party (which they weren't) would necessarily have to have been sought by within 14 days of the dismissal pursuant to Rule 54(d)(2)(B)(i). Despite agreement of the parties to waive costs and being more than 4 months late in seeking fees, Brighthouse now seeks over $19,000.00 in legal fees arising from the California Litigation. Clearly this is done in bad faith.

### 3. Fees In the Interpleader Action Are Not Appropriate

Detailed supporting information is usually required to justify an attorneys' fee award. Courts

25

compare the requested fee amount to the "lodestar" amount, which equals the reasonable hourly rate multiplied by the hours reasonably expended. (*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). District courts use the following factors to evaluate the reasonableness of both rates and hours worked: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. (*Id.* at 243-44). Fee applicants "bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended," (*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), which requires them to "prov[e] [the] hours [claimed] by submitting meticulous, contemporaneous time records that reveal... all hours for which compensation is requested and how those hours were allotted to specific tasks," (*Case v. Unified School District* No. 233, 157 F.3d 1243, 1250 (10th Cir.1998) (citation omitted).

In Brighthouse' moving papers, Brighthouse makes no effort to demonstrate the necessary facts to support an attorneys' fee motion. Brighthouse's attorneys' fees declaration are replete with redacted entries which prohibit the Court from determining whether the services were necessary, the novelty and difficulty of the questions raised or the skill required to properly perform the legal services rendered.

Additionally, the fees are clearly inflated. For example, In Tiffany Millioen's declaration and attached fees it shows an entry on September 12, 2023, Ms. d'Arcambal billed 3.00 hours for communications with the New York Receiver. However, on September 12, 2023, the New York

26

Receiver, Fred Stevens billed .7 hours for communications with Ms. d'Arcambal, communications with the SEC Receiver's counsel, Ms. Kretzschmar and reviewing documents. (Dyer Declaration Ex. 17). Over 76% of Ms. d'Arcambal's time is not accounted for on September 12, 2024. On September 14, 2023, of Ms. d'Arcambal billed 4.00 hours for the Florida Litigation status conference letter which Ms. Quesada had already billed 5.8 hours. On September 15, 2023, Ms. d'Arcambal billed 3.0 hours for preparation and participation in the Florida Litigation status conference. This conference lasted less than 20 minutes and consists of 12 pages of transcript. (See Dyer Declaration Ex. 6). These unsupported and unjustified billings are throughout Brighthouse's counsel's billings.

Motions seeking attorneys' fees are prohibited from seeking fees for **work related to recovery of attorney fees,** (*id. and Wells Fargo Bank, N.A. v. Ramirez,* 19-CV-04561 (FB)(PK), 2019 U.S. Dist. LEXIS 245895, *5 (E.D.N.Y. Dec. 13, 2019). Within the time entries accompanying Ms. Millioen's declaration there are over 20 time entries totaling over 30 hours which directly identify the pursuit of attorneys' fees. There are dozens of additional redacted entries totaling over 50 hours which appear to be in pursuit of attorneys' fees. These are clearly not recoverable but are still being pursued by Brighthouse.

Fee applicants must also establish that the rates requested are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skills, experience and reputation." (*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "In addition to the attorney's own affidavits, the fee applicant must provide satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." (*Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "Examples of the type of specific evidence that... is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." (*Edward D. Jones & Co., L.P. v. Am. Nat'l Ins. Co.,* No. 1:19-cv-00018-JMC, 2020 U.S. Dist. LEXIS 237512, at

27

*11 (D.S.C. Dec. 17, 2020) (citations omitted)). A district court "abuse[s] its discretion by awarding the hourly rates requested [by the fee applicant] in the absence of 'satisfactory specific evidence of the prevailing market rates.'" (*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Brighthouse makes no effort to justify the prevailing market rate for the services provided. As such, the present request for fees must fail.

**D. Sanction Against Defendants Are Inappropriate And Instead Sanctions Should be awarded against Brighthouse.**

Brighthouse, believing their inflated and unconscionable attorneys' fees request was not enough, seeks sanctions of $337,315.07. In total, Brighthouse seeks recovery of over $540,000.00 by way of this motion. Very little effort is made to justify the request for sanctions. Brighthouse's justification for the sanctions is the only that they filed an interpleader. However, the very point of interpleader actions is to allow parties such as Brighthouse to file actions and avoid liability from parties who cannot agree on distributions. This is simply an attempt by Brighthouse to work around their contractual obligation of paying 8% interest on Death Benefits.

From Utsick's death on June 8, 2023, to the deposit of fees, Brighthouse was able to retain $9,000,000.00 for use in their business and investments. Brighthouse was not harmed by retaining this large sum of money for an additional eight (8) months. On January 12, 2024, the parties agreed to cease the accumulation of any interest in hopes of resolution. The vast majority of Brighthouse's complaints regarding Defendants' delays originate after interest was paused. Once interest was paused, it was a windfall for Brighthouse to retain $9,000,000.00, which could be used for their business and investments without having to pay any interest. With this knowledge, Brighthouse began its pursuit of unconscionable attorneys' fees, which caused both the Interpleader Litigation and New York Litigation to come to a standstill.

Clearly, there is no justification for sanctions against Defendants. However, it is abundantly

28

clear that once Brighthouse was able to obtain a pause on the accumulation of interest, Brighthouse, in bad faith, pursued uncollectible, improper and false attorneys' fees. Defendants should be entitled to recover the interest which they would have received but for Brighthouse's bad faith pursuit of fees. The amount of interest which should have accumulated between the January 12, 2024, conference until Brighthouse deposited the Death Benefit on February 29, 2024, is $94,684.93 (48 days x (($9,000,000 x .08)/365).

**CONCLUSION**

For the foregoing reasons, LS 1019 respectfully requests that the Court issue an Order denying Brighthouse's attorneys' fees and costs in the amount of $211,851.14, and deny the imposition of sanctions upon the Claimants in the amount of $337,315.07. Instead, LS 1019 requests an Order imposing sanctions upon Brighthouse in the amount of $94,684.93.

Dated: March 29, 2024

Chicago, IL/Stockton, CA

Respectfully submitted,

**ALMEIDA LAW GROUP,**

/s/ David S. Almeida
**49 W. Webster Ave Chicago, IL 60614**
(312)-576-3024
*Attorneys for Defendant*
*Life Shares 1019, LLC*

**DYER LAW FIRM**

/s/ Dustin J. Dyer
**5250 Claremont Ave. Ste. 119**
**Stockton, CA 95207**
(209)-472-3668
*Attorneys for Defendant*
*Life Shares 1019, LLC*

29
