UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOLDEN FOOTHILL INSURANCE SERVICES, LLC, LIFE FACTOR II, LLC, LIFE SHARES II, LLC, EL DORADO HILLS INSURANCE SOLUTIONS, INC., LONE WOLF INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC, THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC., and TATANISHA LEER<br><br>Plaintiffs,<br><br>v.<br><br>SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN, BMF ADVANCE LLC, GAVRIEL YITZCHAKOV a/k/a GABE ISAACOV, HI BAR CAPITAL, LLC, YOEL GETTER a/k/a JOEL GETA, and YISROEL HERBST, | Case No. 1:24-CV-08515 |

**DEFENDANTS YISROEL HERBST AND HI-BAR CAPITAL'S
REPLY BRIEF AND JOINDER IN SUPPORT OF THEIR
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [D.E. 86]**

**THE ROTH LAW FIRM, PLLC**

By: */s/ Brian Levenson*
Brian Levenson, Esq.
275 Madison Avenue, Floor 22
New York, New York 10017
Tel: 212-542-8882
Email: brian@rrothlaw.com
*Attorneys for Defendants Hi Bar Capital, LLC and Yisroel Herbst*

**A.    The Hi Bar MCAs Are Not Loans**

Notwithstanding Plaintiffs' attempt to transform Hi Bar's merchant cash advance agreements into loans, they simply are not. In fact, a court in New York, expressly found that Hi Bar's Agreement and business model is not a loan transaction. *See Hi Bar Capital, LLC v. Excell Auto Group, Inc.*, 2023 N.Y. Slip Op. 31593(U), 3, 2023 WL 3431299, at *2 (N.Y.Sup.)("The Purchase Agreement is enforceable, and not void as a matter of criminal or civil usury, because the repayment terms, rather than being absolute, are contingent (*see Principis Cap., LLC v I Do, Inc., supra)*.")[1] Of course, "[i]f the transaction is not a loan, there can be no usury, *however unconscionable the contract may be*." *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 665 (2d Dept. 2020) (emphasis supplied). Under New York law, "[t]o constitute a loan, the agreement must provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard." *Cash4Cases, Inc. v. Brunetti*, 167 A.D.3d 448, 449 (1st Dept. 2018). Unlike the transactional documents at issue here, "[o]rdinarily, a loan consists of a face value, repayable (with interest) over a finite period DEFINED in the transaction documents." *Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair Inc.*, 69 Misc. 3d 457, 463 (N.Y. Sup. Ct. 2020)(emphasis in original).

In determining whether a transaction is a bona fide purchase or a loan, the Court must determine "(1) whether there is a reconciliation provision in the agreement; (2) whether the

---

[1] In their opposition, Plaintiffs argue that "at least one New York court has previously ruled that Hi Bar's MCA Agreements … were in reality loans." *Hi Bar Capital LLC v. Parkway Dental Services, LLC*, 2022 N.Y. Slip Op. 32934(U), 1, 2022 WL 3757589, at *1 (N.Y.Sup.) [D.E. 86 at pg. 6). No so. In that prior case, while distinguishing *Adar Boys* and finding it inapplicable to the analysis, the Court merely vacated a default judgment based on a service of process issue and because there were "questions raised whether the agreement comports with the necessary requirements to be considered a genuine cash advance agreement." *Id.* at * 13-14. There was no finding that the Hi Bar Agreement was a loan.

agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy" *Principis Capital, LLC v. I Do, Inc.*, 201 A.D.3d 752, 754, 160 N.Y.S.3d 325 (2d Dept. 2022); *Kennard Law P.C. v. High Speed Capital LLC*, 199 A.D. 1406, 1406 (4th Dept.2021); *Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC* (4th Dept. 2023).[2]

This straightforward analysis serves important policy considerations. It provides parties with certainty in their business transactions; ensures equal, consistent application of the law; and avoids the disruptive effect of different courts reaching different conclusions on the same or similar agreements. Such certainty, predictability, and consistency is especially important because the issue implicates potential violation of the criminal usury statute. *Cf. People v. Crespo*, 32 N.Y.3d 176, 192 (2018) (noting that *stare decisis* is "strongest in matters of criminal law" because "any change in rule" might "violate due process"). Parties should not be subject to potential criminal liability based on an amorphous and shifting application of the same law.

It's not just New York state courts that have recognized the importance of a straightforward, reliable analysis; the U.S. Court of Appeals for the Second Circuit has too. In *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 WL 3882697 (2d Cir. June 8, 2023), the District Court engaged in an expansive, wide-ranging analysis to conclude that a revenue purchase agreement was a loan. On appeal, the Second Circuit affirmed the District Court's conclusion. It did so, however, solely based on application of the three-factor test (the agreement failed every factor of the test), implicitly rejecting the District Court's expansive, wide-ranging analysis that relies upon other factors.

---

[2] For instance, the New York Appellate Division has already found that the same form of agreement at issue in this case is not a loan. *See Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*, 219 A.D.3d 1126 (4th Dep't 2023). The agreement at issue in *Samson* is attached as Exhibit "A" to the Declaration of Brian Levenson.

      **i.     Bankruptcy Is Not an Event of Default**

An MCA is not a loan where there is "no contractual provision [] establishing that a declaration of bankruptcy would constitute an event of default." *Principis Capital, LLC v. I Do, Inc.*, 201 A.D.3d 752, 754, (2022); *see also Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *5 (S.D.N.Y. Sept. 20, 2022). It is undisputed that bankruptcy not listed as an "Event of Default" under ¶ 3.1 of the Hi Bar Contracts. Moreover, the documents expressly provide that, "Merchant going bankrupt or going of business…in and of itself, does not constitute a breach of this Agreement." [D.E. 11-12 and 11-22]. *See e.g. Mazzoni Ctr. v. LCF Group, Inc.*, 2024 WL 4821475, at *8 (E.D. Pa. Nov. 18, 2024)(Finding provision stating that bankruptcy was not event of default satisfied *Principis* factor).

Despite the lack of any ambiguity, Plaintiffs attempt to side steps the issue of law at hand and argue that the Hi Bar Agreements contain a *remedy* in the event of bankruptcy based on the guaranties. *See* Resp. at pg. 6. A similar argument was made -- and rejected -- in *Reserve Funding Group LLC v. California Organic Fertilizers, Inc.*, 2024 WL 1604195, at *4 (E.D.N.Y. Apr. 12, 2024). In *Reserve*, the plaintiff filed a lawsuit for breach of an MCA agreement. In response, the defendant moved to dismiss the claim on the basis that the contract was usurious. In denying the motion to dismiss, the Court considered the defendant's argument that the agreement provided the plaintiff with "minimal" recourse upon the filing of a bankruptcy petition because the "Agreement gives Reserve a security interest in defendants' assets and provides that if defendants ever have insufficient funds to cover their daily payments" and Reserve is "not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral." *Id.* at * 4.  In rejecting this argument, the Court held that:

> Although the fact of bankruptcy does not constitute a breach, an inability to make daily payments would likely occur in the runup to bankruptcy; defendants' assets

4

> may therefore have become collateral by the time they declare bankruptcy; and the Agreement smooths Reserve's path to realizing on that collateral. **<u>Yet as with defendants' other arguments, this chain of events seems to presume that the reconciliation and adjustment provisions are effectively meaningless—conceivably, if those provisions are workable, the daily remittance amounts could be adjusted and defendants might never miss a daily payment.</u>** Although the Agreement nominally provides that Reserve will not face procedural barriers in realizing on any collateral in the event of defendants' bankruptcy, the events that would result in defendants' assets becoming collateral are somewhat speculative….

*Id.* The Court then noted that that the defendants "pointed to no case in which any court found provisions such as these to counsel in favor of there being a loan, and have no response to the cases cited by Reserve in which the absence of any provision making bankruptcy an event of default counseled against there being a loan [and] [t]o the extent that it is apparent from the face of the complaint that the Agreement gives Reserve any recourse in the event of bankruptcy, that recourse is limited and cannot overcome the weight of the other *LG Funding* factors." *Id.* Similarly, and as described below, any attack on the viability of the reconciliation and adjustment provisions in the Hi Bar Agreements is entirely speculative since there is no allegation that the Plaintiffs attempted to invoke its protections. Therefore, this argument should be rejected.

      **ii.**      **The Hi-Bar Contracts Have No Fixed Duration**

Despite the plain language of the agreement saying otherwise, the Plaintiffs argue that the MCAs are actually loans because "they had an implied finite term . . ." *See* Resp. at pg. 7. The Plaintiffs are incorrect. The Hi Bar Contracts have indefinite terms since they expressly provide that the agreement will remain "in full force an effect until the entire Purchased Amount and any other amounts due are received by HBC as per the terms of this Agreement." [D.E. 11-12 and 11-22 at § 1.2]. The agreements also explicitly provide on the first page for "no interest rate or payment schedule and no time period during which the Purchase Amount must be collected by HBC." *Id.* at pg. 1. To be sure, if payment cannot be made under the original terms, the agreement

5

permits reconciliation and adjustment of the payments to meet the financial needs of the Plaintiffs. Therefore, Plaintiffs argument should be rejected.

### iii. The Hi Bar Contract Contains Mandatory Reconciliation and Adjustment Provisions

Plaintiffs attempt to circumvent the mandatory reconciliation and adjustment provisions by turning applicable law on its head. *See* Resp. at pgs. 7-8. However, Plaintiffs' argument ignores that courts have rejected speculative and hypothetical arguments that reconciliation is illusory where, as is the case here, the merchant doesn't allege that it requested reconciliation and was denied. *See e.g.*, *Mazzoni Ctr. v. LCF Group, Inc.,* 2024 WL 4821475, at *7 (E.D. Pa. Nov. 18, 2024) ("The Center never requested a reconciliation, so there is nothing to suggest that LCF would refuse to honor these terms."); *Spin Capital, LLC v. Golden Foothill Ins. Services, LLC,* 2023 N.Y. Slip Op. 30594(U), 8, 2023 WL 2265717, at *3 (N.Y.Sup.) ("[I]t does not appear that there is any basis for the allegation that the reconciliation process was a sham and that the defendants would not have received an appropriate credit, because on the record before the Court, it does not appear that the Counterclaim Plaintiffs even allege that they requested a reconciliation or adjustment of the payments and that it was done improperly."); *US Info. Group LLC v. EBF Holdings, LLC,* 2023 WL 6198803, at *8 (S.D.N.Y. Sept. 22, 2023) ("The reconciliation provision may have permitted plaintiffs to adjust their payments to Everest, but plaintiffs do not allege that they invoked it or considered doing so."); *Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022) (rejecting the plaintiffs' speculative and hypothetical argument that reconciliation was illusory where the plaintiff didn't allege that "reconciliation did not in actuality function as agreed" or "that Plaintiffs ever even requested reconciliation"). Speculating that a counterparty would have breached a mandatory contractual provision does not make that provision "illusory" or in any way warrant recharacterization of the transaction as a loan. The sole allegation

6

relied upon by Plaintiffs to demonstrate that reconciliation was sought was an apparent text exchange between Josh Lubin and Plaintiffs. [D.E. 11-20]. The Court should not rely on this text for two reasons. First, the First Amended Complaint ties this text to the BMF MCA. [D.E. 11 at pg. 24]. Second, even if it were related to the HI Bar MCAs, the fact remains that Complaint lacks allegations that the Plaintiffs followed the process outlined in the Agreement to obtain a reduction in payment. The Hi Bar Agreement's process is simple. The Plaintiffs would provide the necessary financial data to demonstrate why the reduction was needed and within two business days, the reconciliation would be applied "by either crediting or debiting the difference back to, or from, the Merchant Bank Account."  [D.E. 11-12 at § § 1.2 and 1.3]. By failing to seek reconciliation or adjustment, Plaintiffs cannot argue that the provision is illusory.

Further, the cases cited by Plaintiffs are also distinguishable. First, in *AKF, Inc. v. Haven Transp. Bus. Sols., Inc.*, 2024 WL 2941746, at *3 (N.D.N.Y. June 11, 2024), when considering the reconciliation provisions in that contract, the Court noted that reconciliation could only occur monthly, yet payments were due weekly. *See also Lateral Recovery LLC v. Queen Funding, LLC,* 2022 WL 2829913, at *5, FN 2 (S.D.N.Y. July 20, 2022)(reconciliation provision provided allowed the funder to adjust the payment and limited reconciliation to one each month); *Lateral Recovery LLC v. Funderz.net, LLC*, 2024 WL 4350369, at *5 (S.D.N.Y. Sept. 27, 2024)(reconciliation request may be made "within five business [days] following the end of a calendar month."). On the other hand, in the Hi Bar Agreements, reconciliation can be retroactive, is required and not discretionary, and is not limited as to when or how many times it can be requested. [D.E. 11-12 at § 1.2]. *See Reserve Funding Group LLC v. California Organic Fertilizers, Inc.*, 2024 WL 1604195, at *3 (E.D.N.Y. Apr. 12, 2024)(rejecting the same line of cases cited by Plaintiffs on basis that

7

complaint did not demonstrate in the complaint that the reconciliation provisions were "impossible to use.")

The fact that the Hi Bar MCAs have a reconciliation provision is also why the "good faith estimate" argument made by Plaintiffs fails. Plaintiffs argue that because the various MCAs had "wildly different estimations" of their receivables, that is evidence of a loan. Plaintiff cites one case for this proposition, *Davis v. Richmond Capital Group, LLC*, 194 A.D.3d 516, 150 N.Y.S.3d 2 (2021), which is also distinguishable because in that case (and unlike this one), the "defendants' refused to permit reconciliation." *Id.* at 517. Moreover, *Davis* has been treated negatively by *Principis Capital, LLC v. I Do, Inc.*, 201 A.D.3d 752, 754, 160 N.Y.S.3d 325, 327 (2022), which again set forth the three criteria necessary to determine whether a transaction is a loan or cash advance. Of course, the alleged lack of a good faith estimate (and the other factors argued by Plaintiffs) are not listed as being relevant to the analysis. Finally, the operative Complaint does not allege that the estimates were incorrect, which is something that Plaintiffs should be able to allege if true.

## **CONCLUSION**

For the foregoing reasons, the Hi-Bar Defendants respectfully request that the Amended Complaint be dismissed with prejudice. Furthermore, as to the remaining issues, the Hi Bar Defendants join in the Reply filed by Spin Capital and BMF. [D.E. 84 and 85].

| | |
|---|---|
| April 14, 2025 | Respectfully submitted,<br><br>THE ROTH LAW FIRM, PLLC<br><br>By: *Brian Levenson*<br>Brian Levenson<br>295 Madison Ave., Fl. 22<br>New York, NY 10017<br>Brian@rrothlaw.com<br>T: (212) 542-8882 |