

**MURRAY**
**LEGAL PLLC**

August 28, 2025

Plaintiffs should respond to defendants' letter on or before September 12, 2025 at 5 PM. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 98.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: September 9, 2025

**To via ECF**:
Hon. Arun Subramanian, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl St., New York, New York 10007

Re:   *Golden Foothill Insurance Services, LLC et al v. Spin Capital, LLC et al.*
      Docket No.: 24-cv-8515 (AS)
      Letter Requesting Opportunity to Brief Dispositive Issue

Dear Judge Subramanian,

BMF respectfully requests that this Court take briefing on the issue of whether or not Plaintiff's RICO claims are ripe.[1]  Simply put, Plaintiff's RICO claims are not ripe because they explicitly rely, for pleading RICO damages, on the accrual of fees in the ongoing state court action, but such fees are what the Second Circuit described, in *Bankers Trust Co. v Rhoades* 859 F2d 1096 (2d Cir 1988),[2] as "ongoing legal fees," not the type of "past legal fees" which may be cognizable as RICO damages.  The brass tacks is this: the import, here, of *Bankers Trust* and other relevant cases, is that until the state court proceeding comes to a close, Plaintiff has no ripe RICO claim because (1) its fees in the ongoing state action are not yet "clear and definite" for RICO purposes, and (2) whether or not the fees can ever form the basis for a RICO claim may be contingent upon the outcome of the state court action.  "Ripeness is a jurisdictional inquiry." *Murphy v New Milford Zoning Commn.*, 402 F3d 342, 347 (2d Cir 2005).  "Ripeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority. At its heart is whether [the Court] would benefit from deferring initial review until the claims we are called on to consider have arisen in a more concrete and final form. . . . Ripeness, therefore, is 'peculiarly a question of timing' as cases may later become ready for adjudication even if deemed premature on initial presentation.'" *Id.* (internal citations omitted).  "As such, [the Court] must presume that [it] cannot entertain the [Plaintiff's] claims 'unless the contrary appears affirmatively from the record.'"  *Id.* (*quoting Renne* v. *Geary*, 501 U.S. 312, 316 (1991) (internal citations and quotations omitted)).

Here, the record affirmatively demonstrates that there is no ripe RICO claim.  As discussed at the oral argument held August 15, 2025, the Plaintiff has, at this juncture, received more money pursuant to the MCA agreements and the Spin loan agreement than Plaintiff has paid back – specifically Plaintiff has at present received a net benefit of approximately $772,745 – and this is

---

[1] BMF respectfully submits that permission to allow briefing in the context of a motion for summary judgment, on the limited issue of the ripeness of the RICO claims only, would be appropriate.

[2] Discussed further below, and which was referenced by BMF at the hearing held August 15, 2025.

 170 Old Country Road
Suite 608
Mineola, New York 11501

 Office: 516-260-7367

 cmurray@murraylegalpllc.com
www.murraylegalpllc.com



evident from the face of the record.[3]  On *those* facts, the Plaintiff can plead no RICO claim at all, because Plaintiff has no "out-of-pocket damages." *See McLaughlin v Am. Tobacco Co.*, 522 F3d 215, 227 (2d Cir 2008) (describing "the acceptable measure of injury" for a RICO claim as "out-of-pocket damages"); *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20-CV-5120, 2022 U.S. Dist. LEXIS 148032, at *4 (S.D.N.Y. Aug. 17, 2022) (a proper calculation of defendants' injury "requires a reduction of the financial benefit that [they] received at the time of the transaction," and holding that damages for RICO claim predicated on collection of unlawful debt must be reduced by amount advanced as principal). As acknowledged by Plaintiff's counsel at the August 15th hearing, and as is again evident from the face of the Amended Complaint, to get over this hurdle Plaintiff is relying on counting as RICO 'damages' the legal fees Plaintiff is accruing in the ongoing state court action.[4]  But BMF respectfully submits that the upshot of the relevant law is this: in order to count legal fees as RICO damages, such fees must be "past legal fees," which are thus fixed and "clear and definite"; "ongoing legal fees" in related actions do not count. And if Plaintiff's ongoing legal fees in the state court action cannot be considered RICO damages at this time, then Plaintiff has no ripe RICO claim, and this Court should dismiss this action without prejudice pending resolution of the state court proceeding.

These issues were addressed by the Second Circuit in *Bankers Trust Co. v Rhoades*.  In *Bankers Trust,* the Plaintiff bank ("Bankers"), in 1982, brought a RICO action against three defendants that were officers of a bankrupt corporation, alleging that through common-law fraud, bankruptcy fraud, perjury, and bribery, the defendants had attempted to prevent Bankers from collecting a debt owed to it by the bankrupt corporation.  *See* 859 F2d 1096, 1098-99 (2d Cir 1988). Specifically, the RICO claims were based on (1) the Defendants' actions taken in 1974-76 in connection with a fraudulent reorganization plan in a separate bankruptcy proceeding, in which Defendants fraudulently concealed assets, (2) "[i]n a further attempt to delay Bankers from collecting its debt" (*id.,* at 1099), Defendants' filing of frivolous lawsuits against Bankers in both New York and South Carolina state courts, and bribery of a South Carolina Judge, in 1978-79, and (3) fraudulent conveyances in 1981-82, which were the subject of ongoing proceedings in the bankruptcy action.  *Id.,* at 1105 (2d Cir 1988).  As the Second Circuit noted, "Bankers alleges multiple injuries which may be grouped into three general categories: (a) past legal fees and other expenses, (b) loss of a legitimate debt and related expenses, and (c) future legal fees and expenses."

---

[3] Per the Amended Complaint, Plaintiff netted, after any and all deductions and 'payoffs' of amounts due on other agreements, $1,307,403 pursuant to the Spin loan (Am. Compl. ¶ 24, 180); $80,000 under the first BMF agreement (¶ 94, ¶ 105); $198,000 under the first Hi Bar Agreement (¶¶ 112, 120); $105,072 under the second BMF Agreement (¶ 127); $100,000 under the third BMF Agreement (¶ 141); and $320,00 under the second Hi Bar agreement (¶¶ 156, 165).  Thus, per the Amended Complaint's own allegations, Plaintiff has received approximately $2,110,475.  On the other hand, the Amended Complaint alleges only that Plaintiff paid back $827,730 under the MCA agreements (¶ 292), and $510,000 under the Spin loan agreement (¶¶ 30, 183).

[4] *See* Am. Compl. ¶ 292 (plaintiff injured in the amount of "827,730, the amount of the unlawful debt" collected under the MCA agreement), *and* Am. Compl. ¶ 307 ("Plaintiffs have also suffered damages by incurring attorneys' fees and costs associated with (i) exposing and prosecuting Defendants' criminal activities; and (ii) defending themselves from Spin in a lawsuit brought to collect upon the Promissory Note and take ownership of all of the Leer Companies' life insurance policies under the Security Agreement.").

 170 Old Country Road
Suite 608
Mineola, New York 11501

 Office: 516-260-7367

 cmurray@murraylegalpllc.com
www.murraylegalpllc.com



*Id.,* at 1099. As is relevant here, the Second Circuit held that the "past legal fees," incurred years prior, in defending against the frivolous state court lawsuits and in successfully overturning the Defendants' initial reorganization plan, were recoverable as RICO damages. *Id.* at 1105. However, <u>as to the "ongoing legal fees and other expenses" Bankers was accruing in the related bankruptcy proceeding, those legal fees were not yet recoverable as RICO damages and no RICO claim had "yet to accrue" based on such fees.</u> *Id.* at 1106.

The import of *Bankers Trust* to these proceedings is this: until the underlying state court action ends – or at the very least certain issues are fully and finally adjudicated – and the amount of fees there that Plaintiff may claim as 'RICO damages' becomes clear and definite "past legal fees," this case should be dismissed because no claim has yet to accrue and thus no claim could possibly be ripe. *See also Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 234 n.11 (E.D.N.Y. 2014) (holding RICO claims not ripe "to the extent plaintiff seeks to recover attorneys' fees and costs incurred by litigating [ongoing] claims in state court and arbitration," as the "amount of these RICO damages [is] not yet clear and definite").

Relatedly, as another federal district court held, in dismissing a RICO claim as "premature," "[u]ntil the state court litigation is over, the plaintiffs' damages [alleged as various legal fees and related expenses] are premature and speculative. If the case goes to trial in state court and the LaBarbara's [the Plaintiffs in the RICO action] lose, certain issues will be subject to collateral estoppel or res judicata which might preclude the civil RICO claim. If they win, the LaBarberas would then be able to bring a civil RICO claim for attorney fees and litigation expenses incurred as a result of the conspiracy to cover up evidence." *LaBarbera v Angel*, 95 F Supp 2d 656, 663 (ED Tex 2000). This holding is directly relevant here: Plaintiff's allegations herein are precisely the basis for their defenses to the enforcement of the Spin loan promissory note in the ongoing state court action[5] – commenced three and a half years ago – and here too "certain issues [may] be subject to collateral estoppel or res judicata which might preclude the civil RICO claim." *Id.* In short, when the state court action comes to a close – and noting of course that BMF does not intend to concede that any viable RICO cause of action can lie on the underlying facts – the Plaintiff here could, perhaps, adequately plead a ripe RICO claim, but *now,* Plaintiff has no claim because "[t]he claim will not accrue until the conclusion of the state court litigation." *Id.*

We would greatly appreciate the opportunity to address this potentially dispositive issue more fully and appreciate the Court's attention to this matter.

Sincerely,

/s/ Phillip A. Spinella

Phillip A. Spinella, Esq.

<u>CC via ECF</u>: Counsel for all parties

---

[5] *See, e.g.,* Index No. 650582/2022, NYSCEF Doc. 695 (opposition to Spin's motion for summary judgment, arguing that the MCA agreements are loans, and that the promissory note is thereby usurious). Argument was held on that motion on February 5, 2025. *See* NYSCEF Doc. 817 (transcript). A decision on that Motion remains pending.

 170 Old Country Road
Suite 608
Mineola, New York 11501

 Office: 516-260-7367

cmurray@murraylegalpllc.com
www.murraylegalpllc.com