

# HESKIN & PROPER, PLLC

641 Lexington Avenue, 14ᵗʰ Floor
New York, New York 10022

Shane R. Heskin, Esquire
Shane@heskinproper.com

Justin E. Proper, Esquire
Justin@heskinproper.com

September 11, 2025

VIA ECF
Hon. Arun Subramanian
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> **RE: Golden Foothill Insurance Services, LLC v. Spin Capital, LLC, 24-cv-8515 (AS).**

Dear Judge Subramanian:

Plaintiffs respectfully respond to Defendant BMF's August 28, 2025 letter seeking reconsideration of this Court's August 19, 2025 Decision and Order based on "ripeness."

As this Court correctly held, the "argument fails." The Court's reasoning is also in accord with other decisions from this District. *See id.* (citing *Lateral Recovery LLC v. Queen Funding, LLC*, 2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913, at *7 (S.D.N.Y. July 20, 2022) ("Plaintiffs plead allegedly fraudulent agreements or usurious debt. All of plaintiffs' payments pursuant to the Merchant Agreements apparently have been made," and "[w]hat amounted to allegedly fraudulent or usurious interest payments represent concrete injury and damage sufficient to establish standing.").

Contrary to Defendants' assertion, the well-settled law of this Circuit is that each contract constitutes a separate injury for purposes of RICO. As Judge Woods recently explained:

> "[E]ach time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovered or should have discovered the injury." *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988). "[W]hen a new and independent injury is incurred from the same violation, the plaintiff is again injured . . . and his right to sue for damages from that injury accrues at the time he discovered or should have discovered that injury." *Id.* at 1103.

*B&T Supplies, Inc. v. Gemj Chehebar Grat, LLC*, 2025 WL 831110 (S.D.N.Y. Mar. 17, 2025).

Thus, "[e]ach time Plaintiffs entered into an allegedly unlawful MCA Agreement, a new RICO claim against Defendants accrued." *Id.* Here, "because Plaintiffs 'undertook a new obligation to repay a new debt with each loan,' **each new MCA Agreement 'constitute[s] a new and independent injury from [the] prior' agreements**." *Moss v. First Premier Bank,* 2024 WL 4274780, at *5 (S.D.N.Y. Aug. 2, 2024) (emphasis added).

The rationale of these decisions was explained by Judge Liman in the same situation: "Plaintiffs argue that the $2,250,000 of this loan which was used as repayment of the prior loan should not be counted, noting that the amount in fact paid to FTE (after fees) was only $300,000. This argument is not economically sound. A dollar of forgiven debt is equivalent to a dollar in hand. Funderz could have paid the full $2,750,000 into FTE's bank account and had FTE pay back $2,250,000 on the outstanding loan—this would not have changed the character of the transaction." *Lateral Recovery LLC v. Funderz.net*, 2024 WL 4350369 (S.D.N.Y. Sept. 27, 2024). As a matter of fact, the same reasoning was applied by Judge Borrok in the underlying state court decision: "It is beyond dispute that the money advanced in respect of the HI Bar and BMF purchase agreements relieved the defendants' obligations set forth in those agreements. Thus, the satisfaction money counts and the counterclaim must be dismissed." *Spin Capital, LLC v. Golden Foothill Insurance Services*, Index No., 650582/2022, NYCEF #260, pg.8.

Defendants' contention that the more than $700,000 incurred to defend the claims in the underlying action does not count as damages, is simply wrong on the law. The Second Circuit has held:

We have long recognized that a plaintiff may recover legal fees, including expenses incurred in one or more attempts to combat a defendant's RICO violations through the legal system, as damages in a civil RICO action.  Virginia's claimed legal expenses fall squarely within that category of cognizable damages.

Defendants mount only a cursory challenge to that conclusion: they assert by way of a footnote that the collection expenses claim is not ripe since the full extent of the expenses that she will ultimately have incurred—including, presumably, from this litigation—is yet unknown. The law of our Circuit does not support their contention. Unlike her claims with respect to her future distributional interest, as to which collateral proceedings are pending, Virginia has already suffered a "clear" and "definite" loss in the form of her legal expenses. Although the amounts may increase over time, the past expenses will not disappear when the Estate is closed. *See First Nationwide Bank*, 27 F.3d at 768. The "collection expenses" damages Virginia claims in this litigation—that is, the $200,000 that she allegedly incurred over the four years before she filed the Complaint (as allowed by the RICO statute of limitations)—are thus neither "speculative' nor "unprovable." *Bankers Trust Co.*, 859 F.2d at 1106. ***The possibility that Virginia will bear additional related legal expenses has no bearing on this conclusion. Her RICO claim based on the legal expenses she has incurred is therefore ripe***.

*D'Addario v. D'Addario*, 901 F.3d 80, 95 (2d Cir. 2018) (emphasis added) (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105-06 (2d Cir. 1988)); *see also Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167, 1993 U.S. App. LEXIS 13251, *26 ("Further, as discussed *supra* herein, we explicitly ruled in *Bankers Trust* that legal fees may constitute RICO damages when they are proximately caused by a RICO violation."); *La Suisse, Societe D'Assurances Sur La Vie v. Kraus*, 2014 WL 3610890 (S.D.N.Y. Jul 21, 2014) ("Similarly, Swiss Life's attorney's fees of $2,811,009 for defending Moskovitz, incurred as damages for extortion, should be trebled, resulting in an award of $8,433,027").

Despite this controlling precedent, Defendants cite *Sky Med. Supply Inc. v. SCS Support Claims Servs.*, 17 F. Supp. 3d 207, 234 (S.D.N.Y. 2014) for their incorrect assertion that attorney's fees incurred in a collateral *pending* litigation cannot constitute RICO damages. Defendants respectfully miss the mark. The court in *Sky* Med found that Plaintiff could not allege "clear and definite" RICO damages where the damages *depended* on the consequences of the collateral litigation because there was a chance that those damages could be eliminated based on the counterclaims asserted therein. Here, no counterclaims exist so there is no chance that anything in the state court action will eliminate or reduce the over $700,000 in attorney's fees *already incurred.* Moreover, unlike in *Sky Med*, Plaintiffs here have "clear and definite" RICO damages no matter the outcome. Plaintiffs have suffered at least $827,000 in damages on the five MCAs, and they have suffered over $700,000 in damages in defending against the $2.7 million loan. Plaintiffs therefore presently have "clear and identifiable" damages exceeding $1.5 million.

Judge Woods' decision in *B&T Supplies* is instructive on the interplay between Defendants' ripeness argument and the separate accrual rule adopted by the Second Circuit. The statute of limitations begins to accrue on the date of *each* collection of unlawful debt, and each collection constitutes its own separate injury and has its own separate accrual date. Thus, each collection of unlawful debt becomes ripe once a debtor has paid more than the amount advanced on each individual contract, and the four-year statute of limitations begins to run as soon as the debtor has paid more than the amount advanced on that contract. To hold otherwise would mean that the statute of limitations does not begin to run until the amount of RICO damage is fixed and final. That is not and cannot be the law.

Rather, the cases cited by Defendants stand for the proposition that where a collateral action may eliminate or reduce a specific RICO injury, that specific RICO injury is tolled until it becomes "clear and definite." At most, this specific RICO injury would apply only to the ultimate amount of the injury caused by the $2.7 million loan. It would not apply to the "clear and definite" RICO injury already caused by the $827,000 paid on the five prior MCA loans. But even with respect to the $2.7 million loan, Plaintiffs have already incurred more than $700,000 in "clear and definite" damages in attorney's fees. As repeatedly held by the Second Circuit, these fees constitute RICO damages because they would not have been incurred *but for* Defendants' collection of unlawful debt on the five prior MCA loans.

Finally, Defendant have a math problem. Even if its flawed legal notion had merit, Defendants' math is wrong. As alleged in the complaint, Plaintiffs allege damages of at least $827,000 based on the overpayment of interest on the five MCAs. *See* Am. Compl., ¶ 292. The cash amount advanced on the loan was $1.3 million. *See id*, ¶ 4. Plaintiffs paid back $510,000, leaving a net benefit of $790,000. *See id.*, ¶ 30. Thus, even under Defendant's flawed legal premise, the argument fails on the facts. Defendants are also wrong because on the face of the loan, only three of the eight plaintiffs could have received the benefit of the loan as only Golden Foothill Insurance Services LLC, Life Factor II LLC and Life Shares II LLC are parties to the loan. The other plaintiffs are mere guarantors.

For each of these reasons, Plaintiffs respectfully submit that the motion for reconsideration should be denied on both the law and the facts.

Plaintiffs thank the Court for its consideration of this matter.

Respectfully submitted,

HESKIN & PROPER, PLLC

Shane R. Heskin