

September 17, 2025

**To via ECF**:
Hon. Arun Subramanian, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl St., New York, New York 10007

Re:   *Golden Foothill Insurance Services, LLC et al v. Spin Capital, LLC et al.*
      Docket No.: 24-cv-8515 (AS)

Dear Judge Subramanian,

BMF writes to briefly respond to certain points made in the letter filed by Plaintiffs on September 11, 2025. First, BMF's ripeness argument has nothing to do with "the well-settled law of this Circuit is that each contract constitutes a separate injury for purposes of RICO" (Plaintiffs' Letter, at 1) nor is BMF arguing that "usurious interest payments [cannot] represent concrete injury and damage to sufficient to establish standing." *Id.,* quoting *Queen Funding,* 2022 U.S. Dist. LEXIS 129032, at \*20.  BMF's argument is straightforward: out-of-pocket damages are required, and out-of-pocket means precisely that. While the Court in *Queen Funding* noted that "[a]ll of plaintiffs' payments pursuant to the Merchant Agreements apparently ha[d] been made" 2022 U.S. Dist. LEXIS 129032, at \*20), that is not the case here, where Plaintiffs' pleading explicitly alleges how much was paid in the allegedly usurious interest ($827,730).  Judge Liman's decision in *Lateral Recovery LLC v. Funderz.net* is not to the contrary. The fact of the matter is that the controlling analysis on this point is actually expressed by Judge Liman in *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, as cited in BMF's first Letter; under that analysis, if a would-be RICO plaintiff has received more than it has paid out at time of suit, it has no ripe RICO injury.

As for the dispositive question – whether the alleged ~$700,000 in legal fees expended in the state court action can establish a ripe RICO claim – Plaintiffs rely principally on *D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018).  That reliance is misguided.  While Plaintiffs pick out two paragraphs from that opinion, a closer review indicates that the "collection expenses" discussed in *D'Addario* are best characterized as the sort of "past legal fees" which can form the basis for a ripe RICO claim under *Banker's Trust.*  In *D'Addario,* the "collection expenses" comprised "the more than $200,000 in legal expenses that [plaintiff] incurred in the four years before filing this suit… through various actions [she] pursued in the courts of Connecticut. *D'Addario* 901 F.3d at 91.  As the Second Circuit described the case's posture, "[i]n January 2016, *after* fruitless efforts in the Connecticut state courts, Virginia filed this suit in the United States District Court for the District of Connecticut." *Id,* at 91 (emphasis added).  Which is to say: particular proceedings in the state courts, on which the specific expenses alleged as RICO damages were based, had ended, and the discrete issues therein had been determined.  The "collection expenses" in *D'Addario* are thus best-considered as the sort of 'past-legal fees' under *Banker's Trust* that qualify as a basis for a ripe RICO claim.  That is not the case here, and without the ~$700,000 in fees, Plaintiffs cannot plead a ripe RICO claim, because they are not even close to 'out-of-pocket' without it.

Second, BMF argued that the RICO cause of action is not ripe because it is contingent on the outcome of the state court proceeding: if Plaintiffs here lose in the state court action, and their

 170 Old Country Road
Suite 608
Mineola, New York 11501

 Office: 516-260-7367

 cmurray@murraylegalpllc.com
www.murraylegalpllc.com



usury defense is rejected or otherwise becomes the law of the case, they will have no RICO claim at all, based on res judicata and/or collateral estoppel; on the other hand, if the Plaintiffs succeed in the state court action, Plaintiffs' potential RICO damages could then become 'clear and definite.' In this situation, Plaintiffs' RICO claims should be dismissed as premature – that is the proposition that *Sky Med. Supply Inc.,* and *LaBarbera*, cited in BMF's Opening Letter, stand for, and Plaintiffs' Letter does not actually rebut those cases.  Indeed, Plaintiffs' Letter does not address or even mention *LaBarbera,* which is likely because the reasoning in *La Barbera* is on point and persuasive.[1]  Plaintiffs' attempt to distinguish *Sky Med* is also unavailing; Plaintiffs argue that, unlike in *Sky Med,* Plaintiffs have "clear and definite" RICO damages "no matter the outcome," and that here "there is no chance that anything in the state court action will eliminate or reduce the over \$700,000 in attorney's fees *already incurred.*"  Plaintiffs' Letter, at 2 (emphasis in original). But, of course, Plaintiffs don't have "clear and definite" RICO damages "no matter the outcome," because if "the outcome" of the state court proceeding is that Plaintiffs lose on the usury issue in state court, the entire basis for this RICO action is vitiated, and the attorney's fees expended in the underlying action are, indeed, "eliminated," as far as a basis for RICO is concerned.[2]

"RICO ripeness, which derives from the RICO statute itself, 'is [an even more] rigorous matter than standing under Article III,' *Denney*, 443 F.3d at 266 [2nd Cir., 2006][.]" *Sky Med.* n.10. Whether cognizable RICO damages (i.e., out-of-pocket damages) have been plead is not an academic matter – "Courts have frequently commented on the 'in terrorem' settlement value that a threat of a civil RICO claim creates." *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 536 (S.D.N.Y. 2009).  Here, BMF respectfully submits, the foregoing counsels for answering the limited threshold question as to whether Plaintiffs' legal fees expended in the ongoing state court action may be used to establish a ripe RICO claim.

Sincerely,
/s/ Phillip A. Spinella
Phillip A. Spinella, Esq.

---

[1] *LaBarbera v. Angel*, 95 F. Supp. 2d 656, 663 (E.D. Tex. 2000) ("Until the state court litigation is over, the plaintiffs' damages are premature and speculative. If the case goes to trial in state court and the LaBarbara's lose, certain issues will be subject to collateral estoppel or res judicata which might preclude the civil RICO claim.[4] If they win, the LaBarberas would then be able to bring a civil RICO claim for attorney fees and litigation expenses incurred as a result of the conspiracy to cover up evidence.").

[2] N.B. Even were there any tension between these cases and the analysis in *Banker's Trust,* on the one hand, and *D'Addario,* on the other, the holding in *D'Addario* is best considered in light of the particular facts of that case.  Given space constraints, BMF will not expand on those here, but suffice to say that the Second Circuit appears to have harbored concerns that, among other things, the underlying state probate proceedings would not even be resolved in time sufficient to provide any relief to the plaintiff. *See D'Addario v. D'Addario*, 901 F.3d 80, 93-94 (2d Cir. 2018) ("Proceedings regarding the Estate are underway in Connecticut Probate Court, as we have described. That they have been ongoing for more than thirty years, however, and that the Forbearance Agreement is in place . . . **unavoidably raises the question whether they will ever end, and whether their pendency can reasonably be treated as we have treated parallel proceedings in the cases just cited: that is, as grounds to preclude the related RICO suit.")**. (Emphasis added).

 170 Old Country Road
Suite 608
Mineola, New York 11501

 Office: 516-260-7367

 cmurray@murraylegalpllc.com
www.murraylegalpllc.com