| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br><br>GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SPIN CAPITAL, LLC, et al.,<br><br>Defendants. | Case No. 1:24-cv-08515 (AS)<br>Hon. Arun Subramanian |
| --- | --- |

March 2, 2026

Hon. Arun Subramanian
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: Golden Foothill Insurance Services, LLC, et al. v. Spin Capital, LLC, et al., No. 1:24-cv-08515 (AS)**

Dear Judge Subramanian:

I write as Defendant Avrumi (a/k/a Josh) Lubin, appearing pro se in my individual capacity only, to request that the Court (i) enter the attached Proposed Order to Show Cause setting an expedited conference/hearing, (ii) issue a temporary restraining order preserving the status quo, and (iii) appoint the New York Supreme Court's court-appointed temporary receiver, Fred Stevens (the "Receiver"), as a temporary federal receiver / special litigation receiver for the Leer-controlled Plaintiff entities in this action for the limited purpose of preserving Receivership Property, preventing further violations of the state-court injunctions, and ensuring that any litigation steps taken in this case are authorized by a fiduciary subject to court supervision.

This application is warranted by an extraordinary record in the related New York Commercial Division action involving the same core parties and underlying dispute (Spin Capital, LLC v. Golden Foothill Insurance Services, LLC, et al., Index No. 650582/2022) (the "State Receivership Action"). On January 4, 2023, the State Court appointed Mr. Stevens as temporary receiver and empowered him to take possession, custody, and control of specified life insurance policies and related documents and proceeds, to investigate additional policies potentially constituting collateral, and to commence/defend litigation necessary to protect Receivership Property. (Ex. A.) The Receivership Order also enjoins the Leer Defendants and their agents

from interfering with the Receiver and restrains them from collecting, transferring, encumbering, or otherwise disposing of policy income, proceeds, or related property. (Id.)

Despite those directives, the State Court found Defendant Stefan Leer (the de facto controlling person of the Plaintiff companies here) to have seized and withheld approximately $1,985,367.42 in life insurance policy proceeds, failed to remit the proceeds to the Receiver, and failed to produce core banking and loan-collateral documents. (Ex. B; Ex. C.) After a hearing at which Mr. Leer was represented by Plaintiffs' counsel Shane R. Heskin, Esq., the State Court entered an Order for Criminal and Civil Contempt against Mr. Leer, declared him in criminal contempt, directed immediate remittance of $2,139,685.91 (including proceeds, fees/costs, interest, and daily interest), and authorized issuance of a warrant of commitment upon continued noncompliance. (Ex. B.)

The emergency is compounded by Mr. Leer's recent Chapter 7 bankruptcy filing (Middle District of Tennessee, Case No. 26-bk-00149), which triggered a stay in the State Receivership Action and forced the Receiver to seek immediate judicial authority to continue performing time-sensitive duties (including payment of insurance premiums to avoid policy lapse and preservation of potential claims and proceeds). (Ex. D; Ex. E; Ex. G.) As the Receiver explains under penalty of perjury, if premiums cannot be paid, the remaining insurance policies (with stated death benefits totaling approximately $19.5 million) could lapse and be permanently lost. (Ex. D.)

Against that backdrop, Plaintiffs are continuing to prosecute this federal action while controlled by individuals who have already been adjudicated in criminal and civil contempt for misappropriating Receivership Property and obstructing court-supervised preservation efforts. The risk of continued dissipation, spoliation, and interference is not speculative; it is documented and ongoing. Immediate, narrowly tailored relief is required to preserve the status quo and prevent this Court's proceedings from being used as a vehicle to frustrate the State Court's receivership and contempt enforcement.

The requested TRO is limited in duration and scope: it would temporarily stay further prosecution activity by Plaintiffs (other than responding to this application) and enjoin any acts that would interfere with Receivership Property, pending an expedited hearing. The requested appointment of Mr. Stevens is likewise limited and pragmatic: he is already the court-appointed fiduciary most familiar with the Receivership Property, the contempt findings, and the preservation issues, and his appointment here would minimize duplication, reduce risk of inconsistent directives, and provide a single supervised decision-maker regarding any litigation steps affecting Receivership Property.

Attached for the Court's convenience are: (1) a Proposed Order to Show Cause (with TRO language) and Proposed Order, (2) my supporting Declaration, (3) a Memorandum of Law, and (4) Exhibits A-G reflecting the State Court's Receivership Order, contempt order, Mr. Leer's

affidavit admissions, and the Receiver's sworn submissions regarding the bankruptcy-related preservation emergency.

I will serve this application immediately via ECF (where counsel are registered) and by email on all counsel of record, and by email and overnight mail on the Receiver, and will file proof of service promptly.

I respectfully request that the Court so-order the attached Order to Show Cause, enter the requested interim restraints, and schedule an expedited conference/hearing at the Court's earliest availability.


Respectfully submitted,

/s/ Avrumi (Josh) Lubin

Avrumi (Josh) Lubin

1460 Arboretum Parkway

Lakewood, NJ 08701

Tel: 732-608-4905

Email: josh@spincapital.com

| UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK  GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,  Plaintiffs,  v.  SPIN CAPITAL, LLC, et al.,  Defendants. | Case No. 1:24-cv-08515 (AS) Hon. Arun Subramanian |
|---|---|

### DECLARATION OF AVRUMI (A/K/A JOSH) LUBIN IN SUPPORT OF EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND APPOINTMENT OF TEMPORARY RECEIVER

I, Avrumi (a/k/a Josh) Lubin, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am a Defendant in this action, Golden Foothill Insurance Services, LLC, et al. v. Spin Capital, LLC, et al., No. 1:24-cv-08515 (AS) (S.D.N.Y.) (the "Action"). I submit this declaration in support of my emergency application for a temporary restraining order ("TRO"), preliminary injunction, and appointment of Fred Stevens as temporary receiver / special litigation receiver for the limited purposes described in the accompanying Memorandum of Law.

2. I appear pro se in my individual capacity only. Nothing in this declaration is submitted on behalf of any other party, including Spin Capital, LLC.

3. Attached as Exhibits A through G are true and correct copies of records filed in the related New York Supreme Court, County of New York (Commercial Division) action Spin Capital, LLC v. Golden Foothill Insurance Services, LLC, et al., Index No. 650582/2022 (the "State Receivership Action") and related proceedings, as follows:

   (a) Exhibit A: Receivership Order appointing Fred Stevens as temporary receiver (Jan. 4, 2023).
   (b) Exhibit B: Order for Criminal and Civil Contempt against Defendant Stefan Leer (Apr. 26, 2024).
   (c) Exhibit C: Affidavit of Stefan Leer (Apr. 3, 2024).
   (d) Exhibit D: Affirmation of Receiver Fred Stevens (Jan. 21, 2026).

(e) Exhibit E: Receiver's Memorandum of Law (Jan. 21, 2026).

(f) Exhibit F: Receiver's proposed Order to Show Cause (Jan. 21, 2026).

(g) Exhibit G: Interim Stay Order in State Receivership Action due to Stefan Leer's bankruptcy filing (Jan. 15, 2026).

4. Exhibit A reflects that the State Court appointed the Receiver and empowered him to take possession, custody, and control of specified life insurance policies and related documents and proceeds, to investigate additional policies potentially constituting collateral, and to commence/defend litigation necessary to protect Receivership Property.

5. Exhibit C reflects that Stefan Leer submitted a sworn affidavit admitting, among other things, that he is the president of the Plaintiff companies, that he caused life insurance policy proceeds to be deposited into a bank account, and that he used those proceeds as collateral for a loan. (Ex. C ¶¶1, 4-6.)

6. Exhibit B reflects that after notice and hearing, the State Court entered an Order for Criminal and Civil Contempt against Stefan Leer, declared him in criminal contempt, directed him to remit $2,139,685.91 to the Receiver (including proceeds, fees/costs, and interest), and ordered him to turn over requested documents. (Ex. B at 6.)

7. Exhibits D and E reflect the Receiver's sworn submissions explaining that Stefan Leer has filed for Chapter 7 bankruptcy protection and that the Receiver must continue performing time-sensitive duties, including payment of insurance premiums to avoid policy lapse and preservation of claims and proceeds, or the receivership estate could lose substantial value. (Ex. D.)

8. Based on the State Court's Receivership Order and contempt findings, and the Receiver's sworn submissions, I respectfully submit that there is an immediate risk that Receivership Property and related evidence will be further dissipated, concealed, or destroyed unless this Court enters interim relief preserving the status quo pending an expedited hearing.

9. I am prepared to serve this application immediately on all counsel of record via ECF and by email, and on the Receiver by email and overnight mail, and to file proof of service promptly.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 2, 2026

Lakewood, New Jersey


/s/ Avrumi (Josh) Lubin

Avrumi (Josh) Lubin

1460 Arboretum Parkway

Lakewood, NJ 08701

Tel: 732-608-4905

Email: josh@spincapital.com

| | |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br><br>GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SPIN CAPITAL, LLC, et al.,<br><br>Defendants. | **Case No. 1:24-**<br>**cv-08515 (AS)**<br>**Hon. Arun**<br>**Subramanian** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AVRUMI (A/K/A JOSH)**
**LUBIN'S**
**EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER,**
**PRELIMINARY INJUNCTION, AND APPOINTMENT OF TEMPORARY RECEIVER**

**PRELIMINARY STATEMENT**

Defendant Avrumi (a/k/a Josh) Lubin ("Lubin"), appearing pro se in his individual capacity only,

submits this memorandum of law in support of an emergency application for (i) a temporary

restraining order ("TRO") and preliminary injunction under Federal Rule of Civil Procedure 65,

and (ii) appointment of Fred Stevens (the "Receiver") as a temporary receiver / special litigation

receiver under Rule 66 and the Court's inherent equitable powers.

This relief is necessary because the Plaintiff entities in this action are controlled by Stefan Leer

and his affiliates (the "Leer Parties"), who are subject to an active state-court receivership and

have been adjudicated in criminal and civil contempt for misappropriating receivership property,

obstructing document production, and defying court-ordered turnover obligations. (Ex. B; Ex.

C.)

The requested relief is narrowly tailored to preserve the status quo pending an expedited hearing:

it temporarily stays Plaintiffs from taking litigation steps in this action (other than responding to

this application) and prevents further dissipation or interference with Receivership Property. In

addition, the appointment of Mr. Stevens is practical and efficient: he is already the court-

appointed fiduciary supervising preservation and recovery of Receivership Property in the

related New York Commercial Division matter, and his appointment here would avoid

inconsistent directives and protect this Court's process from being used to frustrate state-court orders.

## RELEVANT BACKGROUND

### A. The New York Supreme Court Appointed Fred Stevens as Temporary Receiver and Enjoined Interference

On January 4, 2023, the Supreme Court of the State of New York, County of New York (Commercial Division) appointed Fred Stevens as temporary receiver in Spin Capital, LLC v. Golden Foothill Insurance Services, LLC, et al., Index No. 650582/2022 (the "State Receivership Action"). (Ex. A.)

The Receivership Order authorizes the Receiver to take possession, custody, and control of specified life insurance policies and all documents, records, and information relating or pertaining to those policies; to investigate additional insurance policies owned by or transferred by the Leer Defendants that may constitute collateral; to communicate with the insurance companies; to pay premiums and necessary expenses; and to commence, defend, or participate in actions necessary for the protection of Receivership Property. (Ex. A.)

The Receivership Order further requires any person in possession of Receivership Property (including documents and records) to turn it over to the Receiver, and enjoins all parties and their agents and attorneys from interfering with the Receiver's duties. (Ex. A.) It also restrains the Leer Defendants from collecting, selling, assigning, transferring, encumbering, amending, modifying, cancelling, terminating, or disposing of policy-related income, proceeds, or other Receivership Property. (Ex. A.)

### B. Stefan Leer Admitted Using Receivership Proceeds as Loan Collateral and Was Later Held in Criminal and Civil Contempt

Stefan Leer has admitted under oath that he is "the president" of multiple Leer-controlled entities, including Golden Foothill Insurance Services, LLC and the other related companies that are Plaintiffs in this action. (Ex. C ¶1.)

In that same sworn affidavit, Mr. Leer admitted that the policy proceeds at issue in the receivership were deposited into a bank account and then used "as security for a loan," based on

counsel's advice that the entity receiving the proceeds was not subject to the State Court's jurisdiction or the receivership. (Ex. C ¶¶4-6.)

After notice and hearing, the State Court entered an Order for Criminal and Civil Contempt against Mr. Leer. (Ex. B.) Among other findings, the State Court found that Mr. Leer claimed and obtained $1,985,367.42 in death benefits on a John Hancock life insurance policy that was subject to the Receivership Order, and failed to remit those proceeds or produce core banking and loan-collateral documents. (Ex. B at 3-5.)

The State Court declared Mr. Leer in criminal contempt and ordered him to remit $2,139,685.91 to the Receiver (including proceeds, fees/costs, interest, and daily interest), and to turn over the demanded documents. (Ex. B at 6.) The Order provides for a warrant of commitment upon continued noncompliance. (Id.)

## C. The Receiver Has Sought Emergency Authority to Continue Preservation Efforts in Light of Stefan Leer's Bankruptcy Filing

In January 2026, Mr. Leer filed a Chapter 7 bankruptcy petition in the Middle District of Tennessee (Case No. 26-bk-00149). (Ex. D; Ex. G.) The State Court entered an interim order staying the State Receivership Action as to Mr. Leer during the pendency of the bankruptcy proceedings and holding pending motions in abeyance. (Ex. G.)

The Receiver has submitted sworn papers explaining that absent immediate authority to continue functioning, the receivership estate faces irreparable harm, including loss of insurance policy value due to lapse if premiums cannot be paid, and impairment of the Receiver's ability to protect and pursue claims relating to Receivership Property and to contest potential discharge issues relating to Mr. Leer's contempt judgment. (Ex. D; Ex. E.)

## LEGAL STANDARD

## A. Temporary Restraining Orders and Preliminary Injunctions

A party seeking preliminary injunctive relief must demonstrate (1) irreparable harm absent an injunction; (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in the movant's favor; and (3) that the public interest would not be disserved by the injunction. See Winter v. Natural Res. Def.

Council, Inc., 555 U.S. 7 (2008); Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30 (2d Cir. 2010).

A TRO serves the same function as a preliminary injunction, but is designed to prevent immediate, irreparable harm pending an expedited hearing. Fed. R. Civ. P. 65.

### B. Appointment of a Receiver

Federal courts possess broad equitable authority to appoint receivers. Fed. R. Civ. P. 66. Although the remedy is considered "extraordinary," the decision is committed to the Court's sound discretion, particularly where necessary to preserve property, prevent dissipation, and enforce court orders. See, e.g., Citibank, N.A. v. Nyland (CF8) Ltd., 839 F.2d 93 (2d Cir. 1988); SEC v. Byers, 609 F.3d 87 (2d Cir. 2010).

Relevant considerations include the existence of fraudulent or contemptuous conduct, the imminent danger that property will be lost or concealed, the inadequacy of legal remedies, and whether a receiver is necessary to preserve the status quo and protect the court's ability to grant effective relief. See Citibank, 839 F.2d at 97-98.

### ARGUMENT

### I. The Court Has Authority to Enter Emergency Injunctive Relief and to Appoint the State-Court Receiver for Limited Purposes in This Action

This Court has inherent authority to manage its docket and to preserve its ability to render meaningful relief. Rule 65 empowers the Court to enter temporary restraints necessary to prevent immediate harm pending a hearing. Rule 66 and the Court's equitable powers authorize appointment of a receiver where necessary to preserve and protect property and to prevent further contemptuous interference.

Here, the requested appointment does not seek to displace or contradict the State Court's receivership. To the contrary, it seeks to align this action with an existing, court-supervised receivership by appointing the same fiduciary for a limited purpose: preventing this federal action from being used as a mechanism to undermine or evade the State Court's Receivership Order and contempt enforcement.

### II. Lubin Will Suffer Immediate and Irreparable Harm Absent Interim Relief

Irreparable harm is established where, absent injunctive relief, the movant faces a loss that cannot be adequately remedied by money damages or later relief. The record here reflects concrete and ongoing threats: (a) demonstrated misappropriation of receivership proceeds; (b) persistent noncompliance with turnover and document-production obligations; and (c) a bankruptcy filing that risks paralyzing preservation efforts and enabling discharge of contempt-related obligations without proper investigation. (Ex. B; Ex. C; Ex. D.)

The Receivership Order exists precisely because ordinary litigation remedies were inadequate to protect the collateral and related proceeds. (Ex. A.) The State Court's subsequent criminal contempt findings confirm that the risk of dissipation and obstruction is real, not hypothetical. (Ex. B.)

Absent a TRO preserving the status quo, Plaintiffs—controlled by the same actors—can continue to prosecute this case, seek discovery and court rulings, and take litigation positions that interfere with Receivership Property and the Receiver's ability to preserve and recover it. The Court should act now to prevent further harm and to ensure that any litigation steps affecting Receivership Property are authorized by a fiduciary subject to court supervision.

### III. Lubin Has at Least Serious Questions Going to the Merits, and the Balance of Hardships and Public Interest Strongly Favor Relief

At minimum, Lubin raises serious questions regarding (i) whether the Leer-controlled Plaintiff entities may prosecute litigation positions in this Court that conflict with, or are designed to evade, state-court receivership and contempt orders; and (ii) whether Plaintiffs' continued prosecution activity should be stayed pending the Receiver's appearance and confirmation of litigation authority. The exhibits establish that the State Court has already exercised equitable control over key property and issued clear injunctions against interference. (Ex. A; Ex. B.)

The balance of hardships tips decidedly in Lubin's favor. The TRO requested is temporary and preserves the status quo pending an expedited hearing. Plaintiffs suffer no cognizable prejudice from a short pause to ensure that litigation steps are authorized and that Receivership Property is protected. By contrast, denial of interim relief risks further dissipation and obstruction by parties with a proven history of contempt and misappropriation.

The public interest likewise favors relief. Courts have a strong interest in enforcing court orders, preventing contemptuous behavior, protecting property subject to court supervision, and avoiding the use of parallel proceedings to frustrate judicial authority.

## IV. Appointment of Fred Stevens as Temporary Receiver / Special Litigation Receiver Is Appropriate and Tailored

Appointment of Mr. Stevens is justified by his existing fiduciary role and his direct supervision of Receivership Property. (Ex. A; Ex. D.) A limited appointment here would (a) ensure continuity and avoid duplicative preservation efforts, (b) reduce the risk of inconsistent directives, and (c) provide a supervised mechanism for determining whether and how this litigation should proceed insofar as it affects Receivership Property.

The proposed order limits the Receiver's authority to preservation, protection, and litigation-authorization functions relevant to Receivership Property and this case. It does not seek to adjudicate the merits of the parties' underlying claims on an emergency basis; rather, it ensures that the Court's process is not leveraged to frustrate existing court orders.

Finally, Lubin respectfully requests that the Court waive or set a nominal bond under Rule 65(c) given the limited, preservation-oriented nature of the requested restraints and the strong record of contemptuous conduct supporting them.

## CONCLUSION

For the foregoing reasons, Lubin respectfully requests that the Court enter the proposed Order to Show Cause, issue a temporary restraining order preserving the status quo, appoint Fred Stevens as temporary receiver / special litigation receiver for the limited purposes described, and schedule an expedited hearing for preliminary injunctive relief, together with such other and further relief as the Court deems just and proper.

Dated: March 2, 2026
Lakewood, New Jersey

Respectfully submitted,

/s/ Avrumi (Josh) Lubin

Avrumi (Josh) Lubin, Pro Se (Individual Capacity Only)

1460 Arboretum Parkway

Lakewood, NJ 08701

Tel: 732-608-4905

Email: josh@spincapital.com

| | |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br><br>GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SPIN CAPITAL, LLC, et al.,<br><br>Defendants. | **Case No. 1:24-cv-08515 (AS)**<br>**Hon. Arun Subramanian** |

**PROPOSED ORDER TO SHOW CAUSE**
**AND TEMPORARY RESTRAINING ORDER**
**(AND APPOINTMENT OF TEMPORARY RECEIVER)**

Upon the Emergency Letter Motion of Defendant Avrumi (a/k/a Josh) Lubin (the "Movant"), appearing pro se in his individual capacity only; the Declaration of Avrumi (a/k/a Josh) Lubin dated March 2, 2026; the accompanying Memorandum of Law; and the exhibits attached thereto, and upon all prior proceedings in this action, it is hereby:

ORDERED that Plaintiffs shall SHOW CAUSE before the Honorable Arun Subramanian, United States District Judge, at the United States Courthouse, 500 Pearl Street, New York, New York, in Courtroom ___, on _____, 2026, at _____ __.m., or as soon thereafter as counsel may be heard, why an Order should not be entered (i) granting a preliminary injunction and (ii) appointing Fred Stevens as temporary receiver / special litigation receiver for the limited purposes set forth below; and it is further

ORDERED that, pending the hearing and determination of this Order to Show Cause, the following temporary restraining order is entered:

1. Plaintiffs, and their officers, directors, managing agents, employees, attorneys, and all persons acting in concert or participation with them who receive actual notice of this Order, are TEMPORARILY ENJOINED AND RESTRAINED from taking any step to prosecute this action (including serving discovery, making motion practice, seeking default, issuing subpoenas, or otherwise pursuing relief), except that Plaintiffs may file opposition to this Order to Show Cause and may appear at the hearing set by the Court.

2. Plaintiffs, and all persons acting in concert or participation with them who receive actual notice of this Order, are TEMPORARILY ENJOINED AND RESTRAINED from transferring, assigning, encumbering, dissipating, concealing, or otherwise disposing of any property that is subject to, derived from, or traceable to the New York Supreme Court Receivership Order dated January 4, 2023 (Spin Capital, LLC v. Golden Foothill Insurance Services, LLC, et al., Index No. 650582/2022) (the "Receivership Order"), including without limitation any life insurance policy proceeds or related funds.

3. Plaintiffs and their counsel are ORDERED to preserve all documents and electronically stored information relevant to (a) the insurance policies and proceeds that are the subject of the Receivership Order, (b) the transactions at issue in the State Receivership Action, and (c) the claims and defenses in this action, and are enjoined from deleting, modifying, or destroying such materials.

4. Plaintiffs and their counsel are ORDERED to refrain from interfering in any way with the Receiver's performance of his duties under the Receivership Order and with the limited authority conferred by this Order.

## APPOINTMENT OF TEMPORARY RECEIVER / SPECIAL LITIGATION RECEIVER (INTERIM RELIEF)

5. Fred Stevens (Klestadt Winters Jureller Southard & Stevens LLP), in his capacity as the court-appointed receiver in the State Receivership Action, is hereby APPOINTED as temporary receiver / special litigation receiver in this action (the "Receiver"), subject to his written acceptance, for the limited purpose of preserving Receivership Property and ensuring that any litigation steps taken by Plaintiffs in this action that affect Receivership Property are authorized by the Receiver.

6. The Receiver is authorized, pending further Order of this Court, to: (a) obtain from Plaintiffs and Plaintiffs' counsel all documents and information necessary to identify, locate, preserve, and protect Receivership Property; (b) communicate with Plaintiffs' counsel and any insurers or custodians of Receivership Property; (c) receive copies of all filings, correspondence, discovery, and case materials in this action; and (d) determine, in the Receiver's fiduciary judgment,

whether Plaintiffs should take or refrain from taking litigation steps in this action to the extent such steps may affect Receivership Property.

7. Within twenty-four (24) hours of service of this Order, Plaintiffs' counsel shall provide the Receiver with an electronic copy of the complete case file for this action (including pleadings, correspondence, discovery requests and responses, and any relevant retention or authority documents), and shall confer with the Receiver regarding the Receiver's position on whether and how Plaintiffs should proceed in this action pending further Court order.

ORDERED that Movant shall serve this Order to Show Cause and all supporting papers on Plaintiffs' counsel of record by ECF and by email no later than _____, 2026 at ____ __.m.; and shall serve a copy on the Receiver by email and overnight mail; and it is further

ORDERED that Plaintiffs shall file and serve any opposition papers by _____, 2026 at ____ __.m.; and Movant may file and serve any reply papers by _____, 2026 at ____ __.m.; and it is further

ORDERED that no bond shall be required, or in the alternative that bond is set in the nominal amount of $1.00, pursuant to Fed. R. Civ. P. 65(c), in light of the limited, preservation-oriented nature of this Order; and it is further

ORDERED that this TRO shall remain in effect until the Court rules on the preliminary injunction application or until further Order of the Court.


SO ORDERED:

Dated: _____, 2026

New York, New York



_____

Hon. Arun Subramanian

United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,
Plaintiffs,
v.
SPIN CAPITAL, LLC, et al.,
Defendants.

**Case No. 1:24-cv-08515 (AS)**
**Hon. Arun Subramanian**

# Exhibit A

**Receivership Order Appointing Fred Stevens as Temporary Receiver**

*Filed in: Golden Foothill Ins. Servs., LLC, et al. v. Spin Capital, LLC, et al., No. 1:24-cv-08515 (AS)*

FILED: NEW YORK COUNTY CLERK 01/06/2023 01:57 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 245                                                    RECEIVED NYSCEF: 01/06/2023

Plaintiff Draft 12.22.2022

At Part 53 of the Supreme Court of the State
of New York, New York County at 60 Centre
Street, New York, NY 10007 on the 9 day
of ᒐanuary    , 2022ᒋ

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------X

Spin Capital, LLC,                          :    Index No. 650582/2022
                                            :
                            Plaintiff,      :    [PROPOSED] ORDER
                                            :    APPOINTING A TEMPORARY
        v.                                  :    RECEIVER
                                            :
Golden Foothill Insurance Services, LLC, et al.,   :
                                            :
                            Defendants.     :

---------------------------------------------------------X

        This Court having entered its Decision and Order, dated October 29, 2022 (NYSCEF Doc.

No. 229) (the "Decision") granting Plaintiff Spin Capital LLC's ("Plaintiff") motion for the

appointment of a temporary receiver pursuant to CPLR § 6401 by Order to Show Cause (the

"Receivership Motion"),[1] in support of which Plaintiff submitted the Affidavit of Avrumi Lubin,

sworn to on August 30, 2022, with attached exhibits, and a memorandum of law. For the reasons

set forth in the Decision, it is:

        1.      ORDERED that Fred  Stevens, Fiduciary ID 106484, with offices located at

Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York,

NY 10036, phone no. 212-972-3000 x113 (the "Receiver"), is appointed temporary receiver,

pursuant to the provisions of Article 64 of the CPLR, the terms of this Order, and with the usual

powers and directions, for the following life insurance policies (the "Insurance Policies"):

---

[1] Capitalized terms used in this Order but not defined herein shall have their meaning set forth in the memorandum of
law in support of the Receivership Motion.

FILED: NEW YORK COUNTY CLERK 01/06/2023 01:57 PM
NYSCEF DOC. NO. 245
INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/06/2023

| Policy No. | Insured(s) | Insurance Company |
|---|---|---|
| 177947 | Gresham, Ronald | Zurich American Life Insurance Company |
| 170604 | Kellar, Edward | Zurich American Life Insurance Company |
| 162865 | Leer, William & Rae | Zurich American Life Insurance Company |
| 167060 | Perry, Jack & Leonora | Zurich American Life Insurance Company |
| 172953 | Sisam, Dorothy | Zurich American Life Insurance Company |
| 172963 | Sisam, Edwin & Dorothy | Zurich American Life Insurance Company |
| UL00020974 | Sisco, Frances | Accordia Life and Annuity Company |
| 59592683 | Utsick, John | John Hancock Life Insurance Company |
| 7447253 | Utsick, John | Brighthouse Financial Life Insurance[2] |

and it is further

2. ORDERED that, pursuant to Section 36.1 of Part 36 of the Rules of the Chief Judge, the Receiver shall be subject to said Part 36; and it is further

3. ORDERED that, by accepting this appointment, the Receiver certifies that he is in compliance with Part 36, including Section 36.2 (d) ("Limitations on appointments based upon compensation"), but if he is disqualified from receiving such appointment pursuant to the provisions of Part 36, he shall notify this Court forthwith; and it is further

4. ORDERED that, by accepting this appointment, the Receiver certifies that he is familiar with the duties and responsibilities of a receivership, and is fully capable of assuming, and prepared to assume, those duties and responsibilities, which are commensurate with his abilities; and it is further

5. ORDERED that attorneys or support staff in the Receiver's law firm may perform tasks under the Receiver's direct supervision, but all substantive appearances and reports must be made, performed, and created by the Receiver; and it is further

---

[2] Nothing herein shall abridge or otherwise effect the residual death benefits in Brighthouse Financial Life Insurance Policy No. 7447253 retained by Michael I. Goldberg, the Court-appointed Receiver over Worldwide Entertainment, Inc., The Entertainment Group Fund, Inc., American Enterprises, Inc., and Entertainment Funds, Inc. and as set forth in the *Order Granting Receiver's Motion for Authority to Sell Remaining Life Insurance Policies* [Dkt. No. 737] issued May 3, 2021 in the matter of the *Securities and Exchange Commission v. John P. Utsick, et al.*, Case No. 06-CV-20975-PCH, pending before the United States District Court for the Southern District of Florida.

-2-

FILED: NEW YORK COUNTY CLERK 01/06/2023 01:57 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 245                                    RECEIVED NYSCEF: 01/06/2023

6.    ORDERED that, upon receipt of this order and UCS Form 872 (Notice of Appointment and Certification of Compliance), the Receiver shall complete, execute, and return the Form 872 to the Fiduciary Clerk; and it is further

7.    ORDERED that, subject to entry of a confidentiality protective order acknowledged by the Receiver, the Receiver is authorized to forthwith take possession, custody, and control of the Insurance Policies and all documents, records, and information relating or pertaining to the Insurance Policies (collectively, the "Property"); and it is further

8.    ORDERED that the Receiver is authorized to take such steps are reasonably necessary to investigate the Insurance Policies and such other insurance policies owned or transferred by Leer Defendants that may constitute Plaintiff's collateral; and it is further

9.    ORDERED that upon discovery of any other insurance policies that may constitute Plaintiff's collateral, the Receiver will provide written notice to counsel for Defendants of the policy number, insured(s) and insurance company and Defendants reserve all rights to dispute or otherwise challenge that any such policies constitute Plaintiff's collateral; and it is further

10.    ORDERED that the Receiver is authorized to communicate with all insurance companies that have issued the Insurance Policies (and such other policies, if any, constituting Plaintiff's collateral), pay premiums on and other necessary expenses relating to the Insurance Policies (and such other policies, if any, constituting Plaintiff's collateral), to commence, defend, or participate in actions and legal proceedings necessary for the protection of the Property, and to collect and receive all income, earnings, profits, refunds, distributions, and proceeds derived from the Property; and it is further

-3-

FILED: NEW YORK COUNTY CLERK 01/06/2023 01:57 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 245    RECEIVED NYSCEF: 01/06/2023

11.    ORDERED that anybody in possession of same shall turn over to the Receiver all Property (and all documents, records, and information related or pertaining to the Property); and it is further

12.    ORDERED that the Receiver shall forthwith deposit all monies received by him at the time he receives the same in his own name as the Receiver in an account at Signature Bank and such account shall show the name of this action, and the Receiver shall not be permitted to make withdrawals therefrom except as either provided for in this Order, or directed by the Court herein in a subsequent Order, such payments to be made by wire transfer from such account, ACH transfer, or check signed by the Receiver; and the Receiver shall send, on a monthly basis, a copy of the monthly statements of deposits and withdrawals for said account to counsel for all parties in this action; and it is further

13.    ORDERED that all parties (including Leer Defendants, all other parties to this litigation, and their employees, representatives, agents, and attorneys) are hereby enjoined from interfering in any way with the Receiver in the performance of his responsibilities and duties and shall cooperate with the Receiver and abide by his requests for documents, records, or information; and it is further

14.    ORDERED that all parties obligated to remit any income, earnings, profits, refunds, distributions, and proceeds to Leer Defendants on account of the Insurance Policies shall make such remittance to the Receiver; and that Leer Defendants are hereby enjoined and restrained from collecting any such income, earnings, profits, refunds, distributions, and proceeds and from selling, assigning, transferring, encumbering, amending, modifying, cancelling, terminating, or disposing of the Insurance Policies (and such other policies, if any, constituting Plaintiff's collateral); and it is further

-4-

FILED: NEW YORK COUNTY CLERK 01/06/2023 01:57 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 245    RECEIVED NYSCEF: 01/06/2023

15.    ORDERED that the Receiver is prohibited from incurring obligations in excess of the monies in his hand without further Order of this Court provided, however, that the Receiver may request, in his sole discretion, that Plaintiff compensate and make reimbursements or payments to the Receiver in accordance with Section 18 of this Order and make additional advances or disbursements to the Receiver under the Loan Documents to the Receiver or any insurance company (all such compensation, reimbursements, payments, advances and disbursements being referred to as the "Receivership Advances") in accordance with the Receiver's obligations under this order. Any such Receivership Advances made by Plaintiff (in its sole discretion) to Receiver shall constitute obligations under the Loan Documents **provided that** Defendants shall retain all rights, defenses, and remedies to contest (x) any such advances (and all other obligations allegedly owed by Leer Defendants to Plaintiff) and (y) whether such advances are collectible and/or otherwise violate applicable law (including for the reasons argued by Leer Defendants in their [reference applicable pleadings]); and it is further

16.    ORDERED that the Receiver, after paying the expenses of the management and care of the Property as above provided, retain the balance of the monies which may come into his hands until further Order of the Court; and it is further

17.    ORDERED that within twenty-four (24) hours of receiving payouts or proceeds from any Insurance Policy, the Receiver shall provide notice of such receipt to all parties who have appeared in this action, including the amount so received; and it is further

18.    ORDERED that the Receiver, or any party to this action, may at any time on proper notice to all parties who may have appeared in this action, apply to this Court for further or other instructions or authority necessary to enable the Receiver to properly fulfill his duties; and it is further

-5-

FILED: NEW YORK COUNTY CLERK 01/06/2023 01:57 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 245    RECEIVED NYSCEF: 01/06/2023

19.    ORDERED that, notwithstanding any other provision of this Order to the contrary, the Receiver shall not appoint an attorney, agent, appraiser, or accountant, or any other secondary appointments without prior authorization of the Court; and it is further

20.    ORDERED that, notwithstanding New York Civil Practice Law and Rules §§ 8004(a) and (b) and based upon insufficient funds to adequately compensate the Receiver for the performance of his anticipated duties and subject to Plaintiff's written agreement to compensate the Receiver as follows:

(i)    Plaintiff shall compensate the Receiver at the rate of $600.00 per hour for services rendered by him in connection with this receivership, and $450.00 per hour for tasks performed by an associate at his law firm and $225.00 per hour for tasks performed by a paralegal at his law firm, all under the Receiver's direction and supervision.

(ii)    Plaintiff shall reimburse the Receiver for all out-of-pocket expenses incurred by the Receiver; provided, however, that prior to incurring any out-of-pocket expense greater than $500, the Receiver shall obtain written consent from Plaintiff's counsel (unless the out-of-pocket expense relates to an emergency);

(iii)    Receiver shall give monthly notice to all parties of services rendered. Receiver shall: (A) notify all counsel for Plaintiff and Defendants by email every month regarding the number of hours he (and/or anyone working on his behalf at his law firm) has expended working on this matter during the previous month, (B) provide all counsel for Plaintiff and Defendants by email with an invoice reflecting detailed time entries for services rendered

-6-

FILED: NEW YORK COUNTY CLERK 01/06/2023 01:57 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 245                                    RECEIVED NYSCEF: 01/06/2023

by the 10th of each month for the services rendered for the previous month, and all parties shall have 10 days following receipt of the invoice to dispute any of the time entries in it or they will be deemed approved; and (C) file an application with the Court on a quarterly basis to approve his compensation for the previous quarter; and

(iv)    the total compensation to be paid to the Receiver is subject to approval of this Court.

21.    It is further ORDERED that before entering upon his duties, the Receiver shall post a bond in the amount of $50,000.

Dated:    New York, New York
          January 4   , 2022 3

ENTER

_____
                          J.S.C.
HON. ANDREW BORROK
                   J.S.C.

-7-

FILED: NEW YORK COUNTY CLERK 01/06/2023 01:57 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 245                                    RECEIVED NYSCEF: 01/06/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,
Plaintiffs,
v.
SPIN CAPITAL, LLC, et al.,
Defendants.

**Case No. 1:24-cv-08515 (AS)**
**Hon. Arun Subramanian**

# Exhibit B

## Order for Criminal and Civil Contempt Against Defendant Stefan Leer

*Filed in: Golden Foothill Ins. Servs., LLC, et al. v. Spin Capital, LLC, et al., No. 1:24-cv-08515 (AS)*

At Part 53 of the Supreme Court of the State of New York, held in and for the County of New York, at the Courthouse located at 60 Centre Street, New York, NY 10007 on the 26 day of April , 2024

PRESENT:    Hon. Andrew Borrok
            Justice of the Supreme Court

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: COMMERCIAL DIVISION**

---

SPIN CAPITAL, LLC,

                              *Plaintiff,*

            -against-

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, *et al.*,

                              *Defendants.*

Index No.: 650582/2022

Hon. Andrew Borrok

**ORDER FOR CRIMINAL AND CIVIL CONTEMPT AGAINST DEFENDANT STEFAN LEER**

Mot. Seq. No. 21

---

Fred Stevens of Klestadt Winters Jureller Southard & Stevens, LLP, in his capacity as Receiver (the "Receiver"), having moved by Order to Show Cause (the "Motion") [Dkt. Nos. 476-483], entered by the Court on January 18, 2024 [Dkt. No. 484], pursuant to N.Y. Judiciary Law §§ 750, 753 and 756 for an Order or Orders: (I) enforcing this Court's Order, dated January 4, 2023, appointing the Receiver [Dkt. No. 245] (the "Receivership Order"), and (II) enforcing this Court's Order, dated January 4, 2024, holding Defendant Stefan Leer in civil contempt and directing him to turn over to the Receiver $1,985,367.42 in receivership property by January 5, 2024, and for certain other relief on an expedited basis [Dkt. Nos. 467] (the "Stefan Leer Turnover/Contempt Order", together with the Receivership Order, the "Orders"), by holding Defendant Stefan Leer in criminal contempt of the Orders and imposing certain monetary

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 27 of 99

sanctions in connection with Defendant Stefan Leer's continued contempt of the Receivership Order and Stefan Leer Turnover/Contempt Order; and

The Motion having duly come to be heard and a hearing have been held on April 25, 2024, at which the Receiver, counsel to Defendant Stefan Leer (Shane Heskin), counsel to Defendant Life Shares 1019 LLC (Dustin Dyer), counsel to Plaintiff Spin Capital, LLC (the "Plaintiff"), counsel to Defendant Cap Factor, LLC, and counsel to other named parties appeared; and

**IT BEING HEREBY FOUND** that:

A.    Pursuant to the Receivership Order, this Court appointed the Receiver and therein:

(i)    granted the Receiver the usual powers and directions with respect to the named insurance policies, including that certain life insurance policy issued by the John Hancock Life Insurance Company ("John Hancock") identified as Policy No. 59592683 (the "Policy") on the life of John Utsick [Receivership Order, ¶1];

(ii)    "authorized [the Receiver] to forthwith take possession, custody, and control of the [Policy] and all documents, records and information relating or pertaining to the [Policy]" [Id., ¶7];

(iii)    "authorized [the Receiver] to take such steps [as] are reasonably necessary to investigate the [Policy]" [Id., ¶8];

(iv)    authorized the Receiver to "collect and receive all income, earnings, profits, refunds, distributions, and proceeds derived from the [Policy]" [Id., ¶10], and directed that "anybody in possession of the same [is required to] turn [it] over to the Receiver" [Id., ¶11];

2

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 28 of 99

(v) directed that "all parties (including Leer Defendants[1], all other parties to this litigation, and their employees, representatives, agents, and attorneys) are hereby enjoined from interfering in any way with the Receiver in the performance of his responsibilities and duties and shall cooperate with the Receiver and abide by his requests for documents, records, or information" [Id., ¶13]; and

(vi) directed that "all parties obligated to remit any income, earnings, profits, refunds, distributions, and proceeds to Leer Defendants on account of the [Policy] shall make such remittance to the Receiver; and **that Leer Defendants are hereby enjoined and restrained from collecting any such income, earnings, profits, refunds, distributions, and proceeds** and from selling, assigning, transferring, encumbering, amending, modifying, cancelling, terminating, or disposing of the [Policy]" [Id., ¶14] (emphasis added).

B. On or around August 16, 2023, Defendant Stefan Leer directly or indirectly through Defendant Life Shares 1019 LLC, claimed and obtained $1,985,367.42 in death benefits on the Policy (the "Policy Proceeds").

---

[1] The "Leer Defendants" were defined in a motion, dated August 30, 2022 [Dkt. No. 180], of Plaintiff, as the entities owned in whole or in part by Stefan Leer including defendants Golden Foothill Insurance Services, LLC, Life Factor II, LLC, Life Shares II, LLC, El Dorado Hills Insurance Solutions, Inc., Lone Wolf Insurance Services, Inc., ELDO Investments, LLC, The Genesis LS Fund, LLC, KTL Holdings, Inc., DRVN Holding, Inc., and Life Shares 1019, LLC. For purposes of the Receiver's Motion and this Order, the definition of Leer Defendants is expanded to include individual defendants Stefan Leer and Tatanisha Leer.

3

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 29 of 99

C.      On September 1, 2023, the Receiver filed a motion seeking an order compelling Defendants Life Shares 1019, LLC and Stefan Leer, among others, to remit the Policy Proceeds to the Receiver and holding them in civil contempt of the Receivership Order [Dkt. Nos. 318-337] (the "Turnover Motion"). This Court issued an Order to Show Cause on the Turnover Motion on September 11, 2023 [Dkt. No. 338], and a hearing was ultimately held thereon on January 4, 2024.  Following that Hearing, this Court entered the Stefan Leer Turnover/Contempt Order granting the Turnover Motion as to Defendant Stefan Leer.

D.      As found by this Court in the Stefan Leer Turnover/Contempt Order, Defendant Stefan Leer is in civil contempt of the Receivership Order in connection with his participation in applying for and receiving the Policy Proceeds. Consequently, the Court directed Stefan Leer to turn over the Policy Proceeds to the Receiver by 5:00 p.m. on January 5, 2024.

E.      Defendant Stefan Leer violated the Stefan Leer Turnover/Contempt Order by failing to remit the Policy Proceeds to the Receiver by 5:00 p.m. on January 5, 2024.

F.      As a result of Defendant Stefan Leer's continued contempt of the Receivership Order and violation of the Stefan Leer Turnover/Contempt Order, the Receiver filed the Motion on January 12, 2024, and this Court issued the Order to Show Cause related to the Motion on January 18, 2024.

G.      On April 3, 2024, Defendant Stefan Leer filed an affidavit in response to the Motion wherein he claimed that he deposited the Policy Proceeds into a bank account and then used those Policy Proceeds as collateral for a loan [Dkt No. 504].

H.      In response to Defendant Stefan Leer's affidavit, the Receiver requested production of the following documents: (i) all bank statements evidencing the deposit of the Policy Proceeds and its maintenance and interest accrual since the payout; (ii) all documents

4

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 30 of 99

concerning the loan against the Policy Proceeds, including the security and/or account control agreement, application, and promissory note; and (iii) bank statements or other documents that show what the loan proceeds were used for (collectively, the "Requested Documents").

I.      On April 4, 2024, this Court held an initial hearing on the Motion. This Court adjourned the hearing on the Motion to April 25, 2024, in which time Defendant Stefan Leer was to, among other things, produce the Requested Documents to the Receiver.

J.      At the April 25, 2024 hearing, Defendant Stefan Leer had not produced any of the Requested Documents to the Receiver and had not remitted any of the Policy Proceeds to the Receiver.  Accordingly, Defendant Stefan Leer remained in violation of the Receivership Order and the Stefan Leer Turnover/Contempt Order.

K.      The Court has concluded that as a result of Defendant Stefan Leer's continued violations of the Receivership Order and Stefan Leer Turnover/Contempt Order, the rights of the Receiver have been impeded and impaired, prejudiced, and defeated.

L.      The Court has given Defendant Stefan Leer multiple opportunities to cure his violations and contempt of the Receivership Order and Stefan Leer Turnover/Contempt Order, which have been ongoing since his seizure of the Policy Proceeds on or around August 16, 2023, in direct violation of the Receivership Order.

**NOW**, on reading all affidavits, declarations, memorandums of law, and other pleadings submitted in support of and/or in opposition to both the Motion and Turnover Motion; and upon the arguments of counsel at the hearings on the Motion on April 25, 2024 (the "Hearing"); and upon the record of the Hearing, which is incorporated herein and made a part hereof; and upon the order made in open Court at the Hearing; and upon the Court's Decision and Order on Motion, dated April 25, 2024 [Dkt. No. 508], directing the Receiver to submit an Order granting

5

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 31 of 99

the relief requested for the Court's signature; and due deliberation having been had thereon; it is

hereby

**ORDERED, ADJUDGED, AND DECREED** as follows:

1.      The Receiver's Motion is granted as set forth herein.

2.      Defendant Stefan Leer is declared in criminal contempt of the Receivership Order

and Stefan Leer Turnover/Contempt Order.

3.      Defendant Stefan Leer must remit to the Receiver the amount of $2,139,685.91

(representing $1,985,367.42 in Policy Proceeds, plus $44,700.00 in fees and costs of the

Receiver in connection with seeking Defendant Stefan Leer's compliance with the Receivership

Order and Stefan Leer Turnover/Contempt Order, plus $109,618.49 in accrued interest on the

Policy Proceeds at the rate of 8% from August 16, 2023, to April 25, 2024), plus $435.15 in

interest for each day after April 25, 2024, that Defendant Stefan Leer's foregoing obligations are

outstanding.

4.      Defendant Stefan Leer must turn over to the Receiver the Requested Documents.

5.      Defendant Stefan Leer may purge his contempt by (i) remitting to the Receiver all

amounts due pursuant to Paragraph 3 of this Order, and (ii) remitting to the Receiver the

Requested Documents, by no later than the thirtieth (30th) day following entry of this Order (the

"Deadline").

*The Court May issue*

6.      If Defendant Stefan Leer fails to timely purge his contempt by the Deadline the

Receiver shall email Part 53 (sfc-part53@nycourts.gov) so informing the Court with a proposed

form of warrant of commitment and a warrant of commitment ~~shall be issued~~ forthwith by this

Court directing the immediate arrest and imprisonment of Defendant Stefan Leer and directing

6

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 32 of 99

that he remain imprisoned until such time as he shall have complied with all of the provisions of this Order.

7.    Service of this Order shall be deemed to have been made upon all parties to this action on the date such Order or papers are filed on the Court's electronic docket, and such shall be deemed good and sufficient service thereof.

Dated:    New York, New York
          April  26, 2024

ENTER,

_____
Hon. Andrew Borrok
Justice of the Supreme Court

Hon. Andrew Borrok

8.  The Plaintiff is granted leave to move by order to show cause seeking to have the defendants' pleadings struck on such other relief that the plaintiff deems appropriate.

7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,
Plaintiffs,
v.
SPIN CAPITAL, LLC, et al.,
Defendants.

**Case No. 1:24-cv-08515 (AS)**
**Hon. Arun Subramanian**

# Exhibit C

**Affidavit of Stefan Leer (Apr. 3, 2024)**

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 34 of 99

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SPIN CAPITAL, LLC, : | Index No. 650582/2022 |
| Plaintiff : | |
| -against- : | Hon. J., Borrok |
| : | |
| GOLDEN FOOTHILL INSURANCE : | Mot. Seq. No. 21 |
| SERVICES, LLC, a DELAWARE LIMITED : | |
| LIABILITY COMPANY, *et al.*, : | **AFFIDAVIT OF STEFAN LEER** |
| Defendants, : | |
| -and- : | |
| GOLDEN FOOTHILL INSURANCE : | |
| SERVICES, LLC, a DELAWARE LIMITED : | |
| LIABILITY COMPANY, *et al.*, : | |
| Defendants. : | |

STATE OF TENNESSEE    )
                      : ss.:
COUNTY OF DAVISON     )

STEFAN LEER, being duly sworn, hereby deposes and says:

1.     I am a named Defendant in the above-referenced matter and husband to co-Defendant and Tatanisha Leer.  I am the president of co-Defendants Golden Foothill Insurance Services, LLC, Life Factor II, LLC, Life Share II, LLC, El Dorado Hills Insurance Solutions, Inc., Lone Wolf Insurance Services, Inc., Eldo Investments, LLC, the Genesis LS Fund, LLC, KTL Holdings, Inc., (collectively, the "Leer Companies").

2.     I have personal knowledge of the facts set forth herein.

3.     I submit this affidavit in opposition to the order to show cause signed by this Court, dated January 18, 2024 (the "Contempt OSC"), to hold myself in criminal contempt and directing me to turn over to the court-appointed receiver Fred Stevens of Klestadt Winters Jureller Southard

Case 1:24-cv-08515-AS   Document 121   Filed 03/02/26   Page 35 of 99

& Stevens LLP (the "Receiver") $1,985,3567.42 in receivership property (the "Policy Payout") to the Receiver. [Dkt. No. 484].

4. Prior to the Contempt OSC being signed by this Court, my company, LS 1019, LLC, had the Policy Payout deposited into a local bank account that yielded an interest rate in excess of five percent annually.

5. Once the Policy Payout was deposited with the bank, I used the Policy Payout as security for a loan.

6. This all occurred after counsel advised me that LS 1019, LLC was not subject to this Court's jurisdiction or the Receivership because no subject matter jurisdiction was established over LS 1019, LLC.

7. After being appraised by counsel that the Court had signed the Contempt OSC on or about January 18, 2024, I took immediate steps to replace the Policy Payout as the collateral for the loan so that I could comply and place the Policy Payout with the Receiver.

8. Unfortunately, I ran into unexpected delays that required my accountant to prepare business tax returns for LS 1019 and various other entities I own for the 2023 fiscal year, which have since been completed.

9. Now that the business tax returns are finalized, I expect to be able to fully turnover the Policy Payouts to the Receiver, that have been accruing interest in excess of five percent annually since LS 1019, LLC placed them into the bank account on or about January 10, 2023, within the next thirty (30) days.

10. Consequently, I humbly and respectfully ask that this Court defer granting the Contempt OSC for another thirty (30) days so to allow me to cure the contempt and have the Policy Payouts transferred to the Receiver with the benefit of interest.

-2-

Stefan Leer

Sworn to before me this

__2__ th day of March 2024

_____
NOTARY PUBLIC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,
Plaintiffs,
v.
SPIN CAPITAL, LLC, et al.,
Defendants.

**Case No. 1:24-cv-08515 (AS)**
**Hon. Arun Subramanian**

# Exhibit D

**Affirmation of Receiver Fred Stevens (Jan. 21, 2026)**

*Filed in: Golden Foothill Ins. Servs., LLC, et al. v. Spin Capital, LLC, et al., No. 1:24-cv-08515 (AS)*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

|  |  |
|---|---|
| TETON LIFE LLC AS ASSIGNEE OF THE RIGHTS OF SPIN CAPITAL, LLC,<br><br>*Plaintiff,*<br><br>-against-<br><br>GOLDEN FOOTHILL INSURANCE SERVICES, LLC, *et al.*,<br><br>*Defendants.* | Index No.: 650582/2022<br><br>Third-Party Index 595367/2022<br><br>Hon. Nancy M. Bannon, J.S.C. |
| GOLDEN FOOTHILL INSURANCE SERVICES, LLC, *et al.*,<br><br>*Third-Party Plaintiffs,*<br><br>-against-<br><br>SPIN CAPITAL, LLC, AVRUMI LUBIN,<br><br>*Third-Party Defendants.* |  |

**AFFIRMATION OF RECEIVER FRED STEVENS IN SUPPORT OF THE RECEIVER'S MOTION: (I) FOR AUTHORITY TO (A) CONTINUE TO FUNCTION AS RECEIVER IN ORDER TO PRESERVE RECEIVERSHIP PROPERTY, AND (B) RETAIN NELSON MULLINS RILEY & SCARBOROUGH LLP TO SERVE AS RECEIVER'S COUNSEL WITH RESPECT TO THE CHAPTER 7 BANKRUPTCY CASE OF DEFENDANT STEFAN LEER; (II) MODIFYING THE RECEIVER ORDER TO PROVIDE FOR COMPENSATION TO THE RECEIVER AT THE FIRM'S STANDARD HOURLY RATES; AND (III) TO SEVER DEFENDANT STEFAN LEER AS A DEFENDANT TO THIS ACTION SO THAT THE MATTER CAN CONTINUE AS TO ALL NON-DEBTOR PARTIES**

**FRED STEVENS**, deposes and says as follows under penalty of perjury:

1.     I was appointed temporary receiver (the "Receiver") in the above-captioned case pursuant to that certain order, dated January 4, 2023 (the "Receiver Order") [Dkt. No. 245]. I submit this affirmation (the "Affirmation") in support of the Receiver's motion (the "Motion"): (I)

1

for authority to (a) continue to function as Receiver in order to preserve property, and (b) retain Nelson Mullins Riley & Scarborough LLP as my counsel with respect to the chapter 7 bankruptcy case of defendant Stefan Leer ("Leer") pending in the United States Bankruptcy Court in the Middle District of Tennessee (the "Bankruptcy Court") under Case No. 26-bk-00149 (the "Leer Bankruptcy Case"); (II) modifying the Receiver Order to provide for compensation to the Receiver and his staff at the firm's current standard hourly rates; and (III) sever Leer as a defendant to this case so that it can proceed against all non-debtor parties.

## I.  PRELIMINARY STATEMENT

2.      While the Receiver is a non-party to this case, my maintenance and protection of the life insurance policies in the receivership estate ("Estate") has been an important part of this case.  Indeed, I was appointed in January 2023 due to the defendants' inability or unwillingness to pay the required premiums on the policies which threatened to destroy their value to the detriment of all stakeholders.  Also, Leer's interception and theft of approximately $2 million in policy proceeds in August 2023 has been a significant focal point of the Court and parties and has resulted in the entry of civil and criminal contempt orders and a judgment against Leer in the Receiver's favor in the amount of $2,413,395.26 as of January 14, 2026, the date of commencement of the Leer Bankruptcy Case (the "Leer Judgment").

3.      The parties were near settlement following two lengthy in-person settlement conferences supervised and conducted by the Court's clerk.  On the eve of resolution, Leer demanded a material previously undisclosed modification to the agreed settlement that undermined the entire agreed resolution.  He refused to sign anything without that modification.  Certain parties then apparently determined a way to settle the matter without Leer's signature prompting Leer to

commence the Leer Bankruptcy Case on January 14, 2026.[1]  The commencement of the Leer Bankruptcy Case prompted the Court to enter its own orders on January 15, 2026 staying this proceeding "during the pendency of [Leer's] Chapter 7 bankruptcy proceedings" (the "Stay Orders") [Dkt. Nos. 997-999].

4.      The stay of this proceeding and any inability of the Receiver to function would lead to significant damage to the Estate.  Among other things, I need to continue to timely perform the following functions under the Receiver Order for the reasons stated:

| Receiver Function | Why it is Necessary to Continue |
|---|---|
| Timely pay policy premiums | Estate could lose five (5) insurance policies with total death benefits of $19.5 million |
| Timely pursue policy proceeds in the event of the death of an insured | Failure to timely claim death benefits could result in their erosion or, as the history of this case has demonstrated, the possibility of interception and theft by bad actors |
| Maintain and report on the approximately $9.1 million held by the Receiver and maintain the bond on that cash | Parties have a significant vested interest in these funds and should be kept apprised of the status and confirmation that those funds exist and re protected |
| Preservation and potential pursuit of claims against John Hancock Insurance Company in connection with the Leer payout | Avoid any potential foreclosure of this claim due to neglect or lapse of statute of limitations |

---

[1]  The Receiver was not a party to those later settlement discussions and has no firsthand knowledge of their contents or participants.

3

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 41 of 99

| Receiver Function | Why it is Necessary to Continue |
|---|---|
| Pursue rights in connection with the Leer Judgment in the Leer Bankruptcy Case | If not timely pursued, the Receiver could lose the ability to take the following necessary steps in connection with the Leer Bankruptcy Case:<br>• Pursue discovery under Fed. R. Bankr. 2004;<br>• Participate in the meeting of creditors currently scheduled for February 9, 2026 at 1 pm;<br>• Submit a proof of claim for payment on the Leer Judgment (deadline March 25, 2026); and<br>• Object to Leer's discharge or dischargeability of the Leer Judgment (deadline April 10, 2026). |

5.      It is essential that I continue to function as the Receiver irrespective of the Leer Bankruptcy Case to avoid potential significant damage to the rights and interests of the Estate. I am further hindered by the fact that I cannot even retain counsel to participate in the Leer Bankruptcy Case without immediate relief from this Court. Accordingly, if I do not obtain immediate relief to retain counsel, the rigid deadlines in the Leer Bankruptcy Case could pass and the Leer Judgment discharged before I have any opportunity to participate and protect the Estate's rights.

6.      Moreover, Leer has, at best, a twice-removed equity interest in entities that nominally own the policies at issue in this proceeding. Those entities have their own creditors who are participating in this proceeding with competing claims that far exceed the value of the policies. Accordingly, any equity interest that Leer and his bankruptcy estate has in the property of the Estate appears to be economically worthless. Accordingly, Leer can and should be severed from this action so that it can proceed without him.

7.      For all the foregoing reasons and as set forth below and in the memorandum of law filed contemporaneously herewith, I respectfully request that an Order to Show Cause be entered

4

granting me immediate relief pending an opportunity for the parties to this action to be heard prior to the Court's consideration of the relief requested on a final basis, so that I can protect and preserve the property and rights of the Estate as is my charge and duty under the Receivership Order.

## II.    THE PARTIES TO THIS CASE

8.    For ease of reference, the parties to this case generally fall into the following three categories:

a) Leer Defendants:  The "Leer Defendants" were defined in a motion, dated August 30, 2022 [Dkt. No. 180], of Spin Capital, LLC, as succeeded by assignee Teton Life LLC (the "Plaintiff"), as the entities owned in whole or in part by Leer including defendants Golden Foothill Insurance Services, LLC, Life Factor II, LLC, Life Shares II, LLC, El Dorado Hills Insurance Solutions, Inc., Lone Wolf Insurance Services, Inc., ELDO Investments, LLC, The Genesis LS Fund, LLC, KTL Holdings, Inc., DRVN Holding, Inc., and Life Shares 1019, LLC.  For purposes of this Affidavit, the definition of Leer Defendants is expanded to include individual defendants Leer and Tatanisha Leer.  The Leer Defendants are or were the owners, transferors, transferees, or other stewards of various life insurance policies.

b) Lenders:  The "Lenders" include the merchant cash advance companies Plaintiff Teton Life, LLC, and its predecessor in interest, Spin Capital, LLC ("Spin") and defendant Cap Factor, LLC ("CapFactor"), who each advanced, transferred, loaned, or otherwise provided capital to one or more of the Leer Defendants and were granted interests in various life insurance policies as protection for recoupment of their advances.  It should also be noted that JL Special Investments LLC purports to hold an assignment of all right, title and

5

interests of Spin related to this matter, and that Teton Life LLC and its principal, Gavriel Yitzchakov, assert some interest in Spin and/or its interest in the policies at issue.

c) Insurer Defendants:  The "Insurer Defendants" include the insurance companies Zurich American Life Insurance Co. ("Zurich"), Accordia Life & Annuity Co. ("Accordia"), John Hancock Life Insurance Company ("John Hancock"), and Brighthouse Life Insurance Co. ("Brighthouse").  The Insurer Defendants are the issuers of various insurance policies that are subject to alleged interests of the Leer Defendants and Lenders.  Brighthouse and Accordia have since been dismissed from the action.

d) Intervenor Defendants: The "Intervenor Defendants" include Stephen Marik Brockman, Aaron Davison, Neilesh Desai, Jennifer Pursley, Michael Schwartz, Sheila Schwartz, The Charissa & Toney Trust, The Charissa Toney Living Trust, Matthe Troy, and American River Ag, Inc., which parties intervened in this action and also assert rights in and to the property that is the subject matter of this proceeding.

## III.    THE RECEIVER'S APPOINTMENT, ASSIGNMENT OF DUTIES, AND MAINTENANCE OF THE INSURANCE POLICIES

9.    I was appointed as Receiver following allegations that the Leer Defendants were not properly protecting Plaintiff's collateral by timely paying life insurance policy premiums, and that the Leer Defendants had improperly transferred or assigned interests in various insurance policies to the detriment or benefit of the Lenders who assert competing interests in those policies.

10.    My duties and obligations defined by the Receiver Order can be summarized as follows:

a) **Receivership Property** – The Receiver was granted the usual powers and directions for the following life insurance policies (the "Insurance Policies"):

| Policy No. | Insured(s) | Insurance Company |
|---|---|---|
| 177947 | Gresham, Ronald | Zurich American Life Insurance Company |
| 170604 | Kellar, Edward | Zurich American Life Insurance Company |

6

| Policy No. | Insured(s) | Insurance Company |
|---|---|---|
| 162865 | Leer, William & Rae | Zurich American Life Insurance Company |
| 167060 | Perry, Jack & Leonora | Zurich American Life Insurance Company |
| 172953 | Sisam, Dorothy | Zurich American Life Insurance Company |
| 172963 | Sisam, Edwin & Dorothy | Zurich American Life Insurance Company |
| UL00020974 | Sisco, Frances | Accordia Life and Annuity Company |
| 59592683 | Utsick, John | John Hancock Life Insurance Company |
| 7447253 | Utsick, John | Brighthouse Financial Life Insurance |

Receiver Order, ¶1.

b) **Entitlement to all Insurance Related Documents** – "[S]ubject to entry of a confidentiality protective order acknowledged by the Receiver, the Receiver is authorized to forthwith take possession, custody, and control of the Insurance Policies and all documents, records and information relating or pertaining to the Insurance Policies (collectively, the "Property")". Id., ¶7.

c) **Authority to Investigate** – "[T]he Receiver is authorized to take such steps [as] are reasonably necessary to investigate the Insurance Policies and such other insurance policies owned or transferred by Leer Defendants that may constitute Plaintiff's collateral". Id., ¶8.

d) **Authority to Deal with Insurance Companies and Engage in Litigation** – "[T]he Receiver is authorized to communicate with all insurance companies that have issued the Insurance Policies. . . ., [and] to commence, defend or participate in actions and legal proceedings necessary for the protection of the Property, and to collect and receive all income, earnings, profits, refunds, distributions, and proceeds derived from the Property". Id., ¶10.

e) **Requirement to Turnover to the Receiver** – "[A]nybody in possession of [the Insurance Policies, Property, or income, earnings, profits, refunds, distributions, and proceeds thereof] shall turn over to the Receiver all Property (and all documents, records, and information related or pertaining to the Property)". Id., ¶11.

f) **Injunction to Leer Defendants and Others** – "[A]ll parties (including Leer Defendants, all other parties to this litigation, and their employees, representatives, agents, and attorneys) are hereby enjoined from interfering in any way with the Receiver in the performance of his responsibilities and duties and shall cooperate with the Receiver and abide by his request for documents, records, or information", "and that Leer Defendants are hereby enjoined and restrained from collecting any such income, earnings, profits, refunds, distributions, and proceeds, and from selling, assigning, transferring, encumbering, amending, modifying, cancelling, terminating, or disposing of the Insurance Policies. . . ". Id., ¶¶13&14.

7

11.     In the three years since my appointment, I have maintained the Insurance Policies by making required periodic payments. From the time of my appointment on or around January 4, 2023, to June 26, 2024, I funded those payments and my actions through routine, periodic funding by the Plaintiff totaling $1,409,439.56. On October 7, 2024, I made an eighth funding request to the Plaintiff seeking $212,933.75 for the purposes of making premium payments and maintaining the Receiver's activities. That funding request was not fulfilled. As set forth below, since that time the Estate has been funded by the proceeds of a certain Insurance Policy.

12.     After significant litigation in this and the U.S. District Court for the Southern District of New York (*see Brighthouse Life Insurance Company v. Spin Capital, LLC, et al.*, Case No. 23-cv-08570 (DEH)) over entitlement and remittance to the Brighthouse policy proceeds, I received $9,639,264.17 in proceeds from the Brighthouse policy and have been using those proceeds to pay all premiums and other costs of the receivership pursuant to this Court's order, dated February 6, 2025 [Dkt. No. 793].

13.     At present, there are five active Insurance Policies that I am monitoring and maintaining as part of the performance of my duties, summarized as follows:

| Policy No. | Insured(s) | Insurance Company | Death Benefits | Premiums[2] | Premium Period |
|---|---|---|---|---|---|
| 177947 | Gresham, Ronald | Zurich | $2,500,000 | $27,435.25 | Quarter |

---

[2] These amounts do not necessarily reflect what is required to maintain the policies. Policy illustrations change frequently and should be ordered for more precise assessments. The complexity of the nature of these policy products was explained by Zurich in response to an inquiry regarding why the payment of the prescribed premium payments did not prevent the policy from going into a grace period requiring the immediate payment of a "dumpling" payment:

> Because [the Sisam 172953 Insurance Policy] is a Universal Life product, the policy runs on the Policy Value (aka – Accumulation Value / Fund Value). The monthly Cost of Insurance (COI) is deducted from the Policy Value on the 28th of every month. If the Policy Value is ever less than $0.00, meaning it has gone short and can no longer cover the monthly Cost of Insurance, then the Policy will go into a 61-day Grace Period. This can happen regardless of the amount being billed each month, quarter, or annual due to the performance of the Policy. As this policy has been heavily underfunded for several years, the amount being billed each quarter ($19,236.50) is no longer able to cover three months of COI. The current monthly COI (which does fluctuate a little each month) is $6,905.29 for 4/28/2024. Additionally, a 7.5% load fee is taken out of every premium

8

| Policy No. | Insured(s) | Insurance Company | Death Benefits | Premiums[2] | Premium Period |
|---|---|---|---|---|---|
| 170604 | Kellar, Edward | Zurich | $5,000,000 | $79,600.00 | Quarter |
| 167060 | Perry, Jack & Leonora | Zurich | $1,000,000 | $15,128.00 | Annual |
| 172953 | Sisam, Dorothy | Zurich | $5,000,000 | $12,800.00 | Quarter |
| 172963 | Sisam, Edwin & Dorothy | Zurich | $6,000,000 | $38,033.00 | Quarter |
| | | Total: | $19,500,000 | | |

14.     All of these policies are current and none are "in grace" with cure requirements. However, it is anticipated that the Receiver could receive notices of required payments on these policies at any moment and that I will need to make immediate payments (within 61 days from the date of the notice) in order to keep the policies from lapsing.

## IV.    LEER'S IMPROPER TAKING OF INSURANCE PROCEEDS AND THE SIGNIFICANT LITIGATION THAT FOLLOWED

### A.    *Leer's Improper Taking of $1,985,367.42 in Insurance Policy Proceeds*

15.     On or around June 14, 2023, I learned that John Utscick ("Utsick"), the insured under the John Hancock Policy No. 59592683 (the "JHancock Policy"), died on June 8, 2023. On June 15, 2023, I informed John Hancock in writing that Utsick had died and that I needed

---

payment. This means that the current 3 months COI payment would need to be at minimum $22,395.54 to cover the 3 months plus the load fee to break even.

The amount currently being billed is based on the policyowner's request on 1/3/2019 to change the quarterly billing amount to $19,236.50. The Quarterly Billing Amount can be changed by the policyowner. If you believe that as the Receiver you have the authority to change the amount being billed each quarter, the company recommends running an in-force illustration that indicates the "Minimum Quarterly Premium to carry the policy to a certain Age (XX) or Policy Year (20XX) @ the Current Interest crediting or at the Guaranteed Interest Rate" in order to see how much should be funded each quarter. You could then update the amount that will be billed each quarter.

The Receiver has resumed paying premium payments on the remaining Insurance Policies only in response to 61-day grace notices for the following reasons: (i) the above-referenced complexity in pricing and understanding the values and costs of the insurance products; (ii) the failure to make regular payments when the Plaintiff stopped funding the Receiver's activities causing missed regular payments; (iii) concerns over potentially overpaying premiums and having no ability to recover the overpayments in the event of the death of an insured; (iv) the lack of any known significant cost associated with this practice; and (v) concerns over the use of the proceeds of the Brighthouse policy, which has a different corporate owner, to maintain the remaining Zurich policies, which have a different corporate owner. Nobody has questioned or challenged this practice except for Plaintiff.

9

Case 1:24-cv-08515-AS   Document 121   Filed 03/02/26   Page 47 of 99

instructions on making a claim for the JHancock Policy proceeds.  I was provided with the appropriate links and completed the online notification of death.

16.    On August 2, 2023, I received the required JHancock Policy owner tax identification number after numerous requests and was able to submit a claim to John Hancock for the JHancock Policy proceeds.

17.    On August 28, 2023, I sent an email to the representatives of John Hancock requesting the status of payment of the JHancock Policy proceeds per my previously submitted claim.  On August 30, 2023, I received a reply from John Hancock informing me that it "paid the proceeds via wire on 8/16 using the account information provided to us."  I immediately checked my Receiver account and informed John Hancock that I did not have the proceeds.

18.    I had a number of communications with John Hancock on August 30, 2023, and was informed of the following:

- Unbeknownst to me, on July 25, 2023, defendant Life Shares 1019 ("LS 1019"), by and through Leer, submitted a claim to the proceeds of the JHancock Policy and requested that those proceeds be paid directly to it through its account at the Bank of the West, Acct. No. *****1864 (the "1019 Account").

- On August 16, 2023, John Hancock paid the JHancock Policy proceeds in the amount of $1,985,367.42 to the 1019 Account held by LS 1019 (the "Hancock Distribution").

19.    There is no question that John Hancock made an overt error in making the Hancock Distribution to anybody other than the Receiver, especially directly to the Leer Defendants, whose malfeasance and/or nonfeasance was the reason that this Court appointed the Receiver in the first place.  It appears to have resulted from an error on John Hancock's side where the Receiver's claim was inadvertently read as authorization from me to honor LS 1019/Leer's claim, which of

10

course I had no knowledge of.  Since this time, I have pursued ad nauseum the recovery of the stolen Hancock Distribution from Leer as set forth below while reserving my claims against John Hancock for its failure to abide by the Receiver Order and breach of the JHancock Policy terms by not honoring the Receiver's proper claim.

20.     On August 30, 2023, immediately upon confirming that LS 1019 and Leer had improperly requested and received the Hancock Distribution, I issued a demand to the Leer Defendants to immediately remit the Hancock Distribution to me by no later than 5:00 p.m. (ET) on August 31, 2023.

21.     At 4:11 p.m. (ET) on August 31, 2023, I received a response to my demand from counsel to the Leer Defendants.  In sum, the Leer Defendants argued that the Receiver Order is void as to LS 1019 and that this Court "lacked subject matter jurisdiction when it issued the [Receiver] Order".

### B. Leer is Found in Civil Contempt in Connection with Taking the Hancock Distribution

22.     Upon the Receiver's motion, dated September 1, 2023 (all documents filed by the Receiver in connection with such motion, the "Contempt Motion") [Dkt. Nos. 318-337; Mtn. Seq. No. 017], this Court entered a decision and order, dated January 5, 2024 (the "Stefan Leer Turnover/Contempt Order") [Dkt. No. 467], wherein it found and ordered, in relevant part, as follows:

> ORDERED that the motion to hold the Leer Defendants in civil contempt (Mtn. Seq. No. 017) is granted solely to the extent that **Defendant Stefan Leer is in civil contempt of court**; and it is further
>
> ORDERED that Defendant Stefan Leer shall be able to purge this civil contempt of court by **turning over the Hancock Distribution [$1,985,367.42] to the Receiver by 5:00 pm on January 5, 2024**; and it is further

11

ORDERED that if he fails to cause the proceeds to be deposited with the Receiver by such time, the Receiver may email Part 53 (sfc-part53@nycourts.gov), and the Court may hold Mr. Leer in criminal contempt

(emphasis added).

### C. Leer is Found in Criminal Contempt in Connection with Taking the Hancock Distribution and Appeals Unsuccessfully

23.     Upon the Receiver's motion, dated January 12, 2024 (all documents filed by the Receiver in connection with such motion, the "Criminal Contempt Motion") [Dkt. Nos. 318-337; Mtn. Seq. No. 017], this Court entered an order, dated April 26, 2024 (the "Leer Criminal Contempt Order") [Dkt. No. 509], wherein it found and ordered, in relevant part, as follows:

The Court has concluded that as a result of Defendant Stefan Leer's continued violations of the Receivership Order and Stefan Leer Turnover/Contempt Order, the rights of the Receiver have been impeded and impaired, prejudiced, and defeated.

The Court has given Defendant Stefan Ler multiple opportunities to cure his violations and contempt of the Receivership Order and Stefan Leer Turnover/Contempt Order, which have been ongoing since his seizure of the [Hancock Distribution] on or around August 16, 2023, in direct violation of the Receivership Order.

**Defendant Stefan Leer is declared in criminal contempt of the Receivership Order and Stefan Leer Turnover/Contempt Order.**

Defendant Stefan Leer must turn over to the Receiver the Requested Documents.[3]

24.     Leer appealed from the Leer Criminal Contempt Order (Case Nos. 2024-03348, 2024-07473 (1st Dept.)). The crux of Leer's appeal was his repeated unsuccessful and novel argument that this Court lacked subject matter jurisdiction over defendant LS 1019, and thus, it

---

[3] The "Requested Documents" include: (i) all bank statements evidencing the deposit of the Policy Proceeds and its maintenance and interest accrual since the payout; (ii) all documents concerning the loan against the Policy Proceeds, including the security and/or account control agreement, application, and promissory note; and (iii) bank statements or other documents that show what the loan proceeds were used for.

12

was not subject to the terms of the Receivership Order when it improperly received the Hancock Distribution. Leer then argued that his acts as the manager of the LS 1019 were excepted from his personal obligations under the Receivership Order because he was acting as the fiduciary for LS 1019 and not in his individual capacity. Somewhat amazingly, Leer testified that he sought and received advice from two law firms who told him that his actions were appropriate.[4]

25.     By decision dated June 24, 2025, the Appellate Division disagreed entirely with Leer's arguments and held as follows:

> **Supreme Court properly held Leer in criminal contempt** because he individually disobeyed the injunction in the court's Receivership Order and took actions that were calculated to or actually did defeat, impair, impede, or prejudice the receiver's rights or remedies in preserving collateral for plaintiff (*see El-Dehdan v El-Dehdan*, 26 NY3d 19, 22 [2015]; *Hero Boy, Inc. v Dell'Orto*, 306 AD2d 226, 227 [1st Dept 2003]).
>
> **Leer willfully applied for death benefit proceeds on behalf of defendant Life Shares 1019 (LS 1019) despite the Receivership Order, which explicitly prohibited that from being done.** Thus, in its January 4, 2024, order, the court properly held Leer in civil contempt. Leer then violated that civil contempt order by failing to turn over the proceeds to the Receiver, resulting in the criminal contempt order from which he now appeals.

---

[4]     To that end, I retained independent counsel, Dustin J. Dyer of the Dyer law Firm ("Dyer"), to provide an independent assessment of LS 1019's obligations and rights with respect to the Utsick Policies and, in particular, what, if any, effect this Court's order appointing a receiver over the Utsick Policies and other policies subject to the Security Agreement, dated January 4, 2023 (the "Receiver Order"), would have on LS 1019's rights and responsibilities as to the Utsick Policies' death benefits[.]

Upon reviewing the docket in this lawsuit and confirming with me that neither DVRN nor LS 1019 were every properly served with a summons, and no summons naming them as a defendant to this lawsuit had ever been filed, **Dyer concluded that this Court lacked jurisdiction over DVRN and LS 1019, which would, in Dyer's assessment, render the Receiver Order void as to at least both DRVN and LS 1019.**

Shortly thereafter, I shared Dyer's findings and conclusions with my counsel in this action, [White and Williams LLP], and **[White and Williams LLP] came to the same conclusions, namely that jurisdiction was never established over DVRN and LS 1019** due to Spin's failure to prepare, serve and file a summons naming them as defendants, and that at a minimum, DVRN and LS 1019 were therefore not subject to the Receiver Order.

Testimony of Stefan Leer, Affidavit of Stefan Leer, dated Sept. 30, 2023, Dkt. No. 360, ¶¶34-37 (filed Oct. 2, 2023) (emphasis added). The Receiver has reserved all rights with respect to law firms who are individually subject to the terms of the Receivership Order.

13

Case 1:24-cv-08515-AS          Document 121          Filed 03/02/26          Page 51 of 99

Although Leer was given opportunities to provide the requested documents to show his claimed inability to pay, **Leer's attorney and LS 1019's attorney offered no good response for why Leer failed to produce those [Requested D]ocuments** (*see El-Dehdan*, 26 NY3d at 35-36).

We reject Leer's jurisdictional objection to the Receivership Order. First, LS 1019 cannot argue that the court lacked personal jurisdiction over it because it submitted an answer which did not assert lack of personal jurisdiction and then participated actively in the litigation. Secondly, Leer, individually, was properly held in contempt. The Receivership Order "was valid on its face . . . [so it] was to be obeyed even if erroneously made" (*New York City Coalition to End Lead Poisoning v Giuliani*, 248 AD2d 120, 121 [1st Dept 1998]).

Leer's reliance on there being a corporate separateness between him individually and LS 1019 is unavailing because he is being held liable for his own contempt (*see Vastwin Invs. v Aquarius Media Corp.*, 295 AD2d 216, 217 [1st Dept 2002], *lv dismissed* 99 NY2d 637 [2003]).

Id. at Dkt. No. 14; Dkt. No. 900 of this proceeding (emphasis added).

### D.  Entry of the Leer Judgment and Receiver's Collection Actions

26.     As a result of the Stefan Leer Turnover/Contempt Order and Leer Criminal Contempt Order, and Leer's continued violations thereof, this Court entered the Leer Judgment on December 3, 2024 [Dkt. No. 764].  As of January 14, 2026 (the "Bankruptcy Petition Date"), the amount due and owing on the Leer Judgment is $2,413,395.26.

27.     Upon the Receiver's application, by order dated August 25, 2025, this Court authorized the Receiver to retain Pepper Law PLC, a law firm located in Nashville, Tennessee, to take action to collect upon the Leer Judgment.  As of the Bankruptcy Petition Date, the Receiver had not collected any of the amounts due under the Leer Judgment and his attempts to collect are stayed by the automatic stay in the Leer Bankruptcy Case.

14

*E. Leer's Unaddressed Perjury*

28.     At various times, Leer feigned an intention to turn over the Hancock Distribution to the Receiver.  In connection with that, Leer made a series of misrepresentations to the Court which remain completely unaddressed.

29.     Previously, in response to the Contempt Motion, Leer testified as follows with respect to the $1,985,367.42 Hancock Distribution:

> At this point in time, [Life Shares 1019, LLC] has obtained $1,985,367.42 as the death benefit proceeds under the Utsick-Hancock Policy, and **those funds remain in full and intact in a LS 1019 controlled Account—a business account that I do not use for any personal reasons**.

Affidavit of Stefan Leer, Oct. 2, 2023, ¶43 [Dkt. No. 360] (emphasis added).

30.     Despite Leer's testimony that the $1,985,367.42 Hancock Distribution was "in full and intact", I received a letter from counsel to LS 1019 (but not Leer, the subject of this Court's Stefan Leer Turnover/Contempt Order) on January 5, 2024, stating as follows:

> My client, Life Shares 1019, LLC, is in the process of liquidating the funds in order to comply with the Court's January 4, 2024 order.  Given the short response time, Life Shares 1019 LLC is unable to provide the requested amount by 5pm today.
>
> As stated on the phone, Life Shares 1019 LLC is able to wire $450,000.00 by Wednesday, January 10, 2024 and the balance of the $1,985,267.42 will be provided within 10 business days of this letter.  As funds become liquid, they will immediately be wired to the Receiver's account.

31.     I did not receive the $450,000.00 by LS 1019's (but not Leer's) self-imposed deadline of Wednesday, January 10, 2024.  When I inquired, counsel to LS 1019 (but not Leer) responded on January 11, 2024 that "I was told that there was a delay but the money is being wired tomorrow."  Of course, I did not receive the promised payment nor any payment whatsoever on account of the acts underlying the Leer Judgment and prior contempt motions.

15

32.     On April 3, 2024, Leer submitted an affidavit, dated March 2, 2024, to this Court in connection with the Criminal Contempt Motion [Dkt. No. 504], wherein he testified that:

> Prior to the Contempt OSC being signed by this Court, my company, **LS 1019, LLC, had the [Hancock Distribution] deposited into a local bank account that yielded an interest rate in excess of five percent annually**.
>
> **Once the [Hancock Distribution] was deposited with the bank, I used the Policy Payout as security for a loan**.
>
> Unfortunately, I ran into unexpected delays that required my accountant to prepare business tax returns for LS 1019 and various other entities I own for the 2023 fiscal year, which have since been completed.
>
> Now that the business tax returns are finalized, I expect to be able to fully turnover the Policy Payouts to the Receiver, that have been accruing interest in excess of five percent annually since LS 1019, LLC placed them into the bank account on or about January 10, 2023, within the next thirty (30) days.

*See Id.* at ¶¶4-9 (emphasis added).

33.     At this point, Leer committed via sworn testimony twice that LS 1019 had physical possession of the Hancock Distribution as of March 2, 2024, although in his second submission he changed his testimony to state that the Hancock Distribution was secured by a loan so that he could not access it without satisfaction of the loan.  None of this was at all true.

34.     Pursuant to the Leer Criminal Contempt Order and the proceedings that ensued, this Court required that Leer produce the Required Documents by no later May 26, 2024 so that the Receiver could verify Leer's testimony that the Hancock Distribution was in an account and intact.  It was not.  When Leer finally produced some documents on August 1, 2024, they clearly demonstrated the opposite.

35.     First, the documents produced by Leer did not include a single bank statement as required by this Court.  Nor did they include any security or account control agreement, application, or promissory note, evidencing the purported loan that Leer testified secured the

16

Hancock Distribution. Rather, Leer produced a self-created spreadsheet that contradicted his prior testimony and purported to demonstrate as follows:

- The Hancock Distribution that Leer testified as late as March 2, 2024 was in full and intact in LS 1019's bank account had in fact been transferred by LS 1019 to an entity called KTL Holdings II ("KTL") immediately after receipt from John Hancock on August 17, 2023.

- When Leer testified to this Court on October 2, 2023 that the entire Hancock Distribution was in an LS 1019 bank account, in fact only $1,223,824.13 of the $1,985,267.42 was left and it was in KTL's account as a result of the prior transfer.

- When Leer testified to this Court in his affidavit, dated March 2, 2024, that the entire Hancock Distribution was in an LS 1019 bank account subject to a secured loan, in fact **only $366.75 of the Hancock Distribution remained in KTL's bank account where it has been since August 2023.**

36. Leer clearly and repeatedly gave testimony to this Court that was materially false. To date, Leer has not had to address his perjury.

## V.    SETTLEMENT AND THE LEER BANKRUPTCY FILING

37. This Court directed the parties to participate in two in-person settlement conferences before this Court but outside the presence of Justice Bannon. The last settlement conference took place on November 25, 2025, and resulted in an agreement in principle to settle and resolve the issues in this case. The parties circulated and commented on the written terms of the settlement. However, without warning or raising any issue at the settlement conferences, Leer took the novel position that his attorneys enjoyed a charging lien against the assets of the Estate

17

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 55 of 99

and that they were owed a $2 million fee. According to counsel, Leer refused to sign any settlement agreement without his counsel receiving that $2 million fee.[5]

38.     Unbeknownst to me, the parties other than Leer apparently negotiated an alternative settlement agreement that did not require Leer's approval but prior to its consummation, Leer filed the Leer Bankruptcy Case on the January 14, 2026 Bankruptcy Petition Date. As a consequence, this Court entered the Stay Orders staying this proceeding pending resolution of the Leer Bankruptcy Case.

## VI.     THE RECEIVER NEEDS TO CONTINUE TO FUNCTION OR THE PARTIES WILL BE IRREPARABLY HARMED

39.     I need to continue to function as Receiver or the Estate could lose valuable assets, claims, and opportunities.

40.     First, if I cannot pay premiums on the Insurance Policies, their value could be forever lost due to lapse. The death benefits on the remaining Insurance Policies are a significant $19.5 million, and those policies and must be maintained.

41.     Second, if an insured under any remaining Insurance Policies passes away, I need to timely pursue and recover the insurance proceeds. Any failure to immediately obtain those proceeds could give rise to an opportunity for Leer or other persons to interfere with the Receiver's rights by trying to obtain those proceeds ahead of the Receiver. While it is highly unlikely that will happen again, nobody can afford to take that risk.

42.     Third, the Receiver currently holds in excess of $9.1 million in bonded cash assets. The parties and this Court are entitled to and should receive the reporting required of the Receiver under the Receivership Order, including the monthly distribution of all Receiver bank statements

---

[5] Interestingly, Leer did not schedule any indebtedness whatsoever to his counsel in his sworn bankruptcy schedules. *See* Leer Bankruptcy Case, Dkt. No. 1, Schedules D, E and F (schedules of secured, priority, and general unsecured creditors) (Jan. 14, 2026).

18

Case 1:24-cv-08515-AS   Document 121   Filed 03/02/26   Page 56 of 99

to the parties to this proceeding. In addition, the Receiver must maintain the bond required by this Court for the protection of the parties.

43. Fourth, given the challenges of collecting the Leer Judgment from Leer given the Leer Bankruptcy Case, the Receiver will almost certainly have to pursue recovery against John Hancock which wrongfully paid the Hancock Distribution to LS 1019 rather than the Receiver. Timely pursuit of this asset requires the Receiver's ability to function normally under the Receivership Order.

44. Fifth, the Receiver needs to retain counsel and timely pursue his rights in the Leer Bankruptcy Case. This can include the following activities with the following relevant deadlines:

a. Pursue discovery from Leer pursuant to Fed. R. Bankr. P. 2004. This may be the only opportunity to obtain documents and testimony related to Leer's theft and dissipation of the Hancock Distribution, and Leer's misstatements to this Court regarding that.

b. Participate in the meeting of creditors scheduled pursuant to 11 U.S.C. § 341(a) in the Leer Bankruptcy Case (scheduled for **February 9, 2026, at 1:00 p.m.**).

c. Timely submit a proof of claim in the Leer Bankruptcy Case so that the Receiver can receive his pro rata entitlement to any assets recovered in the bankruptcy trustee (deadline **March 25, 2026**).

d. Object to Leer's discharge or the dischargeability of the Leer Judgment pursuant to 11 U.S.C. §§ 523 and/or 727 (deadline **April 20, 2026**).

In order to do these things and timely protect the rights of the receivership estate, the Receiver must be authorized to immediately retain and compensate competent bankruptcy counsel in Tennessee.

19

## VII. THE AUTOMATIC STAY IN THE LEER BANKRUPTCY CASE IS NOT IMPLICATED AND LEER SHOULD BE SEVERED SO THIS ACTION CAN PROCEED WITHOUT HIM

45.     The Receiver is only proposing to act on behalf of the Estate, the assets of which are nominally owned by certain non-debtor defendants (the Brighthouse policy proceeds being used by the Receiver are owned by LS 1019 and the Zurich Insurance Policies are owned by Life Shares II, LLC). Those non-debtor defendants have significant creditors, many if not all of which are parties to this proceeding (*e.g.*, the Lenders and Intervenor Defendants). There is no known rational argument where Leer's bankruptcy estate has any economic interest whatsoever in the assets of the Estate. Regardless, even if it did, Leer's bankruptcy estate would be irreparably harmed if the Receiver is prohibited from continuing to act for the benefit of all stakeholders.

46.     Accordingly, Leer should be severed from this action so that the proceeding can continue without him while the Leer Bankruptcy Case is pending.

## VIII. THE RECEIVER'S COMPENSATION ENTITLEMENT SET FORTH IN THE RECEIVERSHIP ORDER SHOULD BE INCREASED TO MARKET RATES

47.     Pursuant to the Paragraph 20(i) of the Receivership Order, the Receiver is entitled to compensation at the capped hourly rate of $600, and associates and paralegals at the Receiver's law firm are capped at $450 and $225 per hour, respectively. These significantly reduced rates are now over three years old and were agreed to as an accommodation to the Plaintiff who was, until June 2024, funding the costs of the Receiver. Further, it was never contemplated that the Receiver's role would be as significant as it has become.

48.     At this time, the Receiver is funded by the proceeds of the receivership property via the Brighthouse policy proceeds. The Receiver has performed diligently and consistently for over three years at rates that are less than 2/3rds the firm's market rates.

20

49.     Moreover, the Receiver's obligations have gone way beyond what anyone could have imagined and have included or will include: (i) being a direct party to litigation with Leer due to the theft of the Hancock Distribution; (ii) defending an appeal of the Criminal Contempt Order; (iii) participating as a nominal party in litigation before the U.S. District Court with respect to the Brighthouse policy proceeds; (iv) attending to numerous emergent matters including the instant matter which require emergency relief by order to show cause; (v) domesticating and pursuing recovery of the Leer Judgment in Tennessee; and (vi) retaining and directing counsel in connection with the Leer Bankruptcy Case in the Middle District of Tennessee.  None of these matters were or could have been foreseen three years ago when the Receiver agreed to the terms of the Receivership Order.

50.     Based upon the foregoing, the Receiver respectfully submits that he and the other professionals at the Receiver's law firm should be compensated at their normal hourly rates effective as of January 1, 2026.  The current regular hourly rates for the individuals who have over the last three years worked on this file include:

| Individual | 2026 Billing Rate |
|---|---|
| Fred Stevens – Receiver/Partner | $895 |
| Brendan Scott – Partner | $825 |
| Christopher Reilly – Associate | $625 |
| Andrew Brown – Associate | $625 |
| Kristen Strine - Paralegal | $295 |

## IX.    THE NEED TO PROCEED EXPEDITIOUSLY AND BY ORDER TO SHOW CAUSE

51.     The deadlines and preservation requirements set forth above are real and immediate.  The Receiver cannot wait for a hearing on notice without losing valuable rights, claims and assets.  No party would be better served by the continued stay of the Receiver's duties and

21

obligations as they only serve to protect and enhance the rights of the Estate. Accordingly, the Receiver submits that proceeding by Order to Show Cause is necessary.

I affirm this 21st day of January, 2026, under the penalties of perjury under the laws of New York, which may include fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

/s/ Fred Stevens
Fred Stevens

22

## WORD COUNT CERTIFICATION

As required by Section 202.8-b of the Uniform Rules for the Supreme Court and the County Court, I certify that the document filed with this certification contains 6,696 words excluding the parts of the document that are exempted, according to the word count function of the word processing program used to prepare the document.

Dated:    New York, New York
           January 21, 2026

**FRED STEVENS, RECEIVER**

By:   */s/ Fred Stevens*
        **Fred Stevens**
        c/o Klestadt Winters Jureller
          Southard & Stevens, LLP
        200 West 41st Street, 17th Floor
        New York, New York 10036-7203
        Tel: (212) 679-5342
        Fax: (212) 972-2245
        Email: fstevens@klestadt.com

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,
Plaintiffs,
v.
SPIN CAPITAL, LLC, et al.,
Defendants.

**Case No. 1:24-cv-08515 (AS)**
**Hon. Arun Subramanian**

# Exhibit E

**Receiver's Memorandum of Law (Jan. 21, 2026)**

*Filed in: Golden Foothill Ins. Servs., LLC, et al. v. Spin Capital, LLC, et al., No. 1:24-cv-08515 (AS)*

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 62 of 99

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: COMMERCIAL DIVISION**

|  |  |
|---|---|
| TETON LIFE LLC AS ASSIGNEE OF THE RIGHTS OF SPIN CAPITAL, LLC, <br><br> *Plaintiff,* <br><br> -against- <br><br> GOLDEN FOOTHILL INSURANCE SERVICES, LLC, *et al.*, <br><br> *Defendants.* | Index No.: 650582/2022 <br><br> Third-Party Index 595367/2022 <br><br> Hon. Nancy M. Bannon, J.S.C. |
| GOLDEN FOOTHILL INSURANCE SERVICES, LLC, *et al.*, <br><br> *Third-Party Plaintiffs*, <br><br> -against- <br><br> SPIN CAPITAL, LLC, AVRUMI LUBIN, <br><br> *Third-Party Defendants.* | **MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR RELIEF FORM STAY ORDERS, TO RETAIN BANKRUPTCY COUNSEL, MODIFY THE RECEIVER ORDER, AND TO SEVER DEFENDANT STEFAN LEER** |

Dated:  New York, New York
        January 21, 2026

                             FRED STEVENS, Receiver
                             c/o KLESTADT WINTERS JURELLER
                                SOUTHARD & STEVENS, LLP
                             200 West 41st Street, 17th Floor
                             New York, New York 10036
                             Tel: (212) 972-3000

                             *Court-Appointed Receiver*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................- 1 -

FACTUAL BACKGROUND ............................................................................................- 3 -

I.      THE RECEIVER'S APPOINTMENT, ASSIGNMENT OF DUTIES, AND
        MAINTENANCE OF THE INSURANCE POLICES ...................................................- 3 -

        a) Receivership Property ...........................................................................................- 16 -

        b) Entitlement to all Insurance Related Documents ....................................................- 16 -

        c) Authority to Investigate ........................................................................................- 16 -

        d) Authority to Deal with Insurance Companies and Engage in Litigation..................- 16 -

        e) Requirement to Turnover to the Receiver...............................................................- 16 -

        f) Injunction to Leer Defendants and Others ..............................................................- 16 -

II.     LEER'S IMPROPER TAKING OF INSURANCE PROCEEDS AND THE
        SIGNIFICANT LITIGATION THAT FOLLOWED...................................................- 6 -

     A. Leer's Improper Taking of $1,985,367.42 in Insurance Policy Proceeds ......................- 6 -

     B. Leer is Found in Civil Contempt in Connection with Taking the Hancock
        Distribution ..............................................................................................................- 8 -

     C. Leer is Found in Criminal Contempt in Connection with Taking the Hancock
        Distribution and Appeals Unsuccessfully ................................................................- 8 -

     D. Entry of the Leer Judgment and Receiver's Collection Actions ..................................- 11 -

     E. Leer's Unaddressed Perjury .......................................................................................- 12 -

III.    SETTLEMENT AND LEER BANKRUPTCY FILING.............................................- 15 -

ARGUMENT ..................................................................................................................- 25 -

IV.     THE COURT SHOULD SEVER THE ACTION AS TO THE BANKRUPTCY
        DEFENDANT, STEFAN LEER, AND PERMIT THE CASE TO PROCEED AGAINST
        THE NON-DEBTOR DEFENDANTS.......................................................................- 16 -

V.      THE AUTOMATIC STAY IS INAPPLICABLE IN THIS CIRCUMSTANCE.........- 18 -

VI.    CONTINUANCE OF THE RECEIVERSHIP IS REQUIRED ....................................- 19 -

VII.    RETENTION OF NELSON MULLINS RILEY & SCARBOROUGH LLP AS
RECEIVER'S COUNSEL WITH RESPECT TO THE CHAPTER 7 BANKRUPTCY
CASE OF DEFENDANT STEFAN LEER SHOULD BE AUTHORIZED AND THE
RECEIVER'S COMPENSATION ENTITLEMENT SHOULD BE INCREASED TO
MARKET RATES ...........................................................................................................- 22 -

CONCLUSION ...........................................................................................................................- 25 -

## TABLE OF AUTHORITIES

### CASES

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) ................................................... 19

*El–Dehdan v. El–Dehdan*, 26 N.Y.3d 19, 19 N.Y.S.3d 475, 41 N.E.3d 340 (2015)............. 11

*Golden v. Moscowitz*, 194 A.D.2d 385 (1st Dept. 1993) ........................................................ 16

*Hero Boy, Inc. v Dell'Orto*, 306 AD2d 226 [1st Dept 2003] ................................................... 11

*In re Johns-Manville Corp.*, 40 B.R. 219 (Bankr. S.D.N.Y. 1984 ........................................ 18

*In re North Star Contracting Corp.*, 125 B.R. 368 (S.D.N.Y. 1991) .................................... 17

*Katz v. Mount Vernon Dialysis, LLC*, 121 A.D.3d 856 (2d Dept. 2014) ............................... 20

*McCartney v. Integra Nat'l Bank North*, 106 F.3d 506 (3d Cir. 1997) ................................. 18

*Moy v. St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 92 A.D.3d 651 (2d Dept. 2012) ............... 17

*New York City Coalition to End Lead Poisoning v Giuliani*,
248 AD2d 120 [1st Dept 1998]................................................................................................ 11

*Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003) .................................................. 18

*Rosenbaum v. Dane & Murphy, Inc.*, 189 A.D.2d 760 (2d Dept. 1993) ......................... 16, 20

*U.S. Bank N.A. v. Cid*, 178 A.D.3d 875 (2d Dept. 2019)................................................. 16, 20

*Vasquez v. New York City Health & Hosps. Corp.*, 100 A.D.3d 868 (3d Dept. 2012).... 16, 17

*Vastwin Invs. v Aquarius Media Corp.*, 295 AD2d 216 [1st Dept 2002] ............................... 11

### STATUTES AND RULES

11 U.S.C. § 105(a) ................................................................................................................... 18

11 U.S.C. § 362............................................................................................................................. 2

11 U.S.C. § 362(a) ......................................................................................................... 16, 18, 19

11 U.S.C. § 543................................................................................................................... 19, 20

N.Y. CPLR § 603......................................................................................................... 2, 16, 18

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 66 of 99

Fred Stevens, in his capacity as temporary receiver (the "Receiver") in the above-captioned case pursuant to that certain order, dated January 4, 2023 (the "Receiver Order") [Dkt. No. 245], respectfully submits this memorandum of law in support of his motion (the "Motion"): (I) for authority to (a) continue to function as Receiver in order to preserve property, and (b) retain Nelson Mullins Riley & Scarborough LLP as counsel with respect to the chapter 7 bankruptcy case of defendant Stefan Leer ("Leer") pending in the United States Bankruptcy Court in the Middle District of Tennessee (the "Bankruptcy Court") under Case No. 26-bk-00149 (the "Leer Bankruptcy Case"); (II) modifying the Receiver Order to provide for compensation to the Receiver and his staff at the firm's current standard hourly rates; and (III) sever Leer as a defendant to this case so that it can proceed against all non-debtor parties.

The Affirmation of Receiver Fred Stevens, dated January 21, 2026, is also submitted contemporaneously herewith in further support of the Motion (the "Stevens Affirmation").[1]

## PRELIMINARY STATEMENT

This Motion was necessitated by Defendant Leer's bankruptcy filing, the invocation of the automatic stay, and this Court's stay of these proceedings as a result. Leer's bankruptcy filing comes after years of frustrating the parties and Receiver in this case, most notably through the improper taking of approximately $2 million in receivership assets, which resulted in Leer being held in civil and criminal contempt by this Court. The commencement of the Leer Bankruptcy Case cannot and should not be permitted paralyze this case and the receivership as neither Leer nor his bankruptcy estate have any meaningful economic interest in the assets of the receivership estate or the subject matter of this case, and even if he did, the continuation of the receivership estate is necessary to preserve such interest. The Bankruptcy Code does not permit that result, New York law does not countenance it, and equity rejects it.

---

[1] Capitalized terms used but not herein defined shall have the meaning ascribed to them in the Stevens Affirmation.

1

For more than three years, the Court-appointed Receiver has faithfully executed the duties imposed by this Court's Receivership Order, preserving and protecting the Insurance Policies and other interests of the receivership estate. That work has required extraordinary effort in the face of persistent obstruction by Leer, including his adjudicated civil and criminal contempt, repeated false statements to this Court, and the misappropriation of nearly $2 million in insurance proceeds – conduct condemned by the Appellate Division. Having failed to evade accountability through litigation, Leer now seeks to weaponize bankruptcy as a blunt instrument to halt the Receiver's work and this case altogether. Also, significantly, Leer filed the Leer Bankruptcy Case only after his attempt to hinder a negotiated settlement if the parties did not acquiesce to an absurd monetary demand backfired. The law does not allow a debtor to accomplish indirectly what he could not achieve directly.

The relief requested is narrow, necessary, and firmly grounded in settled authority. First, severance of Leer is required under CPLR § 603 so that the Receiver can continue to protect the receivership estate and this action may proceed against the non-debtor defendants, consistent with the black-letter rule that the automatic stay under 11 U.S.C. § 362 applies only to the debtor and property of the debtor's estate. No exceptional circumstances exist that would justify extending the stay here: Leer holds, at most, a remote and speculative equity interest in entities whose assets are already fully encumbered by creditors at the entity level. Second, the Receiver must be authorized to continue functioning in the ordinary course to prevent irreparable harm, including the lapse of insurance policies carrying approximately $19.5 million in death benefits. Third, immediate authorization to retain bankruptcy counsel is essential to protect the Receiver's rights and interests in the Chapter 7 case, where rigid statutory deadlines threaten the Receiver's ability to preserve and enforce a substantial judgment arising from Leer's contemptuous conduct.

2

Finally, modification of the compensation provisions of the Receivership Order is warranted to reflect current market rates in light of the dramatically expanded scope, duration, and complexity of the Receiver's duties.

At its core, the Receiver's Motion seeks to preserve the status quo that this Court carefully established, and that Leer repeatedly violated, while ensuring that the Receivership can continue to function lawfully, efficiently, and without prejudice to non-debtor parties. Granting the requested relief respects the limits of the automatic stay, promotes judicial economy, and prevents the very real risk that valuable assets will be lost forever. The Court should grant the Motion in its entirety, first on an immediate emergency basis by Order to Show Cause, and then on a final basis after parties have been given an opportunity to respond.

## FACTUAL BACKGROUND

### I. THE RECEIVER'S APPOINTMENT, ASSIGNMENT OF DUTIES, AND MAINTENANCE OF THE INSURANCE POLICIES

Mr. Stevens was appointed as Receiver following allegations that the Leer Defendants were not properly protecting Plaintiff's collateral by timely paying life insurance policy premiums, and that the Leer Defendants had improperly transferred or assigned interests in various insurance policies to the detriment or benefit of the Lenders who assert competing interests in those policies. See Stevens Affirmation ¶ 9.

The Receiver's duties and obligations defined by the Receiver Order can be summarized as follows:

    a) **Receivership Property** – The Receiver was granted the usual powers and directions for the following life insurance policies (the "Insurance Policies"):

| Policy No. | Insured(s) | Insurance Company |
|---|---|---|
| 177947 | Gresham, Ronald | Zurich American Life Insurance Company |
| 170604 | Kellar, Edward | Zurich American Life Insurance Company |
| 162865 | Leer, William & Rae | Zurich American Life Insurance Company |
| 167060 | Perry, Jack & Leonora | Zurich American Life Insurance Company |

3

| Policy No. | Insured(s) | Insurance Company |
|---|---|---|
| 172953 | Sisam, Dorothy | Zurich American Life Insurance Company |
| 172963 | Sisam, Edwin & Dorothy | Zurich American Life Insurance Company |
| UL00020974 | Sisco, Frances | Accordia Life and Annuity Company |
| 59592683 | Utsick, John | John Hancock Life Insurance Company |
| 7447253 | Utsick, John | Brighthouse Financial Life Insurance |

Receiver Order, ¶1.

b) **Entitlement to all Insurance Related Documents** – "[S]ubject to entry of a confidentiality protective order acknowledged by the Receiver, the Receiver is authorized to forthwith take possession, custody, and control of the Insurance Policies and all documents, records and information relating or pertaining to the Insurance Policies (collectively, the "Property")". Id., ¶7.

c) **Authority to Investigate** – "[T]he Receiver is authorized to take such steps [as] are reasonably necessary to investigate the Insurance Policies and such other insurance policies owned or transferred by Leer Defendants that may constitute Plaintiff's collateral". Id., ¶8.

d) **Authority to Deal with Insurance Companies and Engage in Litigation** – "[T]he Receiver is authorized to communicate with all insurance companies that have issued the Insurance Policies. . . ., [and] to commence, defend or participate in actions and legal proceedings necessary for the protection of the Property, and to collect and receive all income, earnings, profits, refunds, distributions, and proceeds derived from the Property". Id., ¶10.

e) **Requirement to Turnover to the Receiver** – "[A]nybody in possession of [the Insurance Policies, Property, or income, earnings, profits, refunds, distributions, and proceeds thereof] shall turn over to the Receiver all Property (and all documents, records, and information related or pertaining to the Property)". Id., ¶11.

f) **Injunction to Leer Defendants and Others** – "[A]ll parties (including Leer Defendants, all other parties to this litigation, and their employees, representatives, agents, and attorneys) are hereby enjoined from interfering in any way with the Receiver in the performance of his responsibilities and duties and shall cooperate with the Receiver and abide by his request for documents, records, or information", "and that Leer Defendants are hereby enjoined and restrained from collecting any such income, earnings, profits, refunds, distributions, and proceeds, and from selling, assigning, transferring, encumbering, amending, modifying, cancelling, terminating, or disposing of the Insurance Policies. . . ". Id., ¶¶13&14.

Stevens Affirmation¶ 10

4

In the three years since his appointment, the Receiver has maintained the Insurance Policies by making required periodic payments. From the time of his appointment on or around January 4, 2023, to June 26, 2024, he funded those payments and his actions through routine, periodic funding by the Plaintiff totaling $1,409,439.56. On October 7, 2024, the Receiver made an eighth funding request to the Plaintiff seeking $212,933.75 for the purposes of making premium payments and maintaining the Receiver's activities. That funding request was not fulfilled. As set forth below, since that time the Estate has been funded by the proceeds of a certain Insurance Policy. Stevens Affirmation ¶ 11.

After significant litigation in this and the U.S. District Court for the Southern District of New York (*see Brighthouse Life Insurance Company v. Spin Capital, LLC, et al.*, Case No. 23-cv-08570 (DEH)) over entitlement and remittance to the Brighthouse policy proceeds, the Receiver received $9,639,264.17 in proceeds from the Brighthouse policy and has been using those proceeds to pay all premiums and other costs of the receivership pursuant to this Court's order, dated February 6, 2025 [Dkt. No. 793]. Stevens Affirmation ¶12.

At present, there are five active Insurance Policies that the Receiver is monitoring and maintaining as part of the performance of my duties, summarized as follows:

| Policy No. | Insured(s) | Insurance Company | Death Benefits | Premiums[2] | Premium Period |
|---|---|---|---|---|---|

---

[2] These amounts do not necessarily reflect what is required to maintain the policies. Policy illustrations change frequently and should be ordered for more precise assessments. The complexity of the nature of these policy products was explained by Zurich in response to an inquiry regarding why the payment of the prescribed premium payments did not prevent the policy from going into a grace period requiring the immediate payment of a "dumpling" payment:

> Because [the Sisam 172953 Insurance Policy] is a Universal Life product, the policy runs on the Policy Value (aka – Accumulation Value / Fund Value). The monthly Cost of Insurance (COI) is deducted from the Policy Value on the 28th of every month. If the Policy Value is ever less than $0.00, meaning it has gone short and can no longer cover the monthly Cost of Insurance, then the Policy will go into a 61-day Grace Period. This can happen regardless of the amount being billed each month, quarter, or annual due to the performance of the Policy. As this policy has been heavily underfunded for several years, the amount being billed each quarter ($19,236.50) is no longer able to cover three months of COI. The current monthly COI (which does fluctuate a little

5

| Policy No. | Insured(s) | Insurance Company | Death Benefits | Premiums[2] | Premium Period |
|---|---|---|---|---|---|
| 177947 | Gresham, Ronald | Zurich | $2,500,000 | $27,435.25 | Quarter |
| 170604 | Kellar, Edward | Zurich | $5,000,000 | $79,600.00 | Quarter |
| 167060 | Perry, Jack & Leonora | Zurich | $1,000,000 | $15,128.00 | Annual |
| 172953 | Sisam, Dorothy | Zurich | $5,000,000 | $12,800.00 | Quarter |
| 172963 | Sisam, Edwin & Dorothy | Zurich | $6,000,000 | $38,033.00 | Quarter |
| | | Total: | $19,500,000 | | |

Stevens Affirmation ¶13.

All of these policies are current and none are "in grace" with cure requirements. However, it is anticipated that the Receiver could receive notices of required payments on these policies at any moment and that he will need to make immediate payments (within 61 days from the date of the notice) in order to keep the policies from lapsing. Stevens Affirmation ¶14.

## II. LEER'S IMPROPER TAKING OF INSURANCE PROCEEDS AND THE SIGNIFICANT LITIGATION THAT FOLLOWED

### A. Leer's Improper Taking of $1,985,367.42 in Insurance Policy Proceeds

On or around June 14, 2023, the Receiver learned that John Utscick ("Utsick"), the insured under the John Hancock Policy No. 59592683 (the "JHancock Policy"), died on June 8,

---

each month) is $6,905.29 for 4/28/2024. Additionally, a 7.5% load fee is taken out of every premium payment. This means that the current 3 months COI payment would need to be at minimum $22,395.54 to cover the 3 months plus the load fee to break even.

The amount currently being billed is based on the policyowner's request on 1/3/2019 to change the quarterly billing amount to $19,236.50. The Quarterly Billing Amount can be changed by the policyowner. If you believe that as the Receiver you have the authority to change the amount being billed each quarter, the company recommends running an in-force illustration that indicates the "Minimum Quarterly Premium to carry the policy to a certain Age (XX) or Policy Year (20XX) @ the Current Interest crediting or at the Guaranteed Interest Rate" in order to see how much should be funded each quarter. You could then update the amount that will be billed each quarter.

The Receiver has resumed paying premium payments on the remaining Insurance Policies only in response to 61-day grace notices for the following reasons: (i) the above-referenced complexity in pricing and understanding the values and costs of the insurance products; (ii) the failure to make regular payments when the Plaintiff stopped funding the Receiver's activities causing missed regular payments; (iii) concerns over potentially overpaying premiums and having no ability to recover the overpayments in the event of the death of an insured; (iv) the lack of any known significant cost associated with this practice; and (v) concerns over the use of the proceeds of the Brighthouse policy, which has a different corporate owner, to maintain the remaining Zurich policies, which have a different corporate owner. Nobody has questioned or challenged this practice except for Plaintiff.

6

2023.  On June 15, 2023, the Receiver informed John Hancock in writing that Utsick had died and that he needed instructions on making a claim for the JHancock Policy proceeds.  The Receiver was provided with the appropriate links and completed the online notification of death. Stevens Affirmation ¶15.

On August 2, 2023, the Receiver received the required JHancock Policy owner tax identification number after numerous requests and was able to submit a claim to John Hancock for the JHancock Policy proceeds.  Stevens Affirmation ¶ 16.

On August 28, 2023, the Receiver sent an email to the representatives of John Hancock requesting the status of payment of the JHancock Policy proceeds per his previously submitted claim.  On August 30, 2023, the Receiver received a reply from John Hancock informing him that it "paid the proceeds via wire on 8/16 using the account information provided to us." The Receiver immediately checked my Receiver account and informed John Hancock that he did not have the proceeds. Stevens Affirmation ¶ 17.

The Receiver had a number of communications with John Hancock on August 30, 2023, and was informed of the following:

- Unbeknownst to the Receiver, on July 25, 2023, defendant Life Shares 1019 ("LS 1019"), by and through Leer, submitted a claim to the proceeds of the JHancock Policy and requested that those proceeds be paid directly to it through its account at the Bank of the West, Acct. No. *****1864 (the "1019 Account").

- On August 16, 2023, John Hancock paid the JHancock Policy proceeds in the amount of $1,985,367.42 to the 1019 Account held by LS 1019 (the "Hancock Distribution").

Stevens Affirmation ¶ 18.

7

There is no question that John Hancock made an overt error in making the Hancock Distribution to anybody other than the Receiver, especially directly to the Leer Defendants, whose malfeasance and/or nonfeasance was the reason that this Court appointed the Receiver in the first place. It appears to have resulted from an error on John Hancock's side where the Receiver's claim was inadvertently read as authorization from the Receiver to honor LS 1019/Leer's claim, which of course the Receiver had no knowledge of. Since that time, the Receiver has pursued ad nauseum the recovery of the stolen Hancock Distribution from Leer as set forth below while reserving his claims against John Hancock for its failure to abide by the Receiver Order and breach of the JHancock Policy terms by not honoring the Receiver's proper claim. Stevens Affirmation ¶19.

On August 30, 2023, immediately upon confirming that LS 1019 and Leer had improperly requested and received the Hancock Distribution, the Receiver issued a demand to the Leer Defendants to immediately remit the Hancock Distribution to me by no later than 5:00 p.m. (ET) on August 31, 2023. Stevens Affirmation ¶20.

At 4:11 p.m. (ET) on August 31, 2023, the Receiver received a response to his demand from counsel to the Leer Defendants. In sum, the Leer Defendants argued that the Receiver Order is void as to LS 1019 and that this Court "lacked subject matter jurisdiction when it issued the [Receiver] Order". Stevens Affirmation ¶ 21.

### B. Leer is Found in Civil Contempt in Connection with Taking the Hancock Distribution

Upon the Receiver's motion, dated September 1, 2023 (all documents filed by the Receiver in connection with such motion, the "Contempt Motion") [Dkt. Nos. 318-337; Mtn. Seq. No. 017], this Court entered a decision and order, dated January 5, 2024 (the "Stefan Leer

8

Turnover/Contempt Order") [Dkt. No. 467], wherein it found and ordered, in relevant part, as follows:

> ORDERED that the motion to hold the Leer Defendants in civil contempt (Mtn. Seq. No. 017) is granted solely to the extent that **Defendant Stefan Leer is in civil contempt of court**; and it is further
>
> ORDERED that Defendant Stefan Leer shall be able to purge this civil contempt of court by **turning over the Hancock Distribution [$1,985,367.42] to the Receiver by 5:00 pm on January 5, 2024**; and it is further
>
> ORDERED that if he fails to cause the proceeds to be deposited with the Receiver by such time, the Receiver may email Part 53 (sfc-part53@nycourts.gov), and the Court may hold Mr. Leer in criminal contempt

(emphasis added). Stevens Affirmation ¶22.

### C. Leer is Found in Criminal Contempt in Connection with Taking the Hancock Distribution and Appeals Unsuccessfully

Upon the Receiver's motion, dated January 12, 2024 (all documents filed by the Receiver in connection with such motion, the "Criminal Contempt Motion") [Dkt. Nos. 318-337; Mtn. Seq. No. 017], this Court entered an order, dated April 26, 2024 (the "Leer Criminal Contempt Order") [Dkt. No. 509], wherein it found and ordered, in relevant part, as follows:

> The Court has concluded that as a result of Defendant Stefan Leer's continued violations of the Receivership Order and Stefan Leer Turnover/Contempt Order, the rights of the Receiver have been impeded and impaired, prejudiced, and defeated.
>
> The Court has given Defendant Stefan Ler multiple opportunities to cure his violations and contempt of the Receivership Order and Stefan Leer Turnover/Contempt Order, which have been ongoing since his seizure of the [Hancock Distribution] on or around August 16, 2023, in direct violation of the Receivership Order.
>
> **Defendant Stefan Leer is declared in criminal contempt of the Receivership Order and Stefan Leer Turnover/Contempt Order.**

9

Defendant Stefan Leer must turn over to the Receiver the Requested Documents.[3]

Stevens Affirmation ¶23.

Leer appealed from the Leer Criminal Contempt Order (Case Nos. 2024-03348, 2024-07473 (1st Dept.)). The crux of Leer's appeal was his repeated unsuccessful and novel argument that this Court lacked subject matter jurisdiction over defendant LS 1019, and thus, it was not subject to the terms of the Receivership Order when it improperly received the Hancock Distribution. Leer then argued that his acts as the manager of LS 1019 were excepted from his personal obligations under the Receivership Order because he was acting as the fiduciary for LS 1019 and not in his individual capacity. Somewhat amazingly, Leer testified that he sought and received advice from two law firms who told him that his actions were acceptable.[4] Stevens Affirmation ¶24.

---

[3] The "Requested Documents" include: (i) all bank statements evidencing the deposit of the Policy Proceeds and its maintenance and interest accrual since the payout; (ii) all documents concerning the loan against the Policy Proceeds, including the security and/or account control agreement, application, and promissory note; and (iii) bank statements or other documents that show what the loan proceeds were used for.

[4]     To that end, I retained independent counsel, Dustin J. Dyer of the Dyer law Firm ("Dyer"), to provide an independent assessment of LS 1019's obligations and rights with respect to the Utsick Policies and, in particular, what, if any, effect this Court's order appointing a receiver over the Utsick Policies and other policies subject to the Security Agreement, dated January 4, 2023 (the "Receiver Order"), would have on LS 1019's rights and responsibilities as to the Utsick Policies' death benefits[.]

Upon reviewing the docket in this lawsuit and confirming with me that neither DVRN nor LS 1019 were every properly served with a summons, and no summons naming them as a defendant to this lawsuit had ever been filed, **Dyer concluded that this Court lacked jurisdiction over DVRN and LS 1019, which would, in Dyer's assessment, render the Receiver Order void as to at least both DRVN and LS 1019.**

Shortly thereafter, I shared Dyer's findings and conclusions with my counsel in this action, [White and Williams LLP], and **[White and Williams LLP] came to the same conclusions, namely that jurisdiction was never established over DVRN and LS 1019** due to Spin's failure to prepare, serve and file a summons naming them as defendants, and that at a minimum, DVRN and LS 1019 were therefore not subject to the Receiver Order.

Testimony of Stefan Leer, Affidavit of Stefan Leer, dated Sept. 30, 2023, Dkt. No. 360, ¶¶34-37 (filed Oct. 2, 2023) (emphasis added). The Receiver has reserved all rights with respect to law firms who are individually subject to the terms of the Receivership Order.

10

By decision dated June 24, 2025, the Appellate Division disagreed entirely with Leer's arguments and held as follows:

> **Supreme Court properly held Leer in criminal contempt** because he individually disobeyed the injunction in the court's Receivership Order and took actions that were calculated to or actually did defeat, impair, impede, or prejudice the receiver's rights or remedies in preserving collateral for plaintiff (*see El-Dehdan v El-Dehdan*, 26 NY3d 19, 22 [2015]; *Hero Boy, Inc. v Dell'Orto*, 306 AD2d 226, 227 [1st Dept 2003]).
>
> **Leer willfully applied for death benefit proceeds on behalf of defendant Life Shares 1019 (LS 1019) despite the Receivership Order, which explicitly prohibited that from being done.** Thus, in its January 4, 2024, order, the court properly held Leer in civil contempt. Leer then violated that civil contempt order by failing to turn over the proceeds to the Receiver, resulting in the criminal contempt order from which he now appeals. Although Leer was given opportunities to provide the requested documents to show his claimed inability to pay, **Leer's attorney and LS 1019's attorney offered no good response for why Leer failed to produce those [Requested D]ocuments** (*see El-Dehdan*, 26 NY3d at 35-36).
>
> We reject Leer's jurisdictional objection to the Receivership Order. First, LS 1019 cannot argue that the court lacked personal jurisdiction over it because it submitted an answer which did not assert lack of personal jurisdiction and then participated actively in the litigation. Secondly, Leer, individually, was properly held in contempt. The Receivership Order "was valid on its face . . . [so it] was to be obeyed even if erroneously made" (*New York City Coalition to End Lead Poisoning v Giuliani*, 248 AD2d 120, 121 [1st Dept 1998]).
>
> Leer's reliance on there being a corporate separateness between him individually and LS 1019 is unavailing because he is being held liable for his own contempt (*see Vastwin Invs. v Aquarius Media Corp.*, 295 AD2d 216, 217 [1st Dept 2002], *lv dismissed* 99 NY2d 637 [2003]).

Id. at Dkt. No. 14; Dkt. No. 900 of this proceeding (emphasis added). Stevens Affirmation ¶25.

### D. Entry of the Leer Judgment and Receiver's Collection Actions

As a result of the Stefan Leer Turnover/Contempt Order and Leer Criminal Contempt Order, and Leer's continued violations thereof, this Court entered the Leer Judgment on

11

December 3, 2024 [Dkt. No. 764]. As of January 14, 2026 (the "Bankruptcy Petition Date"), the amount due and owing on the Leer Judgment is $2,413,395.26. Stevens Affirmation ¶ 26.

Upon the Receiver's application, by order dated August 25, 2025, this Court authorized the Receiver to retain Pepper Law PLC, a law firm located in Nashville, Tennessee, to take action to collect upon the Leer Judgment. As of the Bankruptcy Petition Date, the Receiver had not collected any of the amounts due under the Leer Judgment and his attempts to collect are stayed by the automatic stay in the Leer Bankruptcy Case. Stevens Affirmation ¶27.

### E. Leer's Unaddressed Perjury

At various times, Leer feigned an intention to turn over the Hancock Distribution to the Receiver. In connection with that, Leer made a series of misrepresentations to the Court which remain completely unaddressed. Stevens Affirmation ¶ 28.

Previously, in response to the Contempt Motion, Leer testified as follows with respect to the $1,985,367.42 Hancock Distribution:

> At this point in time, [Life Shares 1019, LLC] has obtained $1,985,367.42 as the death benefit proceeds under the Utsick-Hancock Policy, and **those funds remain in full and intact in a LS 1019 controlled Account—a business account that I do not use for any personal reasons**.

Affidavit of Stefan Leer, Oct. 2, 2023, ¶43 [Dkt. No. 360] (emphasis added). Stevens Affirmation ¶ 29.

Despite Leer's testimony that the $1,985,367.42 Hancock Distribution was "in full and intact", the Receiver received a letter from counsel to LS 1019 (but not Leer, the subject of this Court's Stefan Leer Turnover/Contempt Order) on January 5, 2024, stating as follows:

> My client, Life Shares 1019, LLC, is in the process of liquidating the funds in order to comply with the Court's January 4, 2024 order. Given the short response time, Life Shares 1019 LLC is unable to provide the requested amount by 5pm today.

12

> As stated on the phone, Life Shares 1019 LLC is able to wire $450,000.00 by Wednesday, January 10, 2024 and the balance of the $1,985,267.42 will be provided within 10 business days of this letter. As funds become liquid, they will immediately be wired to the Receiver's account.

Stevens Affirmation ¶30.

The Receiver did not receive the $450,000.00 by LS 1019's (but not Leer's) self-imposed deadline of Wednesday, January 10, 2024. When he inquired, counsel to LS 1019 (but not Leer) responded on January 11, 2024 that "I was told that there was a delay but the money is being wired tomorrow." Of course, the Receiver did not receive the promised payment nor any payment whatsoever on account of the acts underlying the Leer Judgment and prior contempt motions. Stevens Affirmation ¶31.

On April 3, 2024, Leer submitted an affidavit, dated March 2, 2024, to this Court in connection with the Criminal Contempt Motion [Dkt. No. 504], wherein he testified that:

> Prior to the Contempt OSC being signed by this Court, my company, **LS 1019, LLC, had the [Hancock Distribution] deposited into a local bank account that yielded an interest rate in excess of five percent annually**.
>
> **Once the [Hancock Distribution] was deposited with the bank, I used the Policy Payout as security for a loan**.
>
> Unfortunately, I ran into unexpected delays that required my accountant to prepare business tax returns for LS 1019 and various other entities I own for the 2023 fiscal year, which have since been completed.
>
> Now that the business tax returns are finalized, I expect to be able to fully turnover the Policy Payouts to the Receiver, that have been accruing interest in excess of five percent annually since LS 1019, LLC placed them into the bank account on or about January 10, 2023, within the next thirty (30) days.

*See Id.* at ¶¶4-9 (emphasis added). Stevens Affirmation ¶ 32.

At this point, Leer committed via sworn testimony twice that LS 1019 had physical possession of the Hancock Distribution as of March 2, 2024, although in his second submission

13

he changed his testimony to state that the Hancock Distribution was secured by a loan so that he could not access it without satisfaction of the loan. None of this was at all true. Stevens Affirmation ¶33

Pursuant to the Leer Criminal Contempt Order and the proceedings that ensued, this Court required that Leer produce the Required Documents by no later May 26, 2024 so that the Receiver could verify Leer's testimony that the Hancock Distribution was in an account and intact. It was not. When Leer finally produced some documents on August 1, 2024, they clearly demonstrated the opposite. Stevens Affirmation ¶34.

First, the documents produced by Leer did not include a single bank statement as required by this Court. Nor did they include any security or account control agreement, application, or promissory note, evidencing the purported loan that Leer testified secured the Hancock Distribution. Rather, Leer produced a self-created spreadsheet that contradicted his prior testimony and purported to demonstrate as follows:

- The Hancock Distribution that Leer testified as late as March 2, 2024 was in full and intact in LS 1019's bank account had in fact been transferred by LS 1019 to an entity called KTL Holdings II ("KTL") immediately after receipt from John Hancock on August 17, 2023.

- When Leer testified to this Court on October 2, 2023 that the entire Hancock Distribution was in an LS 1019 bank account, in fact only $1,223,824.13 of the $1,985,267.42 was left and it was in KTL's account as a result of the prior transfer.

- When Leer testified to this Court in his affidavit, dated March 2, 2024, that the entire Hancock Distribution was in an LS 1019 bank account subject to a secured loan, in

14

fact **only $366.75 of the Hancock Distribution remained in KTL's bank account where it has been since August 2023.**

Stevens Affirmation ¶35.

Leer clearly and repeatedly gave testimony to this Court that was materially false. To date, Leer has not had to address his perjury. Stevens Affirmation ¶ 36.

### III. SETTLEMENT AND THE LEER BANKRUPTCY FILING

This Court directed the parties to participate in two in-person settlement conferences before this Court but outside the presence of Justice Bannon. The last settlement conference took place on November 25, 2025, and resulted in an agreement in principle to settle and resolve the issues in this case. The parties circulated and commented on the written terms of the settlement. However, without warning or raising any issue at the settlement conferences, Leer took the novel position that his attorneys enjoyed a charging lien against the assets of the receivership estate and that they were owed a $2 million fee. According to counsel, Leer refused to sign any settlement agreement without his counsel receiving that $2 million fee.[5] Stevens Affirmation ¶37.

Unbeknownst to the Receiver, the parties other than Leer apparently negotiated an alternative settlement agreement that did not require Leer's approval but prior to its consummation, Leer filed the Leer Bankruptcy Case on the January 14, 2026 Bankruptcy Petition Date. As a consequence, this Court entered the Stay Orders staying this proceeding pending resolution of the Leer Bankruptcy Case. Stevens Affirmation ¶ 38.

---

[5] Interestingly, Leer did not schedule any indebtedness whatsoever to his counsel in his sworn bankruptcy schedules. *See* Leer Bankruptcy Case, Dkt. No. 1, Schedules D, E and F (schedules of secured, priority, and general unsecured creditors) (Jan. 14, 2026).

15

# ARGUMENT

## IV. THE COURT SHOULD SEVER THE ACTION AS TO THE BANKRUPT DEFENDANT, STEFAN LEER, AND PERMIT THE CASE TO PROCEED AGAINST THE NON-DEBTOR DEFENDANTS

CPLR § 603 authorizes this Court, "[i]n furtherance of convenience or to avoid prejudice," to sever claims or parties and order separate proceedings. See CPLR § 603. Where, as here, defendant Leer has filed for Chapter 7 bankruptcy and is protected by the automatic stay, New York courts routinely exercise that discretion to sever the bankrupt defendant and permit the action to proceed against non-debtor defendants. That result follows from the settled principle that the automatic stay imposed by 11 U.S.C. § 362(a) applies only to the debtor and does not extend to co-defendants. As the Second Department has held, "[t]he filing of a bankruptcy petition by one defendant does not automatically stay proceedings against non-bankrupt co-defendants." *Rosenbaum v. Dane & Murphy, Inc.*, 189 A.D.2d 760, 761 (2d Dept. 1993); see also *Vasquez v. New York City Health & Hosps. Corp.*, 100 A.D.3d 868 (3d Dept. 2012); *Golden v. Moscowitz*, 194 A.D.2d 385 (1st Dept. 1993).

In keeping with these principles, New York appellate courts have recognized that when a co-defendant files for bankruptcy, the trial court retains discretion to sever the action and stay proceedings only as to the debtor, while allowing the case to move forward against the remaining defendants. See *Rosenbaum*, 189 A.D.2d at 761; see also *U.S. Bank N.A. v. Cid*, 178 A.D.3d 875, 876 (2d Dept. 2019) (the automatic stay "suspends" proceedings solely as to the debtor). To be sure, courts have identified limited and exceptional circumstances in which the automatic stay may be extended to non-debtor co-defendants. Those circumstances are narrowly confined to situations in which litigation against the non-debtor would, in substance, operate as litigation against the debtor itself or where there exists such an identity of interests that the debtor is the

16

real party in interest and a judgment against the non-debtor would have an immediate and direct adverse effect on the debtor's estate. See *In re North Star Contracting Corp.*, 125 B.R. 368, 370–71 (S.D.N.Y. 1991)).

None of the limited and extraordinary circumstances that would justify extending the automatic stay to non-debtor parties is present here. Leer holds, at most, a remote and twice-removed equity interest in entities that nominally own the Insurance Policies and proceeds at issue. Those entities, in turn, have independent creditors that are actively participating in this proceeding and asserting competing claims that substantially exceed the value of the policies. See Stevens Affirmation ¶ 6. As a result, any residual equity interest potentially attributable to Leer or his bankruptcy estate is purely theoretical and lacks economic significance.

Moreover, the non-debtor defendants themselves have substantial creditor constituencies, many, but perhaps not all, of whom are parties to this proceeding, further underscoring that Leer's bankruptcy estate has no cognizable economic interest in the assets of the Receivership estate. Even assuming *arguendo* that some attenuated interest existed, prohibiting the Receiver from continuing to act for the benefit of all stakeholders would result in concrete and irreparable harm. See Stevens Affirmation ¶ 45. Accordingly, the prejudice to the Receiver from being forced to await the conclusion of the Leer bankruptcy before obtaining relief far outweighs any speculative inconvenience to the non-debtor defendants. See *Vasquez*, at 870 (citing *Moy v. St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 92 A.D.3d 651 (2d Dept. 2012)).

Severance is therefore appropriate and necessary to permit this action to proceed efficiently and without prejudice, while fully respecting the automatic stay as to Leer.

17

## V.  THE AUTOMATIC STAY IS INAPPLICABLE IN THIS CIRCUMSTANCE

As a general principle, the automatic stay under 11 U.S.C. § 362(a) applies exclusively to the debtor and property of the debtor's estate; it does not extend to non-debtor co-defendants. Courts recognize only narrow, exceptional circumstances in which the stay may be extended to protect non-debtors, and such extensions are strictly construed, typically requiring a specific showing under 11 U.S.C. § 105(a). By its plain terms, § 362(a) stays only actions "against the debtor" or actions seeking possession or control of "property of the estate." It does not bar proceedings against co-defendants, guarantors, officers, affiliates, or other third parties. Federal courts consistently hold that non-debtor co-defendants are not shielded by the automatic stay, even when the claims against the debtor and non-debtors arise from the same transaction or operative facts. Accordingly, litigation may proceed against non-debtors notwithstanding the debtor's bankruptcy filing. See *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003).

Consistent with the framework for severance under CPLR § 603, courts have recognized limited exceptions in which unusual circumstances justify extending the stay to non-debtors. These circumstances are narrowly circumscribed and include: (i) unity of interest between the debtor and non-debtor, such that a judgment against the non-debtor would effectively operate as a judgment against the debtor—for example, where the debtor is contractually obligated to indemnify the non-debtor (*Id.* at 287-288); (ii) immediate and direct adverse impact on the debtor's estate, such as triggering automatic indemnification obligations or depleting estate assets (illustrative examples include a claim to establish an obligation of which the debtor is a guarantor (*McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510–11 (3d Cir. 1997)), a claim against the debtor's insurer (*In re Johns-Manville Corp.*, 40 B.R. 219 (Bankr. S.D.N.Y. 1984), or cases where "there is such identity between the debtor and the third-party defendant

18

that the debtor may be said to be the real party defendant" (*A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)); and (iii) impact on the debtor's ability to reorganize, which is not implicated here as Leer has filed for Chapter 7 bankruptcy.

None of these exceptions apply. As previously discussed, Leer holds only a remote, twice-removed equity interest in entities that nominally own the insurance policies at issue. Those entities, in turn, have independent creditors actively participating in this proceeding and asserting competing claims that substantially exceed the value of the policies. *See* Stevens Affirmation ¶ 6. Further, the Receiver is only proposing to act on behalf of the Receivership estate, the assets of which are nominally owned by certain non-debtor defendants (the Brighthouse policy proceeds being used by the Receiver are nominally owned by LS 1019 and the Zurich Insurance Policies are owned by Life Shares II, LLC). Those non-debtor defendants have significant creditors, many if not all of which are parties to this proceeding. There is no known rational argument where Leer's bankruptcy estate has any economic interest whatsoever in the assets of the Receivership estate. Regardless, even if it did, it would be irreparably harmed if the Receiver is prohibited from continuing to act for the benefit of all parties to this case. See Stevens Affirmation ¶45.

## V.   CONTINUANCE OF THE RECEIVERSHIP IS REQUIRED

Under New York law and established bankruptcy principles, a Chapter 7 filing by one defendant does not bar the appointment or continued operation of a state court receiver overseeing non-debtor co-defendants. The automatic stay under 11 U.S.C. § 362(a) applies solely to the debtor and property of the debtor's estate. Where, as here, the Receiver does not exercise custody or control over estate property, neither the automatic stay nor turnover under 11 U.S.C. § 543 is implicated. New York courts routinely sever bankrupt defendants from pending actions

19

and allow litigation, and court-appointed fiduciaries, to proceed against non-debtors. Accordingly, the Receiver may and should continue to discharge his Court-ordered duties.

Bankruptcy courts and New York appellate courts consistently hold that the stay "suspends proceedings only as to the debtor" and does not apply to non-debtor co-defendants absent extraordinary circumstances. See _Rosenbaum_ 189 A.D.2d at 761; _U.S. Bank N.A. v. Cid_, 178 at 876. Extensions of the stay are strictly limited to situations in which litigation against a non-debtor would effectively be litigation against the debtor, such as indemnification obligations or depletion of estate assets. See _Katz v. Mount Vernon Dialysis, LLC_, 121 A.D.3d 856 (2d Dept. 2014). None of these circumstances exist here: the Receiver supervises assets of non-debtor entities, and no judgment or receivership action would directly impact the debtor or its estate.

11 U.S.C. § 543 requires turnover only of property of the debtor in the custodian's possession. Here, the Receiver administers assets exclusively belonging to non-debtors. There is no statutory basis for turnover to the Chapter 7 trustee, and New York courts recognize that receivers cannot be compelled to surrender non-estate property. Allowing the receiver to remain in place preserves judicial economy, protects non-debtor parties, and prevents prejudice that would result from halting a lawful state-court remedy. Suspending the receivership solely due to a tangential bankruptcy filing would improperly expand the automatic stay and reward an apparent strategic bankruptcy filing.

Because the automatic stay applies only to Leer, and New York law permits severance and the continuation of proceedings against non-debtors, the Receiver, who does not administer property of Leer's bankruptcy estate, should be permitted to continue performing his court-ordered duties without interruption. The uninterrupted operation of the Receivership is essential to preserving and maximizing estate value. Failure to timely pay premiums would cause the

20

irrevocable lapse of the remaining insurance policies, resulting in the loss of approximately $19.5 million in death benefits. Similarly, upon the death of any insured, the Receiver must be able to act immediately to pursue and recover policy proceeds; any delay would create an opportunity for Leer or other third parties to interfere with, or improperly divert, those proceeds ahead of the Receiver. The Receiver also currently holds more than $9.1 million in bonded cash assets and must continue to comply with the Receivership Order by maintaining the Court-mandated bond and providing the required reporting, including the monthly distribution of all Receiver bank statements to the parties and the Court. Finally, given the significant impediments to collecting the Leer Judgment in light of the pending Leer Bankruptcy Case, the Receiver will almost certainly be required to pursue recovery directly against John Hancock for its wrongful payment of the Hancock Distribution to LS 1019 rather than the Receiver, a claim that can be timely and effectively prosecuted only if the Receiver is permitted to function in the ordinary course under the Receivership Order. See Stevens Affirmation ¶¶ 40-43.

For all of the foregoing reasons, there is no basis under the Bankruptcy Code or New York law to suspend, limit, or otherwise interfere with the Receiver's authority. The Receiver administers only non-debtor assets, and his continued operation is essential to preserving substantial value and avoiding irreparable harm. Accordingly, the Receiver should be permitted to continue performing his Court-ordered duties in the ordinary course, without restraint or interruption.

21

VII.    **RETENTION OF NELSON MULLINS RILEY & SCARBOROUGH LLP AS RECEIVER'S COUNSEL WITH RESPECT TO THE CHAPTER 7 BANKRUPTCY CASE OF DEFENDANT STEFAN LEER SHOULD BE AUTHORIZED AND THE RECEIVER'S COMPENSATION ENTITLEMENT SHOULD BE INCREASED TO MARKET RATES**

Mr. Stevens has continuously served as the Receiver in this action since his appointment on January 4, 2023. Under Paragraph 19 of the Receiver Order, the Receiver may not retain or appoint counsel without prior authorization of this Court. In light of Leer's recent Chapter 7 filing, immediate relief is necessary. Absent prompt authorization to retain counsel, the Receiver risks missing rigid and non-extendable deadlines in the bankruptcy case, potentially resulting in the discharge of the Leer Judgment before the Receiver has any meaningful opportunity to participate or protect the interests of the receivership estate. To safeguard those interests, the Receiver must promptly retain Nelson Mullins Riley & Scarborough LLP ("Bankruptcy Counsel") as bankruptcy counsel and timely prosecute his rights in the Leer Bankruptcy Case. Among other things, counsel is required to:

a. **Conduct discovery pursuant to Federal Rule of Bankruptcy Procedure 2004**, which may present the sole opportunity to obtain documents and testimony concerning Leer's theft and dissipation of the Hancock Distribution, as well as Leer's misstatements to this Court regarding those events;

b. **Appear and participate in the meeting of creditors under 11 U.S.C. § 341(a)**, currently scheduled for February 9, 2026, at 1:00 p.m.;

c. **Timely file a proof of claim** in the bankruptcy case to preserve the Receiver's pro rata entitlement to any recoveries obtained by the Chapter 7 trustee (deadline: March 25, 2026); and

22

Case 1:24-cv-08515-AS     Document 121     Filed 03/02/26     Page 88 of 99

d. **Evaluate and, if appropriate, commence proceedings to object to Leer's discharge or the dischargeability of the Leer Judgment** pursuant to 11 U.S.C. §§ 523 and/or 727 (deadline: April 20, 2026).

In order to accomplish these tasks and timely protect the rights of the receivership estate, the Receiver must be authorized without delay to retain and compensate Bankruptcy Counsel.

Similarly, under Paragraph 20(i) of the Receivership Order, the Receiver is entitled to compensation at the capped rate of $600 per hour, with associates and paralegals capped at $450 and $225 per hour, respectively. These rates, agreed upon more than three years ago as an accommodation to the Plaintiff (who, until June 2024, funded the Receiver's costs), are now significantly below current market rates. The Receiver is currently funded by proceeds of the receivership property, including the Brighthouse policy proceeds, and has performed diligently for over three years at rates less than two-thirds of the firm's current rates. See Stevens Affirmation ¶¶47-48.

Moreover, the Receiver's obligations have gone way beyond what anyone could have imagined and have included or will include: (i) being a direct party to litigation with Leer due to the theft of the Hancock Distribution; (ii) defending an appeal of the Criminal Contempt Order; (iii) participating as a nominal party in litigation before the U.S. District Court with respect to the Brighthouse policy proceeds; (iv) attending to numerous emergent matters including the instant matter; (v) domesticating and pursuing recovery of the Leer Judgment in Tennessee; and (vi) retaining and directing counsel in connection with the Leer Bankruptcy Case in the Middle District of Tennessee. None of these matters were foreseeable when the Receiver agreed to the terms of the Receivership Order three years ago. See Stevens Affirmation ¶49.

23

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 89 of 99

Accordingly, the Receiver respectfully submits that he and the other professionals at the Receiver's law firms should be compensated at their standard hourly rates, effective January 1, 2026. The current regular hourly rates for the individuals who have worked on this matter over the past three years are:

| Individual | 2026 Billing Rate |
|---|---|
| Fred Stevens – Receiver/Partner | $895 |
| Brendan Scott – Partner | $825 |
| Christopher Reilly – Associate | $625 |
| Andrew Brown – Associate | $625 |
| Kristen Strine - Paralegal | $295 |

24

## CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that an order be entered granting the Receiver authority to (i) (a) continue to function as Receiver in order to preserve property, and (b) retain Nelson Mullins Riley & Scarborough LLP as his counsel with respect to the Leer Bankruptcy Case; (ii) modify the Receiver Order to provide for compensation to the Receiver and his staff at the firm's current standard hourly rates; (iii) sever Leer as a defendant to this case so that it can proceed against all non-debtor parties; and (iv) granting the receiver such other and further relief as is just and proper.

Dated:   New York, New York
        January 21, 2026

**FRED STEVENS, RECEIVER**

By:  */s/ Fred Stevens*
     **Fred Stevens**
     c/o Klestadt Winters Jureller
       Southard & Stevens, LLP
     200 West 41st Street, 17th Floor
     New York, New York 10036-7203
     Tel: (212) 679-5342
     Fax: (212) 972-2245
     Email: fstevens@klestadt.com

25

Case 1:24-cv-08515-AS    Document 121    Filed 03/02/26    Page 91 of 99

# WORD COUNT CERTIFICATION

As required by Section 202.8-b of the Uniform Rules for the Supreme Court and the County Court, I certify that the document filed with this certification contains 7,619 words excluding the parts of the document that are exempted, according to the word count function of the word processing program used to prepare the document.

Dated:  New York, New York
        January 21, 2026

**FRED STEVENS, RECEIVER**

By:  */s/ Fred Stevens*
     **Fred Stevens**
     c/o Klestadt Winters Jureller
         Southard & Stevens, LLP
     200 West 41st Street, 17th Floor
     New York, New York 10036-7203
     Tel: (212) 679-5342
     Fax: (212) 972-2245
     Email: fstevens@klestadt.com

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,
Plaintiffs,
v.
SPIN CAPITAL, LLC, et al.,
Defendants.

**Case No. 1:24-cv-08515 (AS)**
**Hon. Arun Subramanian**

# Exhibit F

**Receiver's Proposed Order to Show Cause (Jan. 21, 2026)**

*Filed in: Golden Foothill Ins. Servs., LLC, et al. v. Spin Capital, LLC, et al., No. 1:24-cv-08515 (AS)*

At Part 53 of the Supreme Court of the State of New York, held in and for the County of New York, at the Courthouse located at 60 Centre Street, New York, NY 10007 on the ____ day of _____, 2026

PRESENT:    Hon. Nancy M. Bannon
                Justice of the Supreme Court

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: COMMERCIAL DIVISION**

| | |
|---|---|
| TETON LIFE LLC AS ASSIGNEE OF THE RIGHTS OF SPIN CAPITAL, LLC, <br><br>                 *Plaintiff,* <br><br> -against- <br><br> GOLDEN FOOTHILL INSURANCE SERVICES, LLC, *et al.*, <br><br>                 *Defendants.* | Index No.: 650582/2022 <br><br> Third-Party Index 595367/2022 <br><br> Hon. Nancy M. Bannon, J.S.C. <br><br> Mot. Seq. No. ___ |
| GOLDEN FOOTHILL INSURANCE SERVICES, LLC, *et al.*, <br><br>                 *Third-Party Plaintiffs,* <br><br> -against- <br><br> SPIN CAPITAL, LLC, AVRUMI LUBIN, <br><br>                 *Third-Party Defendants.* | **ORDER TO SHOW CAUSE** |

Upon reading the Affirmation of Fred Stevens of Klestadt Winters Jureller Southard & Stevens, LLP, in his capacity as Receiver (the "Receiver"), dated January 21, 2026, filed in support of the Receiver's motion (the "Motion"):  (I) for authority to (a) continue to function as Receiver in order to preserve property, and (b) retain Nelson Mullins Riley & Scarborough LLP as his counsel with respect to the chapter 7 bankruptcy case of defendant Stefan Leer ("Leer")

pending in the United States Bankruptcy Court in the Middle District of Tennessee (the "Bankruptcy Court") under Case No. 26-bk-00149 (the "Leer Bankruptcy Case"); (II) modifying the Receiver Order to provide for compensation to the Receiver and his staff at the firm's current standard hourly rates; and (III) severing Leer as a defendant to this case so that it can proceed against all non-debtor parties; and upon the Receiver's memorandum of law submitted in supported thereof, it is

**ORDERED**, that the Receiver may immediately continue in the performance of his duties under this Court's Order, dated January 4, 2023 (the "Receiver Order") [Dkt. No. 245], unless otherwise ordered by this Court after this Court considers the Motion on a final basis following the Objection Deadline (as defined below), which duties shall include:

(a) Payment of premiums on the Insurance Policies;

(b) Pursuit and protection of proceeds of any Insurance Policies in the event of the death of an insured;

(c) Maintenance and reporting to the parties and Court with respect to all receivership activities and receivership assets;

(d) Maintenance of the Court's required bond on all cash assets in the receivership estate;

(e) Retention and appointment of Nelson Mullins Riley & Scarborough LLP ("Bankruptcy Counsel") as Receiver's counsel to represent him in connection with the Leer Bankruptcy Case, and to compensate Bankruptcy Counsel at the firm's regular hourly rates;

(f) Participate in the Leer Bankruptcy Case by, among other things: (i) pursuing discovery pursuant to Fed. R. Bankr. P. 2004; (ii) participating in the meeting of creditors convened pursuant to 11 U.S.C. § 341(a); (iii) filing a proof of claim; and/or

2

(iv) objecting to Leer's discharge or the dischargeability of the Leer Judgment pursuant to 11 U.S.C. §§ 523 and/or 727; and

(g) Otherwise perform such duties and objections as required by the Receivership Order; and it is further

**ORDERED**, that Defendant Stefan Leer shall be deemed severed as a party to this case for purposes of effectuating this Order to Show Cause until Stefan Leer's severance as a party to this action can be considered on a final basis; and it is further

**ORDERED**, that the parties shall show cause why the Court should not grant the Motion on a final basis, and submit objections, if any, to the relief requested by the Receiver in the Motion, in writing and file such objections with the Court and serve them upon the Receiver and all other parties in the case via the Court's electronic notification system, so as to be received no later than 5:00 p.m. (EST) on the ___ day of _____, 2025 (the "Objection Deadline"); and it is further

**ORDERED**, that the Receiver shall serve a physical copy of this Order to Show Cause and all related Motion papers by Federal Express or other overnight courier upon: (I) the chapter 7 trustee appointed in the Leer Bankruptcy Case, Eva M. Lemeh, Chapter 7 Trustee, 380 Spring Creek Road, Lebanon, TN 37087; and (II) Leer's bankruptcy counsel, Keith David Slocum, Slocum Law, 370 Mallory Station Road Suite 504, Franklin, TN 37067; and it is further

3

**ORDERED**, that service of this Order to Show Cause and the papers upon which it is based shall be deemed to have been made upon all parties to this action on the date such Order or papers are filed on the Court's electronic docket, and such shall be deemed good and sufficient service thereof.

Dated:   New York, New York
           _____ __, 2026

                                      **E N T E R,**

                                        _____

                                        **Hon. Nancy M. Bannon**
                                        **Justice of the Supreme Court**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,
Plaintiffs,
v.
SPIN CAPITAL, LLC, et al.,
Defendants.

**Case No. 1:24-cv-08515 (AS)**
**Hon. Arun Subramanian**

# Exhibit G

**Interim Stay Order (Jan. 15, 2026)**

*Filed in: Golden Foothill Ins. Servs., LLC, et al. v. Spin Capital, LLC, et al., No. 1:24-cv-08515 (AS)*

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. NANCY M. BANNON**                    PART                61M

*Justice*

-------------------------------------------------------------------------------X

TETON LIFE LLC AS ASSIGNEE OF THE RIGHTS OF
SPIN CAPITAL, LLC,

                         Plaintiff,

            - v -

GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al

              Defendants.

-------------------------------------------------------------------------------X


GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al,

                         Plaintiffs,

            -against-

SPIN CAPITAL, LLC, AVRUMI LUBIN

              Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 650582/2022 |
| MOTION DATE | 2/5/2025 |
| MOTION SEQ. NO. | 027 028 029 |

**INTERIM ORDER
BANKRUPTCY STAY**

Third-Party
Index No.  595367/2022

The following e-filed documents, listed by NYSCEF document number (Motion 027) ---
were read on this motion to/for               ENFORCE/EXEC JUDGMENT OR ORDER           .

The following e-filed documents, listed by NYSCEF document number (Motion 028) ----
were read on this motion to/for               STRIKE PLEADINGS               .

The following e-filed documents, listed by NYSCEF document number (Motion 029) ----
were read on this motion to/for               SUMMARY JUDGMENT               .


        It is hereby


        ORDERED that, upon the notice of bankruptcy filed by the defendant Stefan Leer in the United States Bankruptcy Court for the Middle District of Tennessee, docket number 3:26-bk-00149, on January 14, 2026 (NYSCEF Doc. No. 970), this action is **stayed** pursuant to 11 U.S.C. § 362 during the pendency of that defendant's Chapter 7 bankruptcy proceedings, and it is further

**650582/2022   TETON LIFE LLC AS ASSIGNEE OF THE RIGHTS OF SPIN CAPITAL, LLC, vs.**          **Page 1 of 2**
**GOLDEN FOOTHILL INSURANCE SERVICES, LLC ET AL**
**Motion No.  027 028 029**

1 of 2

ORDERED that the receiver's motion to enforce a contempt order against defendant Stefan Leer (MOT SEQ 027), the plaintiff's motion to strike defendant Stefan Leer's answer (MOT SEQ 028), and the plaintiff's motion for summary judgment (MOT SEQ 029) are held in abeyance pending the stay, and it is further

ORDERED that the parties shall promptly inform the Court of any final disposition in the above action or a lifting, vacatur or modification of the stay; and it is further

ORDERED that all parties shall appear for a status conference on July 9, 2026, at 11:00 a.m., and it is further

ORDERED that the bankruptcy debtor/defendant Stefan Leer is directed to serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119) within ten (10) days from entry, and the Clerk shall mark this action **stayed.**

This constitutes the order of the court.

_____
NANCY M. BANNON, J.S.C.
**HON. NANCY M. BANNON**

<u>1/15/2026</u>
**DATE**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | DENIED | | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**650582/2022   TETON LIFE LLC AS ASSIGNEE OF THE RIGHTS OF SPIN CAPITAL, LLC, vs.**          **Page 2 of 2**
**GOLDEN FOOTHILL INSURANCE SERVICES, LLC ET AL**
**Motion No.  027 028 029**