**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOLDEN FOOTHILL INSURANCE SERVICES, LLC, LIFE FACTOR II, LLC, LIFE SHARES II, LLC, EL DORADO HILLS INSURANCE SOLUTIONS, INC., LONE WOLF INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC, THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC., and TATANISHA LEER<br><br>Plaintiffs,<br><br>v.<br><br>SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN, BMF ADVANCE LLC, GAVRIEL YITZCHAKOV a/k/a GABE ISAACOV, HI BAR CAPITAL, LLC, YOEL GETTER a/k/a JOEL GETA, and YISROEL HERBST,<br><br>Defendants. | Civ. A. No.: 1:24-CV-08515 |

**DECLARATION OF STEFAN LEER**

1.      I, Stefan Leer, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

2.      I am over the age of eighteen and am competent to make this declaration. I submit this declaration in support of Plaintiffs' motion for summary judgment against Defendants Avrumi (a/k/a Josh) Lubin, BMF Advance, LLC, Gavriel Yitzchakov, and a default judgment against Defendant Yoel Getter a/k/a Joel Geta.

3.      I am the President and owner of Golden Foothill Insurance Services, LLC and am familiar with the operations of Golden Foothill Insurance Services, LLC, Life Factor II, LLC, Life Shares II, LLC, El Dorado Hills Insurance Solutions, Inc., Lone Wolf Insurance Services, Inc.,

Doc ID: 425d738c195166744d7ff0951ca2dd085f6d7e28

ELDO Investments, LLC, The Genesis LS Fund, LLC, and KTL Holdings, Inc. I refer to those entities collectively as the Leer Companies.

4.      The Leer Companies operate in two areas of the life insurance industry: first, as licensed insurance agents and brokers selling life insurance policies to individuals, trusts, and companies for commissions; and second, in the life settlement industry, where a Leer Company purchases existing life insurance policies as investment assets.

5.      With life settlement transactions, the Leer Companies often raise capital to pay premiums on purchased life insurance policies by issuing private placement memoranda. Investors obtain an interest in the Leer Company that owns the life insurance policy and receive a return when the insured person dies.

6.      Depending on an insured person's life expectancy and the cost of premiums on a policy, the Leer Companies sometimes have to let policies lapse to avoid an ultimate loss on the investment.

7.      Because of those business models, the Leer Companies did not have regular receivables in the way a retail business or restaurant might. Their income streams were irregular and depended on sales of life insurance policies, the supply of policies available in the life settlement market, and the timing of insured persons' deaths.

8.      The COVID-19 pandemic substantially harmed the Leer Companies. New life insurance policies were not being issued or were very difficult to sell because of high premiums, and the supply of policies available to purchase fell, resulting in a lack of new receivables for the Leer Companies' life-settlement business.

9.      By 2020, the number of whole life insurance policies owned by the Leer Companies had declined. By June 2021, the Leer Companies owned approximately a dozen whole life insurance policies, which were among the Leer Companies' largest remaining assets during the pandemic.

10.    In early March 2021, during the pandemic, Josh Lubin contacted me unsolicited. He offered to connect the Leer Companies to alternative lenders, including BMF and Hi Bar, and described the financing as short-term loans that could allow the Leer Companies to keep making premium payments on policies they owned.

11.    During my initial discussions with Mr. Lubin, I explained the nature of the Leer Companies' business, the value of certain life insurance policies they owned, and that the Leer Companies urgently needed capital to avoid losing policies for failure to pay premiums.

12.    Mr. Lubin knew the Leer Companies were experiencing financial problems when he solicited them to enter into the MCA transactions. During the course of those transactions, Mr. Lubin learned about several life insurance policies owned by the Leer Companies, and those policies later became part of the discussion concerning the June 2021 Promissory Note and Security Agreement.

13.    Given the Leer Companies' financial condition and need for immediate capital, the Leer Companies accepted Mr. Lubin's offer to enter into what I understood to be a short-term loan transaction with BMF on or about March 2, 2021.

14.    The money advanced under the March 2, 2021 BMF transaction did not solve the Leer Companies' need for capital to pay policy premiums. At the same time, the Leer Companies were prohibited under the March 2, 2021 BMF documents from obtaining other financing. The Leer Companies therefore had no practical option other than to return to Mr. Lubin for additional financing, which resulted in the March 10, 2021 Hi Bar transaction.

15.    After the March 2, 2021 BMF transaction and March 10, 2021 Hi Bar transaction, the Leer Companies were paying approximately $13,500 per day to BMF and Hi Bar. That was not sustainable because COVID-19 had caused the Leer Companies to generate little receivables, and the Leer Companies' expected future revenue depended largely on when an insured person under a policy passed away.

16.    After the March 12, 2021 BMF transaction, the Leer Companies continued to pay substantial daily amounts to BMF and Hi Bar, and because the MCA documents restricted alternative financing, the Leer Companies again had nowhere to turn other than Mr. Lubin and Spin for additional funding. This led to the March 25, 2021 BMF transaction.

17.    The net amount received from the March 25, 2021 BMF transaction was not sufficient to keep the Leer Companies operating. The Leer Companies therefore entered into another transaction with Hi Bar on or about March 25, 2021.

18.    By May 2021, the Leer Companies could make only small daily payments of several hundred dollars. When I discussed payment reductions or remittance adjustments with Mr. Lubin, the discussion focused on the maximum the Leer Companies could afford to pay, not on a review or reconciliation of the Leer Companies' actual receivables.

19.    Mr. Lubin and Spin later approached the Leer Companies with a proposal to enter into a loan that would pay off the BMF and Hi Bar MCA balances. As a result, Golden Foothill, Life Factor II, and Life Shares II entered into the June 16, 2021 Promissory Note with Spin Capital LLC.

20.    Although the Promissory Note stated a principal amount of $2,700,000, the Leer Companies did not receive anything close to that amount. Substantial amounts were used to pay off asserted MCA balances to BMF and Hi Bar and to pay fees and costs. The Leer Companies received less than half of the stated note amount as actual working capital.

21.    The Leer Companies made the first five payments on the Promissory Note, totaling approximately $510,000. They could not continue making the required payments because of the high interest rate and because less than half of the stated principal amount had actually been made available to the Leer Companies as working capital.

22.    Taking into account the MCA transactions and the Promissory Note transaction, the Leer Companies received less than $2 million in total working capital while Defendants seek to recover far more based largely on interest, fees, and asserted default charges.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 26, 2026.

_____

Stefan Leer

**Dropbox** Sign                                                    Audit trail

| | |
|---|---|
| **Title** | Declaration_of_Stefan_Leer (1).pdf |
| **File name** | Declaration_of_Stefan_Leer%20%281%29.pdf |
| **Document ID** | 425d738c195166744d7ff0951ca2dd085f6d7e28 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| SENT | **05 / 26 / 2026** <br> 18:44:35 UTC | Sent for signature to Stefan Leer (stefan@leerandco.com) by services@clio.com acting on behalf of meredith@heskinproper.com <br> IP: 108.24.108.145 |
| VIEWED | **05 / 26 / 2026** <br> 20:06:59 UTC | Viewed by Stefan Leer (stefan@leerandco.com) <br> IP: 198.102.229.191 |
| SIGNED | **05 / 26 / 2026** <br> 20:07:08 UTC | Signed by Stefan Leer (stefan@leerandco.com) <br> IP: 198.102.229.191 |
| COMPLETED | **05 / 26 / 2026** <br> 20:07:08 UTC | The document has been completed. |