# Secured Purchase Agreement


## PANTHERS CAPITAL

**Agreement dated** 03/16/2021 **between Panthers Capital, LLC ("PC") and the merchant listed below ("MERCHANT").**

## MERCHANT INFORMATION

**Merchant's Legal Name:** KTL HOLDINGS INC AND ALL OTHER ENTITIES LISTED ON "EXHIBIT A"

**D/B/A:** KTL HOLDINGS INC     **State of Incorporation/ Organization:** _____

**Type of Entity (check one):** ⊙ Corporation ○ Limited Liability Company ○ Limited Liability Partnership ○ Limited Partnership ○ Sole Proprietor

**Physical Address:** 4511 GOLDEN FOOTHILLS PKWY SUITE 1

**City:** EL DORADO HILLS     **State:** CA     **Zip:** 95762     **Business Phone:** _____

**Mailing Address:** 4511 GOLDEN FOOTHILLS PKWY SUITE 1 **City:** EL DORADO HILLS     **State:** CA     **Zip:** 95762

| | | |
|---|---|---|
| **Purchase Price:** $ 100,000.00 | **Purchased Percentage:** 10 % | **Purchase Amount:** $ 149,900.00 |
| **Payment Frequency:** Daily | | **Remittance:** $ 5,996.00 |

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to PC (making PC the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course  of the Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to PC.

Merchant is selling a portion of a future revenue stream to PC at a discount, not borrowing money from PC, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by PC. The Remittance is a good faith estimate of (a) Purchased Percentage multiplied by (b) the daily average revenues of Seller during the previous calendar month divided by (c) the number of business days in the calendar month. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. PC is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and PC assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give PC a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4.

PC will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, PC (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as PC receives payment in full of the Purchased Amount. Merchant hereby authorizes PC to ACH debit the Agreed Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. PC's payment of the Purchase Price shall be deemed the acceptance and performance by PC of this Agreement. Merchant understands that it is responsible for ensuring that the Agreed Remittance to be debited by PC remains in the Account and will be held responsible for any fees incurred by PC  resulting from a rejected ACH attempt or an Event of Default. PC is not responsible for any overdrafts or rejected transactions that may result from PC's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any    other agreement between PC and Merchant, upon the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM" HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

**FOR THE MERCHANT (#1) By:** STEFAN LEER     OWNER
(Print Name and Title)

SIGN HERE →

DocuSigned by:
*Stefan Leer*
228FE2409B294A4...

**FOR THE MERCHANT (#2) By:** _____
(Print Name and Title)

SIGN HERE →

_____
(Signature)

**BY OWNER (#1) By:** STEFAN LEER     OWNER
(Print Name and Title)

SIGN HERE →

DocuSigned by:
*Stefan Leer*
228FE2409B294A4...
(Signature)

**BY OWNER (#2) By:** _____
(Print Name and Title)

SIGN HERE →

_____
(Signature) — DS

SL

INITIALS

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAYCONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

CONFIDENTIAL

SPIN-00007210

DocuSign Envelope ID: D7577685-4EBD-4D65-AB39-19C353CE8D49

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## 1 TERMS OF ENROLLMENT IN PROGRAM

**1.1 Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to PC with a Bank acceptable to PC to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to PC with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide PC and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes PC and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to PC for the receipts as specified herein and to pay such amounts to PC. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by PC or not. This additional authorization is not a waiver of PC's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which PC did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of PC.

**1.2 Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by PC as per the terms of this Agreement.

**1.3 Future Purchase of Increments.** Subject to the terms of this Agreement, PC offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. PC reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion.

**1.4 Adjustments to the Remittance.** If an Event of Default has not occurred, every two (2) calendar weeks after the funding of the Purchase Price to Merchant, Merchant may give notice to PC to request a decrease in the Remittance. The amount shall be decreased if the amount received by PC was more than the Purchased Percentage of all revenue of Merchant since the date of this Revenue Purchase Agreement. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks. Seller shall provide PC with viewing access to their bank account as well as all information reasonably requested by PC to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

**1.5 Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize PC and its agents to investigate their financial responsibility and history, and will provide to PC any authorizations, bank or financial statements, tax returns, etc., as PC deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. PC is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.6 Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide PC with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide PC with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from PC.

**1.7 Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by PC for monies owed to PC from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by PC.

**1.8 No Liability.** In no event will PC be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of PC's attorney's fees and expenses resulting therefrom.

**1.9 Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, PC, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**1.10 Sale of Receipts.** Merchant and PC agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from PC to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. PC has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to PC in respect to

the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that PC has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and PC shall promptly refund to Merchant any interest received by PC in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that PC not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.11 Power of Attorney.** Merchant irrevocably appoints PC as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to PC from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to  make  payment  directly  to PC; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which PC may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by and from Merchant and PC is authorized to use Merchant's funds to pay for same; and (vii) PC shall have the right, without waiving any of its rights and remedies and without notice to Merchant or any Owner/Guarantor, to notify any credit card processor of the sale of future payment rights and re-direct the remittance of daily settlements to an account of PC's choosing in order to settle all obligations due to PC under this Agreement.

**1.12 Protections against Default.** The following Protections 1 through 8 may be invoked by PC immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the PC electronic check processor; (b) Merchant changes   its arrangements with Processor or the Bank in any way that is adverse or unacceptable to PC; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of PC, and (ii) the written agreement of any PC or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PC; (e) Merchant takes any action, fails to take any action, or offers any incentive--economic or otherwise-- the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; or (f) Merchant fails to provide PC with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from PC. These protections are in addition to any other remedies available to PC at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2.** PC may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).





SIGN HERE     DS

INITIALS

**Protection 3.** Merchant hereby authorizes PC to execute in the name of the Merchant a Confession of Judgment in favor of PC in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, PC may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.

**Protection 4.** PC may enforce its security interest in the Collateral.

**Protection 5.** The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to PC from Merchant.

**Protection 6.** PC may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if PC recovers a Judgment against Merchant, Merchant shall be liable for all of PC's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 7.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to PC. Upon breach of any provision in this Agreement, PC may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. PC may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to PC.

1.13 **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes PC to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that PC obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against PC or any of its affiliates relating to any (i)investigation undertaken by or on behalf of PC as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.14 **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by PC, including this Agreement and any other PC documents (collectively, "Confidential Information") are proprietary and confidential information of PC. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of PC to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles PC to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

1.15 **Publicity.** Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes PC to use its, his or her name in listings of clients and in advertising and marketing materials.

1.16 **D/B/A's.** Merchant hereby acknowledges and agrees that PC may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between PC and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## 2    REPRESENTATIONS, WARRANTIES ANDCOVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

2.1 **Financial Condition and Financial Information.** Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to PC, and future statements which will be furnished hereafter at the discretion of PC, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise PC of any material adverse change in their financial condition, operation or ownership. PC may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to PC within five business days after request from PC. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

2.2 **Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

2.3 **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 **Use of Funds.** Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

2.5 **Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without PC's prior written consent. Any such changes shall be a material breach of this Agreement.

2.6 **Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and PC, nor shall Merchant change any of its places of business without prior written consent by PC.

2.7 **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis if applicable.

2.8 **Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from PC to Merchant, execute, acknowledge and deliver to PC and/or to any other person, firm or corporation specified by PC, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.9 **No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.10 **Unencumbered Receipts**. Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PC.

2.11 **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.12 **Defaults under Other Contracts**. Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

2.13 **Good Faith.** Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling PC the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant'sbusiness.

## 3    EVENTS OF DEFAULT AND REMEDIES

3.1 **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a)    Merchant or Guarantor shall violate any term or covenant in this Agreement;

(b)    Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c)    the sending of notice of termination by Merchant or verbally notifying PC of its intent to breach this Agreement;

(d)    the Merchant fails to give PC 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;

(e)    Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by seller to any other party.

(f) Merchant shall transfer or sell all or substantially all of its assets;

(g)    Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(h)    Merchant shall use multiple depository accounts without the prior written consent of PC

(i)    Merchant shall change its depositing account without the prior written consent of PC; or

(j)    Merchant shall close its depositing account used for ACH debits without the prior written consent of PC

(k) Merchant's bank returns a code other than NSF cutting PC from itscollections

(l)    Merchant shall default under any of the terms, covenants and conditions of any other agreement with PC.

3.2 **Limited Personal Guaranty.** In the Event of a Default, PC will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to PC for all of PC's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

3.3 **Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, PC may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other





DS

INITIALS

legal or equitable right or remedy. All rights, powers and remedies of PC in connection with this Agreement may be exercised at any time by PC after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.4 **Costs.** Merchant shall pay to PC all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of PC`s remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

3.5 **Required Notifications.** Merchant is required to give PC written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give PC seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## 4 MISCELLANEOUS

4.1 **Modifications; Agreements**. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by PC.

4.2 **Assignment.** PC may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3 **Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to PC shall become effective only upon receipt by PC. Notices to Merchant shall become effective three days after mailing.

4.4 **Waiver Remedies.** No failure on the part of PC to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 **Binding Effect;** Governing Law, Venue and Jurisdiction. This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted in any court sitting in New York, Texas or Connecticut, and shall be the sole and exclusive venues for any lawsuit, action or proceeding (the "Acceptable Forums"). The parties, including any guarantors, agree that the said sole and exclusive Acceptable Forums are convenient and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue in any of the Acceptable Forums.

4.6 **Survival of Representation**, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.7 **Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

4.8 **Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9 **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and PC and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10 **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11 **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVEACTION.

4.12 **PREJUDGMENT REMEDY WAIVER**. EACH AND EVERY MERCHANT, SELLER, AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT, SELLER, AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH PC HEREOF MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENTAND (B) ALL RIGHTS TO REQUEST THAT PC, THE HOLDER HEREOF, POST A BOND, TO PROTECT SAID MERCHANTS, SELLER, OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY THE HOLDER HEREOF BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENT.

1.1 **Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.



[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]



CONFIDENTIAL

DocuSign Envelope ID: D7577685-4EBD-4B65-AB29-19C353CF58D49

# Security Agreement and Guaranty



**PANTHERS CAPITAL**

**Merchant's Legal Name:** KTL HOLDINGS INC AND ALL OTHER ENTITIES LISTED ON "EXHIBIT A"

**D/B/A:** KTL HOLDINGS INC     **Federal ID#:** 82-3125051

**Physical Address:** 4511 GOLDEN FOOTHILLS PKWY SUITE 1   **City:** EL DORADO HILLS     **State:** CA     **Zip:** 95762

## Additional Guarantor(s).

---

---

## SECURITY AGREEMENT

**Security Interest.**          This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to PC a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to PC under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to PC upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover PC's entitlements under this Agreement, PC is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of PC's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, PC or an affiliate of PC. PC is authorized to file any and all notices or filings it deems necessary or appropriate toenforce its entitlements hereunder.

This security interest may be exercised by PC without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. PC shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, PC has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets.
With respect to such security interests and liens, PC will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from PC written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and PC is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by PC. Merchant and Guarantor(s) agree(s) to execute and deliver to PC such instruments and documents PC may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. PC is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to PC under any other agreement between Merchant or Guarantor(s) and PC (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any actionin connection with this Agreement as PC deems necessary to perfect or maintain PC's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes PC to file any financing statements deemed necessary by PC to perfect or maintain PC's security interest. Merchant and Guarantor(s) shall be liable for, and PC may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by PC in protecting, preserving and enforcing PC's security interest and rights.



INITIALS

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.**

## GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

PC as an additional inducement for PC to enter into this Agreement, the undersigned Guarantor(s) hereby provides PC with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement **unless** Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to PC in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations").Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor Waivers.** In the event of a breach of the above, PC may seek recovery from Guarantors for all of PC's losses and damages by enforcement of PC's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral PC may hold pursuant to this Agreement or any other guaranty.

PC does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) PC's acceptance of this Agreement; and (v) any renewal, extension or other  modification of the Merchant Agreement or Merchant's other obligations to PC. In addition, PC may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to PC; (ii) release Merchant from its obligations to PC; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a mannerthat impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to PC under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts  paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that PC must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**FOR THE MERCHANT (#1) By:** STEFAN LEER

SSN# 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 **Driver's License Number:**

DocuSigned by:
*Stefan Leer*
(Signature)
2282E2409B294A4...

**FOR THE MERCHANT (#2) By:**

SSN# **Driver's License Number:**

(Signature)

**BY OWNER (#1) By:** STEFAN LEER

SSN# 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 **Driver's License Number:**

DocuSigned by:
*Stefan Leer*
2282E2409B294A4...
(Signature)

**BY OWNER (#2) By:**

SSN# **Driver's License Number:**

(Signature)

**FOR THE GUARANTOR(S) By:** STEFAN LEER

SSN# 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 **Driver's License Number:**

DocuSigned by:
*Stefan Leer*
2282E2409B294A4...
(Signature)

**FOR THE GUARANTOR(S) By:**

SSN# **Driver's License Number:**

(Signature)

DS
*SL*
INITIALS

CONFIDENTIAL

SPIN-00007215

# Appendix A – Fee Structure


PANTHERS CAPITAL

**A.** **Origination Fee:** $295.00 to cover cost of Origination.

**B.** **Underwriting Fee:** $499.00 or 12% of the proposed funding amount to cover underwriting and related expenses. This fee is deemed earned upon Seller signing the contracts. If for whatever reason, Funder determines, in its sole capacity, to cancel the deal, Merchant agrees that Funder may withdraw this non-refundable underwriting fee.

**C.** **NSF Fee (Standard)** $50.00 (each)

**D.** **Default Fee** $5,000.00 when Merchant breaches any terms of this agreement.

**E.** **Blocked Account Fee** $5,000. when Merchant breaches the agreement by placing a Stop-Payment on Panthers Capital's ACH or closes the Account

**F.** **Bank Change Fee** $50.00 when Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

**G.** **CRM Login Fee:** $99 per month

**H.** **Wire Fee** - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.

**I.** **ACH Program Fee:** $299.00 per month for the duration of the agreement.

**J.** **Stacking Fee:** 10% of Outstanding RTR or $25,000 whichever is greater. Additionally, taking on additional financing will be deemed a breach of this agreement upon which Funder may invoke all of its rights per the terms of the agreement including but not limited to filing the Confession of Judgment and executing thereon.

**K.** **UCC Fee:** 195.00

**L.** **Miscellaneous Service Fees:** Merchant agrees that it shall pay for certain services related to the origination and maintenance of the accounts. Merchant shall receive their funding electronically to their Designated Account and shall be charged $50.00 per Fed Wire or $0.00 for an ACH.

**FOR THE MERCHANT (#1) By:** STEFAN LEER                          OWNER
_____
(Print Name and Title)

SIGN HERE

DocuSigned by:

Stefan Leer
(Signature)
2282E2409B294A4...

**FOR THE MERCHANT (#2) By:** _____
(Print Name and Title)

SIGN HERE

_____
(Signature)



SIGN HERE

DS

SL

INITIALS

CONFIDENTIAL                                               SPIN-00007216

## Authorization Form



**PANTHERS CAPITAL**

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

**DEFINITIONS:**

PC: Panthers Capital, LLC

Seller: KTL HOLDINGS INC AND ALL OTHER ENTITIES LISTED ON "EXHIBIT A"

(Merchant's Legal Name)

Merchant Agreement: Merchant Agreement between PC and Seller, dated as of 03/16/2021

**Designated Checking Account:**

| | | | |
|---|---|---|---|
| Bank Name: | CHASE BANK | Branch: | |
| Tax ID: | 82-3125051 | | |
| ABA: Routing: | 322271627 | DDA: Account: | 913568007 |

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Seller attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Seller should keep a copy of this important legal document for Seller's records.**

DISBURSMENT OF ADVANCE PROCEEDS. By signing below, Seller authorizes PC to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Seller also authorizes PC to collect amounts due from Seller under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

In the amount of: $   $ 5,996.00

(or) Percentage of each Banking Deposit: _____ %

on the Following Days (each, a "Payment Date"): Monday - Friday

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Seller's financial institution for any reason, including without limitation insufficient funds, Seller understands that PC may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Seller also authorizes PC to initiate ACH entries to correct any erroneous payment transaction.

**MISCELLANEOUS.** PC is not responsible for any fees charged by Seller's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association).

This Authorization Agreement is to remain in full force and effect until PC has received written notification from Seller at the address set forth below at least 5 banking days prior of its termination to afford PC a reasonable opportunity to act on it. The individual signing below on behalf of Seller certifies that he/she is an authorized signer on the Designate Checking Account. Seller will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Seller requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

Seller: KTL HOLDINGS INC AND ALL OTHER ENTITIES LISTED ON "EXHIBIT A"

(Merchant's Legal Name)

Date: 03/16/2021

(Month) (Day) (Year)

Title: OWNER

DocuSigned by:

*Stefan Leer*

2282E2409B294A4 (Signature)

SIGN HERE

DS

*SL*

SIGN HERE

INITIALS

Print Name: STEFAN LEER

CONFIDENTIAL

SPIN-00007217

DocuSign Envelope ID: D7577685-4EBD-4B65-AB29-19C353CE58D49

## Bank Login Form



Dear Merchant,

Thank you for accepting an offer from Panthers Capital. We are looking forward to building a relationship with your business that allows you to reach and exceed your goals. Please note that prior to funding your account, our Underwriting department needs to see the most recent balance and activity information in real-time as a fraud countermeasure and in order to ensure the health of your business aligns with the terms of your offer. For your convenience, we have three secure options for you to choose from to complete this step. After being completed and executed, please email the agreement to your funding specialist.

**Please provide information required for read-only access\* to your business account.**

**Bank Portal Website:** _____

**Username:** _____

**Password:** _____

**Security Question/Answer 1:** _____

**Security Question/Answer 2:** _____

**Security Question/Answer 3:** _____

**Any other information necessary to access your account:** _____

_____



CONFIDENTIAL

SPIN-00007218

DocuSign Envelope ID: D7577685-4EBD-4D65-AB39-19C353CE8D49



## No Stacking Addendum                    PANTHERS CAPITAL

This Addendum entered on 03/16/2021 is to certify that I, _____ STEFAN LEER _____ as a representative of KTL HOLDINGS INC AND ALL OTHER ENTITIES LISTED ON "EXHIBIT A", am prohibited from initiating a cash advance or other loan products with another lender outside to Panthers Capital. Doing so will place me in a breach of contract and I will be liable for the entire amount owed to Panthers Capital immediately, plus attorneys' fees, costs, liquidated damages and a default fee of $2,500 or 20% of the contract amount, whichever is greater.

Amounts received from any subsequent merchant cash advances will be subject to collections by Panthers Capital to satisfy the outstanding account balance.

By their signatures below the parties agreed to be bound by this addendum.

**By:**    Name  STEFAN LEER  _____

Title:  OWNER  _____

**MERCHANT #2** (Print Name)

**By:**    Name  _____

Title:  _____

SIGN HERE ➡ — DocuSigned by: _Stefan Leer_ _____
22822F34095B294A1... (Signature)

SIGN HERE ➡ _____
(Signature)

**PANTHERS CAPITAL, LLC**

**By:**

# NO STACKING ADDENDUM



SIGN HERE ➡ — DS _SL_ _____
INITIALS

**This authorization is to remain in full force and effect until Panthers Capital receives written notification from the Merchant of its termination in such time and in such manner to afford Panthers Capital a reasonable opportunity to act on it. Revocation of this authorization prior to remittance of the balance owed pursuant to the Agreement shall constitute a breach thereunder.**

DocuSign Envelope ID: D7577685-4EBD-4D65-AB39-19C353CE8D49

# ACH Authorization Form


**PANTHERS CAPITAL**

*All information on this form is re quired unless otherwise noted.*

## BUSINESS AUTHORIZED TO DEBIT/CREDIT ACCOUNT

PANTHERS CAPITAL, LLC
Authorized Business Name

Authorized Business Phone Number

Authorized Business Address

City

State

Zip

## ACCOUNT HOLDER INFORMATION

STEFAN LEER
Account Holder Full Name

Account Holder DBA Name (If Business Account)

Phone Number

Account Holder Address

## ACCOUNT HOLDER BANK INFORMATION

Account Holder Bank Name

Branch City

State

Zip

How to find your Routing and Account Numbers on a check

⑆ 123456789 ⑆ 1234567890123 ⑈
Bank Routing Code        Bank Account Number

Bank Routing Number (9 digits)

Bank Account Number

## TRANSACTION INFORMATION

Goods Purchased/Services Rendered

Amount of Transaction

03/16/2021
Effective Date

| On time | Recurring |
|---------|-----------|
| Rate_____ | |
| No. of Transactions_____ | Or Open Ended |

## AUTHORIZATION

In exchange for products and/or services listed above the undersigned hereby authorizes:

to electronically draft via Automated Clearing House system the amounts indicated above from the account identified above. This authority will continue until withdrawn in writhing by the above-listed account holder. The undersigned individual hereby certifies that he/she is duly authorized to execute this form on behalf of the above-listed account holder. The above-listed account holder acknowledges that it is subject a $25 reject fee if items are returned for insufficient funds.

STEFAN LEER
Name of Account Holder

By: *Stefan leer*
Signature of Account Holder
2282E2960B294A4...

OWNER
Title of Account Holder

03/16/2021
Date

SIGN HERE ➡

DS
*SL*
INITIALS

CONFIDENTIAL

SPIN-00007220

# Balance Transfer Form

 **PANTHERS CAPITAL**

**Merchant Legal Name ("Merchant"):**  STEFAN LEER

**Merchant Title:**  OWNER

**Business Legal Name ("Business"):**  KTL HOLDINGS INC AND ALL OTHER ENTITIES LISTED ON "EXHIBIT A"

**DBA:**  KTL HOLDINGS INC

**Physical Address:**  4511 GOLDEN FOOTHILLS PKWY SUITE 1

**City:**  EL DORADO HILLS

**State:**  CA

**Zip Code:**  95762

**Date:**  03/16/2021

**Panthers Capital, LLC**
1010 BROADWAY SUITE 104
WOODMERE NY 11598

**Date of previous secured agreement:** _____

**Remaining RTR balance:** _____

To Whom It May Concern:

I, Merchant, on behalf of Business, hereby authorize Panthers Capital, LLC to debit the remaining RTR balance which is currently due and owing to Panthers Capital, LLC pursuant to the previous secured merchant agreement, entered into by and between Panthers Capital, LLC and business.

I acknowledge that as a result of the above-referenced debit, the amount paid to business by Panthers Capital, LLC pursuant to the new secured agreement will be reduced by the amount of the remaining RTR.

Thank you,

SIGN HERE **By:** _____ DocuSigned by: _Stefan leer_ _____
**Merchant Legal Name:** STEFAN LEER 2282E2409B294A4...

**Title:** OWNER _____

SIGN HERE ┌─DS  SL
INITIALS

# EXHIBIT A

LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER

A BLANKET SECURITY INTEREST:

KTL HOLDINGS INC

KINETIC INSURANCE SOLUTIONS INC

EL DORADO HILLS INSURANCE SOLUTIONS INC

GENESIS LS FUND LLC

LONEWOLF INSURANCE SERVICES INC

GOLDEN FOOTHILL INS SERVICES LLC

ELDO INVESTMENTS LLC

Buyer may file a UCC-1 financing statement with the appropriate Secretary of State(s)

, reflecting a blanket security interest in the assets of the above-listed entities.

Dated: March 16, 2021

By: _____ DocuSigned by:

*Stefan Leer*

2282E2409B294A4...

STEFAN LEER

CONFIDENTIAL

SPIN-00007222

CAUSE NO. _____

| | | |
|---|---|---|
| PANTHERS CAPITAL | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | NO. _____ |
| | § | |
| KTL HOLDINGS INC | § | |
| KINETIC INSURANCE SOLUTIONS INC | § | |
| EL DORADO HILLS INSURANCE SOLUTIONS INC | § | |
| GENESIS LS FUND LLC | § | |
| LONEWOLF INSURANCE SERVICES INC | § | |
| GOLDEN FOOTHILL INS SERVICES LLC | § | |
| ELDO INVESTMENTS LLC | § | |
| STEFAN LEER | § | HARRIS COUNTY, TEXAS |

## AGREED JUDGMENT

On this day came to be considered the above-styled and numbered cause, wherein Plaintiff is PANTHERS CAPITAL and Defendants are KTL HOLDINGS INC, KINETIC INSURANCE SOLUTIONS INC, EL DORADO HILLS INSURANCE SOLUTIONS INC, GENESIS LS FUND LLC, LONEWOLF INSURANCE SERVICES INC, GOLDEN FOOTHILL INS SERVICES LLC, ELDO INVESTMENTS LLC and STEFAN LEER ("**Defendants**"). The Court, after having considered the pleadings, finds that Plaintiff is entitled to judgment as provided for herein. It is therefore,

ORDERED that Plaintiff have and recover judgment against Defendants in the amount of $ 149,900.00. It is further,

ORDERED that Plaintiff have and recover attorney's fees in the sum of $ 14,990.00.

This judgment is final and appealable.

Signed this _____ day of _____, 20\_\_\_.

CONFIDENTIAL

SPIN-00007223

_____
JUDGE PRESIDING

**APPROVED AND ENTRY REQUESTED:**

DocuSigned by:

_Stefan Leer_
_____
STEFAN LEER
Individually and as Owner of
KTL HOLDINGS INC
KINETIC INSURANCE SOLUTIONS INC
EL DORADO HILLS INSURANCE SOLUTIONS INC
GENESIS LS FUND LLC
LONEWOLF INSURANCE SERVICES INC
GOLDEN FOOTHILL INS SERVICES LLC
ELDO INVESTMENTS LLC

CONFIDENTIAL

SPIN-00007224