DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A



## SECURED MERCHANT AGREEMENT

**Agreement dated** 3/25/21 **between BMF Advance, LLC ("BAL") and the merchant listed below ("the Merchant").**

**Merchant's Legal Name:** GOLDEN FOOTHILL INSURANCE SERVICES LLC AND ALL OTHER ENTITIES LISTED ON "EXHIBIT A"

**D/B/A:** GOLDEN FOOTHILL INSURANCE SERVICES

**Physical Address:** 4511 GOLDEN FOOTHILL PKWY

**City:** EL DORADO    **State:** CA    **Zip:** 95762

☑ Same as Physical Address

**Mailing Address:** 4511 GOLDEN FOOTHILL PKWY

**City:** EL DORADO    **State:** CA    **Zip:** 95762

**Type of Entity** (check one): ☐ Corporation ☑ Limited Liability Company ☐ Limited Liability Partnership ☐ Limited Partnership ☐ Sole Proprietor

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to BAL (making BAL the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to BAL.

Merchant is selling a portion of a future revenue stream to BAL at a discount, not borrowing money from BAL, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by BAL. The Remittance is a good faith estimate of (a) Purchased Percentage multiplied by (b) the daily average revenues of Seller during the previous calendar month divided by (c) the number of business days in the calendar month. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. BAL is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and BAL assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give BAL a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4.

BAL will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, BAL (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as BAL receives payment in full of the Purchased Amount. Merchant hereby authorizes BAL to ACH debit the Agreed Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. BAL's payment of the Purchase Price shall be deemed the acceptance and performance by BAL of this Agreement. Merchant understands that it is responsible for ensuring that the Agreed Remittance to be debited by BAL remains in the Account and will be held responsible for any fees incurred by BAL resulting from a rejected ACH attempt or an Event of Default. BAL is not responsible for any overdrafts or rejected transactions that may result from BAL's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between BAL and Merchant, upon the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A

| PURCHASE PRICE: | $400,000.00 | SPECIFIED PERCENTAGE: | 10% % | RECEIPTS PURCHASED AMOUNT: | $599,600.00 |
|---|---|---|---|---|---|

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM" HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

**MERCHANT #1** (Print Name)

**By:** First Name STEFAN J    Last Name LEER

Title: OWNER

*DocuSigned by:* Stefan Leer — C3E57BC8474C4BB...

**MERCHANT #2** (Print Name)

**By:** First Name    Last Name

Title:

**OWNER/GUARANTOR #1** (Print Name)

**By:** First Name STEFAN J    Last Name LEER

Title: OWNER

*DocuSigned by:* Stefan Leer — C3E57BC8474C4BB...

**OWNER/GUARANTOR #2** (Print Name)

**By:** First Name    Last Name

Title:

**BMF Advance, LLC**
**By (Company Officer):**    **Sales Associate Name (Signature):**

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

Rev 09/18

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A

## MERCHANT AGREEMENT TERMS AND CONDITIONS

### 1    TERMS OF ENROLLMENT IN PROGRAM

**1.1 Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to BAL with a Bank acceptable to BAL to obtain electronic fund transfer services for the Account, and    (B) if applicable, execute an agreement acceptable to BAL with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide BAL and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes BAL and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to BAL for the receipts as specified herein and to pay such amounts to BAL. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by BAL or not. This additional authorization is not a waiver of BAL's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which BAL did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of BAL.

**1.2 Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by BAL as per the terms of this Agreement.

**1.3 Future Purchase of Increments.** Subject to the terms of this Agreement, BAL offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. BAL reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion.

**1.4 Adjustments to the Remittance.** If an Event of Default has not occurred, every two (2) calendar weeks after the funding of the Purchase Price to Merchant, Merchant may give notice to BAL to request a decrease in the Remittance. The amount shall be decreased if the amount received by BAL was more than the Purchased Percentage of all revenue of Merchant since the date of this Revenue Purchase Agreement. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks. Seller shall provide BAL with viewing access to their bank account as well as all information reasonably requested by BAL to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

**1.5 Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize BAL and its agents to investigate their financial responsibility and history, and will provide to BAL any authorizations, bank or financial statements, tax returns, etc., as BAL deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. BAL is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.6 Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide BAL with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide BAL with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from BAL.

**1.7 Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by BAL for monies owed to BAL from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by BAL.

**1.8 No Liability.** In no event will BAL be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of BAL's attorney's fees and expenses resulting therefrom.

**1.9 Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, BAL, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**1.10 Sale of Receipts.** Merchant and BAL agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase

Price is not intended to be, nor shall it be construed as a loan from BAL to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. BAL has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to BAL in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that BAL has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and BAL shall promptly refund to Merchant any interest received by BAL in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that BAL not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.11 Power of Attorney.** Merchant irrevocably appoints BAL as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to BAL from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to  BAL; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which BAL may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by and from Merchant and BAL is authorized to use Merchant's funds to pay for same; and (vii) BAL shall have the right, without waiving any of its rights and remedies and without notice to Merchant or any Owner/Guarantor, to notify any credit card processor of the sale of future payment rights and re-direct the remittance of daily settlements to an account of BAL's choosing in order to settle all obligations due to BAL under this Agreement.

**1.12 Protections against Default.** The following Protections 1 through 8 may be invoked by BAL immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of  checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the BAL electronic check processor;  (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to BAL; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of BAL, and (ii) the written agreement of any BAL or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to BAL; (e) Merchant takes any action, fails to take any action, or offers any incentive--economic or otherwise--the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; or (f) Merchant fails to provide BAL with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from BAL. These protections are in addition to any other remedies available to BAL at law, in equity or otherwise pursuant to this Agreement.

 **INITIALS:** ⌐SL

Rev 09/18

Case 1:24-cv-08515-AS    Document 160-28    Filed 05/26/26    Page 3 of 15

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A

**Protection 1.** The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2.** BAL may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).

**Protection 3.** Merchant hereby authorizes BAL to execute in the name of the Merchant a Confession of Judgment in favor of BAL in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, BAL may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.

**Protection 4.** BAL may enforce its security interest in the Collateral.

**Protection 5.** The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to BAL from Merchant.

**Protection 6.** BAL may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if BAL recovers a Judgment against Merchant, Merchant shall be liable for all of BAL's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 7.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to BAL. Upon breach of any provision in this Agreement, BAL may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. BAL may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to BAL.

**1.13 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes BAL to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that BAL obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against BAL or any of its affiliates relating to any (i)investigation undertaken by or on behalf of BAL as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.14 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by BAL, including this Agreement and any other BAL documents (collectively, "Confidential Information") are proprietary and confidential information of BAL. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of BAL to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles BAL to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

**1.15 Publicity.** Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes BAL to use its, his or her name in listings of clients and in advertising and marketing materials.

**1.16 D/B/A's.** Merchant hereby acknowledges and agrees that BAL may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between BAL and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**2     REPRESENTATIONS, WARRANTIES AND COVENANTS**
Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

**2.1Financial Condition and Financial Information.** Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to BAL, and future statements which will be furnished hereafter at the discretion of BAL, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise BAL of any material adverse change in their financial condition, operation or ownership. BAL may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to BAL within five business days after request from BAL. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Use of Funds.** Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

**2.5 Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without BAL's prior written consent. Any such changes shall be a material breach of this Agreement.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and BAL, nor shall Merchant change any of its places of business without prior written consent by BAL.

**2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis if applicable.

**2.8 Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from BAL to Merchant, execute, acknowledge and deliver to BAL and/or to any other person, firm or corporation specified by BAL, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney nor filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Unencumbered Receipts.** Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of BAL.

**2.11 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.12 Defaults under Other Contracts.** Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.13 Good Faith.** Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling BAL the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

**3     EVENTS OF DEFAULT AND REMEDIES**
**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a) Merchant or Guarantor shall violate any term or covenant in this Agreement;

(b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c) the sending of notice of termination by Merchant or verbally notifying BAL of its intent to breach this Agreement;

(d) the Merchant fails to give BAL 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;

(e) Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by seller to any other party.

(f) Merchant shall transfer or sell all or substantially all of its assets;

(g) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(h) Merchant shall use multiple depository accounts without the prior written consent of BAL

(i) Merchant shall change its depositing account without the prior written consent of BAL; or

(j) Merchant shall close its depositing account used for ACH debits without the prior written consent of BAL

 **INITIALS:** SL

Rev 09/18

Case 1:24-cv-08515-AS    Document 160-28    Filed 05/26/26    Page 4 of 15

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A

(k) Merchant's bank returns a code other than NSF cutting BAL from its collections
(l) Merchant shall default under any of the terms, covenants and conditions of any other agreement with BAL.

**3.2 Limited Personal Guaranty** In the Event of a Default  BAL will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to BAL for all of BAL's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

**3.3 Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, BAL may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy. All rights, powers and remedies of BAL in connection with this Agreement may be exercised at any time by BAL after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4 Costs.** Merchant shall pay to BAL all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of BAL`s remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.5 Required Notifications.** Merchant is required to give BAL written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give BAL seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## 4   MISCELLANEOUS

**4.1 Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by BAL.

**4.2 Assignment.** BAL may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3 Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to BAL shall become effective only upon receipt by BAL. Notices to Merchant shall become effective three days after mailing.

**4.4 Waiver Remedies.** No failure on the part of BAL to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof   or the exercise of any other right.   The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5 Binding Effect:** Governing Law, Venue and Jurisdiction. This Agreement shall be binding upon and inure to the benefit of Merchant, BAL and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of BAL which consent may be withheld in BAL's sole discretion. BAL reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if BAL so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by BAL to transfer such proceeding to an Acceptable Forum.

**4.6 Survival of Representation** etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7 Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.8 Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9 Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and BAL and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10 JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.11 CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE  PARTY WHO  INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR  OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH  THE CLASS OR REPRESENTATIVE ACTION.

**4.12 Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

INITIALS: SL

DS

Rev 09/18

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A

## BMF Advance, LLC - SECURITY AGREEMENT AND GUARANTY

**Merchant's Legal Name:** GOLDEN FOOTHILL INSURANCE SERVICES LLC

**D/B/A:** GOLDEN FOOTHILL INSURANCE SERVICES

**Physical Address:** 4511 GOLDEN FOOTHILL PKWY

**City:** EL DORADO          **State:** CA          **Zip:** 95762

**Federal ID#:** ▮▮▮▮▮▮

## SECURITY AGREEMENT

Security Interest. This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to BAL a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to BAL under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to BAL upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover BAL's entitlements under this Agreement, BAL is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of BAL's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, BAL or an affiliate of BAL. BAL is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by BAL without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. BAL shall have the right to notify account debtors at any time.  Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, BAL has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets.

With respect to such security interests and liens, BAL will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity.  Merchant will obtain from BAL written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and BAL is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by BAL. Merchant and Guarantor(s) agree(s) to execute and deliver to BAL such instruments and documents BAL may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement.  BAL is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to BAL under any other agreement between Merchant or Guarantor(s) and BAL (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as BAL deems necessary to perfect or maintain BAL's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes BAL to file any financing statements deemed necessary by BAL to perfect or maintain BAL's security interest. Merchant and Guarantor(s) shall be liable for, and BAL may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by BAL in protecting, preserving and enforcing BAL's security interest and rights.



INITIALS: [ SL ]

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN DAND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

Rev 09/18

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A



## GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

BAL as an additional inducement for BAL to enter into this Agreement, the undersigned Guarantor(s) hereby provides BAL with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement **unless** Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to BAL in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations").Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor Waivers.** In the event of a breach of the above, BAL may seek recovery from Guarantors for all of BAL's losses and damages by enforcement of BAL's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral BAL may hold pursuant to this Agreement or any other guaranty.

BAL does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) BAL's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to BAL. In addition, BAL may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to BAL; (ii) release Merchant from its obligations to BAL; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to BAL under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that BAL must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (iii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**MERCHANT #1** (Print Name)

By: \_\_STEFAN J LEER , OWNER_____

(Print Name and Title)

SSN#: ▉▉▉▉▉_____

Driver's License Number: _____

DocuSigned by:

*Stefan Leer*
C3E57BC8474C4BB...

**MERCHANT #2** (Print Name)

By: _____

(Print Name and Title)

SSN#: _____

Driver's License Number: _____

**OWNER/GUARANTOR #1** (Print Name)

By: \_\_STEFAN J LEER , OWNER_____

(Print Name and Title)

SSN#: ▉▉▉▉▉_____

Driver's License Number: _____

DocuSigned by:

*Stefan Leer*
C3E57BC8474C4BB...

**OWNER/GUARANTOR #2** (Print Name)

By: _____

(Print Name and Title)

SSN#: _____

Driver's License Number: _____

Rev 09/18

Case 1:24-cv-08515-AS     Document 160-28     Filed 05/26/26     Page 7 of 15

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A



## APPENDIX A: THE FEE STRUCTURE:

A. Origination Fee:  $295.00 to cover cost of Origination.

B. Underwriting Fee:  $499.00 or 12% of the proposed funding amount to cover underwriting and related expenses. This fee is deemed earned upon Seller signing the contracts. If for whatever reason, Funder determines, in its sole capacity, to cancel the deal, Merchant agrees that Funder may withdraw this non-refundable underwriting fee.

C. NSF Fee (Standard):  $50.00 (each)

D. Default Fee: $5,000.00 when Merchant breaches any terms of this agreement.

E. Blocked Account Fee: $5,000.00 when Merchant breaches the agreement by placing a Stop-Payment on Funder's ACH or closes the Account

F. Bank Change Fee: $50.00 when Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

G. Wire Fee: Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.

H. ACH Program Fee:  $299.00  per month for the duration of the agreement.

I. Stacking Fee: 10% of Outstanding RTR or $25,000 whichever is greater. Additionally, taking on additional financing will be deemed a breach of this agreement upon which Funder may invoke all of its rights per the terms of the agreement including but not limited to filing the Confession of Judgment and executing thereon.

J. UCC Fee: $195.00

K. Miscellaneous Service Fees: Merchant agrees that it shall pay for certain services related to the origination and maintenance of the accounts. Merchant shall received their funding electronically to their Designated Account and shall be charged $50.00 per Fed Wire or $0.00 for an ACH.

**MERCHANT #1** (Print Name)

**By:** First Name STEFAN J          Last Name LEER

Title: OWNER

DocuSigned by:
Stefan Leer
C3E57BC8474C4BB...

**MERCHANT #2** (Print Name)

**By:** First Name          Last Name

Title:

Rev 09/18

**FILED: NEW YORK COUNTY CLERK 06/24/2022 10:27 AM**
INDEX NO. 650582/2022
NYSCEF DOC. NO. 89
Case 1:24-cv-08515-AS    Document 160-28    Filed 05/26/26    Page 8 of 15
RECEIVED NYSCEF: 06/24/2022

Doc Sign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A



## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

**DEFINITIONS:**

**BAL:** BMF Advance, LLC

**Seller:** GOLDEN FOOTHILL INSURANCE SERVICES LLC
(Merchant's Legal Name)

**Merchant Agreement:** Merchant Agreement between BAL and Seller, dated as of 3/25/21

**Designated Checking Account:**

| | | |
|---|---|---|
| **Bank Name:** | | **Branch:** |
| **Tax ID:** | ████████ | |
| **ABA: Routing:** | | **DDA: Account:** |

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Seller attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Seller should keep a copy of this important legal document for Seller's records.**

DISBURSMENT OF ADVANCE PROCEEDS. By signing below, Seller authorizes BAL to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Seller also authorizes BAL to collect amounts due from Seller under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

**In the amount of: $** 25,000.00          Daily

(or) Percentage of each Banking Deposit: _____ %

on the Following Days: _____ Monday-Friday _____

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Seller's financial institution for any reason, including without limitation insufficient funds, Seller understands that BAL may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Seller also authorizes BAL to initiate ACH entries to correct any erroneous payment transaction.

**MISCELLANEOUS.** BAL is not responsible for any fees charged by Seller's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association).

This Authorization Agreement is to remain in full force and effect until BAL has received written notification from Seller at the address set forth below at least 5 banking days prior of its termination to afford BAL a reasonable opportunity to act on it. The individual signing below on behalf of Seller certifies that he/she is an authorized signer on the Designate Checking Account. Seller will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Seller requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

**Seller:** GOLDEN FOOTHILL INSURANCE SERVICES LLC
(Merchant's Legal Name)

**MERCHANT #1** (Print Name)

**By:** Name: STEFAN J LEER          Date: 3/25/2021

Title: OWNER          *DocuSigned by:* Stefan Leer
C3E57BC8474C4BB...

**MERCHANT #2** (Print Name)

**By:** Name: _____          Date: _____

Title: _____

Rev 09/18

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A



Dear Merchant,

Thank you for accepting an offer from BMF Advance, LLC. We are looking forward to building a relationship with your business that allows you to reach and exceed your goals. Please note that prior to funding your account, our Underwriting department needs to see the most recent balance and activity information in real-time as a fraud countermeasure and in order to ensure the health of your business aligns with the terms of your offer. For your convenience, we have three secure options for you to choose from to complete this step. After being completed and executed, please email the agreement to your funding specialist.

**Please provide information required for read-only access\* to your business account.**

*\*Be sure to indicate capital or lower case letters.*

**Bank Portal Website:** _____

**Username:** _____

**Password:** _____

**Security Question/Answer 1:** _____

**Security Question/Answer 2:** _____

**Security Question/Answer 3:** _____

**Any other information necessary to access your account:** _____

INITIALS: SL

Rev 09/18

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A



## NO STACKING ADDENDUM

This Addendum entered on 3/25/21 is to certify that I, <u>STEFAN  J    LEER</u>  as a representative of <u>GOLDEN FOOTHILL INSURANCE SERVICES LLC</u> , am prohibited from initiating a cash advance or other loan products with another lender outside to BMF Advance, LLC. Doing so will place me in a breach of contract and I will be liable for the entire amount owed to BMF Advance, LLC immediately, plus attorneys' fees, costs, liquidated damages and a default fee of $25,000 or 20% of the contract amount, whichever is greater.

Amounts received from any subsequent merchant cash advances will be subject to collections by BMF Advance, LLC to satisfy the outstanding account balance.

By their signatures below the parties agreed to be bound by this addendum.

**MERCHANT #1** (Print Name)

**By:** First Name <u>STEFAN J</u>        Last Name <u>LEER</u>

Title: <u>OWNER</u>

DocuSigned by:

*Stefan leer*

C3E57BC8474C4BB...

**MERCHANT #2** (Print Name)

**By:** First Name _____        Last Name _____

Title: _____

**\*\*This authorization is to remain in full force and effect until BMF Advance, LLC receives written notification from the Merchant of its termination in such time and in such manner to afford BMF Advance, LLC a reasonable opportunity to act on it. Revocation of this authorization prior to remittance of the balance owed pursuant to the Agreement shall constitute a breach thereunder.**

Rev 09/18

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A



## ADDENDUM

This Addendum is entered on 3/25/21 by and between, BMF Advance, LLC ("BAL") and <u>GOLDEN FOOTHILL INSURANCE SERVICES LLC</u> (the "Seller") and Funderslink, LLC.

Should any terms of this Addendum conflict with the Revenue Purchase Agreement dated 3/25/21 the terms of this Addendum shall govern and be controlling. Capitalized terms used herein, but not otherwise defined, shall have the same definition as in the Revenue Purchase Agreement.

Seller warrants that it understands that BAL must engage a third-party, namely Funderslink, LLC, to manage the ACH withdrawals, reporting and deal tracking. For this service, Seller agrees to pay Funderslink, LLC a nominal fee of $299.00 per month. This amount is due on the first day of the Agreement and every subsequent thirty days until the Purchased Amount is paid in full to BAL.

**MERCHANT #1** (Print Name)

**By:** First Name STEFAN J _____   Last Name LEER _____

Title: OWNER _____

DocuSigned by:

Stefan leer

C3E57BC8474C4BB...

**MERCHANT #2** (Print Name)

**By:** First Name _____   Last Name _____

Title: _____

Rev 09/18

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A



## ACH AUTHORIZATION FORM
*All information on this form is required unless otherwise noted.*

### BUSINESS AUTHORIZED TO DEBIT/CREDIT ACCOUNT:

BMF Advance, LLC
Authorized Business Name                           Authorized Business Phone Number

Authorized Business Address            City              State          Zip

### ACCOUNT HOLDER INFORMATION:

STEFAN J                    LEER                    GOLDEN FOOTHILL INSURANCE SERVICES
Account Holder First Name   Account Holder Last Name   Account Holder DBA Name (If Business Account)   Phone Number

Account Holder Address

### ACCOUNT HOLDER BANK INFORMATION:

Account Holder's Bank Name              Branch City              State          Zip

How to find your Routing and Account Numbers on a check

⑆ 123456789 ⑈ 12345678901 23 ⑆       ☐ Business Checking   ☐ Personal Checking   ☐ Savings
Bank Routing Code    Bank Account Number

Bank Routing Number (9 digits)          Bank Account Number

### TRANSACTION INFORMATION:

Goods Purchased/Services Rendered                      ☐ One-time    ☐ Recurring

                                    3/25/21          Rate _____
Amount of Transaction               Effective Date
                                                      No. of Transactions _____ or Open Ended ☐

### AUTHORIZATION:

In exchange for products and/or services listed above the undersigned hereby authorizes:

to electronically draft via the Automated Clearing House system the amounts indicated above from the account identified above. This authority will continue until withdrawn in writing by the undersigned account holder. The Undersigned hereby certifies that they are duly authorized to execute this form on behalf of the above listed account holder. I acknowledge that I am subject to a $25 reject fee if items are returned for insufficient funds.

DocuSigned by:

*Stefan Leer*
Signature of Account Holder
C3E57BC8474C4BB...

STEFAN J                    LEER                    OWNER                    3/25/2021
First Name of Account Holder   Last Name of Account Holder   Title of Account Holder   Date

Rev 09/18

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A



# BALANCE TRANSFER FORM

**Merchant Legal Name ("Merchant"):**   STEFAN J LEER

**Merchant Title:**   OWNER

**Business Legal Name ("Business"):**   GOLDEN FOOTHILL INSURANCE SERVICES LLC

**DBA:**   GOLDEN FOOTHILL INSURANCE SERVICES

**Physical Address:**   4511 GOLDEN FOOTHILL PKWY

**City:**   EL DORADO

**State:**   CA

**Zip Code:**   95762

**Date:**   3/25/21

**BMF Advance, LLC**
**1022 Avenue M.**
**Brooklyn, NY 11230**

**Date of new secured agreement:**   3/25/21

**Date of previous secured agreement:**

**Remaining RTR balance:**   $274,000.00

To Whom It May Concern:

I, Merchant, on behalf of Business, hereby authorize BMF Advance, LLC to debit the remaining RTR balance which is currently due and owing to BMF Advance, LLC pursuant to the previous secured merchant agreement, entered into by and between BMF Advance, LLC and business.

I acknowledge that as a result of the above-referenced debit, the amount paid to business by BMF Advance, LLC pursuant to the new secured agreement will be reduced by the amount of the remaining RTR.

Thank you,

**By:**   Stefan Leer
C3E57BC8474C4BB...

Merchant Legal Name:   STEFAN J LEER

Title:   OWNER

Rev 09/18

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A

**EXHIBIT B**

**ADDENDUM TO**
**THE FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT AND GUARANTY**

This **ADDENDUM TO THE FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT and GUARANTY (this "Addendum")**, dated 3/25/21 is entered into by and among **BMF ADVANCE** ("BMF") and

**Business Legal Name:** GOLDEN FOOTHILL INSURANCE SERVICES LLC
**D/B/A:** GOLDEN FOOTHILL INSURANCE SERVICES
**Address:** 4511 GOLDEN FOOTHILL PKWY STE 1, EL DORADO HILLS, CA 95762
**Form of Business Entity:** LLC          **EIN #:** ███████
("Seller #1"); and

**Business Legal Name:** LONEWOLF INSURANCE SERVICES INC
**D/B/A:** LONEWOLF INSURANCE SERVICES
**Address:** 4511 GOLDEN FOOTHILL PKWY STE 1, EL DORADO HILLS, CA 95762
**Form of Business Entity:** Corporation          **EIN #:** ███████
("Seller #2"); and

**Business Legal Name:** GENESIS LS FUND LLC
**D/B/A:** GENESIS LS FUND
**Address:** 4511 GOLDEN FOOTHILL PKWY STE 1, EL DORADO HILLS, CA 95762
**Form of Business Entity:** LLC          **EIN #:** ███████
("Seller #3"); and

**Business Legal Name:** EL DORADO HILLS INSURANCE SOLUTIONS INC
**D/B/A:** EL DORADO HILLS INSURANCE SOLUTIONS
**Address:** 4511 GOLDEN FOOTHILL PKWY STE 1, EL DORADO HILLS, CA 95762
**Form of Business Entity:** LLC          **EIN #:** ███████
("Seller #4"); and

**Business Legal Name:** KTL HOLDINGS INC
**D/B/A:** KTL HOLDINGS
**Address:** 4511 GOLDEN FOOTHILL PKWY STE 1, EL DORADO HILLS, CA 95762
**EIN #:** ███████
**Form of Business Entity:** Corporation          ("Seller #5").

*DocuSigned by:*
*Stefan Leer*
C3E57BC8474C4BB...                              ("Guarantor #1")
**Name:** STEFAN J LEER
**Email:** STEFAN@KTLHOLDING.COM
**Phone:** (210) 259-1648          **SSN:** ███████
**Title:** Owner/Agent/Manager

LIFEFACTOR I LLC                              DRVN Holdings LLC
EIN: ███████                                 EIN: ███████
4511 Golden Foothill Pkwy Ste 2              6009 WELCH AVE
El Dorado Hills, CA 95762-9804               FT WORTH, TX 76133

Page 1 of 3

DocuSign Envelope ID: EDB32D51-AB44-46E7-BECF-53E64D560C6A

# ACH/E-Check Authorization Form

All information on this form is required unless otherwise noted.

## Business Authorized to Debit/Credit Account:

**Spin Capital LLC**
Authorized Business Name

**732-608-4905**
Authorized Business Phone Number

**1460 Arboretum Pkwy**
Authorized Business Address

**Lakewood**
City

**NJ**
ST

Zip

## Account Holder Information:

**Stefan Leer**
Account Holder Name

**El Dorado Hills Insurance Solutions INC**
Account Holder DBA Name (If Business Account)

Account Holder Phone

**1300 Highland Ave #205**
Account Holder Address

**Manhattan Beach**
City

**CA**
ST

**90266**
Zip

## Account Holder s Bank Information:

**US Bank**
Account Holder's Bank Name

Branch City

ST

Zip

How to find your Routing and Account Numbers on a check:

⑈ 123456789 ⑈ 12345678901 23 ⑆
Bank Routing Code          Bank Account Number

■ Business    Checking
☐ Personal    Checking
☐ Savings

Bank Routing Number (9 digits)

Bank Account Number

## Transaction Information:

**Origination Fee**
Goods Purchased/Services Rendered

**$ 40,000**
Amount of Transaction

**3/25/2021**
Effective Date

■ One-time          ☐ Recurring

Rate _____

No. of Transactions **1** ___or Open Ended ☐

## Authorization:

In exchange for products and/or services listed above the undersigned hereby authorizes:

**Spin Capital LLC**

to electronically draft via the Automated Clearing House and/or E-Check system the amounts indicated above from the account identified above. This authority will continue until withdrawn in writing by the undersigned account holder. The Undersigned hereby certifies that they are duly authorized to execute this form on behalf of the above listed account holder. I acknowledge that I am subject to a $39 reject fee if items are returned for insufficient funds.

DocuSigned by

*Stefan Leer*
Signature of Account Holder

**Stefan Leer**
Name/Title of Account Holder

**3/25/2021**
Date