BUSINESS MERCHANT BMF FUNDING ———— SECURED MERCHANT AGREEMENT ————

Agreement dated  10/12/2018  between Business Merchant Funding ("BMF") and the merchant listed below ("the Merchant").

Merchant's Legal Name:  FTE NETWORKS,INC

D/B/A:  FTE NETWORKS

Physical Address:  999 VANDERBILT BEACH RD. STE 601

City:  NAPLES                State:  FL                Zip:  34108

☑ Same as Physical Address

Mailing Address:  999 VANDERBILT BEACH RD. STE 601

City:  NAPLES                State:  FL                Zip:  34108

Type of Entity (check one):  ☑ Corporation  ☐ Limited Liability Company  ☐ Limited Liability Partnership  ☐ Limited Partnership  ☐ Sole Proprietor

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to BMF (making BMF the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to BMF. The Purchased Amount shall be paid to BMF by Merchant's irrevocably authorizing only one depositing account acceptable to BMF (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as BMF receives payment in full of the Purchased Amount. Merchant hereby authorizes BMF to ACH Debit the specified remittances from the merchant's bank account on a daily basis and will provide BMF with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by BMF remains in the account and will be held responsible for any fees incurred by BMF resulting from a rejected ACH attempt or an event of default. (See Appendix A).

BMF is not responsible for any overdrafts or rejected transactions that may result from BMF's ACH debiting the specified amounts under the terms of this agreement. BMF will either (i) debit the Specified Percentage on a daily basis, or (ii) if a Specific Daily Amount is specified hereunder, then BMF shall debit the Specific Daily Amount on each business day, and upon the Merchant's request and receipt of the Merchant's monthly bank statements, BMF shall on or about the eighteenth day of each month reconcile the Merchant's account by either crediting or debiting the difference between the amount debited and the Specified Percentage, from or back to the Merchant's bank account so that the amount debited each month equals the Specified Percentage. BMF may, upon Merchant's request, adjust the amount of any payment due under this Agreement at BMF's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between BMF and Merchant, upon the violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

PURCHASE PRICE:  $500,000.00      SPECIFIED PERCENTAGE:  10%      RECEIPTS PURCHASED AMOUNT:  $729,500.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH ON PAGE 2, THE "MERCHANT SECURITY AGREEMENT" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS MERCHANT AGREEMENT.

MERCHANT #1 (Print Name)

By: First Name DAVID SCOTT        Last Name LETHEM

Title: OWNER

MERCHANT #2 (Print Name)

By: First Name MICHAEL C.        Last Name PALLESCHI

Title: OWNER

OWNER/GUARANTOR #1 (Print Name)

By: First Name DAVID SCOTT        Last Name LETHEM

Title: OWNER

OWNER/GUARANTOR #2 (Print Name)

By: First Name MICHAEL C.        Last Name PALLESCHI

Title: OWNER

BUSINESS MERCHANT FUNDING

By (Company Officer): _____        Sales Associate Name (Signature): _____

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to repay this obligation and that the information provided herein and in all of BMF documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and BMF and BMF shall be entitled to all remedies available under law. BMF may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to BMF. An investigative report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes BMF, its agents and representatives and any credit-reporting agency engaged by BMF, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to BMF as a consequence of this Agreement or for BMF's ability to determine Merchant's eligibility to enter into any future agreement with Company.

ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

**MERCHANT AGREEMENT TERMS AND CONDITIONS**

**I. TERMS OF ENROLLMENT IN PROGRAM**

1.1 **Merchant Deposit Agreement**. Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to BMF, and appoint a Bank acceptable to BMF, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide BMF and/or its authorized agent with all of the information, authorizations and passwords necessary to verify Merchant's receivables, receipts and deposits into the account. Merchant shall authorize BMF and/or it's agent to deduct the amounts owed to BMF for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to BMF by permitting BMF to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable absent BMF's written consent.

1.2 **Term of Agreement**. This Agreement shall have a term of one year. Upon the expiration of the term, this Agreement shall automatically renew for successive one-year terms, provided, however, that during the renewal term(s) Merchant may terminate this Agreement upon ninety days' prior written notice (effective upon receipt) to BMF, however, said termination of this Agreement shall not affect Merchant's responsibility to satisfy all outstanding obligations to BMF at the time of termination.Notwithstanding the foregoing, should Merchant elect to terminate this Agreement in accordance with this paragraph "1.2" herein, but Merchant shall fail to fully satisfy its obligation to BMF, then Merchant's termination shall have no effect, and this Agreement shall remain in full force and effect.

1.3 **Future Purchases**. BMF reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

1.4 **Financial Condition**. Merchant and Guarantor(s) authorize BMF and its agents to investigate their financial responsibility and history, and will provide to BMF any bank or financial statements, tax returns, etc., as BMF deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. BMF is authorized to update such information and financial profiles from time to time as it deems appropriate.

1.5 **Transactional History**. Merchant authorizes their bank to provide BMF with Merchant's banking and/or credit-card processing history to determine qualification or continuation in this program.

1.6 **Indemnification**. Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by BMF for monies owed to BMF from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by BMF.

1.7 **No Liability**. In no event will BMF be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and Guarantor(s).

1.8 **Reliance on Terms**. Section 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, BMF and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

1.9 **Sale of Receipts**. Merchant and BMF agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from BMF to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement equals the fair market value of such Receipts. BMF has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to BMF in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that BMF has charged or received interest hereunder in excess of the highest rate allowed by law, then the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and BMF shall promptly refund to Merchant any interest received by BMF in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that BMF not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

1.10 **Power of Attorney**. Merchant irrevocably appoints BMF as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to BMF from Processor, or in the case of a violation by Merchant of Section 1.12 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection

with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to BMF; and (v) to file any claims or take any action or institute any proceeding which BMF may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

1.11 **Protections Against Default**. The following Protections 1 through 8 may be invoked by BMF, immediately and without notice to merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the BMF electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to BMF; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of BMF, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to BMF; or (e) Merchant takes any action, fails to take any action, or offers any incentive --economic or otherwise --the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to BMF at law, in equity or otherwise pursuant to this Agreement. **Protection 1**: The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2**. BMF may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). **Protection 3**. Merchant shall, upon execution of this Agreement, deliver to BMF an executed confession of judgment in favor of BMF in the amount of the Purchase Amount stated in the Agreement. Upon breach of any provision in this paragraph 1.11, BMF may enter that confession of judgment as a judgment with the Clerk of the Court and execute thereon. **Protection 4**. BMF may enforce its security interest in the Collateral identified in the Security Agreement herein. **Protection 5**. BMF may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which BMF shall recover judgment against Merchant, Merchant shall be liable for all of BMF's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 6**. Merchant shall, upon execution of this Agreement, deliver to BMF an executed assignment of lease of Merchant's premises in favor of BMF. Upon breach of any provision in this paragraph 1.12, BMF may exercise its rights under such assignment of lease. **Protection 7**. BMF may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the Specified Percentage or Specific Daily Amount. **Protection 8**. BMF shall have the right, without waiving any of its rights and remedies and without notice to Merchant and/ or Guarantor(s), to notify Merchant's credit card processor of the sale of Receipts hereunder and to direct such credit card processor to make payment to BMF of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant hereby grants to BMF an irrevocable power-of-attorney, which power-of-attorney shall be coupled with an interest, and hereby appoints BMF or any of BMF's representatives as Merchant's attorney in- fact, to take any and all action necessary to direct such new or additional credit card processor to make payment to BMF as contemplated by this Section.

1.12 **Protection of Information**. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes BMF to disclose information concerning Merchant's and each Owner's and/ or Guarantor(s)'s credit standing and business conduct only, to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant, Guarantor(s) and Owner(s) hereby waives to the maximum extent permitted by law any claim for damages against BMF or any of its affiliates relating to any (i) investigation undertaken by or on behalf of BMF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.13 **Confidentiality**. Merchant understands and agrees that the terms and conditions of the products and services offered by BMF, including this Agreement and any other BMF documentations (collectively, "Confidential Information") are proprietary and confidential information of BMF. Accordingly unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of BMF to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.13.

1.14 **D/B/A's**. Merchant hereby acknowledges and agrees that BMF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between BMF and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

*Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:*

2.1 **Financial Condition and Financial Information**. Its bank and financial statements, copies of which have been furnished to BMF, and future statements which will be furnished hereafter at the discretion of BMF, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise BMF of any material adverse change in its financial condition, operation or ownership. BMF may request statements at any time during the performance of this Agreement and the Merchant shall provide them to BMF within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

2.2 **Governmental Approvals**. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

2.3 **Authorization**. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 **Insurance**. Merchant will maintain business-interruption insurance naming BMF as loss payee and additional insured in amounts and against risks as are satisfactory to BMF and shall provide BMF proof of such insurance upon request.

2.5 **Electronic Check Processing Agreement**. Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without BMF's prior written consent. Any such change shall be a material breach of this Agreement.

2.6 **Change of Name or Location**. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and BMF or change any of its places of business.

2.7 **Estoppel Certificate**. Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from BMF to Merchant, execute, acknowledge and deliver to BMF and/or to any other person, person firm or corporation specified by BMF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.8 **No Bankruptcy**. As of the date of this Agreement, Merchant does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing, Protections 2 and 3 are immediately invoked.

2.9 **Working Capital Funding**. Merchant shall further encumber the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales, with any party other than BMF.

2.10 **Unencumbered Receipts**. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of BMF.

2.11 **Business Purpose**. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.12 **Default Under Other Contracts**. Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

## III. EVENTS OF DEFAULT AND REMEDIES

3.1 **Events of Default**. The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) the sending of notice of termination by Guarantor(s); (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (h) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (i) Merchant shall use multiple depository accounts without the prior written consent of BMF; (j) Merchant shall change its depositing account without the prior written consent of BMF; (k) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (l) Merchant shall default under any of the terms, covenants and conditions of any other agreement with BMF; or (m) Merchant shall fail to deposit its Receipts into the Account.

3.2 **Remedies**. In case any Event of Default occurs and is not waived pursuant to Section 4.4.1 hereof, BMF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of BMF in connection with this Agreement may be exercised at any time by BMF after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3 **Costs**. Merchant shall pay to BMF all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of BMF's remedies set forth in Section 4.2 above, including but not limited to court costs and attorneys' fees.

3.4 **Required Notifications**. Merchant is required to give BMF written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give BMF seven (7) days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## IV. MISCELLANEOUS

4.1 **Modifications; Agreements**. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

4.2 **Assignment**. BMF may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3 **Notices**. All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 **Waiver Remedies**. No failure on the part of BMF to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 **Binding Effect; Governing Law, Venue and Jurisdiction**. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of BMF which consent may be withheld in BMF's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if BMF so elects, be instituted in any court sitting in New York State, (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

4.6 **Survival of Representation, etc**. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.7 **Severability**. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.8 **Entire Agreement**. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereto embody the entire agreement between Merchant and BMF and supersede all prior agreements and understandings relating to the subject matter hereof.

4.9 **JURY TRIAL WAIVER**. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.10 **CLASS ACTION WAIVER**. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.11 **Facsimile Acceptance**. Facsimile signatures shall be deemed acceptable for all purposes.

 INITIALS: _____

## BUSINESS MERCHANT FUNDING - SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name:  FTE NETWORKS, INC

D/B/A:  FTE NETWORKS

Physical Address:  999 VANDERBILT BEACH RD. STE 601

City: NAPLES                                    State: FL          Zip: 34108

Federal ID#: REDACTED

### SECURITY AGREEMENT

Security Interest. To secure Merchant's payment and performance obligations to BMF under the Merchant Agreement (the "Factoring Agreement"), Merchant hereby grants to BMF a security interest in (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC ("a" and "b" collectively, the "Collateral").

Cross-Collateral. To secure Guarantor's payment and performance obligations to BMF under this Security Agreement and Guaranty (the "Agreement"), Guarantor hereby grants BMF an additional security interest in    _____

_____

_____

(the "Additional Collateral"). Guarantor understands that BMF will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Merchant and Guarantor each acknowledge and agree that any security interest granted to BMF under any other agreement between Merchant or Guarantor and BMF (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as BMF deems necessary to perfect or maintain BMF's first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes BMF to file any financing statements deemed necessary by BMF to perfect or maintain BMF's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to BMF with respect to the Collateral, the Additional Collateral and the Cross- Collateral, and that any subsequent lienor may be tortiously interfering with BMF's rights. Merchant and Guarantor shall be liable for and BMF may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by BMF in protecting, preserving and enforcing BMF's security interest and rights. Merchant further acknowledges that BMF may use another legal name and/ or D/B/A when designating the Secured Party, when BMF files the above-referenced financing statement(s).

Negative Pledge. Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

Consent to Enter Premises and Assign Lease. BMF shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, BMF may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that BMF may enter into an agreement with Merchant's landlord giving BMF the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

Remedies. Upon any Event of Default, BMF may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

### GUARANTY

Personal Guaranty of Performance. The undersigned Guarantor(s) hereby guarantees to BMF, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) at the time Merchant admits its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts.

Guarantor Waivers. In the event that Merchant fails to make a payment or perform any obligation when due under the Merchant Agreement, BMF may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral BMF may hold pursuant to this Agreement or any other guaranty.

BMF does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) BMF's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to BMF. In addition, BMF may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to BMF; (ii) release Merchant from its obligations to BMF; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to BMF under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation ; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that BMF must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/ She has consulted with counsel of its choice or has decided not to avail himself/ herself of that opportunity.

Joint and Several Liability. The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

BUSINESS
MERCHANT
BMF FUNDING

## SECURITY AGREEMENT AND GUARANTY

**MERCHANT #1** (Print Name)

By: First Name DAVID SCOTT      Last Name LETHEM

Title: OWNER

SSN#: REDACTED

Driver's License Number: _____

SIGN HERE →

**MERCHANT #2** (Print Name)

By: First Name MICHAEL C.      Last Name PALLESCHI

Title: OWNER

SSN#: REDACTED

Driver's License Number: _____

SIGN HERE →

**OWNER/GUARANTOR #1** (Print Name)

By: First Name DAVID SCOTT      Last Name LETHEM

Title: OWNER

SSN#: REDACTED

Driver's License Number: _____

SIGN HERE →

**OWNER/GUARANTOR #2** (Print Name)

By: First Name MICHAEL C.      Last Name PALLESCHI

Title: OWNER

SSN#: REDACTED

Driver's License Number: _____

SIGN HERE →

BUSINESS
MERCHANT
BMF FUNDING

Dear Merchant,

Thank you for accepting this offer from Business Merchant Funding. We look forward to being your funding partner for as long as you need.

Daily ACH Program:
Business Merchant Funding will require viewing access to your bank account, each business day, in order to calculate the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it. Business Merchant Funding will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.
*Be sure to indicate capital or lower case letters.

Name of Bank: _____REDACTED_____

Bank Portal Website: _____

Username: _____

Password: _____

Security Question/Answer 1: _____

Security Question/Answer 2: _____

Security Question/Answer 3: _____

Any other information necessary to access your account: _____

_____

Please note: In the event that we are unable to access your account, we will take a daily estimated payment. An additional $39 fee will be assessed for each day we don't have access.

**BUSINESS
MERCHANT
BMF FUNDING**

## APPENDIX A: THE FEE STRUCTURE:

### A. Origination Fee
$295.00 -- to cover underwriting and related expenses.

### B. ACH Program Fee
$395.00 or 12% of the funded amount -- The ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs.

### C. NSF Fee (Standard)
$35.00 (each) Up to TWO TIMES ONLY before a default is declared.

### D. Rejected ACH
$100.00 -- If a merchant directs the bank to reject our debit ACH.

### E. Bank Change Fee
$50.00 -- If a merchant requires a change of account to be debited requiring us to adjust our system.

### F. Blocked Account
$2,500.00 -- If a merchant blocks BMF's ACH debit of the Account, bounces more than 4 debits of the Account, or simultaneously uses multiple bank accounts or credit-card processors to process its receipts.

### G. Default Fee
$2,500.00 -- If a merchant changes bank accounts or switches to another creditcard processor without BMF's consent, or commits another default pursuant to the Agreement.

### H. Miscellaneous Service Fees
Merchant shall pay certain fees for services related to the origination and maintenance of accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire or $0.00 for a bank ACH. The Current charge for the underwriting and origination of each Merchant Agreement is $295.00 paid from the funded amount. Merchant will be charged $25.00 for every additional change of their operating bank account once they are active with BMF. Additional copies of prior monthly statements will incur a fee of $10.00 each.

### I. Risk Assessment Fee
$249.00

### J. UCC Fee
$195.00

**MERCHANT #1** (Print Name)

By: First Name DAVID SCOTT          Last Name LETHEM

Title: OWNER

SIGN HERE →

**MERCHANT #2** (Print Name)

By: First Name MICHAEL C.          Last Name PALLESCHI

Title: OWNER

SIGN HERE →

**BUSINESS MERCHANT BMF FUNDING**

## ADDENDUM TO SECURED MERCHANT AGREEMENT

This Addendum is entered on <u>10/12/2018</u>, by and between Business Merchant Funding and <u>FTE NETWORKS,INC</u> (the "Merchant").

1. Should any of the terms of this Addendum conflict with the terms of the agreement between Business Merchant Fund and the Merchant dated <u>10/12/2018</u> (the "Agreement"), then the terms of this Addendum shall govern and be controlling. Capitalized terms used herein but otherwise not defined, shall have the same definition as in the Agreement:

a. By signing below, the Merchant hereby requests and acknowledges that the Specified Percentage shall be revised to $ _____ per business day (the "Daily Payment") which the parties agree is a good-faith approximation of the Specified Percentage, based on the Merchant's receipts due to Business Merchant Funding pursuant the Agreement.

b. The Daily Payment is to be drawn via ACH payment, from the following bank account:

    i.  Bank Account:     REDACTED

    ii. Routing Number:  REDACTED

    iii. Account Name:   REDACTED

    iv. Bank Name:      REDACTED

c. At the Merchant's option, within five (5) business following the end of a calendar month, the Merchant may request a reconciliation to take place, whereby Business Merchant Funding may ensure that the cumulative amount remitted for the subject month via the Daily Payment is equal to the amount of the Specified Percentage. However, in order to effectuate this reconciliation, upon submitting the request for reconciliation to Business Merchant Funding – but in no event later than five (5) business days following the end of the calendar month – the Merchant must produce any and all evidence and documentation requested by Business Merchant Funding in its sole and absolute discretion, necessary to identify the appropriate amount of the Specified Percentage. The foregoing includes without limitation, any and all bank statements, merchant statements or other documents necessary to ascertain the amounts of the Specified Percentage, including login to the Merchant's bank account(s).

d. The Merchant specifically acknowledges that: (i) the Daily Payment and the potential reconciliation discussed above are being provided to the Merchant as a courtesy, and that Business Merchant Funding is under no obligation to provide same, and (ii) if the Merchant fails to furnish the requested documentation within five (5) business days following the end of a calendar month, then Business Merchant Funding shall not effectuate the reconciliation discussed above.

IN WITNESS WHEREOF, the parties have executed this Addendum to the Agreement as of the date first set forth above.

**MERCHANT #1** (Print Name)

By:  First Name <u>DAVID SCOTT</u>          Last Name <u>LETHEM</u>

Title: <u>OWNER</u>

**MERCHANT #2** (Print Name)

By:  First Name <u>MICHAEL C.</u>          Last Name <u>PALLESCHI</u>

Title: <u>OWNER</u>

**BUSINESS MERCHANT FUNDING**

By: _____

*This authorization is to remain in full force and effect until Business Merchant Funding receives written notification from the Merchant of its termination in such time and in such manner to afford Business Merchant Funding a reasonable opportunity to act on it. Revocation of this authorization prior to remittance of the balance owed pursuant to the Agreement shall constitute a breach thereunder.*

## ACH AUTHORIZATION FORM

*All information on this form is required unless otherwise noted.*

---

**BUSINESS AUTHORIZED TO DEBIT/CREDIT ACCOUNT:**

FTE NETWORKS,INC
Authorized Business Name

                              
Authorized Business Phone Number

999 VANDERBILT BEACH RD. STE 601
Authorized Business Address

NAPLES
City

FL
State

34108
Zip

---

**ACCOUNT HOLDER INFORMATION:**

DAVID SCOTT
Account Holder First Name

LETHEM
Account Holder Last Name

FTE NETWORKS
Account Holder DBA Name (If Business Account)

2-39-293-3790
Phone Number

Account Holder Address

City

State

Zip

---

**ACCOUNT HOLDER BANK INFORMATION:**

REDACTED

REDACTED
Branch City

REDACTED
State

REDACTED
Zip

How to find your Routing and Account Numbers on a check

REDACTED

REDACTED
Bank Routing Number (9 digits)

☐ Business Checking   ☐ Personal Checking   ☐ Savings

REDACTED
Bank Account Number

---

**TRANSACTION INFORMATION:**

Goods Purchased/Services Rendered

Amount of Transaction

Effective Date

☐ One-time   ☐ Recurring

Rate _____

No. of Transactions _____   or Open Ended ☐

---

**AUTHORIZATION:**

In exchange for products and/or services listed above the undersigned hereby authorizes:

to electronically draft via the Automated Clearing House system the amounts indicated above from the account identified above. This authority will continue until withdrawn in writing by the undersigned account holder. The Undersigned hereby certifies that they are duly authorized to execute this form on behalf of the above listed account holder. I acknowledge that I am subject to a $25 reject fee if items are returned for insufficient funds.

Signature of Account Holder

DAVID SCOTT
First Name of Account Holder

LETHEM
Last Name of Account Holder

OWNER
Title of Account Holder

Date

**BUSINESS
MERCHANT
BMF FUNDING**

## BALANCE TRANSFER FORM

| | |
|---|---|
| **Merchant Legal Name ("Merchant"):** | DAVID SCOTT                LETHEM |
| **Merchant Title:** | OWNER |
| **Business Legal Name ("Business"):** | FTE NETWORKS,INC |
| **DBA:** | FTE NETWORKS |
| **Physical Address:** | 999 VANDERBILT BEACH RD. STE 601 |
| **City:** | NAPLES |
| **State:** | FL |
| **Zip Code:** | 34108 |
| **Date:** | 10/12/2018 |

**Business Merchant Funding
680 Central Ave,
Cedarhurst, NY 11516**

| | |
|---|---|
| **Date of new secured agreement:** | 10/12/2018 |
| **Date of previous secured agreement:** | |
| **Remaining RTR balance:** | 0 |

To Whom It May Concern:

I, Merchant, on behalf of Business, hereby authorize Business Merchant Funding to debit the remaining RTR balance which is currently due and owing to Business Merchant Funding pursuant to the previous secured merchant agreement, entered into by and between Business Merchant Funding and business.

I acknowledge that as a result of the above-referenced debit, the amount paid to business by Business Merchant Funding pursuant to the new secured agreement will be reduced by the amount of the remaining RTR.

Thank you,

**By:** _____

**Merchant Legal Name:** DAVID SCOTT                LETHEM

**Title:** OWNER

# EXHIBIT A

LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER A BLANKET SECURITY INTEREST:

**BENCHMARK BUILDERS, INC. DBA BENCHMARK BUILDER**

237 W. 35TH STREET STE. 901 NEW YORK, NY 1001

EIN:

**FTE HOLDINGS LLC DBA FTE HOLDINGS**

999 V ANDERBILT BEACH RD. STE 601 NAPLES FL 34108

EIN:

**JUS-COM,INC.DBA FTE NETWORKS SERVICES**

999 V ANDERBILT BEACH RD. STE 601 NAPLES FL 34108

EIN

**FOCUS VENTURE PARTNER INC DB FOCUS VENTURE PARTNERS**

999 V ANDERBILT BEACH RD. STE 601 NAPLES FL 34108

EIN:

Buyer may file a UCC-1 financing statement with the appropriate Secretary of State(s) , reflecting a blanket security interest in the assets of the above-listed entities.

Dated: OCTOBER 12, 2018

By: _____

DAVID SCOTT LETHEM

By: _____

MICHAEL C. PALLESCHI

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF

| | |
|---|---|
| *BUSINESS MERCHANT FUNDING* | Index No. |
| Plaintiff, | **AFFIDAVIT OF**<br>**CONFESSION OF JUDGMENT** |
| -against-<br>FTE NETWORKS, INC DBA FTE NETWORKS<br>BENCHMARK BUILDERS INC DBA<br>BENCHMARK BUILDERS, FTE HOLDINGS, LLC<br>DBA FTE HOLDINGS, JUS-COM, INC FTE<br>NETWORK SERVICES, FOCUS VENTURE<br>PARTNERS INC DBA FOCUS VENTURE<br>PARTNERS, CROSSLAYER INC DBA<br>CROSSLAYER AND **DAVID SCOTT LETHEM**<br>Defendants. | |

STATE OF *Florida*
                        )        ss.:
COUNTY OF *Collier*

**DAVID SCOTT LETHEM** , being duly sworn upon my oath, deposes and says:

1. I am a principal, owner, and an officer of FTE NETWORKS,INC DBA FTE NETWORKS ("Merchant Defendant"), a CORPORATION located at 999 VANDERBILT BEACH RD.STE 6001 NAPLES, FL 34108 in the county of COLLIER, and as such, I have the authority to act on behalf of Merchant Defendant.

2. I am a principal, owner, and an officer of BENCHMARK BUILDERS,INC DBA BENCHMARK ("Merchant Defendant"), a CORPORATION located at 237 W 35TH STREET STE 901. NY 1001 in the county of NEW YORK and as such, I have the authority to act on behalf of Merchant Defendant.

3. I am a principal, owner, and an officer FTE HOLDINGS LLC DBA FTE HOLDINGS ("Merchant Defendant"), LIMITED LIABILITY COMPANY located at 999 VANDERBILT BEACH RD.STE 6001 NAPLES, FL 3410 in the county of COLLIER   and as such, I have the authority to act on behalf of Merchant Defendant.

4. I am a principal, owner, and an officer JUS-COM INC DBA FTE NETWORK SERVICES  ("Merchant Defendant"), CORPORATION  located at 999 VANDERBILT BEACH RD.STE 6001 NAPLES, FL 34108  in the county of COLLIER   and as such, I have the authority to act on behalf of Merchant Defendant.

**5.** I am a principal, owner, and an officer FOCUS VENTURES PARTNERS INC DBA FOCUS VENTURE PARTNERS ("Merchant Defendant"), CORPORATION located at 999 VANDERBILT BEACH RD.STE 6001 NAPLES, FL 34108 in the county of COLLIER and as such, I have the authority to act on behalf of Merchant Defendant.

**6.** I am a principal, owner, and an officer CROSSLAYER INC DBA CROSSLAYER ("Merchant Defendant"), CORPORATION located at 999 VANDERBILT BEACH RD.STE 6001 NAPLES, FL 34108 in the county of COLLIER and as such, I have the authority to act on behalf of Merchant Defendant.

7. I reside at 3490 WONDER VIEW PL, LOS ANGELES CA 90068 in the county of LOS ANGELES. I, individually, and on behalf of Merchant Defendant consent to this jurisdiction of this Court.

8. Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of New York, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Nassau, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Rockland, Supreme Court of the State of New York, County of Erie, and/ or Civil Court of the City of New York, County of New York, in the sum of **$729,500.00** less any payments timely made pursuant to the secured Merchant Agreement, dated October 15 2018plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 16% per annum from October 1 2018, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

9. In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of New York, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Nassau, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Rockland, Supreme Court of the State of New York, County of Erie, and/or Civil Court of the City of New York, County of New York, against the Defendant in the sum of **$729,500.00** less any payments timely made pursuant to the Merchant Agreement, dated October 15 2018plus legal fees to Plaintiff calculated at twenty five (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 16% per annum from October 15 2018 or the highest rate allowed by law, whichever is greater. Such amount

2

shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

10. This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement, dated October 15 2018and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant under the secured Merchant Agreement dated October 15 2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement (s).

11. Merchant Defendant hereby agrees that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

12. If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant consents to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

13. I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this _15_ day of ___October___, 2018.

By:

**DAVID SCOTT LETHEM** individually, and on behalf of FTE NETWORKS, INC DBA FTE NETWORKS BENCHMARK BUILDERS INC DBA BENCHMARK BUILDERS, FTE HOLDINGS, LLC DBA FTE HOLDINGS, JUS-COM, INC FTE NETWORK SERVICES, FOCUS VENTURE PARTNERS INC DBA FOCUS VENTURE

_15_ Day of ___October___, 2018.

Notary Public

OLGA BORRERO
MY COMMISSION # GG082935
EXPIRES March 14, 2021

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF

BUSINESS MERCHANT FUNDING

Index No.

Plaintiff,

**AFFIDAVIT OF
CONFESSION OF JUDGMENT**

-against-

FTE NETWORKS, INC DBA FTE NETWORKS
BENCHMARK BUILDERS INC DBA
BENCHMARK BUILDERS, FTE HOLDINGS, LLC
DBA FTE HOLDINGS, JUS-COM, INC FTE
NETWORK SERVICES, FOCUS VENTURE
PARTNERS INC DBA FOCUS VENTURE
            PARTNERS, CROSSLAYER INC DBA
CROSSLAYER AND **MICHAEL C PALLESCHI**
                                    Defendants.

STATE OF *Florida*
                                    )    ss.:
COUNTY OF *Collier*

**MICHAEL C PALLESCHI**, being duly sworn upon my oath, deposes and says:

1. I am a principal, owner, and an officer of FTE NETWORKS,INC DBA FTE
   NETWORKS ("Merchant Defendant"), a CORPORATION located at 999
   VANDERBILT BEACH RD.STE 6001 NAPLES, FL 34108 in the county of
   COLLIER, and as such, I have the authority to act on behalf of Merchant
   Defendant.

2. I am a principal, owner, and an officer of BENCHMARK BUILDERS,INC
   DBA BENCHMARK ("Merchant Defendant"), a CORPORATION located at
   237 W 35TH STREET STE 901. NY 1001 in the county of NEW YORK  and
   as such, I have the authority to act on behalf of Merchant Defendant.

3. I am a principal, owner, and an officer FTE HOLDINGS LLC DBA FTE
   HOLDINGS ("Merchant Defendant"), LIMITED LIABILITY COMPANY
   located at 999 VANDERBILT BEACH RD.STE 6001 NAPLES, FL 3410 in
   the county of COLLIER   and as such, I have the authority to act on behalf of
   Merchant Defendant.

4. I am a principal, owner, and an officer JUS-COM INC DBA FTE NETWORK
   SERVICES  ("Merchant Defendant"), CORPORATION  located at 999
   VANDERBILT BEACH RD.STE 6001 NAPLES, FL 34108   in the county of
   COLLIER   and as such, I have the authority to act on behalf of Merchant
   Defendant.

5. I am a principal, owner, and an officer FOCUS VENTURES PARTNERS INC DBA FOCUS VENTURE PARTNERS ("Merchant Defendant"), CORPORATION located at 999 VANDERBILT BEACH RD.STE 6001 NAPLES, FL 34108 in the county of COLLIER and as such, I have the authority to act on behalf of Merchant Defendant.

6. I am a principal, owner, and an officer CROSSLAYER INC DBA CROSSLAYER ("Merchant Defendant"), CORPORATION located at 999 VANDERBILT BEACH RD.STE 6001 NAPLES, FL 34108 in the county of COLLIER and as such, I have the authority to act on behalf of Merchant Defendant.

7. I reside at 3490 WONDER VIEW PL, LOS ANGELES CA 90068 in the county of LOS ANGELES. I, individually, and on behalf of Merchant Defendant consent to this jurisdiction of this Court.

8. Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of New York, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Nassau, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Rockland, Supreme Court of the State of New York, County of Erie, and/or Civil Court of the City of New York, County of New York, in the sum of $729,500.00 less any payments timely made pursuant to the secured Merchant Agreement, dated October 15 2018plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 16% per annum from October 1 2018, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

9. In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of New York, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Nassau, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Rockland, Supreme Court of the State of New York, County of Erie, and/or Civil Court of the City of New York, County of New York, against the Defendant in the sum of $729,500.00 less any payments timely made pursuant to the Merchant Agreement, dated October 15 2018plus legal fees to Plaintiff calculated at twenty five (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 16% per annum from October 15 2018 or the highest rate allowed by law, whichever is greater. Such amount

2

shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

10. This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement, dated October 15 2018and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant under the secured Merchant Agreement dated October 15 2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement (s).

11. Merchant Defendant hereby agrees that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

12. If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant consents to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

13. I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this _15_ day of ___October___, 2018.

By: _____

**Michael C Palleschi**, individually, and on behalf of FTE NETWORKS, INC DBA FTE NETWORKS BENCHMARK BUILDERS INC DBA BENCHMARK BUILDERS, FTE HOLDINGS, LLC DBA FTE HOLDINGS, JUS-COM, INC FTE NETWORK SERVICES, FOCUS VENTURE PARTNERS INC DBA FOCUS VENTURE

_15_ Day of ___October___, 2018.

_____
Notary Public

OLGA BORRERO
MY COMMISSION # GG082935
EXPIRES March 14, 2021

3