## PAYMENT GUARANTY

**THIS PAYMENT GUARANTY** (this "**Guaranty**") is executed as of June 16, 2021 by STEFAN LEER an individual residing at  8 San Remo, San Clemente CA 92673, ( "**Guarantor**") and Spin Capital LLC with an address at 1276 50th St Brooklyn New York 11219 (together with its successors and assigns, collectively, "**Lender**").

### W I T N E S S E T H:

A.      Pursuant to that certain Promissory Note, dated as of the date hereof, executed by olden Foothill Insurance Services LLC, Life Factor II LLC and Life Shares II LLC (collectively, "**Borrower**"), and payable to the order of Lender in the original principal amount of TWO MILLION SEVEN HUNDRED THOUSAND DOLLARS ($2,700,000.00) (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Note**"), Borrower has become indebted, and may from time to time be further indebted, to Lender with respect to a loan ("**Loan**") which Loan is secured by that certain Loan Documents and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan (all such other instruments and documents, together with the Note and Security Agreement, and other documents collectively, the "**Loan Documents**").

B.      Lender's willingness to make the Loan, or otherwise extend credit, to Borrower is dependent upon each of the Guarantor's unconditional guaranty of payment and performance to Lender of the Guaranteed Obligations (as herein defined).

C.      Guarantor represents that he is a member and/or shareholder of Borrower, as applicable, and that Guarantor will directly benefit from Lender's making the Loan to Borrower.

D.      All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Documents.

NOW, THEREFORE, as an inducement to Lender to make the Loan to Borrower and the other Borrowers, and to extend such additional credit as Lender may from time to time extend under the Loan Documents, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

### ARTICLE 1
### NATURE AND SCOPE OF GUARANTY

**Section 1.1      Guaranty of Obligation**.

(a)      Guarantor hereby, jointly and severally, irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations (as defined below) as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

(b)      As used herein, the term "**Guaranteed Obligations**" means payment and performance of all of the obligations of Borrower under each of the Loan Documents, including, without limitation, for the repayment of the Loan and any other amounts owed to Lender in accordance with the terms thereof and payment of all indemnities owed to Lender by Borrower.

**Section 1.2**    **Nature of Guaranty**.  This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection.  This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor.  The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of Guarantor to Lender with respect to the Guaranteed Obligations.  This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.  Upon the indefeasible satisfaction in full of the Obligations (other than those which by their terms survive repayment of the Loan), Lender's rights under this Guaranty shall terminate.

**Section 1.3**    **Payment By Guarantor**.  If all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at demand, maturity, acceleration or otherwise, Guarantor shall, without notice from Lender and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity or any other notice whatsoever, all such notices being hereby waived by Guarantor, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth herein. Each demand may be made at any time coincident with or after the time payment of all or part of the Guaranteed Obligations is due and may be made from time to time with respect to the same or different items of Guaranteed Obligations.  Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

**Section 1.4**    **No Duty To Pursue Others**.  It shall not be necessary for Lender (and Guarantor hereby waives any rights which Guarantor may have to require Lender), in order to enforce the obligations of Guarantors hereunder, first to (i) institute suit or exhaust its remedies against Borrower or others liable on the Loan or the Guaranteed Obligations or any other Person, (ii) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan, (iii) enforce Lender's rights against any other guarantors of the Guaranteed Obligations (if any), (iv) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (v) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (vi) resort to any other means of obtaining payment of the Guaranteed Obligations.  Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

**Section 1.5**    **Waivers**.  Guarantor agrees to the provisions of the Loan Documents and, except as expressly provided herein, hereby waives notice of (i) any loans or advances made by Lender to Borrower, (ii) acceptance of this Guaranty, (iii) any amendment or extension of the Note, the Mortgage or any other Loan Document, (iv) the execution and delivery by Borrower and Lender of any other loan or credit agreement or of Borrower's execution and delivery of any promissory note or other document arising under the Loan Documents or in connection with the Property, (v) the occurrence of (A) any breach by Borrower of any of the terms or conditions of any of the Loan Documents, or (B) an Event of Default, (vi) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (vii) the sale or foreclosure (or the posting or advertising for the sale or foreclosure) of any collateral for the Guaranteed Obligations, (viii) protest, proof of non-payment or default by Borrower, (ix) any other action at any time taken or omitted by Lender and (x) generally, all demands and notices of every kind in connection with this Guaranty, the Loan Documents, any documents or agreements evidencing, securing or relating to any of the Guaranteed Obligations and/or the obligations hereby guaranteed.

**Section 1.6**    **Payment of Expenses**.  In the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, the Guarantor shall, within three (3) days of demand by Lender, pay Lender all out-of-pocket costs and expenses (including court costs and reasonable attorneys' fees)

2

Case 1:24-cv-08515-AS    Document 160-61    Filed 05/26/26    Page 3 of 10

incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder provided that Lender is the prevailing party in such action to collect or enforce same. The covenant contained in this Section 1.6 shall survive the payment and performance of the Guaranteed Obligations.

Section 1.7    **Effect of Bankruptcy**. In the event that pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law or any judgment, order or decision thereunder, Lender must rescind or restore any payment or any part thereof received by Lender in satisfaction of the Guaranteed Obligations, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantor by Lender shall be without effect and this Guaranty shall remain (or shall be reinstated to be) in full force and effect. It is the intention of Borrower and Guarantor that Guarantor's obligations hereunder shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.

Section 1.8    **Waiver of Subrogation, Reimbursement and Contribution**. Notwithstanding anything to the contrary contained in this Guaranty, until such time as the Obligations are no longer outstanding has been repaid in full, (other than these Obligations which by their terms survive repayment of the Loan) Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating Guarantor to the rights of Lender), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for the payment of any or all of the Guaranteed Obligations for any payment made by Guarantor under or in connection with this Guaranty or otherwise (it being understood that Guarantor shall be entitled to exercise any of the foregoing rights following the date on which none of the Obligations remains outstanding.

### ARTICLE 2
### EVENTS AND CIRCUMSTANCES NOT REDUCING
### OR DISCHARGING GUARANTORS' OBLIGATIONS

Guarantor hereby consents and agrees to each of the following and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following and waives any common law, equitable, statutory or other rights (including, without limitation, rights to notice) which Guarantor might otherwise have as a result of or in connection with any of the following:

Section 2.1    **Modifications**. Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Note, the Mortgage, the other Loan Documents or any other document, instrument, contract or understanding between Borrower and Lender or any other parties pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantor of any such action.

Section 2.2    **Adjustment**. Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or Guarantor.

Section 2.3    **Condition of Borrower or Guarantor**. The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, Guarantor or any other Person at any time liable for the payment of all or part of the Guaranteed Obligations; or any dissolution of Borrower or Guarantor or any sale, lease or transfer of any or all of the assets of Borrower or Guarantor or any changes in the direct or indirect shareholders, partners or members, as applicable, of Borrower or Guarantor; or any reorganization of Borrower or Guarantor.

3

Case 1:24-cv-08515-AS    Document 160-61    Filed 05/26/26    Page 4 of 10

**Section 2.4**    **Invalidity of Guaranteed Obligations**.    The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations or any document or agreement executed in connection with the Guaranteed Obligations for any reason whatsoever, including, without limitation, the fact that (i) the Guaranteed Obligations or any part thereof exceeds the amount permitted by law, (ii) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (iii) the officers or representatives executing the Note, the Mortgage or the other Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (iv) the Guaranteed Obligations violate applicable usury laws, (v) the Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially uncollectible from Borrower, (vi) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or executed in connection with the Guaranteed Obligations or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (vii) the Note, the Mortgage or any of the other Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other Person be found not liable on the Guaranteed Obligations or any part thereof for any reason.

**Section 2.5**    **Release of Obligors**.  Any full or partial release of the liability of Borrower for the Guaranteed Obligations or any part thereof, or of any other Person now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being recognized, acknowledged and agreed by Guarantor that Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support from any other Person, and Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other Persons will be liable to pay or perform the Guaranteed Obligations or that Lender will look to other Persons to pay or perform the Guaranteed Obligations.

**Section 2.6**    **Other Collateral**.  The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

**Section 2.7**    **Release of Collateral**.    Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including, without limitation, negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations.

**Section 2.8**    **Care and Diligence**. The failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (a) to take or prosecute any action for the collection of any of the Guaranteed Obligations or (b) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (c) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

**Section 2.9**    **Unenforceability**.  The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by

4

Guarantor that Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations.

**Section 2.10    Merger**.  The reorganization, merger or consolidation of Borrower or Guarantor into or with any other Person.

**Section 2.11    Preference**.  Any payment by Borrower to Lender is held to constitute a preference under bankruptcy laws or for any reason Lender is required to refund such payment or pay such amount to Borrower or to any other Person.

**Section 2.12    Other Actions Taken or Omitted**.  Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations pursuant to the terms hereof, it being the unambiguous and unequivocal intention of Guarantor that Guarantors shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations.

**ARTICLE 3**
REPRESENTATIONS AND WARRANTIES

To induce Lender to enter into the Loan Documents and to extend credit to Borrower, Guarantor represents and warrants to Lender as follows:

**Section 3.1    Benefit**.  Guarantor is an owner of a direct interest in Borrower and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations.

**Section 3.2    Familiarity and Reliance**.  Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Note or Guaranteed Obligations; however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

**Section 3.3    No Representation By Lender**.  Neither Lender nor any other party has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty.

**Section 3.4    Guarantor's Financial Condition**.  As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, Guarantor (a) is solvent, (b) has assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and (c) has property and assets sufficient to satisfy and repay its obligations and liabilities, including the Guaranteed Obligations.

**Section 3.5    Legality**.  This Guaranty has been duly executed and delivered by or on behalf of Guarantor and is a legal and binding obligation of Guarantor and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium or general principles of equity. The execution and delivery of this Guaranty by Guarantor and the performance of its

5

obligations hereunder will not conflict with any provision of any law or regulation to which Guarantor is subject, or conflict with, result in a breach of, or constitute a default under, any of the terms, conditions or provisions of Guarantor's organizational documents or any material agreement or instrument to which Guarantor is a party or by which it is bound, or any order or decree applicable to Guarantor. The execution and delivery of this Guaranty by Guarantor and the performance of its obligations hereunder do not, and will not, contravene or conflict with any applicable law, statute or regulation of any court or governmental agency or body having jurisdiction over Guarantor, or constitute a default under, or result in the breach of, any indenture, mortgage, deed of trust, charge, lien, or any contract, agreement or other instrument to which any Guarantor is a party or which may be applicable to any Guarantor.  There are no actions, suits or proceedings pending or, to the actual knowledge of Guarantor, threatened before or by any tribunal against or affecting Guarantor, which, if adversely determined, would materially and adversely affect Guarantor's ability to perform its obligations hereunder. All financial statements and information heretofore furnished to Lender by Guarantor do, and all financial statements and information hereafter furnished to Lender by Guarantor will, accurately present the financial condition of Guarantor as of their dates and the results of Guarantor's operations for the periods therein specified in all material respects, and, except as heretofore disclosed in writing to Lender, has Guarantor incurred any material liability, direct or indirect, fixed or contingent, which would materially and adversely affect such Guarantor's ability to perform its obligations hereunder.

Section 3.6     **Survival**. All representations, warranties and covenants made by Guarantor herein are a material inducement to Lender to enter into the other Loan Documents and shall survive the execution hereof and any bankruptcy, foreclosure, transfer of security or other event affecting Borrower, Guarantor, any other party, or any security for all or any part of the Guaranteed Obligations.

Section 3.7     **Personal Financial Statement**. Guarantor hereby covenants and agrees to provide to Lender a true, correct and complete certified personal financial statement of Guarantor and such other information as requested by Lender promptly after request.

**ARTICLE 4**
SUBORDINATION OF CERTAIN INDEBTEDNESS

Section 4.1     **Subordination of All Guarantor Claims**.  As used herein, the term "**Guarantor Claims**" shall mean all debts and liabilities of Borrower to Guarantor, whether such debts and liabilities now exist or are hereafter incurred or arise, and whether the obligations of Borrower thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the Person or Persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be, created, or the manner in which they have been, or may hereafter be, acquired by Guarantor.  The Guarantor Claims shall include, without limitation, all rights and claims of Guarantor against Borrower (arising as a result of subrogation or otherwise) as a result of Guarantor's payment of all or a portion of the Guaranteed Obligations.  So long as any portion of the Obligations or the Guaranteed Obligations remain outstanding (other than those which by their terms survive repayment of the Loan), Guarantor shall not receive or collect, directly or indirectly, from Borrower or any other Person any amount upon the Guarantor Claims.

Section 4.2     **Claims in Bankruptcy**.  In the event of any receivership, bankruptcy, reorganization, arrangement, debtor's relief or other insolvency proceeding involving Guarantor as a debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims.  Guarantor hereby assigns such dividends and payments to

6

Case 1:24-cv-08515-AS    Document 160-61    Filed 05/26/26    Page 7 of 10

Lender. Should Lender receive, for application against the Guaranteed Obligations, any dividend or payment which is otherwise payable to Guarantor and which, as between Borrower and Guarantor, shall constitute a credit against the Guarantor Claims, then, upon payment to Lender in full of the Obligations and the Guaranteed Obligations, Guarantor shall become subrogated to the rights of Lender to the extent that such payments to Lender on the Guarantor Claims have contributed toward the liquidation of the Guaranteed Obligations, and such subrogation shall be with respect to that proportion of the Guaranteed Obligations which would have been unpaid if Lender had not received dividends or payments upon the Guarantor Claims.

**Section 4.3** **Payments Held in Trust**. Notwithstanding anything to the contrary contained in this Guaranty, in the event that Guarantor should receive any funds, payments, claims and/or distributions which are prohibited by this Guaranty, Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims and/or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims and/or distributions so received except to pay such funds, payments, claims and/or distributions promptly to Lender, and Guarantor covenants promptly to pay the same to Lender.

**Section 4.4** **Liens Subordinate**. Until indefeasible payment in full of the Debt, Guarantor agrees that any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach. Without the prior written consent of Lender, Guarantor shall not (i) exercise or enforce any creditor's rights it may have against Borrower, or (ii) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including, without limitation, the commencement of, or the joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interests, collateral rights, judgments or other encumbrances on the assets of Borrower held by Guarantor.

## ARTICLE 5

**5.1** **Waiver**. No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of Lender hereunder shall be in addition to all other rights provided by law. Subject to the further provisions of Section 5.5, no consent to departure from or waiver of any provision of this Guaranty shall extend beyond the particular case and purpose involved. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

**5.2** **Notices**. All notices, demands, requests, consents, approvals or other communications (any of the foregoing, a "Notice") required, permitted, or desired to be given hereunder shall be in writing sent by registered or certified mail, postage prepaid, return receipt requested, or delivered by hand or reputable overnight courier addressed to the party to be so notified at its address set forth above, or to such other address as such party may hereafter specify in accordance with the provisions hereof. Any Notice shall be deemed to have been received: (a) three (3) Business Days after the date such Notice is mailed, (b) on the date of delivery by hand if delivered during business hours on a Business Day (otherwise on the next Business Day), and (c) on the next Business Day if sent by an overnight commercial courier, in each case

addressed to the parties at the addresses hereinabove set forth or such other address designated by Guarantor or Lender by ten (10) days prior notice.

**5.3** **Governing Law**. This guaranty shall be governed by and construed in accordance with the laws of the State of New York.

**5.4** **Invalid Provisions**. If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

**5.5** **Amendments**. This Guaranty may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

**5.6** **Parties Bound; Assignment**. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives; provided, however, that no Guarantor may, without the prior written consent of Lender, assign any of its rights, powers, duties or obligations hereunder.

**5.7** **Headings**. Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

**5.8** **Recitals**. The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

**5.9** **Counterparts**. To facilitate execution, this Guaranty may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all Persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Guaranty to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto. Any signature page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages.

**5.10** **Rights and Remedies**. The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy. Lender shall have, and may exercise, in addition to all other rights, privileges, or remedies available to it under this Guaranty and by law, the specific rights and remedies to sue for and obtain specific performance by the Guarantor of Guarantor's covenants and agreements set forth herein. Guarantor hereby agrees and acknowledges that this Guaranty is an instrument for the payment of money, and hereby consents that Lender, at its sole option, in the event of a default by Guarantor in the payment of any of the moneys due hereunder, shall have the right to bring a motion and/or action under New York CPLR Section 3213.

8

Case 1:24-cv-08515-AS    Document 160-61    Filed 05/26/26    Page 9 of 10

**5.11**    **Entirety**.    THIS GUARANTY EMBODIES THE FINAL AND ENTIRE AGREEMENT OF GUARANTOR AND LENDER WITH RESPECT TO GUARANTOR'S GUARANTY OF THE GUARANTEED OBLIGATIONS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF. THIS GUARANTY IS INTENDED BY GUARANTOR AND LENDER AS A FINAL AND COMPLETE EXPRESSION OF THE TERMS OF THIS GUARANTY, AND NO COURSE OF DEALING BETWEEN ANY GUARANTOR AND LENDER, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE SHALL BE USED TO CONTRADICT, VARY, SUPPLEMENT OR MODIFY ANY TERM OF THIS GUARANTY AGREEMENT.    THERE ARE NO ORAL AGREEMENTS BETWEEN ANY GUARANTOR AND LENDER.

**5.12**    **Waiver of Right To Trial By Jury**.  EACH PARTY HERETO AND ALL PERSONS CLAIMING BY, THROUGH OR UNDER SUCH PARTY EACH HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, THE NOTE, THE MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH PARTY HERETO AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH PARTY HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY LENDER OR GUARANTOR, AS THE CASE MAY BE.

**5.13**    **Reinstatement in Certain Circumstances**.  If at any time any payment of the principal of or interest under the Note or any other amount payable by the Borrower under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy or reorganization of the Borrower or otherwise and such payment satisfied any Guaranteed Obligations, Guarantor's obligations hereunder with respect to such Guaranteed Obligations shall be reinstated as though such payment has been due but not made at such time.

**[NO FURTHER TEXT ON THIS PAGE]**

9

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

STEFAN LEER

**ACKNOWLEDGMENT**

STATE OF *California* )
                      )    ss.:
COUNTY OF *Orange* )

On this, the *16th* day of June, 2021, before me, the undersigned, personally appeared Stefan Leer, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their individual capacity and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

LAURIE ANN LEER-MARTINEZ
COMM. #2284701
Notary Public - California
El Dorado County
My Comm. Expires Apr. 8, 2023