# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re:<br>FAT BRANDS INC., *et al.*,<br><br>Debtors.[1] | : : : : : : : | Chapter 11 Cases<br><br>Case No. 26-90126 (ARP)<br><br>Jointly Administered |
| HDOS ACQUISITION, LLC and FAT BRANDS INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>INSIGHT CAPITAL, LLC,<br>GOLD CAP LLC, and<br>JOHN DOES 1–10,<br><br>Defendants. | : : : : : : : : : : : : : : : | Adv. Pro. No. [_____] |

## COMPLAINT TO AVOID FRAUDULENT TRANSFERS AND FRAUDULENT INCURRENCE OF OBLIGATIONS, AVOID PREFERENTIAL TRANSFERS, PRESERVE AVOIDED TRANSFERS, AND DISALLOW OR REDUCE CLAIMS

Plaintiffs, by and through undersigned counsel, allege, based upon information and belief and the investigation conducted to date, as follows:

### PRELIMINARY STATEMENT

1. This adversary proceeding arises from a refinancing transaction executed days before the Debtors' chapter 11 filings. As part of the transaction, the Defendants (as defined herein) purportedly refinanced undersecured claims against FAT Brands Inc. ("**FAT**") which would

---

[1] A complete list of the Debtors in the Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/FATBrands-TwinHospitality. The Debtors' mailing address for purposes of the Chapter 11 Cases is 9720 Wilshire Blvd., Suite 500, Beverly Hills, CA 90212.

recover little or nothing in a bankruptcy with secured claims against FAT's subsidiary, HDOS Acquisition, LLC ("**HDOS**"). HDOS had no obligations in connection with the refinanced obligations and received no consideration as part of the refinancing transaction. By this Complaint, Plaintiffs seek to avoid the obligations incurred and liens granted against HDOS and recover and preserve the resulting transfers for the benefit of the estates. The Plaintiffs also object to the allowance of any proofs of claim arising from refinancing transactions subject to this Complaint.

2. Prior to January 20, 2026, Gold Cap LLC ("**Gold**") was the holder of three promissory notes identified as Promissory Note 8, Promissory Note 10, and Promissory Note 11 (collectively, the "**Gold Notes**"), all issued by FAT. As of January 20, 2026, FAT's obligation under the Gold Notes was $18,568,500. Upon information and belief, Gold is controlled by Yoel Getter. The Gold Notes were purportedly secured by certain receivables held by FAT and, as to certain notes, by bond collateral (collectively, the "**Gold Collateral**"). The purported Gold Collateral had little or no value, and Plaintiffs dispute that FAT ever entered into a valid security agreement granting liens on the Gold Collateral. Accordingly, and in light of FAT's insolvency, the Gold Notes were also of little or no value prior to January 20, 2026.

3. HDOS was not a guarantor of the Gold Notes and had no other obligation or liability under the Gold Notes or to Gold.

4. On or about January 20–21, 2026, Insight Capital, LLC ("**Insight**"), FAT, and HDOS entered into a refinancing transaction (the "**Refinancing**") pursuant to a Loan Agreement, Promissory Note, and Security and Hypothecation Agreement (collectively, the "**Insight Loan Documents**"). Upon information and belief, Insight is also controlled by Yoel Getter. Under the Refinancing, HDOS agreed to "borrow" $20,625,000 from Insight, consisting of the $18,568,500 payoff amount plus fees (the "**Insight Obligations**"). The Insight Loan Documents provided that

Insight would pay $18,568,500 to Gold directly in satisfaction of FAT's obligations under the Gold Notes. The Insight Loan Documents make clear that the Refinancing did not result in a cash transfer to HDOS or any other Debtor. The Promissory Note reflects $0.00 as the amount "Net to Borrower." As part of the Refinancing, HDOS granted Insight liens on substantially all of its personal property and related proceeds (the "*Insight Liens*"), while FAT separately purported to pledge its membership interests in HDOS.

5. The Refinancing satisfied FAT's obligations to Gold at par and on the eve of bankruptcy even though the Gold Notes had little or no value. HDOS did not receive any direct cash or other consideration and did not receive reasonably equivalent value in exchange for incurring the Insight Obligations and granting the Insight Liens. HDOS was not liable on the Gold Notes or to Gold and did not receive any cash proceeds as a result of incurring the Insight Obligations. Given the Debtors' overall financial condition at the time of the Refinancing, HDOS did not receive any indirect benefit from the satisfaction of FAT's obligations under the Gold Notes.

6. At the time HDOS incurred the Insight Obligations and granted the Insight Liens, HDOS was insolvent or became insolvent as a result of the Refinancing, was left with unreasonably small capital in light of its business and anticipated operations, and/or intended to incur or believed it would incur debts beyond its ability to pay as they matured.

7. Accordingly, Plaintiffs seek to avoid the incurrence of the Insight Obligations and the corresponding transfers of the Insight Liens as intentional and constructive fraudulent transfers, avoid the transfer to Gold to the extent it is preferential, recover and preserve avoided transfers for the benefit of the estates, and disallow, reduce, reclassify, or otherwise limit any proofs of claim based on the Refinancing or held by any recipient of an avoidable transfer, including any Insight

3

claim that is unenforceable or subject to limitation under applicable California usury law or the California Financing Law.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) because the claims asserted in this adversary proceeding arise in the above-captioned chapter 11 cases. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. Plaintiffs consent to entry of final orders and judgments by this Court in this adversary proceeding pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas. Plaintiffs also consent to entry of final orders or judgment by this Court if it is determined that this Court cannot enter final orders or judgments consistent with Article III of the United States Constitution absent consent of the parties.

## THE PARTIES

10. Plaintiff HDOS Acquisition, LLC is a debtor and debtor in possession in the above-captioned chapter 11 cases. HDOS is the borrower under the Insight Loan Documents and the entity that incurred the Insight Obligations and granted the Insight Liens.

11. Plaintiff FAT Brands Inc. is a debtor and debtor in possession in the above-captioned chapter 11 cases and the direct or indirect parent of HDOS. Before the Refinancing, FAT was obligated to Gold under the Gold Notes. In connection with the Refinancing, FAT also executed the Security and Hypothecation Agreement as a limited grantor and purported to pledge its membership interests in HDOS.

12. Defendant Insight Capital, LLC is, upon information and belief, a Wyoming limited liability company with its principal place of business at 30 North Gould Street, Suite R, Sheridan,

4

Wyoming 82801. Insight is the lender under the Insight Loan Documents and the alleged holder of claims and liens arising from the Refinancing.

13. Defendant Gold Cap LLC is, upon information and belief, a New York limited liability company with its principal place of business at 164 20th Street, Brooklyn, New York 11232. Gold was the holder or asserted holder of the Gold Notes and received the Gold payoff in connection with the Refinancing.

14. Defendants John Does 1–10 are presently unknown persons or entities that may have received transfers, asserted claims, or participated in, directed, benefitted from, or received proceeds of the Refinancing. Plaintiffs reserve all rights to amend this Complaint to identify and add such parties as discovery proceeds.

15. Insight, Gold, and the John Doe defendants are collectively referred to herein as the "***Defendants***."

16. The Defendants are properly joined in this action pursuant to Rule 20 of the Federal Rules of Civil Procedure, made applicable by Rule 7020 of the Federal Rules of Bankruptcy Procedure, because the claims asserted against them arise out of the same transaction, occurrence, or series of transactions or occurrences, and common questions of law and fact will arise in this adversary proceeding.

## **BACKGROUND**

17. FAT Brands is a publicly traded Delaware corporation and the ultimate parent of a multi-brand restaurant enterprise that, as of January 26, 2026 (the "***Petition Date***"), included eighteen restaurant brands and approximately 2,200 restaurant locations, both company-owned and franchised. In July 2021, FAT Brands acquired Global Franchise Group, which included the Hot Dog on a Stick brand.

5

18. As described in the Declaration of John C. DiDonato in Support of Debtors' Chapter 11 Petitions and First Day Relief, FAT Brands held approximately 28 Hot Dog on a Stick units and one Fatburger unit, along with de minimis other operating assets, outside the whole-business securitization structures. The Refinancing concerns HDOS, which, under the Insight Loan Documents, was the borrower and the entity whose assets were pledged as collateral to Insight.

**B.      FAT, HDOS, and the pre-refinancing debt structure**

19. Prior to the refinancing challenged herein, FAT was indebted to Gold under three promissory notes: (i) Promissory Note 8, dated July 9, 2025, with an outstanding balance of $5,270,700.00; (ii) Promissory Note 10, dated July 10, 2025, with an outstanding balance of $2,347,500.00; and (iii) Promissory Note 11, dated August 8, 2025, with an outstanding balance of $10,950,300.00 (collectively, the "*Gold Notes*"), for an aggregate payoff amount of $18,568,500.00. HDOS was not an obligor on the Gold Notes and had no other obligations to Gold.

20. The Gold Notes were purportedly secured by certain receivables held by FAT. Notes 8 and 10 were also purportedly secured by certain Class A-2B bonds, and Note 11 was purportedly secured by certain Class M-2 bonds. The receivables and bond collateral allegedly securing the Gold Notes comprise the Gold Collateral. Upon information and belief, FAT never entered into a valid security agreement with Gold covering the Gold Collateral.

21. On information and belief, Yoel Getter signed the January 20, 2026 payoff letter on behalf of Gold and signed, or is otherwise associated with, predecessor Riverside transaction documents under the name "Joel Geta." Plaintiffs further allege, based on the payoff letter and predecessor Riverside documents reviewed to date, that those facts are relevant to the structure and substance of the Refinancing.

### C.     The January 2026 Insight refinancing

22.     On or about January 20–21, 2026, Insight, FAT, and HDOS entered into a refinancing transaction (the "***Refinancing***") pursuant to a Loan Agreement, Promissory Note, and Security and Hypothecation Agreement (collectively, the "***Insight Loan Documents***"). Under the Refinancing, Insight agreed to pay off $18,568,500 owed by FAT to Gold under the Gold Notes, and HDOS agreed to borrow $20,625,000 from Insight, consisting of the $18,568,500 payoff amount plus origination and loan fees.

23.     The Insight Loan Documents make clear that the Refinancing did not result in a cash transfer to HDOS or any of the Debtors. The Promissory Note reflected $0.00 as the amount "Net to Borrower." While the Insight Loan Documents recited that HDOS, as FAT's wholly owned subsidiary, would derive "substantial benefit" from repayment of FAT's Gold debt, Plaintiffs dispute that assertion to the extent it is offered as proof that HDOS received reasonably equivalent value for the obligations and transfers challenged herein.

### D.     The collateral granted to Insight

24.     As borrower, HDOS agreed to grant Insight liens on substantially all of its personal property, together with all proceeds, products, and accounts thereof, other than any intent-to-use trademark applications (collectively, the "***HDOS Collateral***"). The HDOS Collateral included the tangible and intangible assets of 28 Hot Dog on a Stick stores. FAT separately provided collateral limited to its membership interests in HDOS (the "***FAT Collateral***" and, together with the HDOS Collateral, the "***Insight Collateral***"). On January 21, 2026, financing statements were filed in Delaware purporting to perfect Insight's asserted liens against the HDOS Collateral and the FAT Collateral.

**E.** **The payoff of Gold and release of Gold liens**

25. In a January 20, 2026 payoff letter, Gold confirmed that, upon receipt of the payoff amount from Insight pursuant to the January 20, 2026 Loan Agreement, all FAT liabilities under the Gold Notes would be paid and satisfied in full, and all liens and security interests securing those obligations would be released and discharged.

26. The payment to Gold occurred within days of the Petition Date and satisfied antecedent debt previously owed by FAT under the Gold Notes. At the time of the Refinancing, FAT was insolvent, and the Gold Collateral was worth substantially less than the principal amount of the Gold Notes. Moreover, Plaintiffs dispute that FAT ever entered into a valid security agreement granting liens to Gold in the Gold Collateral. By receiving payment in full on the eve of bankruptcy, Gold received a recovery that far exceeded what it would receive in a chapter 7 liquidation of FAT.

**F.** **Lack of reasonably equivalent value to HDOS**

27. HDOS was not liable on the Gold Notes that were paid off through the Refinancing. Nevertheless, HDOS incurred the Insight Obligations and granted the Insight Liens, while the transaction documents reflected no direct cash or other transfer to HDOS.

28. Even if the Refinancing conferred value on FAT by satisfying FAT's liabilities to Gold, HDOS did not receive reasonably equivalent (or any) value in exchange for incurring approximately $20,625,000 of new obligations and granting the Insight Liens. The collateral burden imposed on HDOS through the Refinancing deepened HDOS insolvency to the detriment of its legitimate creditors.

**G.** **HDOS's Financial Condition and Circumstances Evidencing Intent to Hinder Creditors**

29.     At the time HDOS incurred the Insight Obligations and granted the Insight Liens, HDOS was insolvent or became insolvent as a result of the Refinancing, was left with unreasonably small capital in light of its business and anticipated operations, and/or intended to incur or believed it would incur debts beyond its ability to pay as such debts matured. Those circumstances, together with the structure and timing of the Refinancing, evidence an actual intent to hinder one or more legitimate creditors of HDOS. Among other things, the Refinancing occurred only days before the Petition Date; HDOS incurred the Insight Obligations and granted the Insight Liens to satisfy debt owed by FAT, not HDOS; HDOS received no direct cash or other consideration; the Refinancing layered approximately $20,625,000 of new purportedly secured debt onto HDOS; HDOS granted liens on substantially all of its personal property and related proceeds; and HDOS did not receive direct cash or other property of substantially comparable value in return.

**H.** **Petition date and postpetition dispute**

30.     On the Petition Date, Plaintiffs and certain of their debtor affiliates commenced their chapter 11 cases, only six days after execution of the Insight Loan Documents and grant of the Insight Liens.

31.     After the Petition Date, Insight asserted a first-position lien against HDOS's store assets and demanded continued payment under the Note. The Debtors disputed that Insight held a valid, perfected, and nonavoidable security interest in HDOS's cash, disputed that HDOS's postpetition revenues were subject to Insight's prepetition liens, and expressly reserved rights to challenge the refinancing and resulting liens under sections 544, 547, and 548 of the Bankruptcy Code.

9

32. Insight has since filed a proof of claim and a sale objection asserting a secured claim of $20,535,000 and contending that it holds a perfected first-priority lien against certain HDOS store assets. The Debtors continue to dispute the scope, perfection, and avoidability of those asserted rights.

## I. California Contacts, Effective Interest Rate, and Licensing Issues

33. The Insight Loan Documents contain a New York choice-of-law provision. The Refinancing has substantial California contacts and little or no meaningful nexus to New York. The majority of HDOS's assets and operations are in California, and the majority of the assets purportedly pledged to Insight as security for the obligations under the Insight Loan Documents are in California. California law should therefore apply to the Insight Loan Documents.

34. Under California law, the Insight Obligations are usurious. The effective interest rate under the Insight Loan Documents exceeds 20% per annum when calculated based on the amount funded or applied to the Gold payoff, the origination and loan fees added to principal, and the required daily paydown obligations.

35. Upon information and belief, after execution of the Insight Loan Documents and before the Petition Date, HDOS made two $45,000 payments to Insight, on January 22, 2026 and January 23, 2026, respectively, for an aggregate amount of $90,000 (the "***Prepetition Insight Payments***"). Although the Insight Loan Documents characterize the Prepetition Insight Payments as daily principal repayments, they are interest-equivalent payments or other amounts recoverable under applicable California usury law, including California Civil Code section 1916-3.

36. HDOS did not have a preexisting lending or other relationship with Insight or Gold, and HDOS did not rely on advice of external counsel in negotiating the Insight Loan Documents. The Loan Agreement further provides in Section 17(d) that Insight is not a licensed lender under

California law. Insight's lack of licensure is relevant given Insight's and Yoel Getter's business in California and provides an additional basis to disallow, reduce, reclassify, or otherwise limit Insight's asserted claim to the extent available under applicable California law.

37. Accordingly, Insight's asserted claim should be found unenforceable, disallowable, reducible, reclassifiable, or otherwise subject to limitation under applicable California usury law and the California Financing Law.

**J.** **Continued Investigation and Reservation of Rights**

38. Plaintiffs' investigation remains ongoing. Plaintiffs reserve all rights to amend this Complaint to add allegations, parties, transfers, and causes of action based on additional facts developed through investigation and discovery, including facts concerning the transactions and relationships among Yoel Getter, Gold, Insight, and other merchant cash advance lenders that transacted with FAT or its affiliates or made allegedly predatory loans to FAT entities.

**COUNT I**

**ACTUAL FRAUDULENT TRANSFER AND FRAUDULENT INCURRENCE OF OBLIGATION AGAINST INSIGHT UNDER 11 U.S.C. § 548(a)(1)(A)**

39. Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

40. On or about January 20–21, 2026, HDOS incurred the Insight Obligations and granted or transferred the Insight Liens in connection with the Refinancing. The Insight Obligations were incurred, and the Insight Liens were granted or transferred, within two years before the Petition Date.

41. HDOS incurred the Insight Obligations and granted the Insight Liens with actual intent to hinder one or more legitimate creditors of HDOS. Among other things, the Refinancing occurred only days before the Petition Date; HDOS incurred the Insight Obligations and granted

the Insight Liens to satisfy debt owed by FAT, not HDOS; HDOS received no direct cash or other consideration; HDOS was insolvent or became insolvent as a result of the Refinancing; HDOS was left with unreasonably small capital; and HDOS granted liens on substantially all of its personal property and related proceeds.

42. Through the Refinancing, Insight expressly sought to convert the undersecured and likely worthless claims against FAT evidenced by the Gold Notes into secured claims against HDOS to the detriment of HDOS's legitimate creditors.

43. Accordingly, the Insight Obligations and the Insight Liens should be avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code, and any payments made in connection therewith should be recoverable under section 550.

### COUNT II

### CONSTRUCTIVE FRAUDULENT TRANSFER AND FRAUDULENT INCURRENCE OF OBLIGATION AGAINST INSIGHT UNDER 11 U.S.C. § 548(a)(1)(B)

44. Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

45. On or about January 20–21, 2026, HDOS incurred the Insight Obligations and granted or transferred the Insight Liens in connection with the Refinancing. The Insight Obligations were incurred, and the Insight Liens were granted or transferred, within two years before the Petition Date.

46. HDOS received less than reasonably equivalent value in exchange for incurring the Insight Obligations and granting the Insight Liens. Among other things, HDOS was not liable on the Gold Notes, approximately $18,568,500 of the transaction was used to satisfy FAT's liabilities to Gold, the governing Promissory Note reflected $0.00 as "Net to Borrower," and any alleged

benefit to HDOS was at most indirect and not substantially comparable to the debt and collateral burden imposed on HDOS through the Refinancing.

47.      At the time HDOS incurred the Insight Obligations and granted the Insight Liens, HDOS was insolvent or became insolvent as a result of the Refinancing, was left with unreasonably small capital in relation to the business in which it was engaged or was about to engage, and/or intended to incur or believed it would incur debts beyond its ability to pay as they matured. The Insight Loan Documents reflect that the Refinancing imposed approximately $20,625,000 in new obligations on HDOS while encumbering substantially all of HDOS's personal property and related proceeds.

48.      Insight's own recent proof of claim and sale objection further confirm that Insight asserts a secured claim arising from the Refinancing.

49.      Accordingly, the Insight Obligations and the Insight Liens should be avoided pursuant to section 548(a)(1)(B) of the Bankruptcy Code, and any payments made in connection therewith should be recoverable under section 550.

### COUNT III

### ACTUAL FRAUDULENT TRANSFER AND FRAUDULENT INCURRENCE OF OBLIGATION AGAINST INSIGHT UNDER 11 U.S.C. § 544(b) AND CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07

50.      Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

51.      At all times relevant hereto, there existed one or more actual unsecured creditors of HDOS holding allowable claims within the meaning of sections 502 and 544(b) of the Bankruptcy Code.

52.      HDOS incurred the Insight Obligations and granted the Insight Liens with actual intent to hinder one or more legitimate creditors of HDOS. The circumstances evidencing such

13

intent include, among others, that the Refinancing occurred only days before the Petition Date; HDOS incurred the Insight Obligations and granted the Insight Liens to satisfy debt owed by FAT, not HDOS; HDOS received no direct cash or other consideration; HDOS was insolvent or became insolvent as a result of the Refinancing; HDOS was left with unreasonably small capital; and HDOS granted liens on substantially all of its personal property and related proceeds.

53. Through the Refinancing, Insight expressly sought to convert the undersecured and likely worthless claims against FAT evidenced by the Gold Notes into secured claims against HDOS to the detriment of HDOS's legitimate creditors.

54. Accordingly, the Insight Obligations and Insight Liens should be avoided pursuant to section 544(b) of the Bankruptcy Code and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07, and any payments made in connection therewith should be avoided and recovered to the extent permitted by sections 544(b), 550, and applicable California law.

**COUNT IV**

**CONSTRUCTIVE FRAUDULENT TRANSFER AND FRAUDULENT INCURRENCE OF OBLIGATION AGAINST INSIGHT UNDER 11 U.S.C. § 544(b) AND CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05(a), AND 3439.07**

55. Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

56. At the time HDOS incurred the Insight Obligations and granted the Insight Liens, HDOS received less than reasonably equivalent value in exchange for the Refinancing.

57. At the time of the Refinancing, HDOS was insolvent or became insolvent as a result thereof, was left with unreasonably small capital in relation to the business or transaction in which it was engaged or was about to engage, and/or intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

14

58.     At all times relevant hereto, there existed one or more actual unsecured creditors of HDOS holding allowable claims within the meaning of sections 502 and 544(b) of the Bankruptcy Code.

59.     Accordingly, the Insight Obligations and Insight Liens should be avoided pursuant to section 544(b) of the Bankruptcy Code and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05(a), and 3439.07, and any payments made in connection therewith should be avoided and recovered to the extent permitted by sections 544(b), 550, and applicable California law.

## COUNT V

## AVOIDABLE PREFERENCE AGAINST GOLD UNDER 11 U.S.C. § 547

60.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

61.     On or about January 20–21, 2026, Gold received approximately $18,568,500 in satisfaction of antecedent debt owed by FAT under the Gold Notes.

62.     The payment to Gold was made within ninety days before the Petition Date, while FAT was insolvent, and on account of antecedent debt previously owed by FAT.

63.     The payment to Gold was accomplished through the Refinancing, which caused HDOS to incur the Insight Obligations and grant the Insight Liens in order to generate the funds used to satisfy the Gold Notes.

64.     Gold thereby received more than it would have received in a chapter 7 liquidation if the transfer had not been made and Gold had received payment only to the extent provided for in the Bankruptcy Code.

65.     Accordingly, the transfer to Gold should be avoided pursuant to section 547 of the Bankruptcy Code and recovered pursuant to section 550.

15

66.     To the extent Gold is determined to be the recipient of an avoidable preferential transfer, any proof of claim held by Gold should be disallowed under section 502(d) of the Bankruptcy Code until Gold has paid the amount, or turned over the property, for which it is liable.

## COUNT VI

### RECOVERY OF AVOIDED TRANSFERS AND PRESERVATION FOR THE BENEFIT OF THE ESTATE UNDER 11 U.S.C. §§ 550 AND 551

67.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

68.     To the extent the Insight Liens, the transfer to Gold, the Prepetition Insight Payments, or any related transfers are avoided under sections 544, 547, or 548 of the Bankruptcy Code, Plaintiffs are entitled to recover, from the initial transferee, any immediate or mediate transferee, or any entity for whose benefit such transfers were made, the property transferred or the value of such property pursuant to section 550 of the Bankruptcy Code.

69.     Plaintiffs are further entitled to preserve any avoided transfer, lien, or interest for the benefit of the estate pursuant to section 551 of the Bankruptcy Code.

## COUNT VII

### ALTERNATIVE AVOIDABLE PREFERENCE AGAINST INSIGHT UNDER 11 U.S.C. § 547

70.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

71.     To the extent any transfer to or for the benefit of Insight occurred within ninety days before the Petition Date, including by reason of the Prepetition Insight Payments and/or the attachment, perfection, or extension of the Insight Liens to property, proceeds, accounts, cash, deposit accounts, after-acquired property, or other interests of HDOS not previously encumbered

16

at the time the underlying debt was incurred, such transfer was on account of antecedent debt owed by HDOS to Insight before such transfer was made.

72. Such transfer or transfers were made while HDOS was insolvent. Such transfer or transfers enabled Insight to receive more than it would receive in a chapter 7 liquidation if the transfer had not been made and Insight received payment only to the extent provided by the Bankruptcy Code.

73. Accordingly, such transfer or transfers, including the Prepetition Insight Payments, should be avoided pursuant to section 547 of the Bankruptcy Code and recovered pursuant to section 550.

## COUNT VIII

### OBJECTION TO ALLOWANCE OF PROOFS OF CLAIM AND REQUEST FOR DISALLOWANCE, REDUCTION, OR RECLASSIFICATION UNDER 11 U.S.C. §§ 502 AND 502(D)

74. Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

75. Insight has filed Proof of Claim No. 10 asserting a secured claim in the amount of $20,535,000.00 against HDOS based on the Refinancing, including the Insight Loan Documents, the Insight Obligations, and the Insight Liens. To the extent Gold or any other Defendant files a proof of claim based on the Gold Notes, the Refinancing, or any transfer challenged herein, Plaintiffs object to the allowance of any such proof of claim as well.

76. Plaintiffs object on the merits to Insight's asserted claim and purported secured status, including but not limited to the validity, perfection, priority, extent, enforceability, and amount of the Insight Liens and the extent to which Insight holds an allowed secured claim against HDOS or its assets. Plaintiffs further dispute the scope and amount of any claim asserted by Gold

or any other Defendant to the extent such claim is based on, derived from, or benefitted by the Refinancing.

77.     Because the Insight Obligations and Insight Liens are avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, and because the transfer to Gold is avoidable under section 547 to the extent alleged herein, any proof of claim held by Insight or any Defendant that is the recipient of an avoidable transfer should be disallowed, reduced, or reclassified to the extent appropriate under sections 502 and 502(d) of the Bankruptcy Code.

**COUNT IX**

**OBJECTION TO ALLOWANCE OF INSIGHT
CLAIM UNDER 11 U.S.C. § 502(b)(1) BASED ON USURY
AND UNLICENSED LENDING UNDER CALIFORNIA LAW**

78.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

79.     Insight has filed Proof of Claim No. 10 asserting a secured claim in the amount of $20,535,000.00 against HDOS based on the Refinancing, including the Insight Loan Documents, the Insight Obligations, and the Insight Liens.

80.     The New York choice-of-law provision in the Insight Loan Documents should not be enforced to preclude application of California law because the Refinancing has substantial California contacts, California has a materially greater interest in the enforceability of the Insight Obligations and Insight Liens, and application of New York law would improperly displace California usury protections and the California Financing Law.

81.     The Insight Obligations are usurious under California law. The effective interest rate under the Insight Loan Documents exceeds 20% per annum when calculated based on the amount funded or applied to the Gold payoff, the origination and loan fees added to principal, and the required daily paydown obligations.

18

82. The Prepetition Insight Payments are recoverable under applicable California usury law to the extent they are determined to constitute interest, interest-equivalent payments, or other amounts paid or delivered on account of the usurious Insight Obligations. Plaintiffs seek recovery of the Prepetition Insight Payments and treble damages, including under California Civil Code section 1916-3, to the extent available under applicable law.

83. Plaintiffs dispute that any exemption to California usury law applies. Among other things, HDOS did not have a preexisting lending or other relationship with Insight or Gold, and HDOS did not rely on advice of external counsel in negotiating the Insight Loan Documents. In addition, Section 17(d) of the Loan Agreement provides that Insight is not a licensed lender under California law.

84. Accordingly, any proof of claim asserted by Insight based on the Insight Loan Documents, the Insight Obligations, or the Insight Liens should be disallowed, reduced, reclassified, or otherwise limited under section 502(b)(1) of the Bankruptcy Code to the extent the claim is unenforceable or subject to limitation under applicable California usury law, the California Financing Law, or other applicable law. Plaintiffs further seek recovery of the Prepetition Insight Payments and treble damages to the extent available under California Civil Code section 1916-3 and other applicable law.

## **RESERVATION OF RIGHTS**

85. Plaintiffs further reserve all rights to amend this Complaint as additional facts are developed through review of the Debtors' books and records, company interviews, investigation, and discovery.

## **PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, Plaintiffs request that the Court enter an order:

(1)      avoiding the Insight Obligations;

(2)      avoiding the Insight Liens and related transfers;

(3)      avoiding the transfer to Gold to the extent established;

(4)      awarding recovery under section 550 of the Bankruptcy Code;

(5)      preserving avoided transfers under section 551 of the Bankruptcy Code;

(6)      disallowing, reducing, reclassifying, or otherwise limiting the claims of Insight and any other Defendant to the extent provided by sections 502(b)(1) and 502(d) of the Bankruptcy Code, including on account of applicable California usury law and the California Financing Law, and awarding recovery of the Prepetition Insight Payments and treble damages to the extent available under California Civil Code section 1916-3 and other applicable law;

(7)      granting such other and further relief as the Court deems just and proper, including fees, costs, interest, and expenses of this action, to the extent permitted by applicable law.

*[Remainder of page intentionally left blank.]*

Dated: May 14, 2026
       Houston, Texas

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley Kahn (Texas Bar No. 24087824)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@hunton.com
       ashleykahn@hunton.com

- and -

Brian Clarke (NY Bar No. 5146063)
Chazz C. Coleman (*pro hac vice* forthcoming)
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000
Email: brianclarke@hunton.com
       ccoleman@hunton.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Natasha Hwangpo (NY Bar No. 5222575)
Randall Carl Weber-Levine (NY Bar No. 5673330)
Ashley Gherlone Pezzi (NY Bar No. 5754213)
Thomas Fafara (NY Bar No. 6013445)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
       natasha.hwangpo@lw.com
       randall.weber-levine@lw.com
       ashley.pezzi@lw.com
       thomas.fafara@lw.com

- and -

Ted A. Dillman (CA Bar No. 258499)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: ted.dillman@lw.com

*Co-Counsel for the Plaintiffs*

21