UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, *et al.*,

Plaintiffs,

Civ. A. No. 1:24-cv-08515 (AS)

v.

SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN, *et al.*,

Defendants.

### DEFENDANT AVRUMI (JOSH) LUBIN'S RESPONSE TO PLAINTIFFS' LOCAL CIVIL RULE 56.1 STATEMENT

Defendant Avrumi (Josh) Lubin, pro se in his individual capacity only, responds to Plaintiffs' Local Civil Rule 56.1 Statement (ECF No. 156) as follows. Unless expressly admitted, each numbered statement is disputed, and citations are to the accompanying Declaration of Avrumi (Josh) Lubin ("Lubin Decl.") and exhibits.

**Responses**

1. Admitted, on information and belief, as general background concerning the Leer Companies' business.

2. Admitted, on information and belief, as general background.

3. Admitted, on information and belief, as general background.

4. Admitted, on information and belief, as general background.

5. Admitted, on information and belief, as general background concerning the COVID-19 pandemic's effect on the Leer Companies.

6. Admitted, on information and belief, as general background.

7. Disputed. Admitted only that Mr. Lubin is the sole member of Spin Capital, LLC; the characterizations of Spin as a "loansharking enterprise" and of Mr. Lubin and Spin as a "RICO enterprise" are argumentative legal conclusions, and the deposition testimony speaks for itself. Mr. Lubin acted as a broker and as Spin's representative, not in his individual capacity. See Lubin Decl. ¶¶ 2, 4.

1

8. Disputed. Admitted only that Mr. Lubin brokered financial transactions, including MCA deals, for a commission and/or syndication participation, and that the quoted testimony speaks for itself; the characterization that Spin and Lubin "are also in the business of lending" and the references to other judgments are disputed as argumentative and immaterial to whether the agreements at issue are loans. See Lubin Decl. ¶¶ 2, 4.

9. Disputed. The allegations of an "Enterprise" that "conspires" with "MCA lender enterprises" are argumentative legal conclusions, and the quoted exhibits speak for themselves. Mr. Lubin acted as a broker and Spin's representative and disputes any knowledge or intent that any agreement was an unlawful loan. See Lubin Decl. ¶¶ 4, 7, 9.

10. Disputed to the extent Plaintiffs characterize the Promissory Note as additional disguised interest or as part of an "Enterprise"; the quoted testimony speaks for itself. Plaintiffs concede the Note is not the alleged unlawful debt and have dismissed the Note-usury claim. (ECF No. 96 at 4.) See Lubin Decl. ¶ 13.

11. Disputed. This paragraph mischaracterizes Mr. Lubin's role and intent; the quoted testimony speaks for itself. Mr. Lubin acted as a broker, was compensated for that role, and disputes any knowledge or intent that any agreement was an unlawful loan or disguised interest. See Lubin Decl. ¶¶ 4, 9; Ex. B-F.

12. Disputed to the extent Plaintiffs characterize the communications as evidence that Mr. Lubin "held himself out as the lender" or knew or intended any agreement was an unlawful loan; admitted only that the messages were sent. Mr. Lubin acted as a broker and as Spin's representative, not the funder. See Lubin Decl. ¶¶ 4, 6-7, 9.

13. Disputed. The allegation of a "Spin Enterprise" that "conspires with and actively participates in the BMF Enterprise" is an argumentative legal conclusion; the cited authority concerns different parties, different agreements, and a different record. See Lubin Decl. ¶¶ 4, 9.

14. Disputed. This paragraph concerns other persons and entities; Mr. Lubin lacks knowledge sufficient to admit and disputes any implication that it bears on whether the agreements at issue are loans or on his individual conduct. See Lubin Decl. ¶ 4.

15. Disputed. Admitted only, on information and belief, that Gavriel Yitzchakov is associated with BMF Advance; the characterization of BMF as papering deals "brokered and funded by the Spin Enterprise" is disputed. Mr. Lubin did not own or control BMF and acted only as a broker. See Lubin Decl. ¶¶ 4, 6.

16. Disputed. This paragraph concerns other persons and entities; Mr. Lubin lacks knowledge sufficient to admit and disputes any relevance to his individual conduct or to whether the agreements at issue are loans. See Lubin Decl. ¶¶ 4, 9; ECF No. 96 at 5.

17. Disputed. This paragraph concerns other persons and entities; Mr. Lubin lacks knowledge sufficient to admit and disputes any relevance to his individual conduct or to whether the agreements at issue are loans. See Lubin Decl. ¶¶ 4, 9; ECF No. 96 at 5.

18. Disputed. This paragraph concerns a separate transaction with a non-party (Panthers) and the cited exhibit speaks for itself; Mr. Lubin disputes any relevance to his individual conduct or to whether the agreements at issue are loans. See Lubin Decl. ¶¶ 4, 9; ECF No. 96 at 5.

19. Disputed. The cited decision (Funderz) involved different parties, different agreements, and a different record, and does not control whether the agreements at issue here are loans, which is a genuinely disputed question of fact (ECF No. 96 at 5). Legal conclusion; disputed.

20. Disputed. Admitted only, on information and belief, that Yoel Getter was associated with Hi Bar Capital; the characterizations are argumentative and the quoted exhibits speak for themselves. Mr. Lubin did not own or control Hi Bar. See Lubin Decl. ¶¶ 4, 6.

21. Disputed. Admitted only that the quoted testimony speaks for itself; the characterization of a "buyout" negotiated by Herbst is disputed insofar as it implies Mr. Lubin acted in his individual capacity or as a lender. See Lubin Decl. ¶ 4.

22. Disputed. The characterization of a "Hi Bar Enterprise" that "worked with the Spin Enterprise" to broker, underwrite, and fund the Hi Bar agreements is an argumentative legal conclusion. Mr. Lubin acted as a broker and Spin's representative, not as the funder. See Lubin Decl. ¶¶ 4, 6-7.

23. Disputed. The characterization of a "Hi Bar Enterprise" refinancing "usurious" MCA debt into the Note is an argumentative legal conclusion. Whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5), and Plaintiffs concede the Note is not the alleged unlawful debt (ECF No. 96 at 4). See Lubin Decl. ¶¶ 5-8, 13.

24. Disputed. This paragraph asserts argumentative conclusions about "three Enterprises" pooling funding and a "120% default interest rate"; the cited exhibit speaks for itself. Mr. Lubin disputes the characterization and any implication that he acted as a lender in his individual capacity. See Lubin Decl. ¶¶ 4, 6-7.

25. Disputed. The allegation that the "Hi Bar Enterprise" had a "common goal of collecting unlawful debt through disguising usurious loans as MCA agreements" is an argumentative legal conclusion, and the cited authority concerns a different party and a different record. Whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5).

26. Disputed. This paragraph concerns separate litigation (Herbst/Hi Bar v. Getter) among other defendants and the cited complaint speaks for itself; Mr. Lubin lacks knowledge sufficient to admit and disputes any relevance to his individual conduct or to whether the agreements at issue are loans. See Lubin Decl. ¶¶ 4, 9; ECF No. 96 at 5.

27. Disputed. The "recipe for disaster" characterization and the assertion that "Hi Bar knew that the Leer Companies were similarly mired in debt" are argumentative; the cited exhibits speak for themselves. Mr. Lubin disputes any attribution of such knowledge or intent to him. See Lubin Decl. ¶ 9.

28. Disputed. Admitted only that Mr. Lubin and Stefan Leer discussed financing in early March 2021 and that BMF and Hi Bar were potential funders; the characterization of the transactions as "short-term loans" and that Mr. Lubin "offered" them as such is disputed, as is the implication that he acted as a lender. Whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 4-5, 7.

29. Disputed to the extent this paragraph relies on the Leer declaration to characterize the Leer Companies' "desperation"; admitted only that the parties discussed the Leer Companies' business and need for capital. Mr. Lubin lacks personal knowledge of the Leer Companies'

internal financial condition and disputes any characterization bearing on his knowledge or intent. See Lubin Decl. ¶ 9.

30. Disputed. Whether Mr. Lubin "knew the Leer Companies were having money problems" when the agreements were entered, and the characterization of the agreements as "MCA Agreements" that are loans, are disputed; Mr. Lubin disputes any knowledge or intent that any agreement was an unlawful loan. See Lubin Decl. ¶ 9.

31. Disputed. Admitted only that discussions concerning the June 2021 Promissory Note and Security Agreement occurred; the characterization of what "precipitated" those discussions and Mr. Lubin's knowledge is disputed. See Lubin Decl. ¶ 9.

32. Disputed. Admitted only that the parties entered into the March 2, 2021 BMF agreement (Ex. B) and that the document speaks for itself; the "financial desperation" and "short-term loan" characterizations are disputed. Whether the agreement is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. B.

33. Admitted that the parties entered into the March 2, 2021 BMF agreement and that the agreement states the quoted dollar terms; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan; whether it is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-8; Ex. B.

34. Admitted that the agreement states the $4,996 daily remittance is a "good faith" estimate of 10% of the Leer Companies' daily receivables; the agreement speaks for itself. Disputed to the extent the paragraph draws inferences characterizing the agreement as a loan or the estimate as not made in good faith. See Lubin Decl. ¶¶ 5-7; Ex. B.

35. Disputed. Admitted only that a fee was deducted as reflected in the cited exhibit, which speaks for itself; disputed to the extent the paragraph characterizes the transaction as a loan or the deduction as interest on a loan. See Lubin Decl. ¶¶ 5-7; Ex. B.

36. Disputed. Admitted only that the cited exhibits speak for themselves; disputed to the extent the paragraph characterizes the agreement as a "loan" with a fixed "term" set by "underwriting." The agreement is structured as a purchase of future receivables with an indefinite term tied to receipts. Whether it is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. B.

37. Disputed. The assertion that "Lubin and Gabe provided the funding" for the March 2, 2021 agreement is disputed; Mr. Lubin acted as a broker and Spin's representative and did not fund the advance. BMF was the funder. See Lubin Decl. ¶¶ 4, 6-7.

38. Admitted that the March 2, 2021 BMF agreement contains a "No Stacking Addendum" containing the quoted language; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan. See Lubin Decl. ¶¶ 5-8; Ex. B.

39. Admitted that the agreement contains the quoted default provision; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan; the agreement also provides that the merchant's bankruptcy, slowdown, or going out of business does not, by itself, constitute a breach. See Lubin Decl. ¶¶ 5-8; Ex. B.

40. Admitted that the personal guaranty contains the quoted bankruptcy-related language; the agreement speaks for itself. Disputed to the extent the paragraph characterizes this as "recourse" rendering the agreement a loan; whether the agreement is a loan is a disputed question of fact (ECF No. 96 at 5), and the agreement provides that the merchant's bankruptcy is not, by itself, a breach. See Lubin Decl. ¶¶ 5-8; Ex. B.

41. Admitted that the agreement is as written; the agreement speaks for itself. Disputed to the extent the paragraph implies that the absence of identified specific receivables renders the agreement a loan, which is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. B.

42. Admitted that the agreement contains the quoted remittance language; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan based on the merchant's collection of receivables. See Lubin Decl. ¶¶ 5-6; Ex. B.

43. Disputed. Whether the March 2, 2021 BMF agreement contains a reconciliation or adjustment mechanism is disputed; the agreement contains provisions addressing reconciliation or adjustment of remittances based on the merchant's receipts. Whether the agreement is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. B.

44. Disputed. This paragraph assumes the agreement is "a loan" and computes an interest rate on that premise. Whether the agreement is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5); the agreement has an indefinite term tied to receipts, reconciliation/adjustment provisions, and no event of default on the merchant's bankruptcy. See Lubin Decl. ¶¶ 5-8; Ex. B.

45. Disputed. The assertion that BMF "over collected on the loan" assumes the agreement is a loan and is contradicted by the disputed loan characterization (ECF No. 96 at 5); the cited exhibit speaks for itself. See Lubin Decl. ¶¶ 5-7; Ex. B.

46. Admitted that the parties entered into a Hi Bar agreement on March 10, 2021 (Ex. C) and that the agreement speaks for itself. Disputed to the extent the paragraph characterizes it as a loan; whether it is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. C.

47. Admitted that the agreement states the quoted dollar terms; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan with a fixed "principal." See Lubin Decl. ¶¶ 5-7; Ex. C.

48. Admitted that the agreement states the $8,500 daily remittance is a "good faith estimate" of 20% of the Leer Companies' daily receivables; the agreement speaks for itself. Disputed to the extent the paragraph draws inferences characterizing the agreement as a loan or the estimate as not made in good faith. See Lubin Decl. ¶¶ 5-7; Ex. C.

49. Disputed. The assertion that "Stefan and Lubin negotiated the March 10, 2021 Hi Bar MCA Agreement as a short-term loan with a term of 39 days" is disputed; the agreement is structured as a purchase of future receivables with an indefinite term tied to receipts. Whether it is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. C.

50. Disputed. Admitted only that a fee was deducted as reflected in the agreement, which speaks for itself; disputed to the extent the paragraph characterizes the transaction as a loan or the fee as interest on a loan. See Lubin Decl. ¶¶ 5-7; Ex. C.

51. Admitted that the agreement contains the cited alternative-financing default provision; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan. See Lubin Decl. ¶¶ 5-8; Ex. C.

52. Admitted that the agreement provides that missing two daily payments constitutes a default; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan; the agreement also provides that the merchant's bankruptcy, slowdown, or going out of business does not, by itself, constitute a breach. See Lubin Decl. ¶¶ 5-8; Ex. C.

53. Admitted that the personal guaranty contains the quoted bankruptcy-related language; the agreement speaks for itself. Disputed to the extent the paragraph characterizes this as "recourse" rendering the agreement a loan; whether the agreement is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-8; Ex. C.

54. Admitted that the agreement is as written; the agreement speaks for itself. Disputed to the extent the paragraph implies that the absence of identified specific receivables renders the agreement a loan, which is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. C.

55. Admitted that the agreement contains the quoted remittance language; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan based on the merchant's collection of receivables. See Lubin Decl. ¶¶ 5-6; Ex. C.

56. Disputed. Admitted only that the March 10, 2021 Hi Bar agreement contains a reconciliation provision; the characterizations of that provision as merely "nominal" and "illusory" are disputed, and the agreement speaks for itself. The reconciliation/adjustment provisions and indefinite term are among the features making the loan-versus-purchase question a genuinely disputed issue of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. C.

57. Disputed. Admitted only that the cited exhibits speak for themselves; disputed to the extent the paragraph relies on the wording of bank ACH entries to characterize the agreement as a loan. Whether the agreement is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. C.

58. Disputed. This paragraph assumes the agreement is "a loan" with a fixed "principal" and "term" and computes an interest rate on that premise. Whether the agreement is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5); the agreement has an indefinite term tied to receipts, a reconciliation provision, and no event of default on the merchant's bankruptcy. See Lubin Decl. ¶¶ 5-8; Ex. C.

59. Disputed. Admitted only that the parties had entered into two agreements (Ex. B and Ex. C) and that those agreements speak for themselves; the characterization of the agreements as "loans" being "paid off" is disputed. Whether they are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. B, C.

60. Disputed to the extent this paragraph relies on the Leer declaration to characterize the Leer Companies' receivables and revenue; Mr. Lubin lacks personal knowledge of the Leer Companies' internal financial condition and disputes any characterization bearing on his knowledge or intent. See Lubin Decl. ¶ 9.

61. Admitted that the parties entered into the March 12, 2021 BMF agreement (Ex. D) and that the agreement states the quoted dollar terms; the agreement and cited exhibits speak for themselves. Disputed to the extent the paragraph characterizes the agreement as a "refinance" of a "loan"; whether it is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. D.

62. Admitted that the agreement states the $8,500 daily remittance is a "good faith estimate" of 10% of the Leer Companies' daily receivables; the agreement speaks for itself. Disputed to the extent the paragraph draws inferences characterizing the agreement as a loan or the estimate as not made in good faith. See Lubin Decl. ¶¶ 5-7; Ex. D.

63. Disputed. The assertion that the number of days was "not based on a good faith estimate" but on "whatever BMF want to charge," and the use of the quoted message to characterize the

agreement as a loan, are disputed; admitted only that the message was sent. Mr. Lubin acted as a broker and disputes any knowledge or intent that any agreement was an unlawful loan. See Lubin Decl. ¶¶ 5-7, 9; Ex. D.

64. Disputed. Admitted only that a portion of the stated amount was applied to the prior BMF balance, as the cited records reflect; disputed to the extent the paragraph characterizes the transaction as a loan or the application of funds as repayment of loan principal. Whether the agreement is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. D.

65. Disputed. Admitted only that a fee was charged as reflected in the cited exhibit, which speaks for itself; disputed to the extent the paragraph characterizes the transaction as a loan or the fee as interest on a loan. See Lubin Decl. ¶¶ 5-7; Ex. D.

66. Disputed. Admitted only that the cited funding records speak for themselves; disputed to the extent the paragraph characterizes the net amount as loan "principal." Whether the agreement is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. D.

67. Admitted that the agreement provides that missing a single daily payment results in a default; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan; the agreement also provides that the merchant's bankruptcy, slowdown, or going out of business does not, by itself, constitute a breach. See Lubin Decl. ¶¶ 5-8; Ex. D.

68. Admitted that the March 12, 2021 BMF agreement contains the same "No Stacking Addendum"; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan. See Lubin Decl. ¶¶ 5-8; Ex. D.

69. Admitted that the personal guaranty contains the quoted bankruptcy-related language; the agreement speaks for itself. Disputed to the extent the paragraph characterizes this as "recourse" rendering the agreement a loan; whether the agreement is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-8; Ex. D.

70. Disputed. Whether the March 12, 2021 BMF agreement contains a reconciliation or adjustment mechanism is disputed; the agreement contains provisions addressing reconciliation or adjustment of remittances based on the merchant's receipts. Whether the agreement is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. D.

71. Admitted that the agreement is as written; the agreement speaks for itself. Disputed to the extent the paragraph implies that the absence of identified specific receivables renders the agreement a loan, which is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. D.

72. Admitted that the agreement contains the quoted remittance language; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan based on the merchant's collection of receivables. See Lubin Decl. ¶¶ 5-6; Ex. D.

73. Disputed. This paragraph assumes the agreement is "a loan" with a fixed "principal" and "term" and computes an interest rate on that premise. Whether the agreement is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5); the agreement has an indefinite term tied to receipts, reconciliation/adjustment provisions, and no event of default on the merchant's bankruptcy. See Lubin Decl. ¶¶ 5-8; Ex. D.

74. Disputed. The assertion that BMF "over collected" assumes the agreement is a loan and is contradicted by the disputed loan characterization (ECF No. 96 at 5); the cited exhibit speaks for itself. See Lubin Decl. ¶¶ 5-7; Ex. D.

75. Disputed to the extent this paragraph relies on the Leer declaration to characterize the Leer Companies' receivables, repayments, and "capital depletion"; Mr. Lubin lacks personal knowledge of the Leer Companies' internal financial condition and disputes the characterization of the agreements as loans. See Lubin Decl. ¶¶ 5-7, 9.

76. Admitted that the parties entered into the March 25, 2021 BMF agreement (Ex. E) and that the agreement and cited exhibit state the quoted dollar terms; they speak for themselves. Disputed to the extent the paragraph characterizes the agreement as a "refinance" into a "new loan"; whether it is a loan or a true purchase of future receivables is a genuinely disputed

question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. E.

77. Admitted that the agreement states the $25,000 daily remittance is a "good faith estimate" of 10% of the Leer Companies' daily receivables; the agreement speaks for itself. Disputed to the extent the paragraph draws inferences characterizing the agreement as a loan or the estimate as not made in good faith. See Lubin Decl. ¶¶ 5-7; Ex. E.

78. Disputed. Admitted only that the cited exhibits speak for themselves; disputed to the extent the paragraph characterizes the net amount as loan "principal" or the fees as interest on a loan. Whether the agreement is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. E.

79. Disputed. The assertion that the agreement had a "fixed term of 24 business days" "negotiated between Stefan and Lubin" is disputed; the agreement is structured as a purchase of future receivables with an indefinite term tied to receipts, and the cited text messages speak for themselves. Whether it is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. E.

80. Admitted that the agreement provides that missing a single daily payment constitutes an event of default; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan; the agreement also provides that the merchant's bankruptcy, slowdown, or going out of business does not, by itself, constitute a breach. See Lubin Decl. ¶¶ 5-8; Ex. E.

81. Admitted that the March 25, 2021 BMF agreement contains the same "No Stacking Addendum"; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan. See Lubin Decl. ¶¶ 5-8; Ex. E.

82. Admitted that the personal guaranty contains the quoted bankruptcy-related language; the agreement speaks for itself. Disputed to the extent the paragraph characterizes this as "recourse" rendering the agreement a loan; whether the agreement is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-8; Ex. E.

83. Disputed. Whether the March 25, 2021 BMF agreement contains a reconciliation or adjustment mechanism is disputed; the agreement contains provisions addressing reconciliation or adjustment of remittances based on the merchant's receipts. Whether the agreement is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. E.

84. Admitted that the agreement is as written; the agreement speaks for itself. Disputed to the extent the paragraph implies that the absence of identified specific receivables renders the agreement a loan, which is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. E.

85. Admitted that the agreement allocates collection of receivables as the prior agreements did; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan based on the merchant's collection of receivables. See Lubin Decl. ¶¶ 5-6; Ex. E.

86. Disputed. This paragraph assumes the agreement is "a loan" with a fixed "principal" and "term" and computes an interest rate on that premise. Whether the agreement is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5); the agreement has an indefinite term tied to receipts, reconciliation/adjustment provisions, and no event of default on the merchant's bankruptcy. See Lubin Decl. ¶¶ 5-8; Ex. E.

87. Disputed. The assertion that BMF "over collected" assumes the agreement is a loan and is contradicted by the disputed loan characterization (ECF No. 96 at 5); the cited exhibit speaks for itself. See Lubin Decl. ¶¶ 5-7; Ex. E.

88. Disputed to the extent this paragraph relies on the Leer declaration to characterize the sufficiency of funds and the Leer Companies' operational needs; Mr. Lubin lacks personal knowledge of the Leer Companies' internal financial condition and disputes the characterization of the agreements as loans. See Lubin Decl. ¶¶ 5-7, 9.

89. Admitted that the parties entered into the March 25, 2021 Hi Bar agreement (Ex. F) and that the agreement states the quoted dollar terms and "good faith estimate" language; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement

as a loan; whether it is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. F.

90. Admitted that the agreement reflects the stated good-faith estimate of the Leer Companies' daily receivables; the agreement speaks for itself. Disputed to the extent the paragraph draws inferences characterizing the agreement as a loan or the estimate as not made in good faith. See Lubin Decl. ¶¶ 5-7; Ex. F.

91. Disputed. Admitted only that the five agreements (Ex. B-F) contain the daily-remittance and percentage figures shown, which speak for themselves; disputed to the extent the paragraph argues that the differing receivables estimates show the estimates were not made in good faith or that the agreements are loans. The estimates were the funders' good-faith estimates, and whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. B-F.

92. Disputed. Admitted only that a fee was deducted as reflected in the agreement, which speaks for itself; disputed to the extent the paragraph characterizes the transaction as a loan or the fee as interest on a loan. See Lubin Decl. ¶¶ 5-7; Ex. F.

93. Admitted that the agreement provides that two missed payments constitute an event of default; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan; the agreement also provides that the merchant's bankruptcy, slowdown, or going out of business does not, by itself, constitute a breach. See Lubin Decl. ¶¶ 5-8; Ex. F.

94. Admitted that the personal guaranty contains the quoted bankruptcy-related language; the agreement speaks for itself. Disputed to the extent the paragraph characterizes this as "recourse" rendering the agreement a loan; whether the agreement is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-8; Ex. F.

95. Admitted that the agreement contains the cited alternative-financing default provision; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan. See Lubin Decl. ¶¶ 5-8; Ex. F.

96. Disputed. Admitted only that the March 25, 2021 Hi Bar agreement contains a reconciliation provision; the characterizations of that provision as merely "nominal" and as containing disabling "qualifications and limitations" are disputed, and the agreement speaks for itself. The reconciliation/adjustment provisions and indefinite term are among the features making the loan-versus-purchase question a genuinely disputed issue of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. F.

97. Disputed. This paragraph assumes a finite "term" by dividing the purchase amount by the daily remittance; the agreement is structured as a purchase of future receivables with an indefinite term tied to receipts. Whether it is a loan is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. F.

98. Admitted that the agreement is as written; the agreement speaks for itself. Disputed to the extent the paragraph implies that the absence of identified specific receivables renders the agreement a loan, which is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. F.

99. Admitted that the agreement allocates collection of receivables to the merchant; the agreement speaks for itself. Disputed to the extent the paragraph characterizes the agreement as a loan based on the merchant's collection of receivables. See Lubin Decl. ¶¶ 5-6; Ex. F.

100. Disputed. This paragraph assumes the agreement is "a loan" with a fixed "principal" and "term" and computes an interest rate on that premise. Whether the agreement is a loan or a true purchase of future receivables is a genuinely disputed question of fact (ECF No. 96 at 5); the agreement has an indefinite term tied to receipts, a reconciliation provision, and no event of default on the merchant's bankruptcy. See Lubin Decl. ¶¶ 5-8; Ex. F.

101. Disputed. The assertion that "the BMF MCA agreements have been ruled to be loans as a matter of law in Funderz" is disputed as applied here; Funderz involved different parties, different agreements, and a different record. Whether the agreements at issue here are loans is a genuinely disputed question of fact in this case (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. B, D, E.

102. Disputed to the extent the paragraph equates the agreements here with the Funderz agreements; admitted only that the agreements here contain "good faith estimate" language, which speaks for itself. Whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-7; Ex. B-F.

103. Disputed. This paragraph relies on the Funderz court's findings about different agreements to argue the estimates here were not made in good faith; that argument is disputed, and whether the agreements here are loans is a genuinely disputed question of fact (ECF No. 96 at 5). The estimates were the funders' good-faith estimates. See Lubin Decl. ¶¶ 5-7; Ex. B-F.

104. Disputed to the extent the paragraph equates the agreements here with the Funderz agreements and characterizes the personal guaranty's bankruptcy language as making the agreements loans; the agreements speak for themselves. Whether they are loans is a disputed question of fact (ECF No. 96 at 5), and the agreements provide that the merchant's bankruptcy is not, by itself, a breach. See Lubin Decl. ¶¶ 5-8; Ex. B, D, E.

105. Disputed to the extent the paragraph equates the agreements here with the Funderz agreements; admitted only that the agreements here contain their stated default provisions, which speak for themselves. Whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-8; Ex. B, D, E.

106. Disputed to the extent the paragraph equates the agreements here with the Funderz agreements and characterizes the security interest as making the agreements loans; the agreements speak for themselves. Whether they are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. B, D, E.

107. Disputed. The assertion that the BMF agreements here "do not even have a reconciliation provision" is disputed; the agreements contain provisions addressing reconciliation or adjustment of remittances based on the merchant's receipts. Whether the agreements are loans is a genuinely disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. B, D, E.

108. Disputed to the extent the paragraph equates the agreements here with the Funderz agreements and argues that the failure to identify specific receivables or the merchant's

collection responsibility renders the agreements loans; the agreements speak for themselves. Whether they are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6; Ex. B, D, E.

109. Disputed to the extent the paragraph characterizes the payments as missed payments on "loans"; admitted only that the cited exhibit speaks for itself. Mr. Lubin acted as a broker and Spin's representative. See Lubin Decl. ¶¶ 4, 5-6.

110. Disputed to the extent Plaintiffs characterize the communications as evidence that Mr. Lubin acted as a lender, refused a genuine reconciliation, or knew or intended any agreement was an unlawful loan; admitted only that the messages were sent and that the cited exhibit speaks for itself. As the broker, Mr. Lubin did not have authority to bind the funders, and any reconciliation request would have been decided by BMF or Hi Bar. See Lubin Decl. ¶¶ 4, 6-7, 9.

111. Disputed to the extent Plaintiffs characterize the communications as evidence that Mr. Lubin refused a genuine reconciliation or acted as a lender; admitted only that the messages were sent and that the cited exhibit speaks for itself. As the broker, Mr. Lubin did not have authority to bind the funders. See Lubin Decl. ¶¶ 4, 6-7, 9.

112. Disputed to the extent Plaintiffs characterize the communications as evidence of Mr. Lubin's knowledge or intent that any agreement was an unlawful loan; admitted only that the messages were sent and that the cited exhibit speaks for itself. See Lubin Decl. ¶¶ 6-7, 9.

113. Disputed to the extent Plaintiffs characterize the communications as evidence of Mr. Lubin's knowledge or intent that any agreement was an unlawful loan or that he acted as a lender; admitted only that the messages were sent and that the cited exhibit speaks for itself. See Lubin Decl. ¶¶ 4, 6-7, 9.

114. Disputed to the extent the paragraph characterizes the agreements as loans; admitted only that Hi Bar took the actions reflected in the cited exhibit, which speaks for itself. Mr. Lubin acted as a broker and did not control Hi Bar. See Lubin Decl. ¶¶ 4, 5-6.

115. Disputed to the extent the paragraph characterizes the agreements as loans or attributes the conduct of BMF's collection counsel to Mr. Lubin; admitted only that the cited exhibits speak for themselves. Mr. Lubin acted as a broker and did not control BMF. See Lubin Decl. ¶¶ 4, 5-6.

116. Disputed to the extent Plaintiffs characterize the communications as evidence that Mr. Lubin acted as a lender or knew or intended any agreement was an unlawful loan; admitted only that the messages were sent and that the cited exhibits speak for themselves. See Lubin Decl. ¶¶ 4, 9.

117. Admitted that discussions occurred concerning a loan to pay off the BMF and Hi Bar balances, secured by certain life insurance policies; disputed to the extent the paragraph relies on the Leer declaration for characterizations of intent or purpose. See Lubin Decl. ¶ 9.

118. Admitted that on or about June 16, 2021 the Leer Companies entered into a $2.7 million Promissory Note with Spin stating the quoted interest term; the Note speaks for itself. Disputed that the Note's interest is cognizable RICO damages, because Plaintiffs concede the Note is not the alleged unlawful debt and dismissed the Note-usury claim (ECF No. 96 at 4). See Lubin Decl. ¶ 13.

119. Admitted that Spin required Stefan and Tatanisha Leer to execute personal guaranties in connection with the Promissory Note; the documents speak for themselves.

120. Admitted that Spin required a corporate guaranty executed by the named Corporate Guarantors; the document speaks for itself.

121. Admitted that a Security Agreement was executed in connection with the Promissory Note as described; the document speaks for itself. Disputed to the extent the paragraph characterizes the security interest as "the most important component" or imputes intent to Mr. Lubin individually. See Lubin Decl. ¶ 4.

122. Admitted that the Note states a $2.7 million amount and that the cited records reflect the deductions and payoffs described, including that the Leer Companies received $1,307,403 in new money; the documents speak for themselves. Disputed to the extent the paragraph

characterizes the Note as not a genuine $2.7 million obligation or as disguised interest, because Plaintiffs concede the Note is not the alleged unlawful debt (ECF No. 96 at 4). See Lubin Decl. ¶¶ 10, 13.

123. Admitted that the Note contains the payment schedule described; the Note speaks for itself.

124. Admitted that the Leer Companies made the first five payments, totaling approximately $510,000, and then stopped paying; disputed to the extent the paragraph relies on the Leer declaration to characterize the payments as "onerous" or the Note as a loan yielding "less than half the actual principal." See Lubin Decl. ¶¶ 10-11, 13.

125. Admitted that Spin sued Plaintiffs for breach of the Promissory Note and that the cited interrogatory responses speak for themselves. Disputed as to the damages amount, which is contested, and disputed that the Note's default interest is cognizable RICO damages, because Plaintiffs concede the Note is not the alleged unlawful debt (ECF No. 96 at 4). See Lubin Decl. ¶¶ 10-13.

126. Disputed. This paragraph states a legal conclusion ("Defendants are in the business of lending") to which no response is required under Rule 56.1; to the extent a response is required, disputed. Mr. Lubin acted as a broker, and whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 4, 5-6.

127. Admitted that the agreements contain New York choice-of-law provisions; the agreements speak for themselves. Disputed to the extent the paragraph asserts a legal conclusion that New York law renders the agreements unlawful; choice of law and the enforceability of the agreements are contested legal questions, not undisputed facts. See Lubin Decl. ¶¶ 5-6; Ex. B-F.

128. Disputed. Admitted only that Mr. Lubin is the owner and sole managing member of Spin; the assertions that he "solicited the unlawful debt transactions," "negotiated the terms" as part of an enterprise, and "provid[ed] funding for the MCA Agreements" are disputed argumentative legal conclusions. Mr. Lubin acted as a broker and Spin's representative, did not fund the advances, and disputes any knowledge or intent that any agreement was an unlawful

19

loan. See Lubin Decl. ¶¶ 4, 6-7, 9.

129. Disputed. This paragraph concerns other defendants or settling defendants (Gabe/BMF) and asserts argumentative legal conclusions about an "Isaacov Enterprise"; Mr. Lubin lacks knowledge sufficient to admit and disputes any implication that he funded the agreements or acted other than as a broker. See Lubin Decl. ¶¶ 4, 6-7.

130. Disputed. This paragraph concerns other defendants, settling defendants, or defaulting defendants (Herbst/Getter/Hi Bar) and asserts argumentative legal conclusions about a "Hi Bar Enterprise"; Mr. Lubin lacks knowledge sufficient to admit and disputes any relevance to his individual conduct. See Lubin Decl. ¶¶ 4, 9.

131. Disputed. This paragraph states argumentative legal conclusions characterizing Defendants as collectors of "unlawful debt" and "usury"; whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5). Mr. Lubin acted as a broker and disputes any knowledge or intent that any agreement was an unlawful loan. See Lubin Decl. ¶¶ 4, 5-6, 9.

132. Disputed. This paragraph states argumentative legal conclusions characterizing the agreements as "usurious" and the Note as a "fictitious principal" used to "insulate their collection of unlawful debt." Plaintiffs concede the Note is not the alleged unlawful debt (ECF No. 96 at 4), and whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 5-6, 10, 13.

133. Disputed. This paragraph states a legal conclusion concerning the existence and continuity of a RICO "Enterprise"; to the extent a response is required, disputed. Mr. Lubin acted as a broker and disputes the existence of any such enterprise or unlawful debt. See Lubin Decl. ¶¶ 4, 9.

134. Disputed. This paragraph states a legal conclusion concerning "interstate commerce" and "three Enterprises"; to the extent a response is required, disputed for the reasons stated above. See Lubin Decl. ¶¶ 4, 9.

135. Disputed. This paragraph states argumentative legal conclusions characterizing the agreements as "usurious loans" made by "Enterprises"; to the extent a response is required,

disputed. Whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 4, 5-6.

136. Disputed to the extent the paragraph asserts the existence of "three Enterprises" and characterizes the communications as racketeering activity; admitted only that communications between the parties occurred by email, mail, wire, and ACH. See Lubin Decl. ¶¶ 4, 9.

137. Disputed to the extent the paragraph asserts the existence of "three Enterprises" and characterizes the agreements as "MCA Agreements and Promissory Note" that are unlawful debt; admitted only that funding and collection occurred through interstate wires and ACH debits. Whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5). See Lubin Decl. ¶¶ 4, 5-6.

138. Disputed to the extent the paragraph asserts the existence of "three Enterprises" and that the documents were executed "at the direction of Defendants" as part of a racketeering scheme; admitted only that the agreements and Note were executed by Plaintiffs and transmitted by email. See Lubin Decl. ¶¶ 4, 5-6.

139. Disputed. This paragraph states a legal conclusion of RICO injury premised on "unlawful debt"; to the extent a response is required, disputed. Plaintiffs' alleged damages are unliquidated and subject to setoff from their settlements with BMF and Hi Bar and from amounts the merchant received; any net out-of-pocket injury is disputed. See Lubin Decl. ¶¶ 10-12.

140. Disputed. The assertion of injury "by the amount of interest charged by the Promissory Note" is not cognizable RICO damages, because Plaintiffs concede the Note is not the alleged unlawful debt and dismissed the Note-usury claim (ECF No. 96 at 4). See Lubin Decl. ¶ 13.

141. Disputed. This paragraph states a legal conclusion of injury and causation premised on "criminally usurious MCA payments" and the Note; to the extent a response is required, disputed. Whether the agreements are loans is a disputed question of fact (ECF No. 96 at 5); the Note is not the alleged unlawful debt (ECF No. 96 at 4); and damages are unliquidated and subject to setoff. See Lubin Decl. ¶¶ 5-6, 10-13.

142. Disputed. The assertion that attorneys' fees and costs constitute RICO injury is a legal conclusion to which no response is required; to the extent a response is required, disputed, and the cited invoices speak for themselves. See Lubin Decl. ¶¶ 10-12.

143. Disputed. This paragraph states a legal conclusion concerning RICO conspiracy and each Defendant's knowledge; to the extent a response is required, disputed. Mr. Lubin acted as a broker and disputes any agreement, knowledge, or intent to collect unlawful debt. See Lubin Decl. ¶¶ 4, 9.

144. Disputed. This paragraph states a legal conclusion concerning conspiratorial knowledge under § 1962(c); to the extent a response is required, disputed for the reasons stated above. See Lubin Decl. ¶¶ 4, 9.

145. Disputed. This paragraph states a legal conclusion that each Defendant agreed to participate in the enterprises' affairs to collect unlawful debt; to the extent a response is required, disputed. See Lubin Decl. ¶¶ 4, 9.

146. Disputed. This paragraph states a legal conclusion that each Defendant was a knowing participant sharing a common unlawful purpose; to the extent a response is required, disputed. See Lubin Decl. ¶¶ 4, 9.

147. Disputed. This paragraph states a legal conclusion concerning the necessity of each Defendant's participation; to the extent a response is required, disputed. See Lubin Decl. ¶¶ 4, 9.

148. Disputed. Plaintiffs' asserted $852,730 MCA figure is disputed and unliquidated, assumes the agreements are loans (a disputed question of fact, ECF No. 96 at 5), and is subject to setoff from Plaintiffs' settlements with and dismissals of BMF and Hi Bar (ECF Nos. 163-169) and from the new money the merchant received; the cited exhibits and computation speak for themselves. See Lubin Decl. ¶¶ 5-6, 10-12.

149. Disputed. The asserted interest charged by Spin on the Promissory Note is not cognizable RICO damages, because Plaintiffs concede the Note is not the alleged unlawful debt and dismissed the Note-usury claim (ECF No. 96 at 4); the figure is also contested and

unliquidated. See Lubin Decl. ¶¶ 10-13.

150. Disputed. The asserted $13,228,338.90 in Promissory Note damages, and each of its components (a) through (h), are not cognizable RICO damages because Plaintiffs concede the Note is not the alleged unlawful debt (ECF No. 96 at 4), and are contested, unliquidated, and subject to setoff. See Lubin Decl. ¶¶ 10-13.

151. Disputed. The asserted $7,601,303.04 in additional Note default interest is not cognizable RICO damages because Plaintiffs concede the Note is not the alleged unlawful debt (ECF No. 96 at 4), and is contested and unliquidated. See Lubin Decl. ¶¶ 10-13.

152. Disputed. The asserted $13,765,635.92 total Note interest is not cognizable RICO damages because Plaintiffs concede the Note is not the alleged unlawful debt (ECF No. 96 at 4), and is contested and unliquidated. See Lubin Decl. ¶¶ 10-13.

153. Disputed. The asserted $4,252,466.34 in default interest on attorneys' fees is not cognizable RICO damages, rests on the disputed Note interest premise (ECF No. 96 at 4), and is contested and unliquidated. See Lubin Decl. ¶¶ 10-13.

154. Disputed. The asserted $5,483,028.13 in total interest on attorneys' fees is not cognizable RICO damages, rests on the disputed Note interest premise (ECF No. 96 at 4), and is contested and unliquidated. See Lubin Decl. ¶¶ 10-13.

155. Disputed. The asserted $2,839,435.49 in default interest on costs and premiums is not cognizable RICO damages, rests on the disputed Note interest premise (ECF No. 96 at 4), and is contested and unliquidated. See Lubin Decl. ¶¶ 10-13.

156. Disputed. The asserted $3,428,599.30 in total interest on costs and premiums is not cognizable RICO damages, rests on the disputed Note interest premise (ECF No. 96 at 4), and is contested and unliquidated. See Lubin Decl. ¶¶ 10-13.

157. Disputed. The asserted $25,571,866.23 total of Note costs and interest is not cognizable RICO damages because Plaintiffs concede the Note is not the alleged unlawful debt (ECF No. 96 at 4), and is contested, unliquidated, and subject to setoff from Plaintiffs' settlements with BMF and Hi Bar (ECF Nos. 163-169) and from the new money the merchant received. See

Lubin Decl. ¶¶ 10-13.

158. Disputed. The assertion that attorneys' fees and costs of $924,889.53 constitute RICO damages is a legal conclusion to which no response is required; to the extent a response is required, disputed, the figure is contested, and the cited exhibit speaks for itself. See Lubin Decl. ¶¶ 10-12.

**Statement of Additional Material Facts in Dispute (L.R. 56.1(b))**

1. Each of the five agreements at issue (Ex. B-F) is structured as a purchase of a percentage of the Leer Companies' future receivables for an up-front purchase price, with amounts collected tied to those receivables rather than a fixed, unconditional repayment of principal plus interest. See Lubin Decl. ¶ 5; Ex. B-F.

2. Each of the five agreements contains provisions addressing reconciliation or adjustment of remittances based on the merchant's actual receipts, and each has an indefinite term tied to receipts rather than a fixed maturity date. See Lubin Decl. ¶¶ 5-6; Ex. B-F.

3. The front-page purchase language in the five agreements provides that the merchant's bankruptcy, going out of business, slowdown in business, or delay in collecting receivables does not, in and of itself, constitute a breach, reflecting that the funder bore the risk of the merchant's nonperformance. See Lubin Decl. ¶ 8; Ex. B-F.

4. Mr. Lubin acted as a broker and as the representative of Spin Capital, LLC, in connection with the BMF and Hi Bar advances; he did not enter the agreements in his individual capacity, did not personally receive the funds advanced, and did not own or control BMF Advance or Hi Bar Capital. See Lubin Decl. ¶ 4.

5. BMF and Hi Bar, as the funders, approved or determined the purchase price and remittance terms; as broker, Mr. Lubin did not have final authority to bind the funders, and any reconciliation or adjustment request would have been decided by BMF or Hi Bar. See Lubin Decl. ¶¶ 6-7.

6. Under the June 2021 Promissory Note, the Leer Companies received $1,307,403 in new money, and they repaid only approximately $510,000 before they stopped paying. See Lubin

Decl. ¶¶ 10-11.

7. Plaintiffs have settled with and voluntarily dismissed their claims against BMF Advance and Gavriel Yitzchakov, and against Hi Bar Capital and Yisroel Herbst. The amount, allocation, release terms, and any credits or consideration from those settlements have not been produced to Mr. Lubin. See ECF Nos. 163-169.

8. Approximately $2 million in John Hancock life-insurance proceeds became the subject of receivership and contempt proceedings in the related New York action, bearing on Plaintiffs' alleged net injury. See Lubin Decl. ¶ 12.

9. Plaintiffs concede that the MCA agreements, and not the $2.7 million Promissory Note, are the alleged unlawful debt, and they have voluntarily dismissed the claim that the Note is a usurious loan. See ECF No. 96 at 4; Lubin Decl. ¶ 13.

10. This Court has held that whether the agreements are disguised loans "turns on the features of the agreements, which raise hotly disputed questions of fact." See ECF No. 96 at 5.

Dated: June 23, 2026
/s/ Avrumi (Josh) Lubin
Avrumi (Josh) Lubin
Defendant pro se (individual capacity only)
1460 Arboretum Parkway, Lakewood, NJ 08701
(718) 570-3796 · josh@spincapital.com