UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, *et al.*,

Plaintiffs,

Civ. A. No. 1:24-cv-08515 (AS)

v.

SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN, *et al.*,

Defendants.

**DEFENDANT AVRUMI (JOSH) LUBIN'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Defendant Avrumi (Josh) Lubin, pro se in his individual capacity only, opposes Plaintiffs' motion for summary judgment (ECF Nos. 155–160).

Plaintiffs ask this Court to resolve on a paper record questions it has already identified as genuinely disputed. In denying the motion to dismiss, the Court explained that "[w]hether the MCA agreements were disguised loans turns on the features of the agreements, which raise hotly disputed questions of fact." (ECF No. 96 at 5.) Plaintiffs have not eliminated those disputes with undisputed evidence; they simply ask the Court to draw contested inferences from contract terms, communications, and course of performance in their favor. Rule 56 does not permit that.

The motion independently fails for two further reasons. Plaintiffs cannot establish Mr. Lubin's individual RICO liability — his knowledge, intent, and role are disputed fact questions. And Plaintiffs cannot establish their claimed damages: having voluntarily dismissed any claim that the $2.7 million promissory note is usurious, they nonetheless demand more than $7.6 million in default interest on that note, and the balance of their theory is, at best, disputed, unliquidated, and subject to setoff. At a minimum, the Court should deny or defer the motion under Rule 56(d) pending the targeted settlement discovery — bearing on setoff, bias,

and damages — that Plaintiffs and the settling defendants have withheld.

For these reasons, the motion should be denied as to Mr. Lubin.

## STATEMENT OF FACTS

Mr. Lubin relies on his accompanying Rule 56.1 counter-statement, his declaration, and the Rule 56(d) declaration. The facts material here are established by the Court's own opinion and the docket:

1. The "unlawful debt" Plaintiffs now press is the **BMF and Hi Bar merchant cash advance (MCA) agreements**, not the promissory note. (ECF No. 96 at 4; ECF No. 156 ¶¶ 121–123, 139.)

2. Plaintiffs **voluntarily dismissed** "the branch of their [complaint] … that seeks to declare the Promissory Note to be a usurious loan … and thus void and unenforceable." (ECF No. 78; ECF No. 96 at 4.)

3. Plaintiffs **settled with and dismissed** the two MCA counterparties — BMF Advance/Yitzchakov and Hi Bar Capital/Herbst (ECF Nos. 163–169) — and have not produced the settlement agreements.

4. The Court has already held that whether the MCAs are loans "raise[s] hotly disputed questions of fact." (ECF No. 96 at 5.)

## LEGAL STANDARD

Summary judgment is warranted only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in his favor; it may not weigh evidence or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of showing the absence of a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**ARGUMENT**

**I. WHETHER THE MCA AGREEMENTS ARE LOANS OR PURCHASES OF RECEIVABLES IS A GENUINELY DISPUTED QUESTION OF FACT.**

Plaintiffs' RICO theory depends on the MCA agreements being usurious loans. "[W]here there is no loan, there can be no usury." *Principis Cap. LLC v. I Do., Inc.*, 201 A.D.3d 752, 754 (2d Dep't 2022). Whether a merchant agreement is a loan or a true purchase of receivables turns on substance, with "[t]he root of the analysis [being] the transfer of risk"; New York courts weigh three factors — a reconciliation provision, a finite term, and recourse on the merchant's bankruptcy — alongside any extrinsic evidence. *Lateral Recovery LLC v. Funderz.net, LLC*, 2024 WL 4350369, at *25 (S.D.N.Y. Sept. 27, 2024) (quoted at ECF No. 96 at 8–9); *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 WL 3882697, at *2 (2d Cir. 2023).

The Court's prior ruling does not itself decide this motion. But it identifies the disputes Plaintiffs were required to eliminate with admissible evidence — and they have not. The Court held that "[w]hether the MCA agreements were disguised loans turns on the features of the agreements, which raise **hotly disputed questions of fact**." (ECF No. 96 at 5.) Plaintiffs instead ask the Court to resolve those disputes by drawing contested inferences from the contract terms, the parties' communications, the course of performance, and post-default conduct in their favor — which Rule 56 forbids. *Anderson*, 477 U.S. at 255.

The dispute is genuine. Agreements bearing the hallmarks of a true purchase — a mandatory, operative reconciliation provision, an indefinite term, and no event of default on the merchant's bankruptcy — are *not* loans subject to usury. *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 281–82 (S.D.N.Y. 2017); *US Info. Grp. LLC v. EBF Holdings, LLC*, 2023 WL 6198803 (S.D.N.Y. Sept. 22, 2023). Most directly, the Appellate Division recently held — in litigation involving **Spin Capital's own merchant agreement** — that Spin's transaction was a purchase of future receivables rather than a criminally usurious

loan, and affirmed dismissal of the defendants' RICO/usury counterclaims, because the agreement contained a reconciliation clause adjusting remittances to the merchant's receipts (rendering the term indefinite) and made no provision for default on bankruptcy. *Spin Capital, LLC v. Bridgelink Eng'g, LLC*, 2026 N.Y. Slip Op. 02296 (2d Dep't Apr. 15, 2026). Mr. Lubin's declaration establishes that the BMF and Hi Bar agreements were structured as genuine purchases — the reconciliation provisions were real and available to the merchant on request, the agreements characterized the daily figures as good-faith estimates of receipts, and repayment was contingent on the merchant's receivables. Nor have Plaintiffs shown that any reconciliation was ever requested and refused — the very indicator the state court found absent (see ECF No. 96 at 5). [Lubin Decl. ¶¶ 5–8.]

Plaintiffs will counter, as they did at the pleading stage, that the reconciliation provisions were illusory, that default could be declared after a few missed payments, and that the personal guaranties supplied recourse — and they will invoke decisions finding particular MCAs to be loans. *See, e.g.*, *Lateral Recovery, LLC v. Capital Merchant Servs., LLC*, 632 F. Supp. 3d 402 (S.D.N.Y. 2022). But that is precisely the point: those are competing, record-dependent inferences about *these* agreements' actual operation. Whether a given reconciliation provision was genuine or a sham, and whether the funder bore real downside risk, are textbook triable questions for a jury — not questions to be resolved against Mr. Lubin on Plaintiffs' motion. *Anderson*, 477 U.S. at 255.

## II. PLAINTIFFS HAVE NOT ESTABLISHED MR. LUBIN'S INDIVIDUAL RICO LIABILITY AS AN UNDISPUTED MATTER.

Even if Plaintiffs could establish that an MCA agreement was a loan, that would not entitle them to summary judgment against Mr. Lubin individually. To hold him liable under 18 U.S.C. § 1962(c), Plaintiffs must first prove the existence of a RICO enterprise — an ongoing organization, formal or informal, whose members share a common purpose, are related to one another, and possess longevity sufficient to pursue the enterprise's purpose. *Boyle v. United*

*States*, 556 U.S. 938, 946 (2009). They must further prove that *he* "conduct[ed] or participate[d] … in the conduct of [the] enterprise's affairs," *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), and that he "acted knowingly, willfully and unlawfully" in the collection of an unlawful debt, *United States v. Biasucci*, 786 F.2d 504, 513 (2d Cir. 1986) (quoted at ECF No. 96 at 11–12). Mr. Lubin appears here only in his individual capacity; Plaintiffs may not collapse him into Spin Capital, LLC, but must prove his own conduct and intent.

Those elements turn on Mr. Lubin's knowledge, intent, and role — quintessential jury questions. Plaintiffs' theory rests on disputed inferences drawn from communications, funding allocations, and the parties' course of dealing. Mr. Lubin disputes that he knew or intended that any agreement was an unlawful loan or that he operated or managed any racketeering enterprise. [Lubin Decl. ¶¶ 4, 9.] On this record, a reasonable factfinder could find for him, and summary judgment against him individually is unavailable.

Plaintiffs' derivative § 1962(d) conspiracy claim fails for the same reasons and an additional one. A RICO conspiracy requires proof that Mr. Lubin knowingly agreed to facilitate a scheme that, if completed, would constitute a substantive RICO violation, *Salinas v. United States*, 522 U.S. 52, 65 (1997), and a civil plaintiff suing for conspiracy must still show injury caused by an act that is itself wrongful under RICO, *Beck v. Prupis*, 529 U.S. 494, 505–07 (2000). Because the underlying violation is genuinely disputed (Points I and III) and Mr. Lubin's knowing agreement to any unlawful scheme is contested and unproven, the conspiracy claim cannot be resolved against him on summary judgment either.

## III. PLAINTIFFS CANNOT ESTABLISH SUMMARY JUDGMENT ON DAMAGES; AT A MINIMUM, DAMAGES ARE DISPUTED, UNLIQUIDATED, AND SUBJECT TO SETOFF.

A civil-RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation," *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); damages must be concrete and provable. This

Court expressly reserved damages for this stage: "[w]hat damages are cognizable based on this theory is a question for … summary judgment." (ECF No. 96 at 11.) Plaintiffs cannot meet their burden. On the face of their own Rule 56.1 statement, of the **$13,765,635** in damages they demand (ECF No. 156 ¶ 152), only **$852,730** is attributed to the MCA agreements (id. ¶ 139) — the sole alleged unlawful debt; the remainder is interest and fees on the note.

**A. No net out-of-pocket loss.** The measure of RICO injury is "out-of-pocket damages," *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008), and a plaintiff who received more than it repaid — a net gainer — has no cognizable injury. *Com. Union Assurance Co. v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994) (a plaintiff repaid more than it advanced has "no out-of-pocket loss" and no viable RICO claim). By their own pleading, the Leer Companies received **$1,307,403** in new money under the note (ECF No. 11 ¶ 24) and repaid only approximately **$510,000** (id. ¶ 183); and approximately **$2 million** in proceeds of a John Hancock policy pledged to Spin as collateral were not remitted to the court-appointed receiver — proceeds as to which Stefan Leer was held in contempt in the related New York action. At a minimum, after accounting for the funds the Leer Companies received, the payments they made, those unremitted collateral proceeds, and the BMF and Hi Bar settlements, whether Plaintiffs suffered any net out-of-pocket RICO loss is genuinely disputed and cannot be resolved on this record.

**B. Note default interest is not RICO damages.** Plaintiffs no longer ask this Court to declare the note usurious or void (ECF No. 78), and now concede that "the MCA agreements, and not the $2.7 million note, are the unlawful debt" (ECF No. 96 at 4). RICO damages for collection of unlawful debt are confined to the unlawful debt — the MCAs. The note's contractual default interest is therefore not cognizable RICO injury, yet Plaintiffs demand $7,601,303 of it. (ECF No. 156 ¶¶ 149–152.) That category fails as a matter of law.

**C. Any MCA recovery is subject to setoff.** Plaintiffs settled with and dismissed BMF and Hi Bar — the entities that issued the very MCAs (ECF Nos. 163–169). Under the

6

one-satisfaction rule, a non-settling defendant is entitled to a credit for the settling co-participants' settlement of common damages. *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989); *World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*, 328 F. App'x 695 (2d Cir. 2009); *Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297 (2d Cir. 2003). Because Plaintiffs have not produced the settlement agreements, the amount of any common-damages credit cannot be determined (see Point IV); and if those settlements made Plaintiffs whole, the claim fails for lack of damages, *Milken*, 17 F.3d at 612.

      **D. Attorneys' fees are not cognizable.** To the extent Plaintiffs seek their litigation fees (ECF No. 156 ¶¶ 142, 158 ($924,889)), only "past," fixed, and "clear and definite" fees proximately caused by a RICO violation can qualify. *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166 (2d Cir. 1993). Ongoing fees in the related, still-pending state-court action are not ripe because their amount is not yet clear and definite. *Sky Medical Supply Inc. v. SCS Support Claims Servs.*, 17 F. Supp. 3d 207, 234 (E.D.N.Y. 2014); *Black v. Ganieva*, 619 F. Supp. 3d 309, 338 (S.D.N.Y. 2022).

      In sum, the only category even arguably tied to the alleged unlawful debt — the usurious overage, if any, actually paid on the MCAs — is, after offsets, at best genuinely disputed and unliquidated. Plaintiffs cannot carry their summary-judgment burden on damages.

## IV. ALTERNATIVELY, THE COURT SHOULD DENY OR DEFER SUMMARY JUDGMENT UNDER RULE 56(d).

      If the Court is not prepared to deny the motion outright, it should deny or defer under Rule 56(d). As set out in Mr. Lubin's accompanying Rule 56(d) declaration, essential facts remain unavailable because Plaintiffs and the settling defendants have not produced the BMF and Hi Bar settlement agreements and related releases, allocation, cooperation, indemnity, assignment, and testimony-related terms. Those materials are directly relevant to at least three

issues raised by the motion: (1) setoff, one-satisfaction, and double recovery, because Plaintiffs seek damages arising from MCA transactions involving the same settling defendants; (2) the bias, motive, and credibility of the settling defendants, on whose materials Plaintiffs rely; and (3) whether Plaintiffs' damages already reflect amounts released, allocated, or credited in settlement. The Court's June 15, 2026 Order (ECF No. 176) denied immediate production without prejudice and recognized that settlement terms become discoverable on a concrete showing of relevance, including bias. That showing is present here. Indeed, by Order dated June 23, 2026 (Dkt. No. 180), the Court has now treated Mr. Lubin's renewed request as a motion to compel production of the settlement agreements — directing production absent opposition, with any opposition due June 30, 2026 — confirming that this discovery is live and material. Summary judgment should not enter before this targeted discovery — or, at minimum, the Court's in camera review — is complete. Fed. R. Civ. P. 56(d).

> **Preserved, not pressed:** Mr. Lubin does not argue claim or issue preclusion at this time, in light of the Court's ruling that the New York dismissal was without prejudice (ECF No. 96 at 4–6). He reserves the right to reprise preclusion should the New York court rule on the merits (e.g., on Spin's Motion Seq. 029, argued February 5, 2025 and undecided), as this Court contemplated (ECF No. 96 at 8).

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment should be denied as to Mr. Lubin, and the Court should grant the relief requested in his Rule 56(d) submission.

Dated: New York, New York
June 23, 2026
Respectfully submitted,
/s/ Avrumi (Josh) Lubin
Avrumi (Josh) Lubin, Defendant pro se (individual capacity only)
1460 Arboretum Parkway, Lakewood, NJ 08701
(718) 570-3796 · josh@spincapital.com

**CERTIFICATE OF COMPLIANCE (Local Civil Rule 7.1(c))**

I certify that this memorandum complies with the word-count limitation of Local Civil Rule 7.1(c). According to the word-count function of the word-processing program used to prepare it, this memorandum contains **2485** words, excluding the caption, signature block, and this certificate.

Dated: June 23, 2026
/s/ Avrumi (Josh) Lubin
Avrumi (Josh) Lubin