SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 53

-------------------------------------------------------------------------------X

SPIN CAPITAL, LLC,

                              Plaintiff,

                       - v -

GOLDEN FOOTHILL INSURANCE SERVICES, LLC,LIFE
FACTOR II, LLC,LIFE SHARES II, LLC,EL DORADO
HILLS INSURANCE SOLUTIONS, INC.,LONE WOLF
INSURANCE SERVICES, INC.,ELDO INVESTMENTS,
LLC,THE GENESIS LS FUND, LLC,KTL HOLDINGS,
INC.,ZURICH AMERICAN LIFE INSURANCE CO.,
ACCORDIA LIFE AND ANNUITY COMPANY, JOHN
HANCOCK LIFE INSURANCE COMPANY,
BRIGHTHOUSE LIFE INSURANCE CO., CAP FACTOR,
LLC,STEFAN LEER, TATANISHA LEER,

                              Defendant.

-------------------------------------------------------------------------------X

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, LIFE
FACTOR II, LLC, LIFE SHARES II, LLC, EL DORADO HILLS
INSURANCE SOLUTIONS, INC., LONE WOLF INSURANCE
SERVICES, INC., ELDO INVESTMENTS, LLC, THE GENESIS
LS FUND, LLC, KTL HOLDINGS, INC., STEFAN LEER,
TATANISHA LEER

                              Plaintiff,

                      -against-

SPIN CAPITAL, LLC, AVRUMI LUBIN

                              Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 650582/2022 |
| **MOTION DATE** | N/A |
| **MOTION SEQ. NO.** | 010 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No.  595367/2022

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 010) 186, 187, 188, 189,
190, 191, 192, 193, 194, 195, 196, 197, 198, 213, 214, 215, 216, 217, 218, 226

were read on this motion to/for                       DISMISS                    .

Upon the foregoing documents, the Counterclaim Defendants' motion to dismiss the

counterclaims for violation of, and conspiracy to violate, 18 USC § 1962 (the **RICO Act**) must

be granted because the counterclaims fail to state a claim that the Counterclaim Defendants engaged in a pattern of racketeering activity or collection of an unlawful debt.

Simply put, the face amount of the Loan (hereinafter defined) is $2.7 million and this amount exceeds the $2.5 million threshold to which New York's usury laws apply (N.Y. Gen. Oblig. Law § 5-501[6][b]).  The Counterclaim Plaintiffs' arguments that certain portions of the Loan should be recharacterized such that the Loan is subject to the usury laws, and is therefore invalid, fail.

The Loan included (i) $1,307,403 in new money, (ii) $1,162,597 to satisfy the defendants' obligations under the Purchase Agreements (hereinafter defined), (iii) $30,000 to pay legal fees and (iv) $200,000 in closing fees and other costs.  The Purchase Agreements were not loans and should not be recharacterized as loans merely because a security interest was granted in the future accounts receivable (*see, Colonial Funding Network, Inc. v Davincitek Corp.*, 2021 WL 39591, at * 8 [Sup Ct, NY County 2021]).  They had (x) a valid reconciliation provision, (y) a non-finite term, and (z) no obligation for repayment if the Sellers declared bankruptcy because a declaration of bankruptcy did not constitute an event of default (*Principis Cap., LLC v I Do, Inc.*, 201 AD3d 752, 754 [2d Dept 2022]; *LG Funding, LLC v United Senior Properties of Olathe, LLC*, 181 AD3d 664, 664 [2d Dept 2020]).  The $30,000 for legal fees was not an improper charge because the Counterclaim Plaintiffs authorized the Secured Party to perfect and maintain its security interest in the collateral and agreed that it would pay attorneys' fees in protecting the Secured Party's security interests and rights:

> Debtors each hereby authorizes Secured Party to file any financing statements
> deemed necessary by Secured Party to perfect or maintain Secured Party's

security interest. Debtors shall be liable for, and Secured Party may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by Secured Party in protecting, preserving and enforcing Secured Party's security interest and rights

(NYSCEF Doc. No. 3) (*see, Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d 124, 127 [1992]; *Hillair Capital Investments, L.P. v Integrated Freight Corp.*, 963 FSupp2d 336, 339 [SD NY 2013]). The defendants' argument to the contrary – that legal fees were agreed to only with respect to enforcement and that therefore the $30,000 is interest is just wrong. Thus, even if the Court were to recharacterize the $200,000 of other fees, and it is certainly not clear that it should, because the $2.5 million threshold would still be met, the Loan is not subject to usury laws and the counterclaims must be dismissed.

## The Relevant Facts and Circumstances

Reference is made to the **Purchase Agreements** (NYSCEF Doc. Nos. 189-193) by and between Golden Foothill Insurance Services LLC (**Golden Foothill**) and other entities (collectively, the **Sellers**) and BMF Advance, LLC (**BMF**) or HI Bar Capital (**HI Bar**, and, together with BMF, hereinafter, collectively, the **Purchasers**), pursuant to which the Purchasers bought a *certain percentage* of the Sellers' future accounts receivable – *i.e.*, they did not buy or pledge 100% of the accounts receivable pursuant to any such purchase agreement. Pursuant to the Purchase Agreements, the parties agreed that the Purchasers were to be paid a daily sum calculated as a good-faith percentage estimate of the Sellers' incoming accounts receivable. The daily amount to be paid was subject to certain reconciliation provisions in the Purchase Agreements pursuant to which the Sellers could demand that the price be adjusted to reflect the actual amount of their receivables that materialized.

650582/2022   SPIN CAPITAL, LLC vs. GOLDEN FOOTHILL INSURANCE SERVICES, LLC ET AL          Page 3 of 10
Motion No.  010

3 of 10

Case 1:24-cv-08515-AS    Document 182-1    Filed 06/23/26    Page 4 of 10

Reference is also made to a loan of $2.7 million (the **Loan**) made by Spin Capital, LLC (**Spin Capital**) to Golden Foothill, Life Factor II LLC (**Life Factor**) and Life Shares II LLC (**Life Shares**, and, together with Golden Foothill and Life Factor, the **Borrowers**) as memorialized by a certain Promissory Note (NYSCEF Doc. No. 2) and secured by a Security Agreement (NYSCEF Doc. No. 3) and three Payment Guaranties (NYSCEF Doc. Nos. 4-6). The Promissory Note, the Security Agreement and the three Payment Guaranties are all part of an integrated transaction and shall hereinafter collectively be referred to as the **Loan Documents**.

As alleged in the Amended Complaint (the **AC**; NYSCEF Doc. No. 109), the Loan was to be repaid in 31 itemized payments to be made on a weekly basis between June 18, 2021 and January 24, 2022, accumulating interest at 5% per month (*id.*, ¶ 27). The parties agreed that in the event of a default, the unpaid principal amount of the Loan would be due together with a default fee of $25,000 and the unpaid amount would be subject to 10% default interest (*id.*). The gravamen of the AC is that the Defendants breached the Loan Documents and that they subsequently engaged in unlawful transfers of the rights in the insurance policies that were pledged to Spin Capital pursuant to the Security Agreement as collateral for the Loan.

The Amended Answer with Counterclaims (the **Answer**; NYSCEF Doc. No. 133) asserts RICO claims against Avrumi Lubin, alleging that he operates an unlawful lending enterprise through Spin Capital, BMF, and Hi Bar and that as such this lawsuit amounts to an attempt to collect an unlawful debt (*id.*, ¶ 1). To wit, the Answer alleges that the Purchase Agreements and the Promissory Note caused the Counterclaim Plaintiffs to make fixed payments with interests over 100% in violation of New York law (*id.*, ¶¶ 6-8). The Answer further alleges that the Purchase

650582/2022   SPIN CAPITAL, LLC vs. GOLDEN FOOTHILL INSURANCE SERVICES, LLC ET AL          Page 4 of 10
Motion No.  010

4 of 10

Case 1:24-cv-08515-AS    Document 182-1    Filed 06/23/26    Page 5 of 10

Agreements and the Loan are unconscionable because they (i) contain one-sided terms to benefit the Counterclaim Defendants, BMF, and Hi Bar, (ii) contain false statements, (iii) are designed to cause the Counterclaim Plaintiffs to default, and (iv) contain penalties that violate New York public policy (*id.*, ¶¶ 36-39). The Answer also alleges that the reconciliation process set forth in the Purchase Agreements is a sham to ensure that, even if the Sellers' income decreased, the daily payments would remain the same (*id.*, ¶¶ 40-44).

## Discussion

On a motion to dismiss, the Court must afford the pleading a liberal construction, accept the facts as alleged as true, accord the non-moving party the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

To state a RICO claim for collection of an unlawful debt, the Counterclaim Plaintiffs must allege that (i) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (ii) the debt was incurred in connection with the business of lending money at a usurious rate, and (iii) the usurious rate was at least twice the enforceable rate (*Wade Park Land Holdings, LLC v Kalikow*, 2022 WL 657664, at * 23 [SD NY 2022]). As discussed above, any loan for $2.5 million or more is not subject to New York's usury laws (N.Y. Gen. Oblig. Law § 5-501[6][b]). For the reasons set forth below, the counterclaims fail to state a RICO claim.

As discussed above, the Counterclaim Plaintiffs allege that the Loan was really only for $1,307,403 (*i.e.*, less than 50% of the face amount of the loan). Relying principally on

**650582/2022  SPIN CAPITAL, LLC vs. GOLDEN FOOTHILL INSURANCE SERVICES, LLC ET AL**  **Page 5 of 10**
Motion No.  010

5 of 10

*Haymount Urgent Care PC v GoFund Advance LLC*, 2022 WL 2297768, at * 6 (SD NY 2022) and looking at the transaction as a whole and whether there was a transfer of risk, the Counterclaim Plaintiffs argue that the Court should recharacterize the Purchase Agreements as loans and hold that the attorneys' fees and closing costs are improper such that the Loan falls below the $2.5 million threshold and is subject to usury laws  (*Concrete Capital, LLC v Olympic Prop Partners, LLC*, 2018 WL 2045536 [Sup Ct, NY County 2018]; *Blue Wolf Capital Fund II, L.P. v American Stevedoring Inc.*, 105 AD3d 178 [1st Dept 2013]; *Ujueta v Euro-Quest Corp.*, 29 AD3d 895, 895 [2d Dept 2006]; *Fleetwood Servs., LLC v Ram Capital Funding, LLC*, 2022 WL 1997207, at * 9 [SD NY 2022]).  More specifically, the Counterclaim Plaintiffs argue that the daily payments required by the Purchase Agreements do not represent a good-faith estimate of the percentage of future receipts purchased, liability was absolute upon an event of default (and declaring bankruptcy would inevitably cause an event of default), the reconciliation provisions was a sham because they would not be credited if they overpaid, and the Purchase Agreements did have a finite term because the reconciliation process did not affect the daily payment.  In addition, the Counterclaim Plaintiffs argue that the attorneys' fees and closing costs should also not be considered part of the Loan.  They argue that these payments constituted interest on the Loan because among other things there was no obligation to pay attorneys' fees unless there was a default.  The arguments fail.  Finally, the Counterclaim Plaintiffs argue that the Loan Documents contained false statements because when the Purchase Agreements were executed the counter-parties knew that the assets allegedly sold and not represented by the defendants to be wholly owned by the defendants had already been sold. The arguments fail.

650582/2022   SPIN CAPITAL, LLC vs. GOLDEN FOOTHILL INSURANCE SERVICES, LLC ET AL        Page 6 of 10
   Motion No.  010

6 of 10

Case 1:24-cv-08515-AS    Document 182-1    Filed 06/23/26    Page 7 of 10

As an initial matter, the Court must look to the amount agreed upon not merely the new money advanced (*Star Funding, Inc. v Vault Minerals, LLC*, 2017 WL 7791558 [SD NY 2017]).  As such, the Loan is not merely for $1,307,403, it is for $2.7 million because the Loan amount also includes amounts used to satisfy pre-existing obligations and reasonable expenses (*Blue Wolf Capital Fund II, L.P. v American Stevedoring Inc.*, 105 AD3d 178 [1st Dept 2013]).

Next, the court must consider whether any of the pre-existing obligations or other costs should be recharacterized as the Counterclaim Plaintiffs urge.  Courts have held that revenue purchase transactions like the Purchase Agreements are not loans where the obligation to repay the principal sum is not absolute (*Kennard L. P.C. v High Speed Cap., LLC*, 199 AD3d 1406 [4th Dept 2021]).

In determining whether repayment is absolute or contingent, courts weigh three factors: (i) whether there is a reconciliation provision in the agreement, (ii) whether the agreement has a finite term, and (iii) whether there is any recourse if the merchant declares bankruptcy (*Principis Cap., LLC*, 201 AD3d at 754 citing *LG Funding, LLC*, 181 AD3d at 664).  The BMF and HI Bar revenue purchase agreements meet all three criteria: (i) they all contained mandatory reconciliation provisions to ensure that payments were made based on the *specific percentage* of the accounts receivable that were sold in the Purchase Agreements, (ii) the Purchase Agreements did not have a finite term because the reconciliation provisions ensured that the amounts due were contingent on the sales and as such the term of the agreement would fluctuate based on the amount earned and (iii) the Purchase Agreements all contained provisions expressly stating that a declaration of bankruptcy did not constitute an event of default.  The Court further notes that the

650582/2022   SPIN CAPITAL, LLC vs. GOLDEN FOOTHILL INSURANCE SERVICES, LLC ET AL          Page 7 of 10
Motion No.  010

7 of 10

Case 1:24-cv-08515-AS Document 182-1 Filed 06/23/26 Page 8 of 10

purchase agreements do not contain false statements because the purchase agreements did not each sell 100% of the accounts receivables. Thus, it was true that the assets were not subject to other obligation or were not otherwise owned by others. In any event, even if there were misstatements, which there were not, the misstatements were made by the seller-defendants of the accounts receivable not the purchasers-Counterclaim Defendants. Moreover, it does not appear that there is any basis for the allegation that the reconciliation process was a sham and that the defendants would not have received an appropriate credit, because on the record before the Court, it does not appear that the Counterclaim Plaintiffs even allege that they requested a reconciliation or adjustment of the payments and that it was done improperly. Lastly, the Court notes that the payment of reasonable expenses including attorneys' fees does not make a loan usurious (*Lloyd Capital Corp.*, 80 NY2d at 127; *Hillair Capital Investments, L.P.*, 963 FSupp2d at 339).

*Goldberger v Magid*, 2023 NY Slip OP 00725 (1st Dept 2023) does not mandate a different result. In *Goldberger*, the defendant received only $150,000 of value of the alleged principal amount of $300,000. Significantly, the plaintiff in that case failed to establish that the pre-existing debt was satisfied. Thus, having received only half of the value of the face amount, the borrower was essentially paying twice the stated interest making the loan criminally usurious. That is simply not this case. It is beyond dispute that the money advanced in respect of the HI Bar and BMF purchase agreements relieved the defendants' obligations set forth in those agreements. Thus, the satisfaction money counts and the counterclaim must be dismissed.

**650582/2022 SPIN CAPITAL, LLC vs. GOLDEN FOOTHILL INSURANCE SERVICES, LLC ET AL** **Page 8 of 10**
**Motion No. 010**

8 of 10

The wire fraud counterclaim must also be dismissed.  To allege wire fraud, the Counterclaim Plaintiffs must allege a pattern of racketeering: (i) at least two predicate acts of racketeering occurring within a ten-year period, (ii) that these predicate acts are related to each other, and (iii) that these predicate acts amount to or pose a threat of continuing criminal activity (*Related Companies, L.P. v Ruthling*, 2017 WL 6507759, at * 18 [SD NY 2017]).  In order to allege predicate racketeering, the Counterclaim Plaintiffs must allege (i) a scheme to defraud, (ii) money or property that is the object of the scheme, and (iii) the use of the wires to further the scheme (*Empire Merchants, LLC v Reliable Churchill LLP*, 902 F3d 132, 139 [2d Cir 2018]).  Because the Counterclaim Plaintiffs scheme to defraud is rooted in the recharacterization of the Purchase Agreements as loans, the wire fraud claim also fails and must be dismissed.

Where substantive RICO claims fail, conspiracy to commit RICO violations also fail (*Pludeman v Northern Leasing Systems, Inc.*, 40 AD3d 366, 368 [1st Dept 2007]).  Thus, the conspiracy claims must also be dismissed.

The Court has considered the Counterclaim Plaintiffs' remaining arguments and finds them unavailing.

It is hereby ORDERED that the Counterclaim Defendants' motion to dismiss is granted and the Counterclaim Plaintiffs' counterclaims are dismissed.

20230228121404ABORROK182906533EBD4C7C9FA760E906095CC8

**2/28/2023**
**DATE**

**ANDREW BORROK, J.S.C.**

**650582/2022   SPIN CAPITAL, LLC vs. GOLDEN FOOTHILL INSURANCE SERVICES, LLC ET AL**   **Page 9 of 10**
**Motion No.  010**

Case 1:24-cv-08515-AS    Document 182-1    Filed 06/23/26    Page 10 of 10

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

650582/2022   SPIN CAPITAL, LLC vs. GOLDEN FOOTHILL INSURANCE SERVICES, LLC ET AL      Page 10 of 10
Motion No.  010