UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, *et al.*,

Plaintiffs,

Civ. A. No. 1:24-cv-08515 (AS)

v.

SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN, *et al.*,

Defendants.

**DECLARATION OF AVRUMI (JOSH) LUBIN IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

I, Avrumi (Josh) Lubin, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am a defendant in this action, appearing pro se in my individual capacity only. I make this declaration from personal knowledge in opposition to Plaintiffs' motion for summary judgment and in support of my Rule 56.1 counter-statement. As to any matter stated on information and belief, I believe it to be true.

2. I am the sole member of Spin Capital, LLC. During the relevant period, Spin Capital was engaged in brokering and participating in commercial finance transactions, including merchant cash advance transactions. In the transactions at issue, I acted in my capacity as a representative of Spin Capital, not in my personal capacity.

3. I began doing business with the Leer Companies in or about early 2021.

4. In connection with the BMF and Hi Bar advances to the Leer Companies, I acted as a broker and as the representative of Spin Capital, LLC, with a financial incentive to help the transactions perform. I did not enter into those agreements in my individual capacity; I did not personally receive the funds advanced under them; and I did not own or control BMF Advance or Hi Bar Capital.

5. The BMF and Hi Bar agreements were each structured as a purchase of a percentage of the Leer Companies' future receivables for an up-front purchase price, with the amounts collected tied to those receivables rather than a fixed, unconditional repayment of principal plus interest. True and correct copies of the agreements are attached as Exhibits B through F.

1

6. Each of the five BMF and Hi Bar agreements contains provisions addressing reconciliation or adjustment of remittances based on the merchant's receipts. I understand those provisions to have provided a contractual mechanism for the merchant to request adjustment of remittances to reflect actual receipts, subject to the terms and conditions of the particular agreement. On the BMF and Hi Bar transactions, I acted as a broker and representative of Spin Capital, not as the funder. BMF and Hi Bar were the funders, and any request by the Leer Companies to reconcile or adjust remittances would have been made to, and decided by, BMF or Hi Bar. I am not aware of any reconciliation request by the Leer Companies that was made and refused.

7. As the broker, I did not have final authority to bind BMF or Hi Bar to funder terms; BMF and Hi Bar, as the funders, approved or determined the purchase price and remittance terms. The agreements state that the remittance is a good-faith estimate of the merchant's receipts.

8. The front-page purchase language in the five agreements states that the merchant's bankruptcy, going out of business, slowdown in business, or delay in collecting receivables, in and of itself, does not constitute a breach. I understand that language to reflect that the funder bore the risk that the merchant's business might not perform as expected. Plaintiffs dispute the legal effect of other provisions, including default, guaranty, and protection provisions. I understand those disputed provisions to be part of why the loan-versus-purchase issue is fact-intensive.

9. Plaintiffs rely on messages such as "DO WTVR U WANT ILL GET IT DONE" and texts negotiating the daily payments. I do not deny sending such messages. They reflect a broker communicating with confidence that he could close and make the deal perform; they are not evidence that I knew or intended that any agreement was an unlawful loan.

10. Under the June 2021 Promissory Note, the Leer Companies received $1,307,403 in new money. (Am. Compl., ECF No. 11 ¶ 24.)

11. The Leer Companies repaid only approximately $510,000 before they stopped paying. (Am. Compl., ECF No. 11 ¶ 183.)

12. I understand from prior docket filings and state-court receivership materials that approximately $2 million in John Hancock life-insurance proceeds became the subject of receivership and contempt proceedings in the related New York action.

13. The June 2021 Promissory Note was a $2.7 million obligation. I am informed that Plaintiffs have voluntarily dismissed any claim in this action that the note is a usurious loan. (ECF No. 96 at 4.)

14. Attached as **Exhibit A** is a true and correct copy of the New York Supreme Court's Decision and Order dated February 28, 2023 (NYSCEF Doc. No. 260).

15. Attached as **Exhibits B through F** are true and correct copies of the five BMF and Hi Bar agreements at issue:

> **Exhibit B** — BMF Advance Secured Merchant Agreement dated March 2, 2021;
> **Exhibit C** — Hi Bar Capital Revenue Purchase Agreement dated March 10, 2021;
> **Exhibit D** — BMF Advance Secured Merchant Agreement dated March 12, 2021;
> **Exhibit E** — BMF Advance Secured Merchant Agreement dated March 25, 2021;
> **Exhibit F** — Hi Bar Capital Revenue Purchase Agreement dated March 25, 2021.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2026.

/s/ Avrumi (Josh) Lubin

Avrumi (Josh) Lubin

Defendant pro se (individual capacity only)

1460 Arboretum Parkway, Lakewood, NJ 08701

(718) 570-3796 · josh@spincapital.com