UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.

      Plaintiffs,

      - against -

SPIN CAPITAL LLC et al.,

      Defendants.

Case No. 1:24-cv-08515 (AS)

---

**DEFENDANT SPIN CAPITAL LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

LAW OFFICE OF ALEXANDER SAKIN, LLC
Alexander Sakin
5 West 37th St., Suite 601
New York, New York 10018
(917) 509-7573

*Attorney for Defendant Spin Capital LLC*

Defendant Spin Capital LLC files this Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a) (the "Motion").

## ARGUMENT

Moving parties, including Plaintiffs, warrant summary judgment "only if the pleadings, the discovery materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Smallwood v. Delta Airlines, Inc.*, 2021 WL 466516 at *2 (E.D.N.Y. Feb. 9, 2023). Moving parties bear the initial burden of establishing the absence of any genuine issue of material fact. *Scalera v. Electrograph Systems, Inc.*, 848 F.Supp.2d 352 (E.D.N.Y. 2012). And, Courts resolve ambiguities and draw all permissible factual inferences in favor of the non-moving party. *Id*.

Plaintiffs fail to establish the absence of any genuine issue of material fact, because, contrary to their arguments, they cannot establish any entitlement to damages – even if the Merchant Credit Agreements (MCA) at issue here were shown to be usurious (which they are not). As admitted by Plaintiffs, instead of suffering losses on the transactions at issue, they have, in fact, made gains. In addition, there is a genuine dispute as to whether the MCAs are usurious, which cannot be resolved on a Motion for Summary Judgment.

### I.     Damages

To prevail on a civil RICO claim — whether predicated on a pattern of racketeering activity or, as relevant here, on the collection of unlawful debt — a plaintiff must prove *"injury to plaintiff's business or property"* proximately caused by the violation. 18 U.S.C. § 1964(c); *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017); *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (RICO standing requires "(1) a violation of [18

U.S.C. §] 1962; (2) injury to business or property; and (3) causation of the injury by the violation").

At summary judgment, Plaintiffs must point to evidence creating a genuine dispute that they suffered an actual, quantifiable loss. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Here, the undisputed financial record — built entirely from Plaintiffs' own pleading — establishes that the Leer Parties did not lose money on the MCAs and Promissory Note that form the basis of their RICO claims. Rather, they gained on them.

### A.     A Party Who Profits on the Challenged Transactions Has Not Suffered an Injury to "Business or Property"

A civil RICO plaintiff "only has [statutory] standing if, and can only recover to the extent that, he has been injured in his business or property by the [RICO] conduct." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Section 1964(c) accordingly "requires a showing of some actual, out-of-pocket financial loss." *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 521 (S.D.N.Y. 1997) (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994)). Damages as compensation under RICO § 1964(c) "must, under the familiar rule of law, place [the claimant] in the same position [it] would have been in but for the illegal conduct." *Com. Union Assur. Co. v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994). Where a claimant "has already been placed by defendants in that position," it lacks damages and thus has "no viable RICO claim." *Id.* (affirming dismissal where an allegedly fraudulent investment yielded the plaintiff a net gain).

Courts applying this law hold that a plaintiff who gained — rather than lost — on the very transactions it now challenges has suffered no RICO injury, whatever theory is pleaded. *See Aliperio v. Bank of Am., N.A.*, 764 Fed. App'x 236, 239 (3d Cir. 2019) (mortgagees who gained

equity in their homes through their payments had no "actual monetary loss or 'out-of-pocket loss'" to "satisfy the injury requirement of § 1964(c)"); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1165 (2d Cir. 1993) (plaintiff lacked a qualifying injury because it was likely to obtain the full value of the asset it purchased).

"A proper calculation of [a borrower's] injury from [usurious] loan agreements requires a reduction of the financial benefit that [the borrower] received at the time of the transaction." *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 U.S. Dist. LEXIS 148032, at *4 (S.D.N.Y. Aug. 17, 2022) ("*Fleetwood II*"), *aff'd sub nom. Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 U.S. App. LEXIS 14241 (2d Cir. June 8, 2023). Allowing a RICO claim to proceed where the borrower has not returned the principal it received "fail[s] to account for the financial benefit from th[e] Agreement[s] through the funds [the lender] advanced" and would award damages for funds "of which [the borrower] w[as] never actually deprived . . . resulting in a windfall." Id.

Courts have since applied *Fleetwood II*'s principal-reduction rule on facts similar to those here. In *Glob. Merch. Cash Inc. v. Rome-Aire Servs.*, the court held that a counterclaimant could not state a RICO injury for the collection of "usurious loan payments" where it had received $101,000 in principal but pleaded repayments of only $50,769.20 — a net gain, not a loss. 2024 U.S. Dist. LEXIS 189166, at *25 (E.D.N.Y. Oct. 17, 2024). The Court explained that, to state a RICO claim, "[the debtors] must allege that they paid [the lender] more than they received from [lender]" – something that they had failed to do in that case. *Id*.

**B.     By Plaintiffs' Own Pleaded Figures, the Leer Companies Received $772,745 More Than They Repaid**

Per the Amended Complaint (*see* Declaration of Alexander Sakin ("Sakin Decl."), Ex. 1) – which constitutes a judicial admission -- Plaintiffs netted, after any and all deductions and

'payoffs' of amounts due on other agreements, the following amounts: a) $1,307,403 pursuant to the Spin loan (Am. Compl. ¶ 24, 180); b) $80,000 under the first BMF agreement (¶ 94, ¶ 105); c) $198,000 under the first Hi Bar Agreement (¶¶ 112, 120); d) $105,072 under the second BMF Agreement (¶ 127); e) $100,000 under the third BMF Agreement (¶ 141); and f) $320,00 under the second Hi Bar agreement (¶¶ 156, 165). Thus, per the Amended Complaint's own allegations, Plaintiffs received approximately $2,110,475.

On the other hand, the Amended Complaint alleges only that Plaintiffs paid back $827,730 under the MCA agreements (¶ 292), and $510,000 under the Spin loan agreement (¶¶ 30, 183). Thus, by their own pleaded numbers, then, the Leer Parties received $772,745 more across the entire challenged course of dealing than they paid back. Far from suffering a financial injury, Plaintiffs are, by their own admission, net winners on the very transactions they ask this Court to unwind, and simply cannot prevail on their RICO claims.

Plaintiffs' novel theory of consequential damages is independently foreclosed by settled New York law. Plaintiffs contend that they "were damaged by the amounts collected under the MCA Agreements [] and the consequential injuries caused by the refinancing scheme, including the Promissory Note obligations." But Plaintiffs do not challenge the Promissory Note as usurious in this action — and they could not plausibly do so, since the Note's $2.7 million face amount places it outside the reach of New York's usury laws altogether, as found by the parallel state court action involving the Promissory Note. N.Y. Gen. Oblig. Law § 5-501(6)(b); *Spin Cap., LLC v. Golden Foothill Ins. Servs*., LLC, 2023 N.Y. Misc. LEXIS 747, at *1 (Sup. Ct. N.Y. County Feb. 28, 2023) ("Simply put, the face amount of [Spin Capital Promissory Note] [] is $2.7 million and this amount exceeds the $2.5 million threshold to which New York's usury laws apply (N.Y. Gen. Oblig. Law § 5-501[6][b]). The Counterclaim Plaintiffs' arguments that

4

certain portions of the [Promissory Note] should be recharacterized such that the [Promissory Note] is subject to the usury laws, and is therefore invalid, fail.").

That concession is fatal to Plaintiffs' "refinancing scheme" theory: even assuming, *arguendo*, that the underlying MCA Agreements were usurious, the unchallenged, non-usurious Promissory Note that refinanced them purged any such taint as a matter of law.  New York has long recognized a purging doctrine for usury. While "the usurious nature of a contract or obligation is to be determined as of the time it is entered into," such that "an obligation void at its inception for usury continues void forever," the rule is otherwise where the parties abandon the tainted obligation and replace it with a new, non-usurious one: "if the parties to a usurious contract or obligation agree to abandon the void agreement and execute a new obligation for the amount of the actual debt, free from usury, and bearing only legal interest, then the second agreement purges the first of its usurious taint and makes the second obligation valid and enforceable." *In re Estate of Jackson*, 120 A.D.2d 309, 313 (N.Y. App. Div. 1986) (citing *Weaver Hardware Co. v. Solomovitz*, 235 N.Y. 321, 330 (N.Y. 1923)); *accord Aquila v. Rubio*, 2016 N.Y. Misc. LEXIS 1581, at *21 (Sup. Ct. Suffolk County May 2, 2016).

The same logic forecloses Plaintiffs' novel damages theory here. Under *Jackson*, then, the Promissory Note stands as a valid, purged, and independently enforceable obligation, regardless of whatever usury taint may have infected the MCA Agreements it replaced. Plaintiffs cannot resuscitate that taint by recasting their payment obligations under the Note as "consequential injuries" of "the refinancing scheme." This conclusion supplies an independent ground on which Plaintiffs' damages theory fails.

## II.    The MCA Agreements Were Not Usurious

Plaintiffs cannot prove that the MCAs were usurious loans.  It is well-established that a

transaction cannot be usurious if it is not a loan. *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744 (1992) ("Usury laws apply only to loans or forbearances … If the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be'") (citations omitted). Under the law, MCAs are not loans, and hence not subject to usury laws, because, as is apparent from the MCAs (*See* Declaration of Avrumi Lubin ("Lubin Decl."), Exs. 1-5), the MCAs: (1) do not provide for interest or a fixed payment period, (2) include enforceable reconciliation clauses and (3) do not make bankruptcy an event of default. *E.g. Principis Capital, LLC v. I Do, Inc.*, 201 A.D.3d 752, 754 (1st Dep't 2022) (citing *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 665 (2d Dep't 2020) determining MCA to not be a loan on that basis). *See also Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*, 159 A.D.3d 507 (1st Dep't 2018).

Contrary to Plaintiffs' allegations, there is no actual evidence that Plaintiffs formally requested reconciliation, and were denied such relief, dooming Plaintiffs' Motion. *See* Lubin Decl., ¶6; *Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 U.S. Dist. LEXIS 171085, at *16 (S.D.N.Y. Sept. 20, 2022) (citing *Pirs Cap., LLC v. D&M Truck, Tire & Trailer Repair Inc.*, 69 Misc. 3d 457, 129 (Sup. Ct. N.Y. County 2020) (finding, on summary judgment, that the plaintiff could not demonstrate that an agreement was a usurious loan because the agreement "contains a reconciliation provision" and while the defendants "assert[ed] that no reconciliation ever occurred, and thus that the reconciliation provision was simply a sham to hide a usurious loan," the defendants could not demonstrate that they "ever *requested* an adjustment of the amounts being collected in order to account for the actual amount of [their] daily receivables" (emphasis in original)); *Haymount Urgent Care PC v. GoFund Advance, LLC*, 650 F. Supp. 3d 204, 211 (S.D.N.Y. 2023) ("[E]vidence showing that the putative lenders routinely deny

6

reconciliation requests as a matter of policy, notwithstanding reconciliation provisions in the agreements" is evidence that an MCA is not a loan).

Notably, in a recent case involving a Revenue Purchase Agreement (RPA) issued by Spin Capital whose provisions are substantially similar, if not identical, to the MCAs at issue in this case, (*see* Sakin Decl., Ex. 2), the Appellate Division upheld a summary judgment ruling in favor of Spin Capital, finding that the RPA was not a loan, as it: "contained a clause that provided for the adjustment of the defendants' remittances in response to fluctuations in the defendants' receipts  . . . render[ing] the term of the agreement indefinite . . . [and] no contractual provision existed establishing that a declaration of bankruptcy would constitute an event of default." *Spin Capital, LLC v. Bridgelink Engg., LLC*, 248 A.D.3d 1074 (2d Dep't 2026).  The RPA's remarkable similarity to the MCAs renders this decision particularly persuasive, and further confirms that the MCAs at issue are not usurious loans.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion for summary judgment.

Dated: June 25, 2026
        New York, NY

LAW OFFICE OF ALEXANDER SAKIN, LLC


/s/ Alexander Sakin

_____
Alexander Sakin
5 West 37th St., Suite 601
New York, New York 10018
(917) 509-7573

7