## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, LIFE FACTOR II, LLC, LIFE SHARES II, LLC, EL DORADO HILLS INSURANCE SOLUTIONS, INC., LONE WOLF INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC, THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC., and TATANISHA LEER

Case No.: 1:24-CV-08515 (AS)

Plaintiffs,

v.

SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN, BMF ADVANCE LLC, GAVRIEL YITZCHAKOV a/k/a GABE ISAACOV, HI BAR CAPITAL, LLC, YOEL GETTER a/k/a JOEL GETA, and YISROEL HERBST,

Defendants.

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**HESKIN & PROPER PLLC**
Shane R. Heskin
641 Lexington Avenue, 14th Floor
New York, New York 10022
shane@heskinproper.com
*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT.................................................................................................................... 2

I.    PLAINTIFFS HAVE RICO INJURY; SPIN'S GLOBAL "NET WINNER" THEORY IS WRONG.................................................................................... 2

    A.    This Court already rejected the same threshold injury argument ............... 2

    B.    Each unlawful MCA created a separate RICO injury................................ 3

    C.    The $2.7 million Spin Note interest is direct RICO injury, not remote consequential damages.................................................................... 4

II.   THE SPIN NOTE DID NOT PURGE THE MCA USURY OR THE RICO VIOLATION................................................................................................... 6

III.  THE MCAs WERE LOANS AS A MATTER OF LAW..................................... 7

    A.    The supposed reconciliation mechanisms were absent, conditional, temporary, and ignored ............................................................... 7

    B.    The payments and implied receivables estimates were fixed and irrational 8

    C.    Defendants retained full recourse through guaranties, security interests, default triggers, and day-one stacking defaults........................................... 9

    D.    The rates exceed RICO's unlawful-debt threshold many times over ....... 10

IV.   *BRIDGELINK* IS DISTINGUISHABLE.......................................................... 10

V.    THE REMAINING RICO ELEMENTS AND DEFAULT JUDGMENT ARE ESTABLISHED.............................................................................................. 11

CONCLUSION................................................................................................................ 11

**TABLE OF AUTHORITY**

**Page(s)**

**CASES**

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
    37 N.Y.3d 320 (2021) ........................................................................................... 4

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................. 5

*B&T Supplies, Inc. v. GemJ Chehebar Grat, LLC*,
    2025 (S.D.N.Y. Mar. 17, 2025) .......................................................................... 3

*Bankers Trust Co. v. Rhoades*,
    859 F.2d 1096 (2d Cir. 1988) .............................................................................. 3

*Bridge v. Phoenix Bond & Indemnity Co.*,
    553 U.S. 639 (2008) ............................................................................................. 5

*Commercial Union Assurance Co. PLC v. Milken*,
    17 F.3d 608 (2d Cir. 1994) .................................................................................. 4

*D'Addario v. D'Addario*,
    901 F.3d 80 (2d Cir. 2018) .................................................................................. 3

*Davis v. Richmond Capital Group, LLC*,
    194 A.D.3d 516 (1st Dep't 2021) .................................................................... 9, 11

*Fleetwood Services, LLC v. Richmond Capital Group LLC*,
    2023 (2d Cir. June 8, 2023) ......................................................................... 7, 9, 11

*Fleetwood Servs., LLC v. Ram Capital Funding, LLC*,
    2022 (S.D.N.Y. Aug. 17, 2022), *aff'd sub nom* ................................................. 4

*Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*,
    2023 (2d Cir. June 8, 2023) ................................................................................. 4

*Golden Foothill Insurance Services, LLC v. Spin Capital, LLC*,
    2025 U.S. Dist. LEXIS 160562 (S.D.N.Y. Aug. 19, 2025) ..................... passim

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010) ................................................................................................. 5

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992) ............................................................................................. 5

*In re Estate of Jackson*,
    120 A.D.2d 309 (3d Dep't 1986) ........................................................................ 6

*Jackson v. Federal Express*,
    766 F.3d 189 (2d Cir. 2014) .............................................................................. 11

*Kaiser Foundation Health Plan, Inc. v. Pfizer, Inc. (In re Neurontin Marketing & Sales Practices*
    *Litigation)*,  712 F.3d 21 (1st Cir. 2013) ........................................................... 6

*Lateral Recovery LLC v. Funderz.net, LLC,*
 2024 (S.D.N.Y. Sept. 27, 2024) .................................................................... 7, 9, 11

*Medical Marijuana, Inc. v. Horn*,
 604 U.S. 593 (2025) ................................................................................................... 5

*Moss v. First Premier Bank*,
 2024 (E.D.N.Y. Aug. 2, 2024), *aff'd*, 2025 U.S. App. LEXIS 15517 (2d Cir. 2025) ........ 3

*Spin Capital, LLC v. Bridgelink Engineering, LLC*,
 248 A.D.3d 1074 (2d Dep't 2026). ....................................................... 2, 10, 11

*Stochastic Decisions, Inc. v. DiDomenico*,
 995 F.2d 1158 (2d Cir. 1993) .................................................................................. 3

*Szerdahelyi v. Harris*,
 67 N.Y.2d 42 (1986) ................................................................................................ 5

*Weaver Hardware Co. v. Solomovitz*,
 235 N.Y. 321 (1923) ................................................................................................ 6

**STATUTES**

18 U.S.C. § 1961 ............................................................................................................ 10

18 U.S.C. § 1964 .............................................................................................................. 5

General Obligations Law § 5-501 ................................................................................... 5

N.Y. Gen. Oblig. Law § 5-521 ...................................................................................... 10

N.Y. Penal Law § 190.40 .............................................................................................. 10

## PRELIMINARY STATEMENT

Plaintiffs submit this reply in response to Defendant Spin Capital LLC's opposition. The opposition does not identify a material issue of disputed fact. It instead confirms the essential facts: Lubin was Spin's sole member, acted for Spin in brokering the BMF and Hi Bar transactions, had a financial incentive to make the transactions perform, does not deny the payment-relief messages Plaintiffs rely on, and admits that the later Spin note advanced only $1,307,403 in new money while extracting $510,000 before default. ECF No. 183 ¶¶ 2–13; ECF No. 185 at 3–5.

Spin's brief repeats the same "net winner" and MCA-label arguments this Court already rejected at the pleading stage. This Court held that Plaintiffs plausibly alleged that the MCAs were loans and that usurious MCA payments are concrete RICO injury regardless of the source of the money used to pay them. Discovery has now confirmed the pleading allegations: five stacked MCA transactions; fixed daily debits; wildly inconsistent "good faith" estimates of receivables; no real reconciliation; guaranty, security-interest, and default recourse; and a later Spin note that refinanced the MCA balances, added a $200,000 Lubin fee, and imposed 60% stated and 120% default interest.

Spin's purging argument is equally defective. A later obligation can purge usury only if the parties abandon the usurious obligation and execute a new, lawful obligation for the actual debt, free of usury. The Spin note did the opposite. It capitalized void MCA debt, deducted fees, added a Lubin premium, took life-insurance collateral, imposed personal and corporate guaranties, and served as the collection mechanism for the very MCA debt at issue. It did not cleanse the RICO violation; it completed the scheme.

Spin's related effort to exclude the interest and carrying costs on the later $2.7 million Spin Note as "consequential damages" fails for the same reason. The note was not an independent transaction divorced from the five MCAs. It was the direct refinancing product of the payment

distress Defendants created through the five criminally usurious MCA loans. But for those unlawful loans and Defendants' collection of them, Plaintiffs would not have entered the note, would not have incurred the note interest, and should not be forced to pay interest on a note that capitalized void MCA debt.

Nor does *Spin Capital, LLC v. Bridgelink Engineering, LLC*, 248 A.D.3d 1074 (2d Dep't 2026) change the result. *Bridgelink* involved a different 2022 agreement, different parties, and a different record. This case involves five March 2021 BMF and Hi Bar agreements, a business with irregular life-insurance revenues, internally inconsistent receivables estimates, stacked receivables, one- or two-payment default triggers, and actual servicing that ignored receivables and negotiated whatever fixed payment Lubin believed Plaintiffs could make.

Summary judgment should be granted.

## ARGUMENT

### I.    PLAINTIFFS HAVE RICO INJURY; SPIN'S GLOBAL "NET WINNER" THEORY IS WRONG

#### A.    This Court already rejected the same threshold injury argument

Spin argues that Plaintiffs suffered no RICO injury because, after collapsing five MCAs and the later Spin note into one global account, Plaintiffs supposedly received more than they paid. ECF No. 185 at 2–5. This Court already rejected that premise. The Court held that allegedly fraudulent or usurious MCA payments are concrete injury and that it is irrelevant that Plaintiffs paid the MCA balances using a separate loan from Defendants: "however they got the money, they paid off the MCA agreements and fully paid what they allege were usurious payments." *Golden Foothill Insurance Services, LLC v. Spin Capital, LLC*, 2025 U.S. Dist. LEXIS 160562, at \*26–27 (S.D.N.Y. Aug. 19, 2025).

The summary-judgment record proves the same injury. Plaintiffs paid at least $852,730 over principal on the five MCA loans after crediting the net principal advanced. Pls.' SUMF ¶ 148. Plaintiffs also incurred $924,889.53 in attorneys' fees and costs defending against Spin's collection efforts on the note and life-insurance collateral. Pls.' SUMF ¶ 158. Those losses are clear, definite, and recoverable RICO damages. *D'Addario v. D'Addario*, 901 F.3d 80, 95 (2d Cir. 2018); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105–06 (2d Cir. 1988); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993).

**B.      Each unlawful MCA created a separate RICO injury**

Spin's global netting theory also contradicts the separate-injury rule. The Second Circuit holds that each time a plaintiff suffers a new injury caused by a RICO violation, a new claim accrues. *Bankers Trust*, 859 F.2d at 1102–03.  Recent decisions apply that principle: each allegedly unlawful MCA agreement creates a new injury because the merchant undertakes a new obligation to repay a new debt. *B&T Supplies, Inc. v. GemJ Chehebar Grat, LLC*, 2025 WL 831110, at *12 (S.D.N.Y. Mar. 17, 2025); *Moss v. First Premier Bank*, 2024 WL 4274780, at *5 (E.D.N.Y. Aug. 2, 2024), *aff'd*, 2025 U.S. App. LEXIS 15517 (2d Cir. 2025) (summary order).

The proper calculation therefore credits principal on the specific unlawful debt and treats payments over principal as injury. Plaintiffs have done that. They do not seek to recover principal they received and retained. They seek amounts collected above principal on the MCAs, plus consequential legal-expense damages caused by the collection scheme. Spin's proposed approach would allow a usurer to erase a completed RICO injury by making a later refinancing advance, a result incompatible with RICO accrual, RICO deterrence, and this Court's prior ruling.

### C. The $2.7 million Spin Note interest is direct RICO injury, not remote consequential damages

Spin's argument that Plaintiffs cannot recover damages tied to the later $2.7 million Spin Note misstates both the record and the governing damages rule. Plaintiffs are not seeking remote "consequential damages" from an independent transaction. The Spin Note was the direct, foreseeable, and intended result of Defendants' collection of the five criminally usurious MCA loans. Defendants used the payment distress created by those MCAs to refinance the MCA balances into a larger note. But for Defendants' unlawful MCAs and collection efforts, Plaintiffs would not have entered the Spin Note, would not have incurred its interest, and would not face any obligation to pay interest generated by the very unlawful debt RICO forbids Defendants to collect.

RICO damages are designed to put the injured plaintiff in the same financial position it would have occupied absent the misconduct. *Fleetwood Servs., LLC v. Ram Capital Funding, LLC*, 2022 WL 3536128, at *3 (S.D.N.Y. Aug. 17, 2022), *aff'd sub nom. Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 WL 3882697 (2d Cir. June 8, 2023); *Commercial Union Assurance Co. PLC v. Milken*, 17 F.3d 608, 612–13 (2d Cir. 1994). In *Fleetwood*, Judge Liman rejected the argument that the RICO plaintiff's damages should be reduced by the usurious interest paid, because that approach would give the defendant the benefit of his unlawful conduct; absent the usurious loan, the plaintiff would not have paid the usurious interest. 2022 WL 3536128, at *3. The court credited principal actually advanced to avoid a windfall, but did not allow the wrongdoer to retain credit for the unlawful interest collected. *Id.* at *4. The same rule applies here. Plaintiffs do not seek a windfall. They seek to avoid and recover interest that exists only because Defendants converted the five unlawful MCA loans into the Spin Note.

New York usury law independently reinforces that result. *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 326, 333–34 (2021), holds that a criminally usurious corporate loan is void

and unenforceable, resulting in the uncollectability of both principal and interest. *Szerdahelyi v. Harris*, 67 N.Y.2d 42, 48–49 (1986), likewise holds that a usurious transaction is void and that the lender cannot recover the money loaned or remaining interest by tendering back excess interest. And General Obligations Law § 5-501(2) forbids a lender from directly or indirectly charging, taking, or receiving any money or thing as interest on a loan or forbearance above the legal rate. Defendants therefore cannot do indirectly through the Spin Note what New York law and RICO prohibit directly: collect interest on debt that was created by, and capitalized from, five void criminally usurious loans.

Spin's proximate-cause authorities do not help it. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268–74 (1992), *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–60 (2006), and *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9–12 (2010), bar recovery where the claimed injury depends on remote third-party decisions, market effects, or speculative apportionment. This case is the opposite. The injury involves the same Plaintiffs, the same Defendants, the same course of transactions, and the same unlawful debt. No better-positioned victim exists, and the damages do not depend on a competitor's pricing decisions, a State's tax collection, or independent third-party conduct. The causal chain is direct: Defendants made and collected five unlawful MCAs; those MCAs caused Plaintiffs to refinance into the Spin Note; the note imposed interest on the capitalized MCA debt.

The Supreme Court's more recent RICO cases confirm why Spin's categorical objection fails. *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 657–58 (2008), recognized that RICO proximate cause is satisfied where the causal link is direct and readily identifiable. *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 600–13 (2025), confirms that 18 U.S.C. § 1964(c) allows recovery for business or property loss resulting from racketeering activity and rejects categorical

bars that would exclude derivative economic harm when the statutory injury is to business or property. And *Kaiser Foundation Health Plan, Inc. v. Pfizer, Inc. (In re Neurontin Marketing & Sales Practices Litigation)*, 712 F.3d 21, 37–45 (1st Cir. 2013), correctly explains that once the plaintiff shows an expected injury from the defendant's wrongful conduct, damages need not be proven with mathematical certainty where the defendant's misconduct created the uncertainty. Here, there is no uncertainty about the operative causal point: Plaintiffs should not have to pay any interest on the $2.7 million Spin Note because they would not have entered that note but for Defendants' five prior criminally usurious MCA loans. Plaintiffs are also entitled to damages for their attorney's fees for having to defend against that loan.

At minimum, Spin's argument goes only to the measure of damages and judgment mechanics, not to liability or summary judgment. It does not create a genuine dispute that Defendants collected unlawful debt, that the MCA interest payments injured Plaintiffs, or that the later note interest flowed directly from the same unlawful-debt scheme. The Court should reject Spin's attempt to characterize the Spin Note interest as unrecoverable consequential damages and should hold that Plaintiffs are not required to pay—and may recover if paid—interest on the note because that interest was caused by and attributable to the five criminally usurious MCA loans.

## II.    THE SPIN NOTE DID NOT PURGE THE MCA USURY OR THE RICO VIOLATION

Spin's "purging" argument misstates the doctrine. A later instrument purges usury only where the parties abandon the void agreement and execute a new obligation for the actual debt, free from usury and bearing only lawful interest. *In re Estate of Jackson*, 120 A.D.2d 309, 313 (3d Dep't 1986); *Weaver Hardware Co. v. Solomovitz*, 235 N.Y. 321, 330 (1923). The Spin note was not a lawful replacement. It embedded MCA payoff balances, deducted $200,000 as Lubin's fee for putting the deal together, deducted $30,000 for Spin's attorneys, required two $150,000

-6-

payments followed by large weekly payments, imposed 60% stated interest and 120% default interest, required personal and corporate guaranties, and took a security interest in life-insurance assets. Pls.' SUMF ¶¶ 119–25.

Spin's reliance on the state-court ruling that the note's facial $2.7 million amount exceeded New York's $2.5 million usury threshold is beside the point. Plaintiffs' RICO claim in this action is based on the MCA agreements as the unlawful debt. This Court already held that Plaintiffs' decision to use a later loan to pay off the MCAs does not eliminate injury from the MCA payments. *Golden Foothill*, 2025 U.S. Dist. LEXIS 160562, at *26–28. Whether Plaintiffs pursue the note as an independent usurious loan is not dispositive because Defendants can be liable for collecting the earlier unlawful MCA debt and for injuries proximately caused by the refinancing scheme.

The purging doctrine is designed to save a clean, complete abandonment of a usurious debt. It does not immunize a refinancing that capitalizes void debt, adds more interest and fees, increases collateral pressure, and becomes the vehicle for ongoing collection. The note therefore cannot retroactively legalize the completed MCA collections or bar RICO liability.

## III.  THE MCAs WERE LOANS AS A MATTER OF LAW

### A.  The supposed reconciliation mechanisms were absent, conditional, temporary, and ignored

Spin and Lubin rely heavily on contract labels and reconciliation language. That is not enough. Under New York law, courts look to substance, not form, and the root of the inquiry is transfer of risk. *Fleetwood Services, LLC v. Richmond Capital Group LLC*, 2023 WL 3882697, at *2 (2d Cir. June 8, 2023); *Lateral Recovery LLC v. Funderz.net, LLC*, 2024 WL 4350369, at *25 (S.D.N.Y. Sept. 27, 2024). Boilerplate stating that the transaction is not a loan cannot override terms and practices showing absolute repayment.

The BMF documents did not contain a true receivables reconciliation. At most, they allowed a temporary two-week "adjustment" only if no Event of Default had occurred; required viewing access and any information BMF requested; and then caused the remittance to return automatically to the original fixed amount unless the merchant requested another adjustment. ECF Nos. 186-1, 186-3, 186-4 § 1.4. That is not a true risk-shifting reconciliation. It is a discretionary, temporary indulgence layered on top of fixed daily ACH debits.

The Hi Bar provisions were likewise illusory. They were available only if no default or breach had occurred; required bank statements, processing statements, accounts-receivable reports, and additional access demanded by Hi Bar; made refusal to provide access a breach; and expressly stated that the merchant could not interfere with Hi Bar's debits while a request was pending. ECF Nos. 186-2, 186-5 §§ 1.3–1.4. A provision that cannot be used after default, can be blocked by document demands, and does not suspend fixed debits, does not transfer real receivables risk.

The parties' actual conduct confirms the point. When Plaintiffs reported payment distress and lack of cash, Defendants did not perform a receivables calculation. Lubin negotiated arbitrary fixed payments, including "1k a day each," $2,000 wires, and $500 each for ten days, based on what Plaintiffs could pay. Pls.' SUMF ¶¶ 109–15. This Court already recognized that those communications support a finding of a sham-reconciliation because they negotiated a new daily rate without reference to receivables or the formal reconciliation process. *Golden Foothill*, 2025 U.S. Dist. LEXIS 160562, at *24–26.

**B.     The payments and implied receivables estimates were fixed and irrational**

The five agreements' supposed good-faith estimates cannot be reconciled with any real receivables analysis. In less than one month, the same business was supposedly generating daily receivables of $49,960, $42,500, $85,000, $250,000, and $100,000. Two of those inconsistent

estimates were made on the same day. The only consistent pattern is that the daily debit increased with the amount Defendants wanted to collect, not with receivables.

| Agreement | Fixed Daily Remittance / Percentage | Implied Daily Receivables |
|---|---|---|
| March 2, 2021 BMF | $4,996 at 10% | $49,960 |
| March 10, 2021 Hi Bar | $8,500 at 20% | $42,500 |
| March 12, 2021 BMF | $8,500 at 10% | $85,000 |
| March 25, 2021 BMF | $25,000 at 10% | $250,000 |
| March 25, 2021 Hi Bar | $20,000 at 20% | $100,000 |

This Court found that these inconsistent estimates plausibly show that the daily payment amount was consistent with a loan to be repaid over a fixed period rather than a purchase of receivables. *Golden Foothill*, 2025 U.S. Dist. LEXIS 160562, at *22–24.  The summary-judgment record confirms that conclusion. *See also Davis v. Richmond Capital Group, LLC*, 194 A.D.3d 516, 517 (1st Dep't 2021); *Funderz*, 2024 WL 4350369, at *29.

The fixed terms are equally clear. The purchased amount divided by the fixed daily debit yields short payoff periods, and the correspondence confirms that Defendants negotiated the deals by number of repayment days. Pls.' SUMF ¶¶ 36, 49, 63, 79, 97. An agreement does not become indefinite merely because it recites that there is no fixed term when the economics and servicing practice show a fixed repayment period.

### C.    Defendants retained full recourse through guaranties, security interests, default triggers, and day-one stacking defaults

Spin and Lubin emphasize that the agreements say bankruptcy or slowdown, standing alone, is not a default. That formal statement does not resolve recourse. Courts ask whether the funder actually bore the risk that receivables would be insufficient. *Fleetwood*, 2023 WL 3882697, at *2; ) *Lateral Recovery LLC v. Funderz.net, LLC*, 2024 WL 4350369, at *29 (S.D.N.Y. Sept. 27, 2024). Here, Defendants retained recourse through personal guaranties, security interests in

substantially all assets, powers of attorney, account-debtor notices, UCC remedies, and immediate default rights. ECF Nos. 186-1 to 186-5.

Defendants also manufactured default from inception. Each agreement prohibited alternative financing or encumbrances of receivables, yet Defendants coordinated overlapping BMF and Hi Bar transactions on the same receivables. Pls.' SUMF ¶¶ 38, 51, 68, 81, 95. This Court recognized the significance of that day-one default scheme at the pleading stage. *Golden Foothill*, 2025 U.S. Dist. LEXIS 160562, at *24–25. A funder that knowingly stacks the same receivables while requiring unencumbered-receivables representations does not assume receivables risk; it creates immediate, full recourse in all events.

Finally, one or two missed payments triggered default and enforcement remedies. Pls.' SUMF ¶¶ 39, 52, 67, 80, 94. A true receivables buyer does not accelerate the entire uncollected balance and enforce guaranties because the merchant misses one or two fixed ACH debits. A lender does.

### D.      The rates exceed RICO's unlawful-debt threshold many times over

Once the MCAs are properly characterized as loans, the usury analysis is straightforward. New York's criminal usury ceiling is 25% annually, and RICO's unlawful-debt provision requires a rate at least twice the enforceable rate. 18 U.S.C. § 1961(6); N.Y. Penal Law § 190.40; N.Y. Gen. Oblig. Law § 5-521(3). The MCA rates here were many multiples of 50%. Pls.' SUMF ¶¶ 44, 58, 73, 86, 100, 126–27. Spin offers no admissible calculation to the contrary. It simply insists that the agreements were not loans. The record resolves that issue for Plaintiffs.

## IV.    *BRIDGELINK* IS DISTINGUISHABLE

Spin's reliance on *Bridgelink* is misplaced. The Second Department there considered a different Spin agreement, entered in 2022, involving a $5 million purchase price and $7.5 million purchased amount, and found that the agreement contained a reconciliation clause, lacked a finite

term, and did not make bankruptcy a default. *Spin Capital, LLC v. Bridgelink Engineering, LLC*, 248 A.D.3d 1074, 1075–76 (2d Dep't 2026). The defendants in *Bridgelink* made only $210,000 in payments before defaulting, and the court did not address a record like this one.

This case involves five stacked March 2021 BMF and Hi Bar transactions, contradictory receivables estimates, fixed daily ACH debits, one- or two-payment defaults, temporary or illusory adjustment mechanisms, actual payment-relief negotiations untethered to receivables, guaranty and security-interest recourse, and a later Spin note that refinanced the MCA balances. *Bridgelink* did not involve those facts and does not displace the more analogous authorities—*Golden Foothill*, *Davis*,  *Fleetwood*, and *Funderz*—that look through MCA labels where repayment risk was not truly transferred.

## V.    THE REMAINING RICO ELEMENTS AND DEFAULT JUDGMENT ARE ESTABLISHED

Spin does not meaningfully dispute the remaining RICO elements. Plaintiffs established that Lubin is a RICO person, that Spin is a distinct enterprise and part of the Spin Enterprise, that the Enterprises' affairs affected interstate commerce, that Defendants conducted enterprise affairs through collection of unlawful debt, that the debt was unenforceable under New York usury law, that the debt was incurred in connection with the business of lending money, and that the interest rates were at least twice the enforceable rate. Pls.' SUMF ¶¶ 7–27, 44, 58, 73, 86, 100, 126–38. Arguments not addressed in opposition are abandoned. *Jackson v. Federal Express*, 766 F.3d 189, 198 (2d Cir. 2014).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for summary judgment against Spin Capital; award Plaintiffs their RICO damages, including at least $852,730 paid over principal on the five MCA loans and $924,889.53 incurred

defending against Spin's collection efforts, for total pre-trebling damages of at least $1,777,619.53

and treble damages of $5,332,858.59; award attorneys' fees and costs for prosecuting this action;

and declare that Plaintiffs are entitled to treble damages on any amount they are required to pay

above principle on the Promissory Note.


Dated:  New York, New York
        July 15, 2026

                                        **HESKIN & PROPER, PLLC**

                                        By: _____

                                        Shane R. Heskin
                                        Heskin & Proper, PLLC
                                        641 Lexington Avenue,14th Floor
                                        New York, N.Y. 10022
                                        shane@heskinproper.com
                                        *Attorneys for Plaintiffs*

-12-

-13-

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the undersigned counsel for Plaintiffs certifies that the foregoing Reply Memorandum of Law complies with the applicable word-count limitation. In reliance on the word count of the word-processing program used to prepare this memorandum, it contains 3,430 words, exclusive of the caption, signature block, and this certificate.

Dated: New York, New York
         July 15, 2026

**HESKIN & PROPER, PLLC**

By: _____

Shane R. Heskin
Heskin & Proper, PLLC
641 Lexington Avenue,14th Floor
New York, N.Y. 10022
shane@heskinproper.com
*Attorneys for Plaintiffs*